No. 25-1019

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

RÜMEYSA ÖZTÜRK,

*Petitioner–Appellee,*

v.

DONALD J. TRUMP, in his official capacity as President of the United States;
PATRICIA HYDE, in her official capacity as the New England Field Office Director
for U.S. Immigration and Customs Enforcement; MICHAEL KROL, in his official
capacity as HSI New England Special Agent in Charge, U.S. Immigration and
Customs Enforcement; TODD LYONS, in his official capacity as Acting Director,
U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official
capacity as Secretary of the United States Department of Homeland Security; and
MARCO RUBIO, in his official capacity as Secretary of State,

*Respondents–Appellants.*

On Appeal from the United States District Court
for the District of Vermont

**PETITIONER–APPELLEE'S OPPOSITION TO RESPONDENTS'
EMERGENCY MOTION FOR A STAY PENDING APPEAL**

*(Counsel listed on next page)*

Brett Max Kaufman
Brian Hauss
Esha Bhandari
Noor Zafar
Sidra Mahfooz
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
bkaufman@aclu.org
bhauss@aclu.org
ebhandari@aclu.org
nzafar@aclu.org
smahfooz@aclu.org

Jessie J. Rossman
Adriana Lafaille
Rachel E. Davidson
Julian Bava
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF MASSACHUSETTS,
   INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org
rdavidson@aclum.org
jbava@aclum.org

Mahsa Khanbabai
115 Main Street, Suite 1B
North Easton, MA 02356
(508) 297-2065
mahsa@mk-immigration.com

*Counsel for Petitioner–Appellee*

Lia Ernst
Monica H. Allard
ACLU FOUNDATION OF VERMONT
PO Box 277
Montpelier, VT 05601
(802) 223-6304
lernst@acluvt.org
mallard@acluvt.org

Ramzi Kassem
Naz Ahmad
Mudassar Toppa
Shezza Abboushi Dallal
CLEAR PROJECT
MAIN STREET LEGAL SERVICES,
   INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Matthew D. Brinckerhoff
Katherine Rosenfeld
Vasudha Talla
Sonya Levitova
EMERY CELLI BRINCKERHOFF ABADY
   WARD & MAAZEL LLP
One Rockefeller Plaza, 8th Floor
New York, NY 10020
212-763-5000
mbrinckerhoff@ecbawm.com
krosenfeld@ecbawm.com
vtalla@ecbawm.com
slevitova@ecbawm.com

## INTRODUCTION

Petitioner Rümeysa Öztürk has spent over four weeks behind bars for co-authoring an op-ed in a student newspaper. Had this occurred in any other country, Americans would shudder at the thought and thank the Founders for drafting the Constitution. But here, their government continues to try to postpone the day it will have to explain its actions before a judge.

The district court below is on a path to requiring just that. After assuring itself of jurisdiction, the court set a schedule to decide Petitioner's habeas claims, issuing an opinion and order that returns Petitioner (in custody) to the District of Vermont by May 1 so she can participate in hearing dates on her urgent motion for release on bail (May 9) and habeas petition (May 22). While the government calls this an extraordinary threat to its prerogatives, nothing is more basic than a district court's ability to facilitate resolution of the claims before it. The Court should deny the government's emergency stay.

First, the government is not likely to succeed on the merits, not least because this Court should dismiss the government's premature appeal. The district court's order returning Petitioner is not an appealable injunction, the government did not seek to certify an appeal under 28 U.S.C. § 1292(b), and the collateral order doctrine does not apply. Further, as found below, the district court has habeas jurisdiction under the plain text of a federal transfer statute and longstanding rules regulating the

1

proper venue for habeas cases. Next, the government is wrong to argue that the Immigration and Nationality Act ("INA") displaces this Court's inherent authority and powers under the All Writs Act ("AWA"), 28 U.S.C. § 1651, to facilitate its proceedings and further the interests of justice by bringing Petitioner, who will remain in detention, closer to her lawyers and the Court. Last, the INA does not bar judicial review of Petitioner's claims, which challenge the government's unconstitutionally retaliatory detention and not her removal proceedings.

Second, the equities overwhelmingly favor Petitioner. Only one party—Petitioner—would suffer *any* harm from a stay, and that harm is significant. App.78-80.[1] By contrast, the government claims no "concrete injury" from detaining Petitioner in Vermont instead of Louisiana pending the district court's consideration of her claims. App.78. And the public interest strongly favors proceeding to the adjudication of Petitioner's bail request and her petition. Every day of her detention further accomplishes the unconstitutional object of the government's actions, confounds the purpose of the Great Writ, and risks undermining the public's

---

[1] Petitioner attaches the district court's opinion and denial of the government's stay request in an appendix to this brief.

confidence in the executive branch and the ability of the judiciary to hold it accountable for wrongdoing.[2]

## BACKGROUND

Two district courts have already been called upon in this case and have recounted the relevant facts at length. *See* App.3-11; *Ozturk v. Trump*, 2025 WL 1009445, at *1-4 (D. Mass. Apr. 4, 2025). In brief:

Ms. Öztürk is a Turkish national and third-year doctoral candidate at Tufts University. App.4. In March 2024, she co-authored an op-ed published in the student newspaper that criticized the university's rejection of various student government resolutions concerning Israel's military campaign in Gaza. App.3.

A year later, at around 5:25pm on March 25, 2025, six plainclothes officers appeared without warning and arrested her near her apartment in Somerville, Massachusetts, driving her away in an unmarked vehicle. App.6. While she had been in the country on a valid F-1 visa, the government had silently revoked it four days earlier. App.4-6. In the five hours after her arrest, the government moved her between three states—from Massachusetts to New Hampshire and then to Vermont. App.6.

---

[2] The government asks for argument and a decision by April 29. Its motion does not merit argument. Anticipating that the government might seek further emergency relief in the Supreme Court, Petitioner respectfully requests a decision as soon as practicable.

"All of this was unknown to Ozturk's attorney, who did not know her client's whereabouts upon learning of her arrest." *Ozturk*, 2025 WL 1009445, at *2. After making numerous efforts to locate her, just after 10 p.m. on March 25, Ms. Öztürk's lawyer filed a habeas petition seeking her release in the District of Massachusetts, her last known location. *Id.*; App.6. Within the hour, the district court issued a temporary restraining order ("TRO") to "preserve the status quo," commanding that she "not be moved outside the District of Massachusetts" without advance notice. App.6.

At the time the petition was filed, Petitioner was in a vehicle in Vermont, being driven by officers from Immigrations and Customs Enforcement ("ICE"), whose Enforcement and Removal Operations branch for New England region is run from the Boston Field Office. App.6, App.23-24. And while the U.S. Attorney's office received both the petition and the district court's TRO that same night, the government continued to move Petitioner. Around 10:28pm, she arrived at the St. Albans (Vermont) Field Office (a suboffice of the Boston Field Office). Hours later, she was on a plane to Louisiana, where she arrived the afternoon of March 26.

Throughout that time, and with particular concern about Petitioner's lack of access to her asthma medication, her lawyer consistently sought and failed to obtain her location. App.7-8. Inquiries to ICE and the U.S. Attorney's office, and even an in-person visit to ICE from the Turkish consulate, yielded no answers. App.8.

4

Finally, more than 24 hours after her arrest, Petitioner was permitted to speak with her lawyer from Louisiana, where she remains in custody today. App.9.

## PROCEDURAL HISTORY

Litigation initially proceeded in Massachusetts, with the filing of an amended petition alleging violations of the First and Fifth Amendments and the Administrative Procedures Act, ECF 12,[3] the government's opposition (seeking to dismiss the petition for lack of habeas jurisdiction or transfer it to Louisiana), ECF 19, and Petitioner's reply, ECF 26. After a hearing, the court transferred the case "in the interest of justice" to the District of Vermont. *See Ozturk*, 2025 WL 1009445, at *10-11.

After transfer, the District of Vermont quickly ordered briefing to account for differences in circuit law. App.12. Because the Massachusetts court had not resolved Petitioner's habeas claims on the merits, the parties briefed various issues: the request in her amended petition for release on bail pending the habeas litigation or, alternatively, return to Vermont, ECF 12 at 21-22, 82, 84, 91, 95, 99, 101, 103, 108; and the government's renewed motion to dismiss the petition or transfer it to Louisiana, arguing in part that the court lacked subject-matter jurisdiction over the habeas claims under various INA provisions, ECF 81, 83, 91.

---

[3] ECF references are to the district court docket. *See* 25-cv-374 (D. Vt.)

5

After a hearing, the court denied the government's motion to dismiss, determining it had habeas jurisdiction. App.13-29. It also concluded that "none of" the INA "provisions" relied on by the government "limit the Court's review where Ms. Ozturk has raised constitutional and legal challenges to her detention that are separate from removal proceedings." App.29-43. And while it did not decide the merits of Petitioner's constitutional claims, the court made clear that they are, at least on the current record, likely meritorious. *See* App.48 (record suggests "that the government's motivation or purpose for her detention is to punish her for co-authoring an op-ed" and lacks any "evidence to support an alternative, lawful motivation or purpose for Ms. Ozturk's detention"); App.47; App.57-58 (on current record, court would be "likely to conclude that Ms. Ozturk has presented a substantial claim" under the First and Fifth Amendments); App.62.

Finally, the court set a schedule for proceeding with those claims, ordering additional briefing, a bail hearing on May 9, and a merits hearing on the petition on May 22. App. 73. Under its AWA and inherent powers, the court also ordered the government to return Petitioner to Vermont (in ICE custody) by May 1. App. 73. In support of that order, the court explained that Petitioner's transfer would "facilitate her ability to work with her attorneys, coordinate the appearance of witnesses, and generally present her habeas claims"; "facilitate [her] ability to receive a neutral medical evaluation," which would be "a factor for the Court to consider when

6

addressing the question of release"; "assist the Court in determining potential bail conditions and whether release is appropriate"; "expedite resolution of this matter"; and "give proximate effect to the District of Massachusetts's" TRO prohibiting Petitioner's removal from that district—which the court found, as a factual matter, the government had "ignor[ed]" that night—by "return[ing]" matters as close as possible to "the status quo." App.66-72.

After being denied a stay in the district court, App.75-81, the government filed an emergency motion in this Court.

## LEGAL STANDARD

This Court reviews a district court's denial of a stay pending appeal for abuse of discretion, *United States v. Grote*, 961 F.3d 105, 123 (2d Cir. 2020), and any of the district court's factual findings against the government relevant to the stay factors must be accepted unless "clearly erroneous," Fed. R. Civ. P 52(a)(6).

A stay pending appeal represents an "intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). An application for a stay is evaluated under the traditional multi-factor test akin to a motion for preliminary injunction. *Id.* at 434, 426.[4]

---

[4] Even under the "sliding-scale" approach, *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006), which requires only that an appeal raises substantial legal questions, the government would need to show that all three of the other traditional factors

7

## ARGUMENT

The Court should deny the government's motion because this Court lacks jurisdiction, the government's arguments fail on the merits, and the equities overwhelmingly favor Petitioner.

## I.    A stay is unwarranted.

### A.    The government is not likely to succeed on the merits.

#### 1.    This Court lacks jurisdiction and should dismiss the appeal.

Because the district court's transfer order is interlocutory, this Court may review it on appeal only if it is: (1) an injunction, 28 U.S.C. § 1292(a); (2) certified by both the district court and this Court, § 1292(b); or (3) an appeal under the collateral order doctrine, *see, e.g.*, *Fischer v. N.Y. State Dep't of L.*, 812 F.3d 268, 273 (2d Cir. 2016). It is not.

First, an order in aid of jurisdiction under the AWA and inherent powers returning Petitioner to Vermont lacks "the practical effect" of an injunction that has "serious, perhaps irreparable, consequence." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287-88 (1988) (cleaned up); *see also Shoop v.*

---

"tip[] decidedly in [its] favor," *Trump v. Deutsche Bank AG*, 943 F.3d 627, 637 (2d Cir. 2019), *rev'd on other grounds*, 2020 WL 3848061 (U.S. July 9, 2020). It cannot do so here.

*Twyford*, 596 U.S. 811, 817 n.1 (2022) (analyzing collateral order doctrine as *only* basis for appellate jurisdiction over prisoner transfer order under AWA).

Second, this is not a certified appeal.

Third, the collateral order doctrine does not apply. Although the government does not invoke that doctrine, the collateral order doctrine can, in limited circumstances, confer appellate jurisdiction over an order to move a prisoner under the AWA, but those circumstances do not apply here. *Shoop*, 596 U.S. at 817 n.1 (five justices concluding that one such order was collateral and therefore immediately reviewable based on state sovereignty concerns that arise when a federal court orders state officials to transport a state prisoner challenging a state court conviction).

The government's other fleeting references to jurisdiction go nowhere. First, the government cites the district court's brief stay of its order to permit the parties to seek appellate relief, Mot.9, but that is not the same as 1292(b) certification. Next, the government cites authority that TROs can be appealed like injunctions in exceptional circumstances, *id.* (citing *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025)), but there is no TRO here, only AWA relief. Last, the government cites *Cruz v. Ridge*, 383 F.3d 62 (2d Cir. 2004), where this Court dismissed an appeal

9

after holding a district court's venue-transfer order under 28 U.S.C. § 1631 is not appealable under the collateral order doctrine.[5]

### 2.    The district court has habeas jurisdiction.

The district court relied on the plain text of 28 U.S.C. § 1631 and Supreme Court precedent to find that transfer of the petition from Massachusetts to Vermont was proper. Section 1631 *requires*, if in the "interest of justice," that a "civil action" for which there is "want of jurisdiction" be transferred to any court where the case "could have been brought at the time it was filed," and specifies that the case shall then "proceed as if it had been filed" in the transferee court at the original time of filing in the transferor court. Thus, in every important respect, the petition was filed in Vermont "on March 25 at 10:02 p.m." *Ozturk*, 2025 WL 1009445, at *11; App.17, App.20. And because Petitioner was in Vermont at that time, the district court has habeas jurisdiction under the "default" district-of-confinement rule discussed in *Rumsfeld v. Padilla*, 542 U.S. 426, 435-36, 443-44 (2004). App.20.

As four courts have found in five weeks, none of the government's counterarguments work. *Khalil v. Joyce (Khalil D.N.J.)*, 2025 WL 972959, at *14-38 (D.N.J. Apr. 1, 2025); *Khalil v. Joyce (Khalil S.D.N.Y.)*, 2025 WL 849803, at *11-13 (S.D.N.Y. Mar. 19, 2025); *Ozturk*, 2025 WL 1009445, at *4-11; App.13-29.

---

[5] Perceiving its shaky jurisdictional ground, the government improperly asks for the same relief through a writ of mandamus. *See infra* II.

10

First, habeas jurisdiction is not subject-matter jurisdiction, but personal jurisdiction and venue. *Khalil S.D.N.Y.*, 2025 WL 849803, at *11 (citing *Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011)). So a section 1631 transfer does not give a court "substantive authority" that it "otherwise lack[s]," Mot.13. App.19 (rejecting government's argument based on *De Ping Wang v. DHS*, 484 F.3d 615, 617-18 (2d Cir. 2007), as "readily distinguishable"). And the *Padilla* rules are not "specific statutory p[rere]quisites" for the habeas remedy, Mot.14; in fact, the habeas pleading provision expressly permits not naming an immediate custodian when one's custodian is unknown, 28 U.S.C. § 2242. Plus, there could not be multiple judge-made exceptions to those rules, Mot.14, if they were essential requirements to obtain a habeas remedy.

Second, the fact that the petition did not name Petitioner's current Louisiana custodian does not defeat habeas jurisdiction based on the rule of *Ex parte Endo*, 323 U.S. 283 (1944) (habeas court does not lose jurisdiction due to petitioner's out-of-district movement). App.22; *Khalil D.N.J.*, 2025 WL 972959, at *20-26. The government insists *Endo* only applies where habeas jurisdiction "originally vest[ed]." Mot.14. But under section 1631, the petition *must* be treated as if it had been filed in Vermont when Petitioner was in Vermont—so jurisdiction *did* vest there. Moreover, the government cannot square its dim reading of the *Endo* rule with the rule's fundamental purpose to safeguard the Great Writ. *Endo*, 323 U.S. at 307

11

("objective" of habeas relief "may be in no way impaired or defeated by the removal of the prisoner from the [court's] territorial jurisdiction"). Under the government's view, it could move Petitioner repeatedly, and habeas jurisdiction would only attach whenever her lawyers managed to catch up. That is antithetical to *Endo*.

Third, because Petitioner was detained in transit at the time of filing, rather than at a facility, her petition "functionally" named her "immediate custodian in that moment"—the director of ICE's Boston Field Office (Respondent Hyde)—and even if it had not, the longstanding "unknown custodian" rule permitted the naming of her *ultimate* custodian (Respondent Noem). App.24-29 (citing *Padilla*, 540 U.S. at 450 n.18; *Demjanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986); *Khalil D.N.J.*, 2025 WL 972959, at *26-35); *see* 28 U.S.C. § 2242. The government says the exception only "applies . . . where one's detention is a prolonged secret," Mot.14, but offers nothing to support its time-based limitation to an exception based in equity, fairness, and the availability of the Great Writ. Even worse, the government's argument amounts to the chilling suggestion that habeas corpus does not apply for some government-controlled period after the government effectuates a person's incommunicado detention. *See Khalil D.N.J.*, 2025 WL 972959, at *37 ("there is no gap in the fabric of habeas," but government's argument creates one); *Boumediene*

*v. Bush*, 553 U.S. 723, 765 (2008) (executive lacks "power to switch the Constitution on or off at will").[6]

### 3. The INA does not bar the district court's order returning Petitioner.

The District Court correctly exercised its "inherent equitable power, as well as its power under the" AWA, to order Petitioner's return to Vermont. App.68. The government portrays this order as extraordinary, Mot.10, but if it is, that is only because the government has created an unprecedented situation.

First, the government's application of sections 1252(a)(2)(B)(ii) and 1231(g) is misplaced. Section 1252(a)(2)(B)(ii) applies only to those decisions where Congress has "set out the Attorney General's discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247 (2010). But section 1231(g) does not even mention the authority at issue, or "transfer." *See Aguilar v. ICE*, 510 F.3d 1, 20 (1st Cir. 2007); *Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 209-10 (4th Cir. 2019) (section 1231(g) deals not with transfer but with "the government's brick and mortar obligations for obtaining facilities in which to detain aliens"). And even if the

---

[6] To date, the government has not revealed "who that immediate custodian would have been if not Ms. Hyde." App.24. If the government ever identified that person, Petitioner could name them through amendment, which would relate back to the time of filing. Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii). Under the same rule, the government's argument that Petitioner's prior amendment somehow defeats jurisdiction, Mot.15, is baseless.

13

government's argument is that (g) *implicitly* authorizes detainee transfers, it would still not apply because that is not enough under *Kucana*, which requires statutes to *specify* that a power is discretionary. *See Aguilar*, 510 F.3d at 20 (rejecting *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999), as the "minority view" and joining Fifth and Ninth Circuits).[7]

Second, an AWA order is not *judicial review* of any discretionary determination by the government. Instead, it exercises the court's independent "inherent power," of a "constitutional dimension," as well as its power under the AWA, to "maintain a party's access to the court and preserve the court's ability to adjudicate the case fully and fairly." *Ragbir v. United States*, 2018 WL 1446407, at *1 (D.N.J. Mar. 23, 2018); *see Bounds v. Smith*, 430 U.S. 817, 824 (1977) (Constitution guarantees litigants "meaningful access to the courts"); *Johnson v. Avery*, 393 U.S. 483, 485 (1969) (particularly true in habeas).[8]

---

[7] The government's other cases do not support a contrary result. *Gandarillas-Zambrana v. BIA*, did not address jurisdiction, let alone section 1252(a)(2)(B)(ii). 44 F.3d 1251 (4th Cir. 1995); *Rios-Berrios v. I.N.S.*, 776 F.2d 859, 863 (9th Cir. 1985) (same). *Wood v. United States* assumed jurisdiction and rejected plaintiff's claim on the merits. 175 F. App'x 419, 420 (2d Cir. 2006).

[8] Indeed, the Court's order was in significant part meant to return her "to the status quo at the time" the District of Massachusetts prohibited her removal from the district. App.72; App.79. "[T]he powers conferred by the [AWA] . . . are utilized in extraordinary circumstances" like the ones here, "where equitable measures are required to facilitate adjudication . . . or peripheral aspects of habeas adjudication." *Byrd v. Hollingsworth*, 2014 WL 6634932, at *2 (D.N.J. Nov. 21, 2014), *aff'd sub nom. Byrd v. Warden Fort Dix FCI*, 611 F. App'x 62 (3d Cir. 2015).

14

At bottom, the order "facilitate[s] speedy resolution" of the petition, which challenges Petitioner's unlawful arrest, punitive detention, and rendition across multiple state lines in retaliation for engaging in protected speech. App.78; App.2; *see Ragbir v. Homan*, 923 F.3d 53, 73 (2d Cir. 2019) (retaliatory arrest and attempted deportation violated First Amendment rights), *judgment vacated on other grounds sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020). Such challenges to "the extent of the [government's] authority under the" Constitution are "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *E.O.H.C. v. Sec'y of DHS*, 950 F.3d 177, 191 (3d Cir. 2020). The government's argument proves far too much, as it would mean that no court could *ever* compel the government to move an ICE detainee, for any purpose—not to restore the status quo, not to facilitate the court's consideration of the habeas petition, not to hear testimony, and "no matter how egregious the type or quantity of First Amendment or due process violations committed by the government . . . ." App.43.

### 4. The INA does not bar judicial review of Petitioner's habeas claims.

As the district court held, no INA jurisdiction-channeling "provisions limit the Court's review where [Petitioner] has raised constitutional and legal challenges to her detention that are separate from removal proceedings." App.29; *see* App.29-43; *see* ECF 81 at 20-32. The district court rightly observed that the government's

15

extreme arguments, which amount to a bid for a "practically limitless, unreviewable power to detain individuals for weeks or months, even if the detention is patently unconstitutional," App.43, "ha[ve] no precedent in this Circuit or at the Supreme Court." App.41.

a.    8 U.S.C. § 1252(g) does not bar review.

The Supreme Court has stressed that section 1252(g) is "narrow[ly]" tethered solely to certain exercises of discretion by the Attorney General and "applies only to three discrete actions": "to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482 (1999). As the district court concluded, "the plain text of subsection (g) does not support a reading that [Petitioner's] detention and resulting constitutional claims arise from the government's 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" App.37.

First, section 1252(g) does not apply to decisions to detain at all, and the government's argument that Petitioner's detention "aris[es] from" her removal proceedings, Mot. 16, "stretches the bounds of the text and facts of this case." App. 38; *see Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018) ("[T]he decision or action to detain an individual under § 1226(a) is independent from the decision or action to commence a removal proceeding."); *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023). And (g) certainly does not bar challenges to

16

retaliatory detention, like Petitioner's, where detention serves no legitimate immigration purpose. *See, e.g.*, *Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 n.4 (9th Cir. 2021) ((g) did not bar First Amendment challenge to ICE detention); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 932-34 (W.D. Tex. 2018) (addressing merits of First Amendment challenge to ICE detention).

Second, (g) does not bar legal challenges to the "very *authority*" of the executive's actions, *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009)—the kinds of challenges Petitioner to her retaliatory detention based on her speech, her SEVIS termination, and the government's policy of targeting noncitizens for their protected speech. *See, e.g.*, *Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) ((g) inapplicable where petitioner alleges they were "placed in removal proceedings unlawfully or for reasons that would offend the Constitution"); *Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ((g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions"); *Arce v. United States*, 899 F.3d 796, 801 (similar). This is true even where those actions may inevitably lead to removal proceedings. *See, e.g.*, *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020) ((g) did not preclude judicial review of challenge to government's DACA recission policy, which "revoke[d] a deferred action program" and could be cast as initial step in commencement of removal proceedings); *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (en banc) ((g) did not bar review of challenge to

policy that led to denial of immigration relief even though it led to commencement of removal proceedings).

The cases the government cites do not support its bottom line. The government relies heavily on *AADC*, but that case "was exclusively about removal, not detention." App.41. Moreover, even *AADC* warned against the use of (g) to block judicial review of claims based, as here, on "discrimination" that "is so outrageous" that its analysis cannot hold. *AADC* at 491. Here, Petitioner has "adduced plausible—indeed, strong" and uncontroverted—"evidence" that the government retaliated against her based on her speech. *Ragbir*, 923 F.3d at 73. As this Court held in *Ragbir*, "[t]o allow this retaliatory conduct to proceed would broadly chill protected speech, among not only activists subject to . . . deportation but also . . . citizens and other residents who would fear retaliation . . . ." *Id.* at 71.[9]

> b.    8 U.S.C. §§ 1252(b)(9) and (a)(5) do not bar review.

The government is also wrong about sections 1252(b)(9) and (a)(5). Mot. 17-18. These provisions channel review of "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United

_____

[9] The other cases the government cites are inapposite; they all involve challenges to the commencement of removal proceedings or the execution of removal orders. *See Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 907 (6th Cir. 2020); *Zundel v. Gonzales*, 230 F. App'x 468, 474 (6th Cir. 2007); *Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999).

States" into a petition for review ("PFR") that must be filed in the courts of appeals. But as the district court explained, (a)(5) does not apply because "no 'removal order' has been issued here," nor has Petitioner raised "any constitutional or legal concerns "'arising from' 'any action' or 'proceeding' brought to remove her, per subsection (b)(9)." App.37.

The government's suggestion that Petitioner's challenge to the constitutionality of her detention is "inextricably intertwined" with a final order of removal and thus barred under (b)(9), Mot.18, flatly contradicts *Jennings v. Rodriguez*, 583 U.S. 281 (2018), subsequent Supreme Court decisions, and Second Circuit precedent. *Jennings* endorsed a narrow reading of "arising from," and explained that (b)(9) does not channel all judicial review into the PFR process where doing so would make claims "effectively unreviewable" because the allegedly unlawful conduct "would have already taken place." *Id.* at 293; *see also Regents*, 591 U.S. at 19; *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (court would have habeas jurisdiction over constitutional challenges to "arrest and detention"). "In fact, *Jennings* explicitly rejected the formulation . . . the government seeks here"—namely, that "detention *is* an action taken . . . to remove an alien," App.39 (cleaned up) (citing *Jennings*, 583 U.S. at 295 n.3), and therefore "inextricably intertwined" with a removal order, Mot.18. And this Court has repeatedly affirmed habeas jurisdiction over challenges to unlawful detention. *See*, *e.g.*, *Velasco Lopez*

19

*v. Decker*, 978 F.3d 842 (2d Cir. 2020); *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024).

Moreover, requiring Petitioner to raise constitutional claims at the end of the lengthy PFR process would render them "effectively unreviewable" and accomplish the very unlawful object of the government conduct she challenges. *Jennings*, 583 U.S. at 293. Petitioner challenges her *current* retaliatory arrest and detention, which *currently* chills her speech and subjects her to the harms of punitive detention in violation of her due process rights. "[C]ourts cannot meaningfully provide" review of these claims "alongside review of a final order of removal" and, even assuming they could, "relief may come too late to redress" the harm. *E.O.H.C.*, 950 F.3d at 186 (citing *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007)); *see id.* at 185 ("now-or-never claims . . . do not 'arise from' detention or removal proceedings" (cleaned up)). And there are "serious questions about whether [the PFR] process would be an adequate substitute for habeas," given the time it would require and immigration courts' inability to consider the constitutional claims Petitioner raises. App.41-43.

**B.      The equities and public interest weigh dramatically against a stay.**

"[T]he equities strongly favor" Petitioner's return to Vermont as the district court considers her habeas claims. App.68.

First, the government suffers no harm from complying with the court's order, or from being compelled—a month into detention that is by every indication patently

unconstitutional—to justify its actions in habeas litigation. App.72. Nor will Petitioner's return present any logistical difficulty with respect to removal proceedings, Mot.20, because they can be conducted locally or remotely, App.68; App.78 (return "will have no impact on the government's separate removal proceedings" and government has not "offer[ed] any concrete injury that the government would suffer" from transfer).

Second, keeping Petitioner away from her lawyers and the court hearing her habeas claims and other motions for relief would cause her significant harm, as would interrupting the court's reasonable and fair schedule for prompt adjudication. App.66-68; App.78; App.80 (noting Petitioner's sworn declaration that she "is enduring overcrowding, unsanitary conditions, a worsening medical condition, insufficient medical care, and difficulties practicing her religion" in Louisiana detention facility).

And third, a stay is manifestly against the public interest. The Supreme Court has emphasized that "the writ of habeas corpus is itself an indispensable mechanism for monitoring the separation of powers," and that "the test for determining the scope of this [remedy] must not be subject to manipulation by those whose power it is designed to restrain." *Boumediene*, 553 U.S. at 765-66. To stay the court's proceedings would profoundly compromise public faith not only in the habeas remedy but in the judiciary's truth-seeking function but also in the Great Writ itself.

21

App.78-79. That is particularly true here: every day that Petitioner is detained furthers the government's unconstitutional goals.

## II.    Mandamus is unwarranted.

Mandamus is a "drastic and extraordinary remed[y] . . . reserved for really extraordinary causes, *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947), and its exacting standard is beyond the government's reach here.

The government's mandamus claim simply rehashes its failed jurisdictional arguments. Moreover, the government cites *no* case where mandamus reversed a determination of habeas or INA jurisdictional issues, and it ignores the "general rule that appellate courts should avoid determining jurisdiction issues" via mandamus. *In re Ivy*, 901 F.2d 7, 10 (2d Cir. 1990); *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 37 n.3 (2d Cir. 2014). The district court carefully considered these arguments and rejected them, and they will be "reviewable in the regular course of appeal." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943). Claiming that the district court usurped executive power, Mot.21, is also insufficient to invoke mandamus. "If a rational and substantial legal argument" supports "the questioned jurisdictional ruling," the mandamus inquiry is finished—even if this Court would reverse on ordinary review. *In re Zyprexa Prods. Liability Litig.*, 594 F.3d 113, 122 n.27 (2d Cir. 2010) (Kaplan, J., concurring) (cleaned up).

## CONCLUSION

The Court should deny the motion for a stay or writ of mandamus and dismiss the appeal for lack of jurisdiction.

Dated: April 25, 2025

Respectfully submitted,

/s/ *Brett Max Kaufman*

Brett Max Kaufman
Brian Hauss
Esha Bhandari
Noor Zafar
Sidra Mahfooz
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
bkaufman@aclu.org
bhauss@aclu.org
ebhandari@aclu.org
nzafar@aclu.org
smahfooz@aclu.org

Jessie J. Rossman
Adriana Lafaille
Rachel E. Davidson
Julian Bava
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF MASSACHUSETTS,
   INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org

Lia Ernst
Monica H. Allard
ACLU FOUNDATION OF VERMONT
PO Box 277
Montpelier, VT 05601
(802) 223-6304
lernst@acluvt.org
mallard@acluvt.org

Ramzi Kassem
Naz Ahmad
Mudassar Toppa
Shezza Abboushi Dallal
CLEAR PROJECT
MAIN STREET LEGAL SERVICES,
   INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Matthew D. Brinckerhoff
Katherine Rosenfeld

23

alafaille@aclum.org
rdavidson@aclum.org
jbava@aclum.org

Mahsa Khanbabai
115 Main Street, Suite 1B
North Easton, MA 02356
(508) 297-2065
mahsa@mk-immigration.com

*Counsel for Petitioner–Appellee*

Vasudha Talla
Sonya Levitova
EMERY CELLI BRINCKERHOFF
   ABADY WARD & MAAZEL LLP
One Rockefeller Plaza, 8th Floor
New York, NY 10020
212-763-5000
mbrinckerhoff@ecbawm.com
krosenfeld@ecbawm.com
vtalla@ecbawm.com
slevitova@ecbawm.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I electronically filed the foregoing

with the Clerk for the United States Court of Appeals for the Second Circuit using

the appellate ACMS system. No party is unrepresented in that system.


Date: April 25, 2025                    Respectfully submitted,

                                        /s/ *Brett Max Kaufman*
                                        Brett Max Kaufman
                                        *Counsel for Petitioner–Appellee*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P.

27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f), it contains 5,189 words. The document also complies with the

typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements

of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced

typeface using Microsoft Word in size-14 Times New Roman font.

Date: April 25, 2025                         Respectfully submitted,

                                             /s/ *Brett Max Kaufman*
                                             Brett Max Kaufman
                                             *Counsel for Petitioner–Appellee*