# No. 25-1019

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

Rümeysa Öztürk,
*Petitioner-Appellee*

v.

Patricia Hyde, et al.
*Respondents-Appellants*

_____

## ON APPEAL FROM THE U.S. DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

_____

## BRIEF OF IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS AS AMICI CURIAE IN SUPPORT OF PETITIONER-APPELLEE

Fatma Marouf
Professor of Law
Texas A&M School of Law
307 W. 7th St. Suite LL50
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Elora Mukherjee
Jerome L. Greene Clinical Professor
 of Law
Columbia Law School
Morningside Heights Legal
 Services, Inc.
435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

*Counsel for Amici Curiae*

**TABLE OF CONTENTS**

INTRODUCTION AND STATEMENT OF AMICI ................................................1

ARGUMENT ........................................................................................................2

    I.    8 U.S.C. § 1252(b)(9) DOES NOT BAR JUDICIAL REVIEW OF MS. ÖZTÜRK'S CLAIMS ................................................................................ 2

        A. The Plain Language of 1252(b) Limits this Entire Section to Review of an Order of Removal. .......................................................2

        B. Even if 1252(b) Is Not Limited to Review of an Order of Removal, Detention Does Not "Arise From" An Action or Proceeding to Remove a Noncitizen from the United States....................................10

        C. The Government's Interpretation Requiring Ms. Öztürk to Bring Her Claims in a Petition for Review Would Render Them Effectively Unreviewable .................................................................................14

    II.    8 U.S.C. § 1252(g) DOES NOT BAR JUDICIAL REVIEW OF MS. ÖZTÜRK'S CLAIMS .............................................................................17

CONCLUSION .................................................................................................21

APPENDIX I        NON-EXHAUSTIVE LIST OF FEDERAL DISTRICT COURT RULINGS ON SEVIS-RELATED TROs FROM APRIL 2025

APPENDIX II       LIST OF AMICI CURIAE

# TABLE OF AUTHORITIES

## Federal Cases

Aguilar v. ICE, 510 F.3d 1 (1st Cir. 2007)............................................12, 13, 16, 17

Ali v. Mukasey, 524 F.3d 145 (2d Cir. 2008) ..........................................................21

Arce v. United States, 899 F.3d 796 (9th Cir. 2018)................................................20

Calderon v. Session, 330 F.Supp.3d 944 (S.D.N.Y. 2018) .....................................13

Chehazeh v. Att'y Gen. of United States, 666 F.3d 118 (3d Cir. 2012) ................17

Crowell v. Benson, 285 U.S. 22 (1932) ...................................................................18

Delgado v. Quarantillo, 643 F.3d 52 (2d Cir. 2011) ...............................................11

Dep't of Homeland Sec. v. Regents of the Univ. of California,

   591 U.S. 1 (2020) .............................................................................................. 8-9

E.O.H.C. v. Sec'y United States Dep't of Homeland Sec., 950 F.3d 177

   (3d Cir. 2020) ...........................................................................................9, 12, 22

Garcia v. Att'y Gen., 553 F.3d 724 (3d Cir. 2009) ..................................................19

Gonzalez v. United States Immigr. & Customs Enf't, 975 F.3d 788

   (9th Cir. 2020) ....................................................................................................12

Hamdi ex rel. Hamdi v. Napolitano, 620 F.3d 615 (6th Cir. 2010) .......................12

Hernández v. Gonzales, 424 F.3d 42 (1st Cir. 2005) ..............................................12

I.N.S. v. St. Cyr, 533 U.S. 289 (2001) .............................................................7, 8, 17

Jennings v. Rodriguez, 583 U.S. 281 (2018) ...................................................passim

Kong v. United States, 62 F.4th 608 (1st Cir. 2023) ................................... 15, 19-20

Madu v. Att'y Gen., 470 F.3d 1362 (11th Cir. 2006) ............................................20

Martinez v. Napolitano, 704 F.3d 620 (9th Cir. 2012)..........................................11

McNary v. Haitian Refugee Ctr, Inc., 498 U.S. 479 (1991).....................................9

Meza v. Renaud, 9 F.4th 930 (D.C. Cir. 2021) ....................................................14

Michalski v. Decker, 279 F. Supp. 3d 487 (S.D.N.Y. 2018) ................................11

Nadarajah v. Gonzales, 443 F.3d 1068 (9th Cir. 2006).....................................3, 10

Nielsen v. Preap, 586 U.S. 392 (2019)..................................................................8

Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999)...................................................20

Ragbir v. Homan, 923 F.3d 53 (2d Cir. 2019) ......................................................21

Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471 (1999) ...........passim

Ruiz v. Mukasey, 552 F.3d 269 (2d Cir. 2009)......................................................13

Singh v. Gonzalez, 499 F.3d 969 (9th Cir. 2007) ..................................................10

Xiu Qing You v. Nielsen, 321 F. Supp. 3d 451 (S.D.N.Y. 2018)..........................15

Zadvydas v. Davis, 533 U.S. 678 (2001) ..............................................................18

## Title 8 of the U.S. Code

8 U.S.C. § 1252(a)(1) .........................................................................2, 3

8 U.S.C. § 1252(a)(5) ....................................................................passim

8 U.S.C. § 1252(b).........................................................................passim

8 U.S.C. § 1252(b)(9) ...................................................................passim

8 U.S.C. § 1252(e) ................................................................. 15

8 U.S.C. § 1252(g) ........................................................... passim

**Other Statutes**

REAL ID Act of 2005, Pub. L. No. 109–13, 119 Stat. 302 ............................. 16, 21

**Federal Regulations**

8 C.F.R. § 1003.19(d) ............................................................. 6, 15

8 C.F.R. § 1239.1 ................................................................. 19

**Federal Rules**

Fed. R. App. P. 29(a)(2) ............................................................ 1

 Fed. R. App. P. 29(a)(4)(E) ........................................................ 1

**Legislative History**

H.R. Conf. Rep. 109-72 (2005), *reprinted in* 2005 U.S.C.C.A.N. 240 ....... 16, 21-22

iv

## INTRODUCTION AND STATEMENT OF AMICI[1]

*Amici curiae* are more than eighty leading lawyers, law professors, and scholars who practice, write about, research, and teach immigration law.[2] *Amici* collectively have many centuries of experience representing individuals at all stages of their immigration proceedings and in federal court.  Regardless of their differing views on recent campus protests and the war in the Middle East, *amici* are united in finding that the government's detention of Rümeysa Öztürk is unlawful. *Amici* have a strong interest in the outcome of this case. Allowing the federal government to target immigrants based on peaceful political speech, such as writing an op-ed, will have devastating effects on immigrants, upend the practice of immigration law, and chill protected First Amendment speech not just on campuses but in communities nationwide.

---

[1] Petitioner, through counsel, has consented to the filing of this brief. Respondents' position is unknown. Fed. R. App. P. 29(a)(2).  No party or its counsel had any role in authoring this brief. No person or entity—other than *amici* and their counsel—contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

[2] A list of *amici* is set forth in Appendix II. The positions taken in this brief are those of *amici* alone and should not be attributed to any institution with which *amici* are or have been affiliated.

# ARGUMENT

I.  **8 U.S.C. § 1252(b)(9) DOES NOT BAR JUDICIAL REVIEW OF MS. ÖZTÜRK'S CLAIMS.**

Judicial review of Ms. Öztürk's detention is not barred by 8 U.S.C. § 1252(b)(9) for at least two reasons. First, as Justice Breyer's opinion in *Jennings v. Rodriguez* points out, the plain language of 8 U.S.C. § 1252(b) only bars review of orders of removal. 583 U.S. 281, 355 (2018) (Breyer, J., dissenting). Second, even if 1252(b)(9) is not limited to review of orders of removal, it does not bar review of detention, which is not a step or action that "arises from" removal proceedings.

### A. The Plain Language of 1252(b) Limits this Entire Section to Review of an Order of Removal.

The opening text of 8 U.S.C. 1252(b) limits the application of this entire section to review of an order of removal under 1252(a)(1). Specifically, this section states:

> (b) *Requirements for review of orders of removal*
>
> *With respect to review of an order of removal* under subsection (a)(1), the following requirements apply
> . . .
>
> (9) Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a *final order* under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such

2

> title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. 1252(b) (emphasis added). The heading reinforces the language below by confirming that this section pertains to review of orders of removal. Since Ms. Öztürk is not seeking review of an order of removal, this section simply does not apply to her. This interpretation of 1252(b), based on the plain meaning of the text, was embraced by Justice Breyer in *Rodriguez*, who relied on the language emphasized above. *Jennings v. Rodriguez*, 583 U.S. 281, 355 (2018) (Breyer, J., dissenting) ("Jurisdiction [] is unaffected by 8 U.S.C. § 1252(b)(9), which by its terms applies only '[w]ith respect to review of an order of removal under [§ 1252(a)(1) ].' . . . The respondents challenge their detention without bail, not an order of removal."). *See also Nadarajah v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006) ("[Section 1252(b)(9)] only applies to federal habeas corpus jurisdiction over 'final orders of removal.' [] By its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal. Here, as we have noted, there is no final order of removal").

Justice Alito's plurality opinion in *Rodriguez* did not embrace Justice Breyer's interpretation, but it also did not foreclose it. While the plurality did not "attempt to provide a comprehensive interpretation" of the scope of § 1252(b)(9), *id.* at 841, it rejected a broad reading of the phrase "arising from" that "would make claims of prolonged detention effectively unreviewable." *Id.* at 293 (plurality

3

opinion). The plurality noted that a literal interpretation of "arising from" could encompass virtually any removal-related action, because if action to remove a noncitizen "had never been taken, the [noncitizen] would not be in custody at all." *Id.* But the court rejected that interpretation, observing that "cramming judicial review" of questions such as detention-related injuries and conditions claims "into the review of final orders would be absurd." *Id.* The plurality further reasoned that "[i]nterpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable." *Id.* The plurality stressed that Supreme Court precedents had generally eschewed "uncritical literalism" of "capacious phrases like 'arising from'" that would "lead[] to results that no sensible person could have intended." *Id.* at 293-94 (internal quotation marks omitted). The plurality concluded that it had jurisdiction to address at least those claims that did not seek review of an order of removal (the position embrace by Justice Breyer) or challenge any part of the process by which removability would be determined—including detention claims like those at issue in *Rodriguez* itself. *Id.* at 294.

Only Justice Thomas, joined by Justice Gorsuch, interpreted 1252(b)(9) so broadly that it would confine "challenge[s] to the *fact* of [a noncitizen's] detention" to the petition-for-review process. *Id.* at 319 (Thomas, J., dissenting) (emphasis in original). As Justice Thomas's dissent acknowledges, the plurality

"dismissed this 'expansive interpretation' because it would lead to 'staggering results.'" *Id.* at 319 (quoting plurality opinion).

The government now asks this Court to adopt that minority view—and to do so on the emergency docket. This Court should reject that invitation. In rejecting Justice Breyer's interpretation, Justice Thomas makes four main arguments. First, he contends that limiting 1252(b)(9) to review of final orders of removal reads the phrase "or such questions of law or fact" out of the statute. *Id.* at 320 (Thomas, J., dissenting). According to Justice Thomas, the prefatory clause, which states "[w]ith respect to review of an order of removal," does not change the scope of the provision, which covers "all questions of law or fact" arising from the removal process. *Id.* at 320-21 (Thomas, J., dissenting). However, Justice Thomas's interpretation reads the prefatory clause out of the statute, rendering it meaningless. The way to give meaning to all of the language is to interpret "questions of law or fact" as referring to such questions stemming from, or based on, an order of removal, not separate from an order of removal. The disjunctive "or" in the final phrase of 1252(b)(9) is best understood as referring to either review of the order of removal as a whole, or review of specific questions of law or fact addressed by the order of removal, not questions of law or fact totally separate from the order of removal, or in cases like the present one where there is no final order of removal. Issues of detention are not addressed in removal proceedings or by orders of

removal and are therefore totally outside the purview of 1252(b)(9). Immigration courts have separate custody redetermination proceedings (bond hearings), with a separate record of proceedings, to address detention. 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section *shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding*.") (emphasis added).

Second, Justice Thomas contends that Justice Breyer's interpretation renders superfluous 1252(a)(5), which specifies that a petition for review is the sole means of judicial review of an order of removal. *Id.* This is incorrect, because 1252(a)(5) specifies that the proper forum for challenging a final order of removal is the federal appellate court, while the zipper clause in 1252(b)(9) clarifies that all challenges related to that final order of removal must be brought together in a consolidated manner, rather than piecemeal. As the Supreme Court recognized in *Reno v. Am.-Arab Anti-Discrimination Comm.*, even minor differences between bars on judicial review can justify their existence. 525 U.S. 471, 483 (1999) (rejecting the argument "that § 1252(g) is redundant if it channels judicial review of only *some* decisions and actions, since § 1252(b)(9) channels judicial review of *all* of them anyway, . . . since only § 1252(g), and *not* § 1252(b)(9) . . . applies

to what § 309(c)(1) calls 'transitional cases,' that is, cases pending on the effective date of IIRIRA," which "alone justifies its existence") (emphasis in original).

Third, Justice Thomas argues that the Supreme Court's precedents in *AADC* and *St. Cyr* did not limit 1252(b)(9) to review of final orders of removal. However, neither of those cases addressed the scope of 1252(b)(9). In *AADC*, the Supreme Court held that 1252(g) barred jurisdiction over selective prosecution claims where the noncitizens had final orders of removal and challenged the decision to execute those orders. The plurality in *Rodriguez* cited *AADC* as supporting its non-literal interpretation of "arising from." *Rodriguez*, 583 U.S. at 294 ("We did not interpret this language [in 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.") (citing *American-Arab Anti-Discrimination Comm.,* 525 U.S. at 482-83).

*St. Cyr* also does not support Justice Thomas's extremely broad interpretation of 1252(b)(9). Not only did the Supreme Court reject the government's arguments that 1252(b)(9) barred judicial review in *St. Cyr*, but the Court stressed that the absence of "another judicial forum" where a question of law could be answered, "coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a

7

construction that would raise serious constitutional questions." *I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001). This language supports exercising judicial review where meaningful review would otherwise be foreclosed, including, for example, where lengthy detention would have already taken place by the time a petition for review of a removal order is considered. Justice Thomas's dissenting opinion in *Rodriguez* departs from Supreme Court precedents by disregarding the absence of meaningful review. *Rodriguez,* 583 U.S. at 321 (Thomas, J., dissenting) ("The Constitution does not guarantee litigants the most effective means of judicial review for every type of claim they want to raise."). As noted above, the plurality was concerned that Justice Thomas's "extreme" interpretation would make claims of prolonged detention effectively unreviewable. 583 U.S. at 293.

In *Nielsen v. Preap*, 586 U.S. 392 (2019), the Justices took the same positions as in *Rodriguez*, with a three-Justice plurality echoing view that 1252(b)(9) does not bar challenges to detention, while Thomas and Gorsuch restated their view from *Rodriguez.* A year later, the Supreme Court once again confirmed that 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19

(2020) (quoting the plurality opinion in *Rodriguez* and also citing Justice Breyer's dissent in *Rodriguez*).

Based on *Rodriguez* and *Preap*, the Third Circuit distilled the principle of asking "If not now, when?" in addressing whether judicial review is barred under 1252(b)(9). *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.,* 950 F.3d 177, 194 (3d Cir. 2020). "If the answer would be never, then § 1252(b)(9) poses no jurisdictional bar. In other words, it does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *Id.* (holding that judicial review of an interim return to Mexico, rather than permanent removal to Guatemala, was not barred by 1252(b)(9)). The Third Circuit considered, "[s]ome hypotheticals drive the point home":

> Consider a detained alien who needs halal or kosher food, or a diabetic who alleges that the Government is depriving him of insulin. Or take [*Rodriguez*]'s example of a challenge to prolonged detention. . . . Under the Government's reading, these aliens could get no judicial review until the Board enters their final orders of removal. That cannot be so. For one, the final order of removal may never come. Even if it does, review and relief may come too late to redress these conditions of confinement.

*Id.* at 186 (citing *Rodriguez*, 583 U.S. at 293, and *McNary v. Haitian Refugee Ctr, Inc.*, 498 U.S. 479, 484 (1991), holding that the INA does not strip away jurisdiction over claims where "meaningful judicial review . . . would be foreclosed").

The Ninth Circuit Court of Appeals has reached a similar conclusion. In *Singh v. Gonzalez,* the Ninth Circuit explained that "[b]y virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) *apply only to those claims seeking judicial review of orders of removal*." 499 F.3d 969, 978 (9th Cir. 2007) (emphasis added). While *Singh* acknowledged that § 1252(b)(9) covers "any action taken or proceeding brought to remove an alien," the court interpreted the phrase "simply [to] mean[ ] that if the alien fails to consolidate his claims as required under § 1252(b)(9), he may not later bring a separate habeas claim to raise 'questions of law or fact' that should have been brought as part of a challenge to his final order of removal." 499 F.3d at 978, 978 n.11; *see also Nadarajah v. Gonzales*, 443 F.3d 1068 (9th Cir. 2006) (holding that § 1252(b)(9) does not apply to federal habeas corpus petitions that do not concern a final order of removal).

### B. Detention Does Not "Arise From" An Action or Proceeding to Remove a Noncitizen from the United States.

Even if this Court does not limit 1252(b)(9) to review of final orders of removal, the language still is not broad enough to include challenges to detention. The First and Ninth Circuits have repeatedly held that 1252(b)(9) does not foreclose challenges to detention, and the Third and Sixth Circuits have exercised jurisdiction over challenges related to removal proceedings. The question here is whether Ms. Öztürk's detention "*aris[es] from* any action taken or proceeding

brought to remove a [noncitizen]," and the simple answer is that it does not. 8 U.S.C. 1252(b)(9) (emphasis added).

While the Second Circuit has not addressed the "arising from" language in 1252(b)(9), it addressed the same phrase in 1252(a)(5), holding that the distinction between an independent claim and an indirect challenge to a removal order "will turn on the substance of the relief that a plaintiff is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). In *Delgado*, the petitioner was indirectly challenging her reinstated order of removal, so the court held that section 1252(a)(5)'s jurisdictional bar applied. Here, the relief that Ms. Öztürk seeks is release from detention, which is not something that will be addressed in her removal proceeding or reviewed by the circuit court in a petition for review. *See Michalski v. Decker*, 279 F. Supp. 3d 487, 494 (S.D.N.Y. 2018) (applying the "substance of the relief" test and holding the petitioner's "challenge to the constitutionality of his arrest and detention is not barred by § 1252(b)(9)").

In *Martinez,* where the Ninth Circuit followed the Second Circuit's "substance of the relief" test in interpreting 1252(a)(5), the court explained that a claim is barred by 1252(a)(5) only if "the substance of the relief [the plaintiff] is seeking . . . would *negate his order of removal.*" *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (emphasis added). If this same interpretation is applied to the "arising from" language in 1252(b)(9), then judicial review of Ms. Öztürk's

detention-related claim clearly is not barred, since being released from custody would not negate any order of removal that may ultimately be issued against her. Both detained and non-detained individuals may be removed from the United States, and, here, no order of removal even exists to negate.

The Ninth and First Circuits have already recognized that challenges to detention do not "arise from" removal-related actions or proceedings. *See Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 810–11 (9th Cir. 2020) (holding that section 1252(b)(9) did not bar jurisdiction "because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process"); *Hernández v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005) (holding that detention claims are independent of removal proceedings and, thus, not barred by section 1252(b)(9)); *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (identifying "challenges to the legality of detention" as squarely outside § 1252(b)(9)'s scope).

Additionally, the Third and Sixth Circuits have exercised jurisdiction over challenges related to removal proceedings but not involving final orders of removal. *See E.O.H.C.*, 950 F.3d at 194 (holding that an interim removal to Mexico and a constitutional right-to-counsel claim did not arise from removal proceedings and could not await later review); *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 626 (6th Cir. 2010) ("We, like the First Circuit in *Aguilar,* cannot

12

endorse an interpretation of the 'arising from' language in § 1252(b)(9) that 'swallow[s] all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien.'") (quoting *Aguilar*, 510 F.3d at 10).

Ms. Öztürk's challenge to her SEVIS termination likewise does not arise from actions or proceedings related to removal. Thousands of international students have had their SEVIS status terminated across the country in recent weeks without being placed in removal proceedings.[3] An action seeking review of SEVIS termination is similar to a court exercising review over the denial of an I-130 petition (a petition seeking status for a relative), which the Second Circuit found was unrelated to a removal proceeding. *See Ruiz v. Mukasey*, 552 F.3d 269, 274 (2d Cir. 2009) (holding § 1252(b)(9) did "not preclude a district court from exercising jurisdiction over an action seeking review of the denial of an I-130 petition because such a denial is unrelated to any removal action or proceeding."). In Ms. Öztürk's case, SEVIS was terminated without following a lawful process, which is also an issue unrelated to a removal order that district courts clearly maintain jurisdiction to review. *See Calderon v. Session*, 330 F.Supp.3d 944, 955

---

[3] Ashley Mowreader, *Federal Government Reverses SEVIS Terminations*, Inside Higher Ed. (Apr. 25, 2025), at https://www.insidehighered.com/news/global/international-students-us/2025/04/25/ice-reverses-course-sevis-terminations ("Over the past three weeks, several thousand international students received notice that their status in the Student and Exchange Visitor Information System was changed.").

(S.D.N.Y. 2018) (holding the district court had jurisdiction over the petitioner's "right to seek access to a lawful regulatory process"); *see also* Appendix I (summarizing recent federal district court cases granting temporary restraining orders to international students with regard to the termination of their SEVIS records).

The D.C. Circuit has held that "1252(b)(9) prevents [a noncitizen] from *relitigating, outside the context of a petition for review, a question decided against him in the removal proceeding*. In ordinary usage, an issue decided in a proceeding arises from the proceeding." *Meza v. Renaud*, 9 F.4th 930, 933 (D.C. Cir. 2021) (emphasis added) (holding that the court could not review Meza's claim that he was an arriving alien, which he could have made in a petition for review) (citing *Arise*, *Black's Law Dictionary* (7th ed. 1999)). Ms. Öztürk is not trying to relitigate any issue decided against her in her removal proceeding.

> **C.**   **The Government's Interpretation Requiring Ms. Öztürk to Bring Her Claims in a Petition for Review Would Render Them Effectively Unreviewable**

Under the government's interpretation, Ms. Öztürk could potentially go for months before receiving judicial review of the lawfulness of her detention. First, she would need to wait for months in detention while the Immigration Judge adjudicates her case. If a removal order is issued, she would need to wait months more for the Board of Immigration Appeals (BIA) to decide her appeal. If her

appeal is granted, she would win her removal case without ever having had the opportunity to obtain judicial review of the lawfulness of her detention. If her BIA appeal is denied, she would need to file a petition for review with the circuit court, but the circuit court would only have jurisdiction to review the BIA's decision on removal and could not consider the lawfulness of Ms. Öztürk's detention. As explained above, any denial of bond would not be part of a petition for review, since bond proceedings are totally separate from removal proceedings, and no appeal is available to a federal court from the BIA's decision denying bond. 8 U.S.C. 1252(e); 8 C.F.R. § 1003.19(d). There would be no meaningful record regarding the lawfulness of Ms. Öztürk's arrest and detention by ICE in her removal case for a circuit court to review as part of a petition for review. *See Xiu Qing You v. Nielsen*, 321 F. Supp. 3d 451, 459 (S.D.N.Y. 2018) (holding that interpreting §§ 1252(a)(5) and (b)(9) to bar petitioner's claims challenging his arrest and detention unless those claims were crammed into a petition for review of a removal order would render such claims effectively unreviewable). The government's reading of §§ 1252 (b)(9) would permit ICE to arrest and detain Ms. Öztürk, and potentially many thousands more international students and others, without any statutory or constitutional constraints.

As courts have recognized, the phrase "arising from" is not "infinitely elastic" and does not reach "claims that are independent of, or wholly collateral to,

the removal process," or that bear "only a remote or attenuated connection to the removal of an alien." *Aguilar*, 510 F.3d at 10-11. Claims seeking review of the legality of a petitioner's detention fall outside the reach of the "arising from" language. *Id.* at 10-11; *see also Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023).

The legislative history confirms that Congress intended to preserve habeas review of detention when it amended the INA to include the current language of 1252(b)(9) as part of the REAL ID Act of 2005, Pub. L. No. 109–13, § 106, 119 Stat. 302, 310-11. The Conference Report accompanying the passage of those amendments specifies that 1252(b)(9) would "*not preclude habeas review over challenges to detention* that are independent of challenges to removal orders, the bill would eliminate habeas review *only over challenges to removal orders.*" H.R. Conf. Rep. 109-72, 175 (2005) (emphasis added), *reprinted in* 2005 U.S.C.C.A.N. 240, 300. This statement appears after an extensive examination of Supreme Court and circuit court precedents describing the kinds of jurisdiction-stripping provisions that would not violate the right to habeas corpus, indicating that Congress was attentive to the constitutional concerns with limiting habeas relief. *Id.* at 174-75.

In *Aguilar*, the First Circuit relied on this Conference Report in holding that judicial review was preserved over challenges to detention through habeas

16

petitions. 510 F.3d at 11 ("In line with [Congress's] prescription [in the Conference Report], we have held that district courts retain jurisdiction over challenges to the legality of detention in the immigration context.") (citing *Hernández*, 424 F.3d at 42 (holding that detention claims are independent of removal proceedings and, thus, not barred from district court jurisdiction by 1252(b)(9))). *Aguilar* also found this interpretation consistent with the longstanding rule of statutory interpretation requiring "clear and convincing evidence of legislative intent before restricting access to judicial review entirely." *Id.* at 11.[4]

The canon of constitutional avoidance likewise requires concluding that Congress preserved habeas review of detention when it amended the INA to include 1252(b)(9). As the Supreme Court has explained, "'it is a cardinal principle' of statutory interpretation . . . that when an Act of Congress raises 'a serious doubt' as to its constitutionality, 'this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be

---

[4] Insofar as *Aguilar* found that the reach of 1252(b)(9) is not limited to challenges to singular orders of removal, this interpretation was criticized by the Third Circuit in *Chehazeh v. Att'y Gen. of United States,* where the court stated that the reasoning of *Aguilar* "appears to conflict with the Supreme Court's explicit instruction in *St. Cyr* . . . and with the language of § 1252(b)." 666 F.3d 118, 133 (3d Cir. 2012).

avoided.'" *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (holding that courts retained jurisdiction over challenges to post-removal period detention) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). The Court has "read significant limitations into . . . immigration statutes in order to avoid their constitutional invalidation." *Id.* at 689. Any interpretation of 1252(b)(9) that bars judicial review of habeas petitions challenging detention would raise serious constitutional concerns under the Suspension Clause and should be avoided.

## II.    1252(g) DOES NOT BAR JUDICIAL REVIEW OF MS. ÖZTÜRK'S CLAIMS

Similarly, construing the "arising from" language of 1252(g) to bar all detention-related claims would raise serious constitutional concerns under the Suspension Clause. 1252(g) does not just channel claims like 1252(b)(9) but eliminates judicial review entirely over claims "*arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders* against any [noncitizen] under this chapter." 8 U.S.C. § 1252(g) (emphasis added).

As the Supreme Court noted in *American-Arab Anti-Discrimination Committee*, there are "many other decisions or actions that may be part of the deportation process" that do not fall in the three discrete exercises of "prosecutorial discretion" covered by 1252(g). 525 U.S. at 482; *see also Zadvydas*, 533 U.S. at 690-91, 696-97. Neither the decision to detain nor the decision to terminate SEVIS

status arises from the decision to commence removal proceedings, adjudicate a case, or execute a removal order.

Removal proceedings are commenced by the filing of a Notice to Appear with the immigration court. 8 C.F.R. § 1239.1. A decision to detain may occur before or well after that filing. In Ms. Öztürk's case, she was detained by ICE before an NTA was filed with the immigration court, so her detention could not arise from the commencement of removal proceedings. Furthermore, courts have exercised judicial review over challenges to the government's *authority* to commence proceedings, distinguishing this from the discretionary *decision* to commence proceedings. *Garcia v. Att'y Gen.,* 553 F.3d 724, 729 (3d Cir. 2009).

Nor does Ms. Öztürk's detention arise from the decision to adjudicate her removal case. Removal cases are regularly adjudicated without the respondent being detained. Execution of a removal order also does not require detention during the proceedings. While someone may be briefly detained before removal solely to execute a removal order, that is not the situation here. Ms. Öztürk does not even have a removal order to be executed. Therefore, none of the discrete actions mentioned in 1252(g) gave rise to the claims asserted by Ms. Öztürk in her habeas petition and complaint.

Precedents by other circuit courts have recognized that 1252(g) does not bar jurisdiction over habeas challenges related to detention. *See Kong*, 62 F.4th at 614

(holding that the petitioner's assertions of illegal arrest and detention, based on the government's failure to obtain a relevant warrant and abide by its own regulatory procedures, were "plainly collateral to ICE's prosecutorial decision to execute Kong's removal"); *Arce v. United States*, 899 F.3d 796, 799-800 (9th Cir. 2018) (holding that a noncitizen's FTCA claim for false arrest and imprisonment, based on the government's violation of a court-ordered stay of removal, resulting in unlawful removal to Mexico, was not barred by 1252(g)); *Madu v. Att'y Gen.*, 470 F.3d 1362, 1268 (11th Cir. 2006) (holding that a challenge to the legality of detention is not barred by 1252(g) because it is distinct from a challenge to the government's decision to execute a removal order); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (reasoning that 1252(g) did not preclude review of all challenges to detention because a noncitizen's claim "concern[ing] detention . . . may be resolved without affecting pending [removal] proceedings").

As for the decision to terminate someone's SEVIS status, this does not even make an individual removable, much less arise from the decision to commence removal proceedings, adjudicate a case, or execute a removal order. As noted above, the government has terminated SEVIS status in thousands of cases recently where no removal proceedings were ever commenced or adjudicated, and where no removal orders were issued or executed. Numerous courts have issued TROs in these cases. *See* Appendix I.

Ms. Öztürk's challenge to the government's policy of targeting noncitizens for their protected speech similarly is not barred by 1252(g). A challenge to the lawfulness or constitutionality of a policy does not *arise from* a decision to commence removal proceedings, adjudicate cases, or execute a removal order. *See, e.g., Ali v. Mukasey,* 524 F.3d 145, 150 (2d Cir. 2008) (distinguishing the case from one where petitioners allege being placed in removal proceedings "unlawfully or for reasons that would offend the Constitution").

Furthermore, the present case is distinct from *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), where the appellant sought to enjoin the execution of a valid final order of removal on First Amendment grounds. The relief sought in that case would negate a removal order, unlike the relief sought here, which has no bearing on any decision to execute a removal order. This case is also distinguishable from *AADC*, as, unlike Ms. Öztürk, the noncitizens in that case had final orders of removal and challenged the decision to execute those orders. *See American-Arab Anti-Discrimination Comm.,* 525 U.S. at 474–75.

The legislative history discussed above also supports Ms. Öztürk's arguments regarding 1252(g), which was amended along with 1252(b)(9) as part of the REAL ID Act of 2005. As explained above, the Conference Report accompanying those amendments specifically preserved "habeas review over challenges to detention that are independent of challenges to removal orders." H.R.

Rep. No. 109-72, at 175. This legislative history aligns with the "strong presumption in favor of judicial review of administrative action," and "the general rule that 'the narrower construction of a jurisdiction-stripping provision is favored." *E.O.H.C.*, 950 F.3d at 194 (internal quotation marks and citations omitted).

## CONCLUSION

For the foregoing reasons, the Second Circuit should deny the government's appeal and affirm the district court's order.

DATED: April 28, 2025                    Respectfully submitted,

                                         /s/ Fatma Marouf

                                         Fatma Marouf
                                         Professor of Law
                                         Texas A&M School of Law
                                         307 W. 7th St. Suite LL50
                                         Fort Worth, TX 76102
                                         Tel: (817) 212-4123
                                         fatma.marouf@law.tamu.edu
                                         (in her individual capacity)

                                         Elora Mukherjee
                                         Jerome L. Greene Clinical Professor of Law
                                         Columbia Law School
                                         Morningside Heights Legal Services, Inc.
                                         435 W. 116th Street, Room 831
                                         New York, NY 10027
                                         Tel: (212) 854-4291
                                         emukherjee@law.columbia.edu
                                         (in her individual capacity)

*Counsel for Amici Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 29 and 32, undersigned counsel certifies that the foregoing brief:

1. Complies with the type-volume limitation of Local Rules 29.1(c) and 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5114 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated: April 28, 2025          By:    /s/  Fatma Marouf

                                      Fatma Marouf
                                      Professor of Law
                                      Texas A&M School of Law
                                      307 W. 7th St. Suite LL50
                                      Fort Worth, TX 76102
                                      Tel: (817) 212-4123
                                      fatma.marouf@law.tamu.edu
                                      (in her individual capacity)

                                      *Counsel of Record for Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2025, an electronic copy of the  brief of

amici curiae Immigration Lawyers, Law Professors, and Scholars  was filed with

the Clerk of the United States Court of Appeals for the Second Circuit by using the

ACMS system. I also certify that all participants are registered ACMS users and

will be served via the ACMS system.


DATED: April 28, 2025                    /s/  Fatma Marouf

Fatma Marouf
Professor of Law
Texas A&M School of Law
307 W. 7th St. Suite LL50
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

*Counsel of Record for Amici Curiae*