# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**  **2. PLEASE TYPE OR PRINT**  **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Rumeysa Ozturk,<br>            Petitioner - Appellee,<br><br>v.<br><br>Patricia Hyde, et al.,<br>            Respondents - Appellants. | District of Vermont | William K. Sessions, III |
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br>April 18, 2025 | District Court Docket No.:<br>2:25-cv-374 |
| | Date the Notice of Appeal was Filed:<br>April 22, 2025 | Is this a Cross Appeal?<br>☐ Yes   ☑ No |

| **Attorney(s) for Appellant(s):**<br>☐ Plaintiff<br>☐ Defendant | Counsel's Name:   Address:       Telephone No.:       Fax No.:       E-mail:<br><br>Alanna T. Duong<br>U.S. Department of Justice, Civil Division<br>P.O. Box 878, Ben Franklin Station, Washington, DC 20044<br>Tel: 202-305-7040 / Fax: 202-305-7211 / alanna.duong@usdoj.gov |
|---|---|
| **Attorney(s) for Appellee(s):**<br>☐ Plaintiff<br>☐ Defendant | Counsel's Name:   Address:       Telephone No.:       Fax No.:       E-mail:<br><br>Brett Max Kaufman<br>American Civil Liberties Union of New York<br>125 Broad Street, 18th Floor, New York, NY 10004<br>Tel: 212-549-2603 / bkaufman@aclu.org |

| Has Transcript Been Prepared?<br>No | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously?  ☐ Yes  ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:       Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

***ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

***ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

### PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☑ U.S. a party       ☐ Diversity<br>☐ Federal question    ☐ Other (specify):<br>    (U.S. not a party) | ☐ Final Decision       ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b))<br>☑ Interlocutory Decision Appealable As of Right       ☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

FORM C (Rev. October 2016)

**PART B:  DISTRICT  COURT DISPOSITION   (Check as many as apply)**

| 1. <u>Stage of Proceedings</u> | 2. <u>Type of Judgment/Order Appealed</u> | | 3. <u>Relief</u> | |
|---|---|---|---|---|
| ☑ Pre-trial<br>☐ During trial<br>☐ After trial | ☐ Default judgment<br>☐ Dismissal/FRCP 12(b)(1)<br>   lack of subject matter juris.<br>☐ Dismissal/FRCP 12(b)(6)<br>   failure to state a claim<br>☐ Dismissal/28 U.S.C. § 1915(e)(2)<br>   frivolous complaint<br>☐ Dismissal/28 U.S.C. § 1915(e)(2)<br>   other dismissal | ☑ Dismissal/other jurisdiction<br>☐ Dismissal/merit<br>☐ Judgment / Decision of the Court<br>☐ Summary judgment<br>☐ Declaratory judgment<br>☐ Jury verdict<br>☐ Judgment NOV<br>☐ Directed verdict<br>☐ Other (specify): | ☐ Damages:<br>  ☐ Sought: $ _____<br>  ☐ Granted: $ _____<br>  ☐ Denied: $ _____ | ☑ Injunctions:<br>☑ Preliminary<br>☐ Permanent<br>☐ Denied |

**PART C:  NATURE OF SUIT   (Check as many as apply)**

| 1. <u>Federal Statutes</u> | | | 2. <u>Torts</u> | 3. <u>Contracts</u> | 4. <u>Prisoner Petitions</u> |
|---|---|---|---|---|---|
| ☐ Antitrust<br>☐ Bankruptcy<br>☐ Banks/Banking<br>☐ Civil Rights<br>☐ Commerce<br>☐ Energy<br>☐ Commodities<br>☑ Other (specify): INA / Habeas | ☐ Communications<br>☐ Consumer Protection<br>☐ Copyright ☐ Patent<br>☐ Trademark<br>☐ Election<br>☐ Soc. Security<br>☐ Environmental | ☐ Freedom of Information Act<br>☐ Immigration<br>☐ Labor<br>☐ OSHA<br>☐ Securities<br>☐ Tax | ☐ Admiralty/<br>  Maritime<br>☐ Assault /<br>  Defamation<br>☐ FELA<br>☐ Products Liability<br>☐ Other (Specify): | ☐ Admiralty/<br>  Maritime<br>☐ Arbitration<br>☐ Commercial<br>☐ Employment<br>☐ Insurance<br>☐ Negotiable<br>  Instruments<br>☐ Other Specify | ☐ Civil Rights<br>☐ Habeas Corpus<br>☐ Mandamus<br>☐ Parole<br>☐ Vacate Sentence<br>☐ Other |

| 5. <u>Other</u> | 6. <u>General</u> | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| ☐ Hague Int'l Child Custody Conv.<br>☐ Forfeiture/Penalty<br>☐ Real Property<br>☐ Treaty (specify): _____<br>☐ Other (specify): _____ | ☐ Arbitration<br>☐ Attorney Disqualification<br>☐ Class Action<br>☐ Counsel Fees<br>☐ Shareholder Derivative<br>☑ Transfer | ☐ Yes    ☑ No<br><br>Will appeal raise a matter of first impression?<br>☑ Yes    ☐ No |

1.  Is any matter relative to this appeal still pending below? ☐ Yes, specify: _____  ☑ No

2.  To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)   Arises from substantially the same case or controversy as this appeal?    ☑ Yes    ☐ No

    (B)   Involves an issue that is substantially similar or related to an issue in this appeal?    ☑ Yes    ☐ No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name:<br>Mahdawi v. Trump, et al. | Docket No.<br>25-1113 | Citation: | Court or Agency:<br>District of Vermont |
|---|---|---|---|
| Name of Appellant: Patricia Hyde, et al. | | | |

| Date: May 7, 2025 | Signature of Counsel of Record:  Alanna T. Duong |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**
1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

        **PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C**  (Rev. December 2016)

**Addendum A**

**Brief Description of the Action and the Result Below**

This matter is an interlocutory appeal of the district court order denying the Government's motion to dismiss. The district court held that (1) the transfer of the habeas petition from the District of Massachusetts to the District of Vermont cured Ozturk's failure to file her habeas petition in the district of confinement; (2) ICE's transportation of Ozturk to Louisiana after she filed her habeas petition did not deprive the District Court for the District of Vermont of jurisdiction; (3) Ozturk's failure to name her immediate custodian as a respondent in her petition was excused by the lack of knowledge of the custodian's identity; (4) Ozturk's detention did not "arise from" removal proceedings within the meaning of provisions of the Immigration and Nationality Act limiting jurisdiction to review questions and claims arising from removal orders; (5) Ozturk adequately alleged her detention was retaliatory in violation of the First Amendment; and (6) Ozturk adequately alleged her detention had an improper purpose in violation of the Due Process Clause. The district court ordered that the Government facilitate Ozturk's transfer from an ICE detention facility in Louisiana to a facility in Vermont.

# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

RUMEYSA OZTURK,

                    Petitioner,

            v.                                           No. 2:25-cv-374

DONALD J. TRUMP, in his official capacity as
President of the United States, PATRICIA
HYDE, Field Office Director,
MICHAEL KROL, HSI New England Special
Agent in Charge, TODD LYONS, Acting
Director, U.S. Immigration and Customs
Enforcement, and KRISTI NOEM, Secretary of
Homeland Security; and MARCO RUBIO, in his
official capacity as Secretary of State

                    Respondents.

## RESPONDENTS' NOTICE OF APPEAL

PLEASE TAKE NOTICE that all named Respondents hereby appeal to the United

States Court of Appeals for the Second Circuit from the Court's April 18, 2025 Order (ECF No.

104) accepting jurisdiction and ordering Petitioner be physically transferred to ICE custody

within the District of Vermont no later than May 1, 2025.

                              Respectfully submitted,


Dated: April 22, 2025          By:    */s/ Michael P. Drescher*
                                      Michael P. Drescher
                                      Assistant United States Attorney
                                      District of Vermont

# 2:25cv374, Ozturk V. Hyde Et Al

US District Court Docket

United States District Court, Vermont

(Burlington)

**This case was retrieved on 05/07/2025**

## ▼Header

**Case Number:** 2:25cv374
**Date Filed:** 04/04/2025
**Assigned To:** Judge William K. Sessions III
**Nature of Suit:** Habeas Corpus - Alien Detainee (463)
**Cause:** Defend. Denial of Pla. Appl. for Alien Employment Cer
**Lead Docket:** None
**Other Docket:** Massachusetts, 1:25-cv-10695
**Jurisdiction:** U.S. Government Defendant

**Class Code:** Open
**Statute:** 8:1182
**Jury Demand:** None
**Demand Amount:** $0
**NOS Description:** Habeas Corpus - Alien Detainee

## ▼Participants

| Litigants | Attorneys |
|---|---|
| Rumeysa Ozturk<br>**Petitioner** | Adriana Lafaille , Esq.<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>ACLU Foundation of Massachusetts, Inc.<br>One Center Plaza, Suite 850<br>Boston, MA 02108<br>USA<br>617-482-3170 Email:Alafaille@aclum.Org<br><br>Brett M. Kaufman , Esq.<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>USA<br>212-549-2603 Fax: 212-995-4031 Email:Bkaufman@aclu.Org<br><br>Brian Matthew Hauss , Esq.<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>USA<br>212-549-2500 Email:Bhauss@aclu.Org<br><br>Esha Bhandari , Esq.<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>USA |



Hillary A. Rich , Esq.
ATTORNEY TO BE NOTICED
ACLU Foundation of Vermont
P.O. Box 277
Montpelier, VT 05601-0277
USA
315-521-9231 Email:Hrich@acluvt.Org

Jessie Rossman , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
ACLU Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
USA
617-482-3170 Fax: 617-451-0009 Email:Jrossman@aclum.Org

Julian Bava , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
ACLU Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
USA
617-482-3170 Email:Jbava@aclum.Org

Katherine Rosenfeld , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
USA
212-763-5000 Email:Krosenfeld@ecbawm.Com

Lia N. Ernst , Esq.
ATTORNEY TO BE NOTICED
ACLU Foundation of Vermont
P.O. Box 277
Montpelier, VT 05601-0277
USA
(802) 223-6304 Fax: (802) 223-6304 Email:Lernst@acluvt.Org

Mahsa Khanbabai , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
Khanbabai Immigration Law
115 Main Street, Ste 1b
North Easton, MA 02356
USA
508-297-2065

Matthew D. Brinckerhoff , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
USA
212-763-5000 Fax: 212-763-5001
Email:Mbrinckerhoff@ecbawm.Com

Monica H. Allard , Esq.
ATTORNEY TO BE NOTICED
ACLU Foundation of Vermont

Montpelier, VT 05601-0277
USA
802-251-7091 Email:Mallard@acluvt.Org

Mudassar H. Toppa , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
Main Street Legal Services Inc.
Clear Project Cuny School Of Law 2 Court Square, Ste 5th Floor
Long Island City, NY 11101
USA
718-340-4021 Email:Mudassar.Toppa@law.Cuny.Edu

Naz Ahmad , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
Main Street Legal Services Inc.
Clear Project Cuny School Of Law 2 Court Square, Ste 5th Floor
Long Island City, NY 11101
USA
718-340-4630 Email:Naz.Ahmad@law.Cuny.Edu

Noor Zafar , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
USA
469-301-5991 Email:Nzafar@aclu.Org

Rachel E. Davidson , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
ACLU Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
USA
617-482-3170 Email:Rdavidson@aclum.Org

Ramzi Kassem , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
Main Street Legal Services Inc.
Clear Project Cuny School Of Law 2 Court Square, Ste 5th Floor
Long Island City, NY 11101
USA
718-340-4558 Fax: 718-340-4478
Email:Ramzi.Kassem@law.Cuny.Edu

Sidra Mahfooz , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
USA
631-741-3383 Email:Smahfooz@aclu.Org

Sonya Levitova , Esq.
PRO HAC VICE;ATTORNEY TO BE NOTICED
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
USA
212-763-5000 Fax: 212-763-5001 Email:Slevitova@ecbawm.Com

|  | PRO HAC VICE;ATTORNEY TO BE NOTICED |
|  | Emery Celli Brinckerhoff Abady Ward & Maazel LLP |
|  | 1 Rockefeller Plaza, 8th Floor |
|  | New York, NY 10020 |
|  | USA |
|  | 212-763-5000 Fax: 212-763-5001 Email:Vtalla@ecbawm.Com |
| **Patricia Hyde** | Mark Sauter , AUSA |
| Field Office Director | | |
| **Respondent** | [Terminated: 05/06/2025] |
|  | U.S. Department of Justice |
|  | Suite 9200 One Courthouse Way |
|  | Boston, MA 02169 |
|  | USA |
|  | 617-748-3347 |
|  |  |
|  | Michael P. Drescher , AUSA |
|  | ATTORNEY TO BE NOTICED |
|  | United States Attorney's Office |
|  | 11 Elmwood Avenue, 3rd Floor P.O. Box 570 |
|  | Burlington, VT 05402-0570 |
|  | USA |
|  | (802) 951-6725 Email:Michael.Drescher@usdoj.Gov |
| **Michael Krol** | Mark Sauter , AUSA |
| HSI New England Special Agent in Charge | | |
| **Respondent** | [Terminated: 05/06/2025] |
|  | U.S. Department of Justice |
|  | Suite 9200 One Courthouse Way |
|  | Boston, MA 02169 |
|  | USA |
|  | 617-748-3347 |
|  |  |
|  | Michael P. Drescher , AUSA |
|  | ATTORNEY TO BE NOTICED |
|  | United States Attorney's Office |
|  | 11 Elmwood Avenue, 3rd Floor P.O. Box 570 |
|  | Burlington, VT 05402-0570 |
|  | USA |
|  | (802) 951-6725 Email:Michael.Drescher@usdoj.Gov |
| **Todd Lyons** | Mark Sauter , AUSA |
| Acting Director U.S. Immigration and Customs Enforcement | | |
| **Respondent** | [Terminated: 05/06/2025] |
|  | U.S. Department of Justice |
|  | Suite 9200 One Courthouse Way |
|  | Boston, MA 02169 |
|  | USA |
|  | 617-748-3347 |
|  |  |
|  | Michael P. Drescher , AUSA |
|  | ATTORNEY TO BE NOTICED |
|  | United States Attorney's Office |
|  | 11 Elmwood Avenue, 3rd Floor P.O. Box 570 |
|  | Burlington, VT 05402-0570 |
|  | USA |
|  | (802) 951-6725 Email:Michael.Drescher@usdoj.Gov |
| **Kristi Noem** | Mark Sauter , AUSA |
| Secretary of Homeland Security | | |
| **Respondent** | [Terminated: 05/06/2025] |
|  | U.S. Department of Justice |
|  | Suite 9200 One Courthouse Way |
|  | Boston, MA 02169 |
|  | USA |

Document:                                          2:25cv374, Ozturk V. Hyde Et Al

**Donald J Trump**
**Respondent**

Michael P. Drescher , AUSA
ATTORNEY TO BE NOTICED
United States Attorney's Office
11 Elmwood Avenue, 3rd Floor P.O. Box 570
Burlington, VT 05402-0570
USA
(802) 951-6725 Email:Michael.Drescher@usdoj.Gov
Mark Sauter , AUSA

[Terminated: 05/06/2025]
U.S. Department of Justice
Suite 9200 One Courthouse Way
Boston, MA 02169
USA
617-748-3347

**Marco A. Rubio**
**Respondent**

Michael P. Drescher , AUSA
ATTORNEY TO BE NOTICED
United States Attorney's Office
11 Elmwood Avenue, 3rd Floor P.O. Box 570
Burlington, VT 05402-0570
USA
(802) 951-6725 Email:Michael.Drescher@usdoj.Gov
Mark Sauter , AUSA

[Terminated: 05/06/2025]
U.S. Department of Justice
Suite 9200 One Courthouse Way
Boston, MA 02169
USA
617-748-3347

**Brett F Stokes**
International Law Professors, Experts, Practitioners and Scholars
|
**Amicus**

Michael P. Drescher , AUSA
ATTORNEY TO BE NOTICED
United States Attorney's Office
11 Elmwood Avenue, 3rd Floor P.O. Box 570
Burlington, VT 05402-0570
USA
(802) 951-6725 Email:Michael.Drescher@usdoj.Gov
Brett F. Stokes , Esq.
ATTORNEY TO BE NOTICED
Vermont Law School
P.O. Box 1404
Burlington, VT 05402
USA
802-558-7732 Email:Bstokes@vermontlaw.Edu

**The Cato Institute**
**Amicus**

James M. Diaz , Esq.
ATTORNEY TO BE NOTICED
Darby Kolter & Roberts, LLP
89 South Main Street
Waterbury, VT 05676
USA
802-253-7165 Fax: 802-244-5954
Email:Jay@waterburystowelaw.Com

▼Proceedings

[ **Retrieve Document(s)** ]

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Online | 1 | 03/25/2025 | PETITION for Writ of Habeas Corpus (2241) Filing fee: $ 5, receipt number BMADC-10912735 Fee status: Filing Fee paid., filed by Rumeysa Ozturk. (Khanbabai, Mahsa) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/25/2025) | |
| | | 2 | 03/25/2025 | ELECTRONIC NOTICE of Case Assignment. Judge Denise J. Casper assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Donald L. Cabell. (JPM) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/25/2025) | |
| ☐ | Online | 3 | 03/25/2025 | Judge Indira Talwani: ORDER entered. Service Order and Order Concerning Determination of Jurisdiction. (JPM) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/25/2025) | |
| ☐ | Online | 4 | 03/26/2025 | General Order 19-02, dated June 1, 2019 regarding Public Access to Immigration Cases Restricted by Federal Rule of Civil Procedure 5.2(c). (NMC) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/26/2025) | |
| | | 5 | 03/26/2025 | Online access to documents in this case is limited to counsel of record only. All documents are available for review in the Office of the Clerk. Counsel of record: please note that you will need to log into CM/ECF to access any documents in this case. (SEC) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/26/2025) | |
| ☐ | Free | 6 | 03/26/2025 | NOTICE of Appearance by Mark Sauter on behalf of Patricia Hyde, Michael Krol, Todd Lyons, Kristi Noem (Sauter, Mark) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/26/2025) | |
| ☐ | Free | 7 | 03/26/2025 | Withdrawn MOTION for Writ EMERGENCY Motion To Produce Petitioner by Rumeysa Ozturk.(Khanbabai, Mahsa) Modified on 3/27/2025 in accordance with D. 10 (SEC). [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/26/2025) | |
| | | 8 | 03/26/2025 | Judge Denise J. Casper: ELECTRONIC ORDER entered. The Court orders the government to respond to the motion, D. 7 , by 9:00am on 3/27/25. (SEC) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/26/2025) | |
| ☐ | Free | 9 | 03/27/2025 | Opposition re 7 MOTION for Writ EMERGENCY Motion To Produce Petitioner filed by Rumeysa Ozturk, Patricia Hyde, Michael Krol, Todd Lyons, Kristi Noem. (Sauter, Mark) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/27/2025) | |
| ☐ | Online | 10 | 03/27/2025 | NOTICE of Withdrawal by Rumeysa Ozturk to W/D Motion at ECF7 (Khanbabai, Mahsa) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/27/2025) | |
| ☐ | Online | 11 | 03/28/2025 | NOTICE of Appearance by Jessie J. Rossman on behalf of Rumeysa Ozturk (Rossman, Jessie) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/28/2025) | |
| ☐ | Online | 12 | 03/28/2025 | AMENDED COMPLAINT AND PETITION FOR WRIT OF HABEAS CORPUS against Patricia Hyde, Michael Krol, Todd Lyons, Kristi Noem, Donald J Trump, Marco Rubio, filed by Rumeysa Ozturk. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Rossman, Jessie) . (Additional attachment(s) added on 3/28/2025: # 3 *SEALED* Exhibit A and B) (SEC). [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/28/2025) | |
| ☐ | Online | 13 | 03/28/2025 | NOTICE of Appearance by Rachel Elizabeth Davidson on behalf of Rumeysa Ozturk (Davidson, Rachel) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/28/2025) | |
| ☐ | Online | 14 | 03/28/2025 | NOTICE of Appearance by Julian Bava on behalf of Rumeysa Ozturk (Bava, Julian) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/28/2025) | |
| ☐ | Online | 15 | 03/28/2025 | NOTICE of Appearance by Adriana Lafaille on behalf of Rumeysa Ozturk (Lafaille, Adriana) [Transferred from Massachusetts on 4/4/2025.] (Entered: 03/28/2025) | |

| | | | | |
|---|---|---|---|---|
| ☐ | Free | 16 | 03/28/2025 | Judge Denise J. Casper: ORDER entered. MEMORANDUM AND ORDER - the Court ORDERS as follows: 1. To allow the Court's resolution of its jurisdiction to decide the Petition, Ozturk shall not be removed from the United States until further Order of this Court. See Mahmoud Khalil v. Joyce, No. 25-cv-01935-JMF at ECF No. 9, 2025 WL 750599 (S.D.N.Y. Mar. 10, 2025) (ruling that "[t]o preserve the Courts jurisdiction pending a ruling on the petition, Petitioner shall not be removed from the United States unless and until the Court orders otherwise"); and 2. The Respondents have until 5:00 p.m. on Tuesday, April 1, 2025, to respond to the Amended Petition and Complaint, D. 12 . (SEC) [Transferred from Massachusetts on 4/4/2025] (Entered: 03/28/2025) |
| ☐ | Online | 17 | 04/01/2025 | MOTION for Leave to File Excess Pages by Patricia Hyde, Michael Krol, Donald J Trump, Marco Rubio, Todd Lyons, Kristi Noem.(Sauter, Mark) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/01/2025) |
| | | 18 | 04/01/2025 | Judge Denise J. Casper: ELECTRONIC ORDER entered allowing 17 Motion for Leave to File Excess Pages; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (SEC) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/01/2025) |
| ☐ | Free | 19 | 04/01/2025 | RESPONSE/ANSWER to 12 Amended Complaint, by Patricia Hyde, Michael Krol, Donald J Trump, Marco Rubio, Todd Lyons, Kristi Noem. (Attachments: # 1 Exhibit A)(Sauter, Mark) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/01/2025) |
| | | 20 | 04/01/2025 | Judge Denise J. Casper: ELECTRONIC ORDER entered re 19 Response to Petition for Writ of Habeas Corpus - 2241 . Petitioner may file a response to Respondents' filing, D. 19 , by April 2, 2025 at 5 p.m. Such filing shall not exceed thirty (30) pages. (SEC) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/01/2025) |
| | | 21 | 04/02/2025 | ELECTRONIC NOTICE of Hearing. Oral argument on the Amended Petition, D. 12. Hearing set for 4/3/2025 02:00 PM in Courtroom 11 (In person with remote access provided) before Judge Denise J. Casper. Overflow will be available in Jury Assembly Hall. This hearing will be available to the public and media by audio only. Please check the Court schedule. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact the session manager.(LMH) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) |
| ☐ | Online | 22 | 04/02/2025 | MOTION to Seal Declaration of Rumeysa Ozturk re: Reply to 1 PETITION for Writ of Habeas Corpus (2241) by Rumeysa Ozturk.(Lafaille, Adriana) [Transferred from Massachusetts on 4/4/2025.] Link added on 4/6/2025 (law). (Entered: 04/02/2025) |
| | | 23 | 04/02/2025 | Judge Denise J. Casper: ELECTRONIC ORDER entered granting 22 Motion to Seal Declaration of Rumeysa Ozturk by Rumeysa Ozturk. Counsel will receive an email within twenty-four (24) hours of this order with instructions for submitting sealed documents for which leave has been granted in accordance with the Local Rules of the U.S. District Court of Massachusetts. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (LMH) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) |
| ☐ | Online | 24 | 04/02/2025 | MOTION for Leave to File Excess Pages for Reply re: 1 PETITION for Writ of Habeas Corpus (2241) by Rumeysa Ozturk.(Lafaille, Adriana) [Transferred from Massachusetts on 4/4/2025.] Link added on 4/6/2025 (law). (Entered: 04/02/2025) |
| | | 25 | 04/02/2025 | Judge Denise J. Casper: ELECTRONIC ORDER entered granting 24 MOTION for Leave to File Excess Pages by Rumeysa Ozturk noting there will be no opposition filed.Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (SEC) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) |
| ☐ | Online | 26 | 04/02/2025 | REPLY to Response to 1 Petition for Writ of Habeas Corpus - 2241 by Rumeysa Ozturk. (Attachments: # 1 Exhibit 1 (unredacted, sealed), # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit |

| | | | | |
|---|---|---|---|---|
| | | | *SEALED* Exhibit 7 ) (SEC). [Transferred from Massachusetts on 4/4/2025.] Text and link clarified on 4/6/2025 (law). (Additional attachment(s) added on 4/16/2025: # 9 Exhibit 1 (redacted) )(law). (Entered: 04/02/2025) | |
| ☐ | Online | 27 | 04/02/2025 | ASSENTED-TO MOTION for Leave to Appear Pro Hac Vice for admission of Noor Zafar Filing fee: $ 125, receipt number AMADC-10929762 by Rumeysa Ozturk. (Attachments: # 1 Exhibit A)(Rossman, Jessie) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) | |
| ☐ | Online | 28 | 04/02/2025 | ASSENTED-TO MOTION for Leave to Appear Pro Hac Vice for admission of Brian Hauss Filing fee: $ 125, receipt number AMADC-10929769 by Rumeysa Ozturk. (Attachments: # 1 Exhibit A)(Rossman, Jessie) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) | |
| ☐ | Online | 29 | 04/02/2025 | ASSENTED-TO MOTION for Leave to Appear Pro Hac Vice for admission of Esha Bhandari Filing fee: $ 125, receipt number AMADC-10929772 by Rumeysa Ozturk. (Attachments: # 1 Exhibit A)(Rossman, Jessie) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) | |
| ☐ | Online | 30 | 04/02/2025 | ASSENTED-TO MOTION for Leave to Appear Pro Hac Vice for admission of Katherine Rosenfeld Filing fee: $ 125, receipt number AMADC-10929774 by Rumeysa Ozturk. (Attachments: # 1 Exhibit A)(Rossman, Jessie) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) | |
| ☐ | Online | 31 | 04/02/2025 | ASSENTED-TO MOTION for Leave to Appear Pro Hac Vice for admission of Sonya Levitova Filing fee: $ 125, receipt number AMADC-10929777 by Rumeysa Ozturk. (Attachments: # 1 Exhibit A)(Rossman, Jessie) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) | |
| ☐ | Online | 32 | 04/02/2025 | ASSENTED-TO MOTION for Leave to Appear Pro Hac Vice for admission of Matthew D. Brinckerhoff Filing fee: $ 125, receipt number AMADC-10929780 by Rumeysa Ozturk. (Attachments: # 1 Exhibit A)(Rossman, Jessie)[Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) | |
| ☐ | Online | 33 | 04/02/2025 | ASSENTED-TO MOTION for Leave to Appear Pro Hac Vice for admission of Vasudha Talla Filing fee: $ 125, receipt number AMADC-10929785 by Rumeysa Ozturk. (Attachments: # 1 Exhibit A)(Rossman, Jessie) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/02/2025) | |
| | | 34 | 04/03/2025 | Judge Denise J. Casper: ELECTRONIC ORDER entered granting 27 Motion for Leave to Appear Pro Hac Vice Added Noor Zafar; 28 Motion for Leave to Appear Pro Hac Vice Added Brian Hauss; 29 Motion for Leave to Appear Pro Hac Vice Added Esha Bhandari; 30 Motion for Leave to Appear Pro Hac Vice Added Katherine Rosenfeld; 31 Motion for Leave to Appear Pro Hac Vice Added Sonya Levitova; 32 Motion for Leave to Appear Pro Hac Vice Added Matthew D. Brinckerhoff; 33 Motion for Leave to Appear Pro Hac Vice Added Vasudha Talla. Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.A Notice of Appearance must be entered on the docket by the newly admitted attorneys. (SEC) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/03/2025) | |
| ☐ | Online | 35 | 04/03/2025 | Assented to MOTION Remote Participation by Some of Petitioner's Counsel at Argument re 21 Notice of Hearing,,, by Rumeysa Ozturk.(Bava, Julian) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/03/2025) | |
| ☐ | Online | 36 | 04/03/2025 | NOTICE of Appearance by Matthew Brinckerhoff on behalf of Rumeysa Ozturk (Brinckerhoff, Matthew) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/03/2025) | |
| ☐ | Online | 37 | 04/03/2025 | NOTICE of Appearance by Katherine Rosenfeld on behalf of Rumeysa Ozturk (Rosenfeld, Katherine) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/03/2025) | |
| ☐ | Online | 38 | 04/03/2025 | NOTICE of Appearance by Sonya Levitova on behalf of Rumeysa Ozturk (Levitova, Sonya) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/03/2025) | |
| ☐ | Online | 39 | 04/03/2025 | NOTICE of Appearance by Vasudha Talla on behalf of Rumeysa Ozturk (Talla, Vasudha) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/03/2025) | |

| | | 40 | 04/03/2025 | Judge Denise J. Casper: ELECTRONIC ORDER entered granting 38 Motion for Remote Participation by Some of Petitioner's Counsel at Argument re 21 Notice of Hearing by Rumeysa Ozturk. (LMH) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/03/2025) | |
| | | 41 | 04/03/2025 | Electronic Clerk's Notes for proceedings held before Judge Denise J. Casper: Hearing on Amended Petition held on 4/3/2025. Court hears from counsel and takes matter under advisement. (Court Reporter: Kristin Kelley at kmob929@gmail.com.)(Attorneys present: Jessie Rossman, Adriana Lafaille, Mahsa Khanbabai, Rachel Davidson, Julian Bava, Noor Zafar and Brian Hauss for the petitioner. Mark Sauter for respondent.) (LMH) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/03/2025) | |
| ☐ | Free | 42 | 04/04/2025 | Judge Denise J. Casper: ORDER entered. MEMORANDUM AND ORDER - The Court DENIES the government's motion to dismiss this Petition and its alternative request to transfer this matter to the Western District of Louisiana. The Court ALLOWS the alternative relief sought by Ozturk and transfers this matter "in the interest of justice" pursuant 28 U.S.C. § 1631 to the U.S. District Court for the District of Vermont.To ensure that Ozturk has an opportunity to have the Petition considered by the District of Vermont, and to preserve the status quo, this Court's March 28, 2025 Order enjoining the government from removing her from the United States, D. 16, shall remain in effect unless and until the transferee court orders otherwise. See Khalil, 2025 WL 849803, at *14 (ordering same upon transfer).(LMH) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/04/2025) | |
| ☐ | Free | 43 | 04/04/2025 | Judge Denise J. Casper: Order Transferring Case to US District Court, District of Vermont.(LMH) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/04/2025) | |
| | | 44 | 04/04/2025 | Case transferred to to District of Vermont. Original file certified copy of transfer order and docket sheet sent to Clerk in that district. (SEC) [Transferred from Massachusetts on 4/4/2025.] (Entered: 04/04/2025) | |
| ☐ | Online | 45 | 04/04/2025 | CASE TRANSFERRED IN electronically from District of Massachusetts; Case Number 1:25-cv-10695. (Entered: 04/04/2025) | |
| ☐ | Online | 46 | 04/04/2025 | NOTICE OF APPEARANCE by Lia N. Ernst, Esq on behalf of Rumeysa Ozturk.(Ernst, Lia) (Entered: 04/04/2025) | |
| ☐ | Online | 47 | 04/04/2025 | UNOPPOSED MOTION for Telephonic Status Conference filed by Rumeysa Ozturk. (Ernst, Lia) (Entered: 04/04/2025) | |
| | | 48 | 04/05/2025 | ORDER granting 47 Unopposed Motion for Telephonic Status Conference. A telephonic status conference is now scheduled on Monday, April 7, 2025 at 12:00 p.m. EST. Signed by Judge William K. Sessions III on 4/5/2025. (This is a text-only Order.) (eae) (Entered: 04/05/2025) | |
| ☐ | Online | 49 | 04/05/2025 | NOTICE OF APPEARANCE by Monica H. Allard, Esq on behalf of Rumeysa Ozturk.(Allard, Monica) (Entered: 04/05/2025) | |
| ☐ | Online | 50 | 04/06/2025 | NOTICE of Hearing: Status Conference set for 4/7/2025 12:00 PM by telephone before Judge William K. Sessions III.(law) (Entered: 04/06/2025) | |
| ☐ | Online | 51 | 04/06/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Ramzi Kassem (Filing fee $ 150 receipt number AVTDC-2055485) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Ramzi Kassem, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/7/2025 to clarify text/attachments and Attachment 1 replaced on 4/7/2025 (sjl). (Entered: 04/06/2025) | |
| ☐ | Online | 52 | 04/06/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Mudassar Hayat Toppa (Filing fee $ 150 receipt number AVTDC-2055486) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Mudassar Hayat Toppa, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/7/2025 to clarify text/attachments (sjl). (Entered: 04/06/2025) | |
| ☐ | Online | 53 | 04/06/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Mahsa Khanbabai (Filing fee $ 150 receipt number AVTDC-2055495) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Mahsa Khanbabai, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/7/2025 to clarify text/attachments and Attachment 1 replaced on 4/7/2025 (sjl). (Entered: 04/06/2025) | |
| | | 54 | 04/07/2025 | ORDER granting 52 Unopposed Motion for Admission Pro Hac Vice of Mudassar Hayat Toppa. Signed by Judge William K. Sessions III on 4/7/2025. (This is a text-only Order.) (eae) (Entered: 04/07/2025) | |
| ☐ | Online | 55 | 04/07/2025 | NOTICE OF APPEARANCE by Michael P. Drescher, AUSA on behalf of Patricia Hyde, Michael Krol, Donald J Trump, Marco A. Rubio, Todd Lyons, Kristi Noem.(Drescher, Michael) (Entered: 04/07/2025) | |
| ☐ | Online | 56 | 04/07/2025 | NOTICE OF DOCKET ENTRY CORRECTION re: 53 UNOPPOSED MOTION for Appearance Pro Hac Vice of Mahsa Khanbabai. The Affidavit has been replaced to include the signature which was omitted at the time of | |

| | | | | |
|---|---|---|---|---|
| | | | filing. The corrected document is now attached to 56 and this entry. (sjl) (Entered: 04/07/2025) | |
| | | 57 | 04/07/2025 | ORDER granting 53 Unopposed Motion for Admission Pro Hac Vice of Mahsa Khanbabai. Signed by Judge William K. Sessions III on 4/7/2025. (This is a text-only Order.) (eae) (Entered: 04/07/2025) | |
| ☐ | Online | 58 | 04/07/2025 | NOTICE OF DOCKET ENTRY CORRECTION re: 51 UNOPPOSED MOTION for Appearance Pro Hac Vice of Ramzi Kassem. The Affidavit has been replaced with a corrected version. The corrected document is now attached to 51 and this entry. (sjl) (Entered: 04/07/2025) | |
| | | 59 | 04/07/2025 | ORDER granting 51 Unopposed Motion for Admission Pro Hac Vice of Ramzi Kassem. Signed by Judge William K. Sessions III on 4/7/2025. (This is a text-only Order.) (eae) (Entered: 04/07/2025) | |
| | | 60 | 04/07/2025 | MINUTE ENTRY for proceedings held before Judge William K. Sessions III: Status Conference held on 4/7/2025. Present by telephone Ramzi Kassem, Esq. for petitioner and Michael Drescher, AUSA for respondent. Court inquires. Statements by counsel. ORDERED: supplemental briefs due by 4/10/2025 at 5pm and summary of testimony, if needed, due by 4/11/2025 at 5pm; further hearing may be set for Monday and/or Tuesday if necessary; page limitations are waived on additional briefing. (Court Reporter: Sarah M. Bentley) (law) (Entered: 04/07/2025) | |
| ☐ | Online | 61 | 04/08/2025 | MOTION for Appearance Pro Hac Vice of Matthew Brinckerhoff (Filing fee $ 150 receipt number AVTDC-2056634) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Matthew Brinckerhoff, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/9/2025 to clarify attachments (sjl). (Entered: 04/08/2025) | |
| ☐ | Online | 62 | 04/08/2025 | MOTION for Appearance Pro Hac Vice of Sonya Levitova (Filing fee $ 150 receipt number AVTDC-2056635) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Sonya Levitova, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/9/2025 to clarify attachments (sjl). (Entered: 04/08/2025) | |
| ☐ | Online | 63 | 04/08/2025 | MOTION for Appearance Pro Hac Vice of Katherine Rosenfeld (Filing fee $ 150 receipt number AVTDC-2056636) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Katherine Rosenfeld, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/9/2025 to clarify attachments (sjl). (Entered: 04/08/2025) | |
| ☐ | Online | 64 | 04/08/2025 | MOTION for Appearance Pro Hac Vice of Vasudha Talla (Filing fee $ 150 receipt number AVTDC-2056637) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Vasudha Talla, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/9/2025 to clarify attachments (sjl). (Entered: 04/08/2025) | |
| ☐ | Online | 65 | 04/08/2025 | MOTION for Appearance Pro Hac Vice of Brett Kaufman (Filing fee $ 150 receipt number AVTDC-2056644) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Brett Kaufman, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/9/2025 to clarify attachments (sjl). (Entered: 04/08/2025) | |
| ☐ | Online | 66 | 04/09/2025 | TRANSCRIPT of Telephonic Status Conference hearing held on April 7, 2025, before Judge William K. Sessions III. Court Reporter/Transcriber Sarah M. Bentley, contact information: sbireland7@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/5/2025. Redacted Transcript Deadline set for 5/15/2025. Release of Transcript Restriction set for 7/11/2025. (law) (Entered: 04/09/2025) | |
| | | 67 | 04/09/2025 | ORDER granting 61 Motion for Admission Pro Hac Vice of Matthew Brinckerhoff; granting 62 Motion for Admission Pro Hac Vice of Sonya Levitova ; granting 63 Motion for Admission Pro Hac Vice of Katherine Rosenfeld; granting 64 Motion for Admission Pro Hac Vice of Vasudha Talla; granting 65 Motion for Admission Pro Hac Vice of Brett Kaufman. Signed by Judge William K. Sessions III on 4/9/2025. (This is a text-only Order.) (eae) (Entered: 04/09/2025) | |
| ☐ | Online | 68 | 04/09/2025 | NOTICE OF APPEARANCE by Matthew D. Brinckerhoff, Esq on behalf of Rumeysa Ozturk.(Brinckerhoff, Matthew) (Entered: 04/09/2025) | |
| ☐ | Online | 69 | 04/09/2025 | NOTICE OF APPEARANCE by Katherine Rosenfeld, Esq on behalf of Rumeysa Ozturk.(Rosenfeld, Katherine) (Entered: 04/09/2025) | |
| ☐ | Online | 70 | 04/09/2025 | NOTICE OF APPEARANCE by Vasudha Talla, Esq on behalf of Rumeysa Ozturk.(Talla, Vasudha) (Entered: 04/09/2025) | |
| ☐ | Online | 71 | 04/09/2025 | NOTICE OF APPEARANCE by Sonya Levitova, Esq on behalf of Rumeysa Ozturk.(Levitova, Sonya) (Entered: 04/09/2025) | |

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Online | 72 | 04/09/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Julian Bava (Filing fee $ 150 receipt number AVTDC-2057391) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Julian Bava, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/10/2025 to clarify text/attachments (sjl). (Entered: 04/09/2025) | |
| ☐ | Online | 73 | 04/09/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Esha Bhandari (Filing fee $ 150 receipt number AVTDC-2057394) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Esha Bhandari, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/10/2025 to clarify text/attachments (sjl) Modified on 4/10/2025 (sjl). (Entered: 04/09/2025) | |
| ☐ | Online | 74 | 04/09/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Brian Hauss (Filing fee $ 150 receipt number AVTDC-2057395) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Brian Hauss, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/10/2025 to clarify text/attachments (sjl). (Entered: 04/09/2025) | |
| ☐ | Online | 75 | 04/09/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Noor Zafar (Filing fee $ 150 receipt number AVTDC-2057393) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Noor Zafar, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/10/2025 to clarify text/attachments (sjl). (Entered: 04/09/2025) | |
| | | 76 | 04/10/2025 | ORDER granting 72 Motion for Admission Pro Hac Vice of Julian Bava; granting 73 Motion for Admission Pro Hac Vice of Esha Bhandari; granting 74 Motion for Admission Pro Hac Vice of Brian Hauss; granting 75 Motion for Admission Pro Hac Vice of Noor Zafar. Signed by Judge William K. Sessions III on 4/10/2025. (This is a text-only Order.) (eae) (Entered: 04/10/2025) | |
| ☐ | Online | 77 | 04/10/2025 | NOTICE OF APPEARANCE by Gary L. Franklin, Esq on behalf of Ansche Chesed, Bend the Arc: A Jewish Partnership for Justice, B'nai Jeshurun, Congregation Beth Elohim, Congregation Dorshei Tzedek, West Newton, Habonim Dror, Harvard Jewish Progressive Alumni, IKAR, J Street, Jewish Center for Justice, Jewish Labor Committee, Keshet, Leo Baeck Temple, Ma'ayan Tikvah, New England Jewish Labor Committee, New Israel Fund, New Jewish Narrative, Nexus Project, T'ruah: The Rabbinic Call for Human Rights, Massachusetts, The Boston Workers Circle, The Reconstructionist Rabbinical Assoc, The Workers Circle, Worcester Havurah, Jewish Alliance for Law and Social Action, New York Jewish Agenda, Temple Emanu-El, Temple Micah.(Franklin, Gary) Filers added on 4/10/2025 (law). (Entered: 04/10/2025) | |
| ☐ | Free | 78 | 04/10/2025 | NOTICE of Hearing re: Motion to Dismiss: Motion Hearing set for 4/14/2025 at 09:30 AM in Burlington Courtroom 110 before Judge William K. Sessions III. (law) (see page 2 of notice for Zoom information) Please be reminded that Judicial Conference policy prohibits the broadcasting of proceedings in federal courts. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, or rebroadcasting of court proceedings pursuant to Judicial Conference policy. This prohibition applies to counsel, the parties, the media and any member of the public. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. (Entered: 04/10/2025) | |
| ☐ | Online | 79 | 04/10/2025 | MOTION for Appearance Pro Hac Vice of Robert Balin, Jeremy Chase, Linda Steinman, Victor Kovner, Abigail Everdell, Rachel Strom, James Rosenfeld, Jesse Feitel, Adam Sieff, Rachel Goldberg, Nathan Siegel, Alison Schary (Filing fee $ 1,800 receipt number 5670) filed by Ansche Chesed, Bend the Arc: A Jewish Partnership for Justice, B'nai Jeshurun, Congregation Beth Elohim, Congregation Dorshei Tzedek, Habonim Dror, Harvard Jewish Progressive Alumni, IKAR, J Street, Jewish Center for Justice, Jewish Labor Committee, Keshet, Leo Baeck Temple, Ma'ayan Tikvah, New England Jewish Labor Committee, New Israel Fund, New Jewish Narrative, Nexus Project, T'ruah: The Rabbinic Call for Human Rights, Massachusetts, The Boston Workers Circle, The Reconstructionist Rabbinical Assoc, The Workers Circle, Worcester Havurah, Jewish Alliance for Law and Social Action (JALSA), New York Jewish Agenda, Temple Emanu-El, Temple Micah (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # | |

Document:                 2:25cv374, Ozturk V. Hyde Et Al

| | | | | | |
|---|---|---|---|---|---|
| | | | | ~~Exhibit 1~~, # 2 ~~Exhibit 2(Franklin, Gary)(Modified on 4/11/2025 to clarify attachments and include receipt number (sjl))~~ (Entered: 04/10/2025) | |
| ☐ | Online | 80 | 04/10/2025 | MOTION for Leave to File an Amicus Curiae Brief filed by Brett F Stokes, International Law Professors, Experts, Practitioners and Scholars. (Attachments: # 1 Proposed Order, # 2 Proposed Brief)(Stokes, Brett) (Entered: 04/10/2025) | |
| ☐ | Online | 81 | 04/10/2025 | SUPPLEMENTAL MEMORANDUM by Rumeysa Ozturk on Jurisdictional Issues. (Allard, Monica) (Entered: 04/10/2025) | |
| ☐ | Online | 82 | 04/10/2025 | MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont with Request for Oral Argument/Hearing filed by Rumeysa Ozturk (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9)(Ernst, Lia) Text clarified and Added MOTION for Return to Vermont on 4/10/2025 (law). (Additional attachment(s) added on 4/11/2025: # 11 Exhibit 1(redacted), # 12 Index of Exhibits) (law). (Entered: 04/10/2025) | |
| ☐ | Online | 83 | 04/10/2025 | SUPPLEMENTAL MEMORANDUM in Opposition re: 12 Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by Patricia Hyde, Michael Krol, Donald J Trump, Marco A. Rubio, Todd Lyons, Kristi Noem. (Drescher, Michael) Text clarified on 4/10/2025 (law). (Entered: 04/10/2025) | |
| ☐ | Online | 84 | 04/10/2025 | SUPPLEMENTAL BRIEFING in Opposition to 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont filed by Patricia Hyde, Michael Krol, Donald J Trump, Marco A. Rubio, Todd Lyons, Kristi Noem. (Drescher, Michael) Text clarified on 4/10/2025 (law). (Entered: 04/10/2025) | |
| ☐ | Online | 85 | 04/10/2025 | MOTION for Leave to File Amici Curiae Brief filed by Ansche Chesed, Bend the Arc: A Jewish Partnership for Justice, B'nai Jeshurun, Congregation Beth Elohim, Congregation Dorshei Tzedek, Habonim Dror, Harvard Jewish Progressive Alumni, IKAR, J Street, Jewish Center for Justice, Jewish Labor Committee, Keshet, Leo Baeck Temple, Ma'yan Tikvah, New England Jewish Labor Committee, New Israel Fund, New Jewish Narrative, Nexus Project, T'ruah: The Rabbinic Call for Human Rights, Massachusetts, The Boston Workers Circle, The Reconstructionist Rabbinical Assoc, The Workers Circle, Worcester Havurah, Jewish Alliance for Law and Social Action, New York Jewish Agenda, Temple Emanu-El, Temple Micah. (Attachments: # 1 Proposed Brief)(Franklin, Gary) Text clarified on 4/10/2025 (law). (Entered: 04/10/2025) | |
| ☐ | Online | 86 | 04/10/2025 | MOTION for Appearance Pro Hac Vice of Sidra Mahfooz (Filing fee $ 150 receipt number AVTDC-2058449) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Sidra Mahfooz, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/11/2025 to clarify attachments and Attachment 1 replaced on 4/11/2025) (sjl). (Entered: 04/10/2025) | |
| ☐ | Online | 87 | 04/11/2025 | NOTICE OF DOCKET ENTRY CORRECTION re: 86 MOTION for Appearance Pro Hac Vice of Sidra Mahfooz. Attachment 1 has been replaced to correct the PDF size and remove illegible PDF headers. The corrected document is now attached to 86 and this entry. (sjl) (Entered: 04/11/2025) | |
| | | 88 | 04/11/2025 | ORDER granting 86 Motion for Admission Pro Hac Vice of Sidra Mahfooz. Signed by Judge William K. Sessions III on 4/11/2025. (This is a text-only Order.) (eae) (Entered: 04/11/2025) | |
| | | 89 | 04/11/2025 | ORDER granting 79 Motion for Admission Pro Hac Vice of Robert Balin, Jeremy Chase, Linda Steinman, Victor Kovner, Abigail Everdell, Rachel Strom, James Rosenfeld, Jesse Feitel, Adam Sieff, Rachel Goldberg, Nathan Siegel, and Alison Schary. Signed by Judge William K. Sessions III on 4/11/2025. (This is a text-only Order.) (eae) (Entered: 04/11/2025) | |
| ☐ | Online | 90 | 04/11/2025 | NOTICE OF DOCKET ENTRY CORRECTION re: 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont filed by Rumeysa Ozturk. Exhibit 1 has been sealed in accordance with F.R.Civ.P. 5.2. Also, the required Index of Exhibits was not included at the time of filing. The redacted exhibit and index are now attached to 82 and this entry. (Attachments: # 1 Index of Exhibits) (law) (Entered: 04/11/2025) | |
| ☐ | Online | 91 | 04/11/2025 | SUPPLEMENTAL DOCUMENT(S) re: Jurisdictional Issues and 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont by Rumeysa Ozturk. (Attachments: # 1 Exhibit 12)(Ernst, Lia) Text clarified on 4/13/2025 (law). (Entered: 04/11/2025) | |
| ☐ | Online | 92 | 04/11/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Rachel Davidson (Filing fee $ 150 receipt number AVTDC-2059258) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Rachel Davidson, # 2 Certificate of Good | |

| | | | | |
|---|---|---|---|---|
| | | | Standing) (Ernst, Lia) (Modified on 4/14/2025 to clarify text/attachments (sjl). (Entered: 04/11/2025) | |
| ☐ | Online | 93 | 04/11/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Adriana Lafaille (Filing fee $ 150 receipt number AVTDC-2059259) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Adriana Lafaille, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/14/2025 to clarify text/attachments (sjl). (Entered: 04/11/2025) | |
| ☐ | Online | 94 | 04/11/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Jessie J. Rossman (Filing fee $ 150 receipt number AVTDC-2059260) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Jessie Rossman, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/14/2025 to clarify text/attachments (sjl). (Entered: 04/11/2025) | |
| ☐ | Online | 95 | 04/13/2025 | SUPPLEMENTAL DOCUMENT(S) re: 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont by Rumeysa Ozturk. (Attachments: # 1 Exhibit 13)(Levitova, Sonya) (Entered: 04/13/2025) | |
| | | 96 | 04/14/2025 | ORDER granting 92 Motion for Admission Pro Hac Vice of Rachel Davidson; granting 93 Motion for Admission Pro Hac Vice of Adriana Lafaille; granting 94 Motion for Admission Pro Hac Vice of Jessie J. Rossman. Signed by Judge William K. Sessions III on 4/14/2025. (This is a text-only Order.) (eae) (Entered: 04/14/2025) | |
| | | 97 | 04/14/2025 | MINUTE ENTRY for proceedings held before Judge William K. Sessions III: Motion Hearing held on 4/14/2025 re: Motion to Dismiss and 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont. Adriana Lafaille, Jessie Rossman, Lisa Ernst, Monica Allard and Noor Zafar, Esqs. present for petitioner. Michael Drescher, AUSA present for respondents. Statements by counsel. ORDERED: motions taken under advisement. (Court Reporter: Sarah Bentley) (law) (Entered: 04/14/2025) | |
| ☐ | Online | 98 | 04/16/2025 | TRANSCRIPT of Motion hearing held on April 14, 2025, before Judge William K. Sessions III. Court Reporter/Transcriber Sarah M. Bentley, telephone number sbireland7@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/12/2025. Redacted Transcript Deadline set for 5/22/2025. Release of Transcript Restriction set for 7/18/2025. (law) (Entered: 04/16/2025) | |
| ☐ | Online | 99 | 04/16/2025 | SUPPLEMENTAL DOCUMENT(S) re: 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont by Rumeysa Ozturk. (Ernst, Lia) Link added on 4/17/2025 (law). (Entered: 04/16/2025) | |
| ☐ | Online | 100 | 04/17/2025 | NOTICE OF DOCKET ENTRY CORRECTION re: 26 REPLY to Response to 1 Petition for Writ of Habeas Corpus - 2241 filed by Rumeysa Ozturk. Exhibit 1 has been sealed in accordance with F.R.Civ.P. 5.2. A redacted version is now attached to 26 and this entry. (law) (Entered: 04/17/2025) | |
| ☐ | Online | 101 | 04/17/2025 | SUPPLEMENTAL DOCUMENT(S) re: 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont by Rumeysa Ozturk. (Ernst, Lia) (Text and link clarified, Main Document 101 replaced and Attachment(s) added on 4/17/2025: # 1 Exhibit A) (law). (Entered: 04/17/2025) | |
| ☐ | Online | 102 | 04/17/2025 | NOTICE OF DOCKET ENTRY CORRECTION re: 101 Supplemental Document to 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont filed by Rumeysa Ozturk. The document and its exhibit was uploaded as a singular PDF. The documents have been broken apart and are now separately attached to 101 and this entry. (Attachments: # 1 Exhibit A) (law) (Entered: 04/17/2025) | |
| ☐ | Online | 103 | 04/18/2025 | RESPONSE to 99 Supplemental Document re: 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont by Patricia Hyde, Michael Krol, Donald J Trump, Marco A. Rubio, Todd Lyons, Kristi Noem. (Drescher, Michael) Text clarified, link added on 4/20/2025 (law). (Entered: 04/18/2025) | |
| ☐ | Free | 104 | 04/18/2025 | OPINION AND ORDER re: court to retain jurisdiction; petitioner is to be transferred to ICE custody within the District of Vermont no later than 5/1/2025; a bail hearing will be scheduled for 5/9/2025; parties are ordered to submit briefs and present all evidence related to issue of bail by 5/2/2025; a hearing on the merits of the habeas petition will be held 5/22/2025 and the court stays the effect of this order for 4 days to allow | |

| | | | |
|---|---|---|---|
| | | | enter party to appear to this order. Signed by Judge William K. Sessions III on 4/18/2025. (law) (Entered: 04/18/2025) |
| ☐ | Online | 105 | 04/22/2025 | NOTICE OF APPEAL as to 104 Opinion and by Patricia Hyde, Michael Krol, Donald J Trump, Marco A. Rubio, Todd Lyons, Kristi Noem. (Drescher, Michael) (Entered: 04/22/2025) |
| ☐ | Online | 106 | 04/22/2025 | MOTION to Continue Stay Pending Appeal re 104 Opinion and Order filed by Patricia Hyde, Michael Krol, Donald J Trump, Marco A. Rubio, Todd Lyons, Kristi Noem. (Drescher, Michael) Text clarified on 4/23/2025 (law). (Entered: 04/22/2025) |
| ☐ | Online | 107 | 04/23/2025 | RESPONSE in Opposition re 106 MOTION to Continue Stay Pending Appeal re 104 Opinion and Order filed by Rumeysa Ozturk. (Ernst, Lia) (Entered: 04/23/2025) |
| ☐ | Online | 108 | 04/23/2025 | REPLY to 99 Supplemental Document re: 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont regarding request for production of memoranda by Rumeysa Ozturk. (Ernst, Lia) Text clarified and link added on 4/24/2025 (law). (Entered: 04/23/2025) |
| ☐ | Free | 109 | 04/24/2025 | OPINION AND ORDER denying 106 Motion to Continue Stay Pending Appeal re 104 Opinion and Order. Signed by Judge William K. Sessions III on 4/24/2025. (law) (Entered: 04/24/2025) |
| ☐ | Online | 110 | 04/24/2025 | NOTICE of Hearing: Bail Hearing set for 5/9/2025 09:30 AM in Burlington Courtroom 110 before Judge William K. Sessions III.(law) (Entered: 04/24/2025) |
| ☐ | Online | 111 | 04/25/2025 | NOTICE OF APPEARANCE by Hillary A. Rich, Esq on behalf of Rumeysa Ozturk.(Rich, Hillary) (Entered: 04/25/2025) |
| ☐ | Online | 112 | 04/25/2025 | MOTION for Leave to File Amicus Brief and MOTION to Expedite filed by E.S. (Attachments: # 1 Proposed Amicus Brief)(law) (Entered: 04/25/2025) |
| ☐ | Online | 113 | 04/28/2025 | TRANSMITTED Index on Appeal, Circuit No. 25-1019, re: 105 Notice of Appeal (Attachments: # 1 Docket Sheet (public), # 2 Docket Sheet (sealed), # 3 Clerk's Certification)(kac) (Entered: 04/28/2025) |
| ☐ | Online | 114 | 04/28/2025 | NOTICE of Hearing re: 1 Petition for Writ of Habeas Corpus (2241). Hearing set for 5/22/2025 at 09:00 AM in Burlington Courtroom 110 before Judge William K. Sessions III.(law) (Entered: 04/28/2025) |
| ☐ | Online | 115 | 04/28/2025 | UNOPPOSED MOTION for Leave to File Brief as Amicus Curiae in Support of Petitioner filed by Foundation for Individual Rights and Expression, National Coalition Against Censorship, The Rutherford Institute, PEN America, The Cato Institute, First Amendment Lawyers Association. (Attachments: # 1 Proposed Brief)(Diaz, James) Text clarified on 4/29/2025 (law). (Entered: 04/28/2025) |
| ☐ | Online | 116 | 04/28/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Naz Ahmad (Filing fee $ 150 receipt number AVTDC-2066895) filed by Rumeysa Ozturk (Attachments: # 1 Affidavit of Naz Ahmad, # 2 Certificate of Good Standing) (Ernst, Lia) Modified on 4/29/2025 to clarify text/attachment (sjl). (Entered: 04/28/2025) |
| ☐ | Online | 118 | 04/28/2025 | ORDER of USCA, Circuit No. 25-1019, re: to 104 Order: motion for a stay pending appeal is referred to the three-judge motions panel sitting on May 6, 2025. An administrative stay of the district court's order to transfer is granted pending decision by the panel. (kac) (Entered: 04/29/2025) |
| | | 117 | 04/29/2025 | ORDER granting 116 Unopposed Motion for Admission Pro Hac Vice of Naz Ahmad. Signed by Judge William K. Sessions III on 4/29/2025. (This is a text-only Order.) (eae) (Entered: 04/29/2025) |
| ☐ | Online | 119 | 04/29/2025 | UNOPPOSED MOTION for Appearance Pro Hac Vice of Conor Fitzpatrick (Filing fee $ 150 receipt number AVTDC-2067806) filed by Foundation for Individual Rights and Expression (Attachments: # 1 Declaration of Conor Fitzpatrick, # 2 Certificate of Good Standing) (Diaz, James) Modified on 4/30/2025 to clarify text/attachment (sjl). (Entered: 04/29/2025) |
| | | 120 | 04/30/2025 | ORDER granting 119 Unopposed Motion for Admission Pro Hac Vice of Conor Fitzpatrick. Signed by Judge William K. Sessions III on 4/30/2025. (This is a text-only Order.) (eae) (Entered: 04/30/2025) |
| ☐ | Online | 121 | 05/02/2025 | MOTION to Withdraw as Attorney filed by Ansche Chesed, Bend the Arc: A Jewish Partnership for Justice, B'nai Jeshurun, Congregation Beth Elohim, Congregation Dorshei Tzedek, Habonim Dror, Harvard Jewish Progressive Alumni, IKAR, J Street, Jewish Center for Justice, Jewish Labor Committee, Keshet, Leo Baeck Temple, Ma'ayan Tikvah, New England Jewish Labor Committee, New Israel Fund, New Jewish Narrative, Nexus Project, Truah: The Rabbinic Call for Human Rights, Massachusetts, The Boston Workers Circle, The Reconstructionist Rabbinical Assoc, The Workers Circle, Worcester Havurah, Jewish Alliance for Law and Social Action, New York |

| | | | | |
|---|---|---|---|---|
| | | | | Jewish Agenda, Temple Emanu-El, Temple Micah. (Feller, Jessie) (Entered: 05/02/2025) |
| ☐ | Online | 122 | 05/02/2025 | SUPPLEMENTAL MEMORANDUM re: 82 MOTION for Release Under MAPP v. RENO or in the Alternative MOTION for Return to Vermont filed by Rumeysa Ozturk. (Attachments: # 1 Index of Exhibits, # 2 Exhibit 1, # 3 Exhibit 1-A, # 4 Exhibit 1-B, # 5 Exhibit 1-C, # 6 Exhibit 1-D, # 7 Exhibit 1-E, # 8 Exhibit 1-F, # 9 Exhibit 1-G, # 10 Exhibit 1-H, # 11 Exhibit 1-I)(Bava, Julian) Text clarified on 5/4/2025 (law). (Entered: 05/02/2025) |
| ☐ | Online | 123 | 05/07/2025 | ORDER of USCA, Circuit No. 25-1019, as to 105 Notice of Appeal; govt's motion for a stay of transfer is DENIED. Govt's request for a writ of mandamus is DENIED. Administrative stay entered by Circuit Court is VACATED. Govt is ORDERED to comply with district court's transfer order within one week of date of this opinion. Circuit Court orders that Ms. Ozturk be physically transferred to ICE custody within the District of Vermont no later than May 14, 2025. The district court may amend its hearing schedule as it deems necessary in light of this order. (kac) (Entered: 05/07/2025) |



Retrieve Document(s)

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

LexisNexis®

About

Privacy Policy

Cookie Policy

Terms & Conditions

RELX™

Copyright © 2025 LexisNexis.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

RUMEYSA OZTURK,                    )
                                  )
          Petitioner,             )
                                  )
     v.                           )    Case No. 2:25-cv-374
                                  )
DONALD J. TRUMP, in his           )
official capacity as              )
President of the United           )
States; PATRICIA HYDE, in her    )
official capacity as the New     )
England Field Director for        )
U.S. Immigration and Customs     )
Enforcement; MICHAEL KROL, in    )
his official capacity as HSI     )
New England Special Agent in     )
Charge, U.S. Immigration and     )
Customs Enforcement; TODD        )
LYONS, in his official           )
capacity as Acting Director,     )
U.S. Immigration and Customs     )
Enforcement; KRISTI NOEM, in     )
her official capacity as         )
Secretary of the United          )
States Department of             )
Homeland Security; and MARCO     )
RUBIO, in his official           )
capacity as Secretary of         )
State,                           )
                                  )
          Respondents.           )

**OPINION AND ORDER**

     Petitioner Rumeysa Ozturk was arrested by United States

Immigration and Customs Enforcement ("ICE") agents in

Massachusetts on March 25, 2025 and is currently in immigration

detention at a correctional facility in Louisiana. Ms. Ozturk

filed this habeas petition under 28 U.S.C. § 2241 against

Respondents Donald J. Trump, Patricia Hyde, Michael Krol, Todd
Lyons, Kristi Noem, and Marco Rubio (collectively "the
government"), alleging she was arrested and detained in
violation of her First Amendment and Fifth Amendment rights and
the Administrative Procedure Act ("APA").

Ms. Ozturk's original petition (the "Petition") was filed
in the District of Massachusetts. Because Ms. Ozturk was, at the
time of the filing, detained in Vermont, the Massachusetts
district court transferred this action to the District of
Vermont pursuant to 28 U.S.C. § 1631. ECF No. 42.

The instant matter concerns the government's motion to
dismiss this case. The parties dispute whether this Court has
jurisdiction to grant Ms. Ozturk the relief she requests. The
matter also concerns Ms. Ozturk's motion for an order of
immediate release pending the adjudication of her habeas claims
or, in the alternative, an order transferring Ms. Ozturk back to
the District of Vermont.

For the reasons set forth below, the Court finds that it
has jurisdiction to consider Ms. Ozturk's habeas petition. The
Court further finds that Ms. Ozturk has raised significant
constitutional concerns with her arrest and detention which
merit full and fair consideration in this forum. Accordingly,
the Court denies the government's request to dismiss the
Petition and orders that Ms. Ozturk be transferred to ICE

custody within the District of Vermont pending further hearings on this matter.

## Factual Background

### I.   Ms. Ozturk's Op-ed in a School Newspaper

Ms. Ozturk and three other students coauthored a March 26, 2024 editorial in the Tufts University school newspaper, *The Tufts Daily*. The editorial, which to date still appears on the *Tufts Daily* website, criticized the university administration's dismissal of several resolutions passed by the student senate that demanded the university acknowledge the existence of an ongoing genocide in Palestine, apologize for statements made by the university president, and disclose its investments in and divest from companies with ties to Israel.

The editorial criticized the university for "mischaracteriz[ing]" the student senate's stances as divisive and stated, "[w]e, as graduate students, affirm the equal dignity and humanity of all people[.]" Rumeysa Ozturk et al., *Op-ed: Try again, President Kumar: Renewing calls for Tufts to adopt March 4 TCU Senate resolutions*, The Tufts Daily (Mar. 26, 2024), https://www.tuftsdaily.com/article/2024/03/4ftk27sm6jkj. It urged the university administration "to meaningfully engage with and actualize the resolutions passed by the Senate." *Id.* The op-ed expresses agreement between Graduate Students for Palestine and three other campus groups, including Tufts

3

Students for Justice in Palestine, about the university's
response to the Senate resolutions. In the fall of 2024, Tufts
University temporarily suspended Tufts Students for Justice in
Palestine. Estelle Anderson, *Tufts SJP disaffiliates from Tufts
after university suspends group until Jan. 2027*, The Tufts Daily
(Nov. 21, 2024), https://www.tuftsdaily.com/article/
2024/11/tufts-sjp-disaffiliates-from-tufts-after-university-
suspends-group-until-jan-2027. Ms. Ozturk has not been alleged
to be a member of that group, and the suspension occurred
several months after the op-ed was published.

In an April 1, 2025, declaration, Sunil Kumar, the Tufts
University president, attested that the opinion piece co-
authored by Ms. Ozturk "was not in violation of any Tufts
policies" and that "no complaints were filed with the University
or, to our knowledge, outside of the University about this op-
ed." ECF No. 26-1 at 67. The declaration noted that the
newspaper also published other "op-eds on multiple sides of the
issue with opinions that were shared just as strongly as the op-
ed Ms. Ozturk co-authored." *Id.*

## II. Ms. Ozturk's Arrest and Detention

Ms. Ozturk is a Turkish national and doctoral candidate in
Child Study and Human Development at Tufts University. ECF No.
42 at 1-3. On June 28, 2024, she entered the United States
pursuant to a validly issued F-1 student visa. *Id.* at 3. On

4

March 21, 2025, the government revoked Ms. Ozturk's visa, potentially subjecting her to removal from the United States. ECF No. 91-1 at 6. Pursuant to 8 U.S.C. § 1227(a)(1)(B), "[a]ny alien who is present in the United States . . . whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."

Prior to her arrest, ICE determined that it would take Ms. Ozturk to a detention facility in Louisiana. According to ICE, "there was no available bedspace for [her] at a facility where she could appear for a hearing" in New England and "[t]ransfers out of state . . . are routinely conducted after arrest, due to operational necessity and considerations." ECF No. 19-1. Ms. Ozturk has submitted affidavits from several experienced New England immigration attorneys stating that immigration detainees are typically booked and processed at the ICE Boston Field Office in Burlington, Massachusetts before being sent to a detention facility. ECF Nos. 26-3, 26-4, 26-6. She also submitted an affidavit from an experienced Maine immigration attorney stating that based on the attorney's review of records from the Cumberland County Jail, the facility had at least sixteen open beds to house female detainees on March 25 and 26, 2025. ECF No. 26-5 at 3

Ms. Ozturk was not notified promptly of her student visa's
revocation. On March 25, 2025, at approximately 5:25 p.m., Ms.
Ozturk was near her residence in Somerville, Massachusetts when
a hooded and masked officer in plainclothes approached her and
grabbed her wrists. ECF No. 42 at 3. Five additional officers
then surrounded her, took her cell phone, and handcuffed her.
Ms. Ozturk was driven away in an unmarked vehicle. *Id.*

ICE agents took Ms. Ozturk to Methuen, Massachusetts,
arriving at 6:22 p.m. that day. ECF No. 19-1 at 2. Shortly
thereafter, the agents and Ms. Ozturk departed for Lebanon, New
Hampshire. *Id.* At approximately 9:03 p.m., ICE agents began
transporting Ms. Ozturk to the ICE Field Office in St. Albans,
Vermont. *Id.* At approximately 10:02 p.m. on March 25, 2025,
having been unable to speak to Ms. Ozturk or otherwise ascertain
her location after attempting to do so, Ms. Ozturk's counsel
filed a habeas petition in the District of Massachusetts. ECF
No. 42 at 4. At that time, Ms. Ozturk was in Vermont en route to
the St. Albans Field Office.

At approximately 10:55 p.m. that night, the District of
Massachusetts court ordered that Ms. Ozturk "shall not be moved
outside the District of Massachusetts without first providing
advance notice of the intended move." ECF No. 3 at 2; ECF No. 42
at 5. The order stated that "[s]uch notice shall be filed in
writing on the docket in this proceeding, and shall state the

reason why the government believes that such a movement is
necessary and should not be stayed pending further court
proceedings." ECF No. 3 at 2. The order noted that "[i]n order
to give the court an opportunity to consider whether it has
subject-matter jurisdiction, and if so to determine the validity
of the habeas petition, the court may order [the] respondent to
preserve the status quo." *Id.*

Both the Petition and the order were transmitted to the
United States Attorney's Office on the night of March 25, 2025.
ECF No. 26-2 at 2-3. When asked at oral argument about the
government's knowledge of the order when it was issued, its
counsel stated, "I don't know who learned about that order and
when. . . . I'm not able to speak to the factual flow of
information." ECF No. 98 at 37.

Ms. Ozturk arrived at the St. Albans Field Office at 10:28
p.m. on March 25, 2025 and was kept in custody there overnight.
ECF No. 19-1 at 2. On the morning of March 26, 2025, at
approximately 4:00 a.m., ICE agents transported Ms. Ozturk to
the Burlington, Vermont airport and placed her on a plane to
Louisiana. *Id.* at 3. Ms. Ozturk arrived in Alexandria, Louisiana
at 2:35 p.m. and was taken to the South Louisiana Correctional
Facility, where she is presently detained. *Id.*

Between the evening of March 25, 2025 and the afternoon of
March 26, 2025, Ms. Ozturk's counsel repeatedly attempted to

ascertain her location, to no avail. ECF No. 26-2 at 3. Although

Ms. Ozturk's attorney checked ICE's Detainee Locator System

online several times, the "current detention facility" section

was blank. *Id.* Counsel's inquiries about Ms. Ozturk's location

to ICE's Enforcement and Removal Operations ("ERO") division in

Burlington, Massachusetts and Homeland Security Investigations

("HSI") in Boston, Massachusetts went unanswered. *Id.*

When a representative of the Turkish consulate went in

person to ICE offices in Burlington, Massachusetts on March 26

to inquire about Ms. Ozturk's whereabouts, the representative

was told that ICE did not have information about where she was.

*Id.* Ms. Ozturk's counsel also called Rayford Farquhar, the Chief

of Defensive Litigation in the Civil Division at the United

States Attorney's Office in the District of Massachusetts and

emailed Assistant United States Attorney Mark Sauter on the

morning of March 26 to ask about Ms. Ozturk's location and

notify them that her asthma medication was not with her when she

was detained. Mr. Farquahar and Mr. Sauter both responded that

they did not know Ms. Ozturk's location. *Id.* Ms. Ozturk's

counsel emailed them again in the early afternoon of May 26, and

Mr. Sauter responded that he was still attempting to obtain

information about Ms. Ozturk's whereabouts. *Id.* at 3-4.

That afternoon, Ms. Ozturk's counsel filed an emergency

motion asking the District of Massachusetts court to order the

government to disclose Ms. Ozturk's location and permit her to
speak to her attorney. ECF No. 42 at 6. The motion noted that
counsel had just been informed by a U.S. Senator's office that
Ms. Ozturk was in Louisiana but had not received confirmation of
her location from ICE or the government's counsel. *Id.* At
approximately 3:27 p.m., Mr. Sauter told Ms. Ozturk's counsel
that ICE had informed him that she was transferred to Louisiana
that morning and was en route to a detention facility. ECF No.
26-2 at 4. Mr. Sauter's email stated, "I continue to ask ICE for
the detention facility that she will be placed and that she be
permitted to contact you." *Id.* (internal quotation marks
omitted). After Mr. Sauter and Ms. Ozturk's counsel exchanged
several more emails, Ms. Ozturk spoke to her attorney at 9:45
p.m. on March 26, more than 24 hours after her arrest. *Id.* at 5.

**III. Ms. Ozturk's Revocation and Removal Proceedings**

According to a memorandum by John L. Armstrong (hereinafter
"Armstrong Memorandum"), a senior bureau official of the Bureau
of Consular Affairs, the Bureau of Consular Affairs had approved
revocation of Ms. Ozturk's F-1 visa pursuant to a request from
ICE and the Department of Homeland Security ("DHS") on March 21,
2025. ECF No. 91-1 at 6. According to the memo, ICE and DHS had
made an assessment that Ms. Ozturk "had been involved in
associations that 'may undermine U.S. foreign policy by creating
a hostile environment for Jewish students and indicating support

9

for a designated terrorist organization' including co-
authorizing an op-ed that found common cause with an
organization that was later temporarily banned from campus. . .
." *Id.* The memo also noted, "[d]ue to ongoing ICE operational
security, this revocation will be silent; the Department of
State will not notify the subject of the revocation." *Id.*

Ms. Ozturk was served with a Notice to Appear ("NTA") on
March 25, 2025, while in custody. ECF No. 19-1 at 3. The NTA
cites Section 237(a)(1)(B) of the Immigration and Nationality
Act ("INA"), which applies to individuals whose nonimmigrant
visas have been revoked, as the basis for her removal. ECF No.
12-2; 8 U.S.C. § 1227(a)(1)(B). A March 25, 2025 letter, which
was addressed to Ms. Ozturk but not provided to her prior to her
arrest, also cites the INA provision codified at 8 U.S.C. §
1227(a)(4)(C)(i) as a possible basis for termination of her
Student Exchange Visitor Information System ("SEVIS")
designation. ECF No. 42 at 7. This provision states that "[a]n
alien whose presence or activities in the United States the
Secretary of State has reasonable ground to believe would have
potentially serious adverse foreign policy consequences for the
United States is deportable." 8 U.S.C. § 1227(a)(4)(C)(i).

The government has not represented that revocation of Ms.
Ozturk's visa was based on 8 U.S.C. § 1227(a)(4)(C)(i). In its
briefing, the government acknowledges that the "statute is

mentioned [in the March 25, 2025 letter] as one of two possible reasons why Petitioner's SEVIS record was terminated" but states "that data entry into a DHS information system is not a State Department record, and does not speak for the State Department." ECF No. 83 at 21 n.5.

The NTA ordered Ms. Ozturk to appear before an immigration judge in Louisiana on April 7, 2025, although that hearing was later canceled. ECF No. 66 at 22. On April 14, 2025, Ms. Ozturk submitted a request for a bond hearing in immigration court. On April 16, 2025, an immigration judge denied her request for a change in custody status and provided "Danger and Flight Risk" as the rationale. ECF No. 101-1 at 4.

## IV. The Pending Proceedings

Ms. Ozturk filed an amended petition and complaint on March 28, 2025. ECF No. 12. The same day, the Massachusetts district court ordered Ms. Ozturk not to be removed from the United States until further order of the court and ordered the government to file a response by April 1, 2025. ECF No. 16. The government timely filed a response, and Ms. Ozturk filed her reply on April 2, 2025. ECF Nos. 19, 26. On April 3, 2025, the District of Massachusetts held a hearing on the amended petition. ECF No. 41.

On April 4, 2025, the Massachusetts district court denied the government's motion to dismiss the petition and its

11

alternative request to transfer the matter to the Western
District of Louisiana. The court instead transferred the case to
the District of Vermont "in the interest of justice" pursuant to
28 U.S.C. § 1631.

At a status conference on April 7, 2025, this Court ordered
the parties to submit supplemental briefing citing Second
Circuit law on their jurisdictional arguments. ECF No. 60. On
April 10, 2025, Ms. Ozturk filed a supplemental memorandum on
the jurisdictional issues as well as a motion for her release,
or in the alternative, a motion to return her to the District of
Vermont. ECF Nos. 81, 82. The government filed its supplemental
briefing in opposition on these issues. ECF Nos. 83, 84. The
Court heard oral argument from the parties on April 14, 2025 and
took the matter under advisement.

## Discussion

Pending before the Court is Ms. Ozturk's habeas corpus
petition and the government's request for the petition to be
dismissed. As a threshold matter, Ms. Ozturk argues that the
District of Vermont has jurisdiction and is the proper court
after the District of Massachusetts' transfer pursuant to 28
U.S.C. § 1631. The government argues that § 1631 cannot supply
this Court with jurisdiction and that the petition should be
dismissed because the proper forum is the Western District of
Louisiana, where Ms. Ozturk is currently confined. The parties

12

also dispute whether certain provisions of the INA bar review of Ms. Ozturk's habeas claims.

Ms. Ozturk's substantive constitutional claims center on alleged violations of her First and Fifth Amendment rights. In support of her First Amendment claim, she has submitted evidence to show that the actions against her were retaliatory, as the only identifiable conduct supporting her detention is her co-authoring of a Tufts University op-ed. The government has submitted no evidence to counter her First Amendment claim. Ms. Ozturk's Fifth Amendment claim asserts due process violations. Finally, Ms. Ozturk requests immediate release on bail pending the outcome of the habeas review, while the government argues that bail or bond can only be sought from an immigration judge. In the alternative, Ms. Ozturk requests she be returned to custody in Vermont where she can work with counsel to prepare her legal claims. The Court will first address the jurisdictional questions.

## I.  Habeas Corpus Jurisdiction

### A. Legal Standards

Ms. Ozturk filed her habeas petition pursuant to 28 U.S.C. § 2241. Generally, "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*,

542 U.S. 426, 447 (2004). This rule is "derived from the terms of the habeas statute," *id.*, which only permits district courts to grant habeas relief "within their respective jurisdictions," 28 U.S.C. § 2241(a).

The federal habeas statute further states that a petition must allege "the name of the person who has custody over him." 28 U.S.C. § 2242; *see* 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). The Supreme Court has interpreted this statutory language as requiring the petitioner to name as the respondent her "immediate custodian[,]" who, "[b]y definition . . . reside[s] in the same district" as the petitioner. *Padilla*, 542 U.S. at 444. "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. These jurisdictional rules for habeas petitions do not implicate the Court's subject-matter jurisdiction and are treated functionally as matters of personal jurisdiction or venue. *See id.* at 434 n.7 (explaining that the Court uses the word "'jurisdiction . . . in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court"); *id.* at 451 (Kennedy, J., concurring) ("In my view, the question of the proper location for a habeas

14

petition is best understood as a question of personal jurisdiction or venue.").

Because Ms. Ozturk was in Vermont when her counsel filed the pending habeas petition in the District of Massachusetts, the petition was not filed in her district of confinement. Nor did it name her immediate custodian (who presumptively would have been in the District of Vermont). The government argues that the § 1631 transfer by the District of Massachusetts is insufficient to cure these jurisdictional defects, and that the only forum where Ms. Ozturk's petition may properly be brought is the Western District of Louisiana. The Court therefore addresses, in turn, (1) whether the District of Massachusetts § 1631 transfer was proper, (2) whether the § 1631 transfer cures the original petition's failure to comply with the district of confinement rule, and (3) whether this Court has jurisdiction despite the petition's alleged failure to identify any immediate custodian.

**B. The Section 1631 Transfer**

Under 28 U.S.C. § 1631:

> [w]henever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action

15

or appeal could have been brought at the time it was
filed or noticed, and the action or appeal shall
proceed as if it had been filed in or noticed for the
court to which it is transferred on the date upon
which it was actually filed in or noticed for the
court from which it is transferred.

It is well-established in the Second Circuit that habeas

petitions may be transferred under § 1631. *See, e.g., Liriano v.*

*United States*, 95 F.3d 119, 123 (2d Cir. 1996) (holding that

when a second or successive petition for habeas corpus is filed

in district court without the requisite authorization of the

Second Circuit, "the district court should transfer the petition

or motion to this Court in the interest of justice pursuant to §

1631"); *Zhen Yi Guo v. Napolitano*, 2009 WL 2840400, at *6

(S.D.N.Y. Sept. 2, 2009) ("Courts have consistently found it in

the interest of justice to transfer habeas petitions when

jurisdiction is lacking." (quoting *Shehnaz v. Ashcroft*, 2004 WL

2378371, at *4 (S.D.N.Y. Oct. 25, 2004))). "When considering

whether a transfer would serve the interest of justice, [the

Court] must weigh 'the equities of dismissing a claim when it

could be transferred.'" *Ruiz v. Mukasey*, 552 F.3d 269, 276 (2d

Cir. 2009) (quoting *Liriano,* 95 F.3d at 122). Relevant equities

include whether the petitioner acted in good faith and whether a

transfer would "expedite [] review, thereby furthering the

interest of justice." *Id.*

In this case, the government does not dispute that this

petition "could have been brought" in the District of Vermont

"at the time it was filed[.]" 28 U.S.C. § 1631; *see* ECF No. 19 at 27 ("It is true that at the time Petitioner's original petition was filed, it could have been properly filed in Vermont as that is where she was then in custody."). Ms. Ozturk acted in good faith when she originally filed the petition in Massachusetts, and transfer expedited review because Ms. Ozturk would otherwise have needed to spend time refiling the petition. Because Ms. Ozturk's petition could have been brought in this Court at the time it was filed and the record supports that the equities weighed in favor of transfer, the Massachusetts district court's decision to transfer the petition to this Court complied with the requirements for transfer under § 1631. *Cf. U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 152 (2d Cir. 2019) (noting the Supreme Court's "sagacious warning" that "'[t]ransferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation,' culminating in a 'perpetual game of jurisdictional ping-pong.'" (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 818 (1988))).

**C. The District of Confinement Rule**

Ms. Ozturk argues that because a case transferred under § 1631 "shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it

17

was actually filed in[,]" the Court should treat her petition as
if it had been filed in the District of Vermont at approximately
10:02 p.m. on March 25, 2025, in which case it would have been
filed in her district of confinement. 28 U.S.C. § 1631. The
government contends that Ms. Ozturk cannot "use § 1631 to vest
this Court with authority that it otherwise would lack by way of
statute" and that "[n]othing in § 1631 allows a district court
to somehow blow past" § 2241's statutory requirements "based on
the fiction that the suit was properly before it." ECF No. 83 at
14-15.

The government does not cite any authority holding that §
1631 cannot cure a habeas petitioner's failure to file a
petition in the correct district. Other courts have found
transfer under § 1631 to be proper where a habeas petition was
not originally filed in the district of confinement. See, e.g.,
Abraham v. Decker, 2018 WL 3387695, at *3 (E.D.N.Y. July 12,
2018) (transferring habeas petition under § 1631 because
petitioner's immediate custodian was in New Jersey, not New
York); Golding v. Sessions, 2018 WL 6444400, at *3 (S.D.N.Y.
Dec. 6, 2018) (same). Additionally, "[t]he legislative history
of § 1631 indicates that 'Congress contemplated that the
provision would aid litigants who were confused about the proper
forum for review.'" Liriano, 95 F.3d at 122. Ms. Ozturk's filing
of her habeas petition in the District of Massachusetts because

18

her counsel did not know her location — in other words, her
confusion about the proper forum for review — is thus exactly
the kind of jurisdictional defect § 1631 was designed to cure.

The government cites *De Ping Wang v. Department of Homeland
Security*, 484 F.3d 615 (2d Cir. 2007) for the proposition that
"[t]he Second Circuit has held that, while § 1631 allows a
transferee court to proceed as if the case had been filed on a
certain date, § 1631 does not allow courts to ignore other facts
and substantive limits on jurisdiction." ECF No. 83 at 15. That
case, however, is readily distinguishable. In *De Ping Wang,* the
Second Circuit found that transfer under 28 U.S.C. § 1631 was
improper because, even if the action in that case were correctly
filed in the transferee court on the same date it was mistakenly
filed in transferor, it would still have been untimely. 484 F.3d
at 617-18. In contrast, filing Ms. Ozturk's petition in the
District of Vermont on the same date it was filed in the
District of Massachusetts would have satisfied the
jurisdictional requirement that she file in her district of
confinement.

A New Jersey federal court recently found transfer under §
1631 to support habeas jurisdiction under similar circumstances.
*Khalil v. Joyce*, 2025 WL 972959, at *15 (D.N.J. Apr. 1, 2025).
In *Khalil*, the habeas petitioner was arrested by federal
officials in Manhattan but was being held in a New Jersey

facility when he filed his petition. *Id.* at *1. Finding that it lacked jurisdiction, the Manhattan district court transferred the petition to the District of New Jersey. In finding that it had habeas jurisdiction to proceed upon the case's transfer, the District of New Jersey court reasoned that according to the clear language of § 1631, it must treat the case as if it had been filed in New Jersey on the same date it was filed in New York. The court concluded that because "[a]t that moment, the Petitioner was in New Jersey . . . there is no missing piece of the jurisdictional puzzle[,]" and thus "the Petition counts as having been in New Jersey at the same moment the Petitioner was here." *Id.* at *15.

This Court comes to the same conclusion here. At approximately 10:02 p.m. on March 25, 2025, the moment Ms. Ozturk filed her habeas petition, she was detained in Vermont. Accordingly, for this action to "proceed as if it had been filed in or noticed for the court to which it [was] transferred on the date upon which it was actually filed[,]" the case must proceed as if it were filed in the District of Vermont while Ms. Ozturk was detained here, in which case the district of confinement rule would have been satisfied. 28 U.S.C. § 1631.

The government further argues that Ms. Ozturk's present detention in Louisiana prevents the District of Vermont from exercising habeas jurisdiction. Section § 2241(a) provides that

district courts may only grant a writ of habeas corpus "within
their respective jurisdictions[,]" and although Ms. Ozturk was
in this jurisdiction at the time her petition was filed, she is
no longer in the District of Vermont. Ms. Ozturk asserts that
the District of Vermont has jurisdiction notwithstanding her
transfer to Louisiana based on *Ex parte Endo*, 323 U.S. 283
(1944).

   In *Ex parte Endo*, the Supreme Court recognized an exception
to the general rule that a district court only has power to
grant habeas relief when the petitioner is being held within its
jurisdiction. The *Endo* petitioner was a Japanese-American
citizen who was interned by the government during World War II.
323 U.S. at 284-85. The petitioner filed a habeas petition in a
California district court while detained in that district and,
while appealing the petition's denial, was transferred to a
detention center in Utah. *Id.* The Supreme Court held that the
petitioner's transfer to Utah after the California district
court "acquired jurisdiction in this case" did not "cause it to
lose jurisdiction where a person in whose custody [the
petitioner] is remains within the district." *Id.* at 306. In
*Padilla*, the Supreme Court recognized that,

   > *Endo* stands for the important but limited proposition
   > that when the Government moves a habeas petitioner
   > after she properly files a petition naming her
   > immediate custodian, the District Court retains
   > jurisdiction and may direct the writ to any respondent

21

within its jurisdiction who has legal authority to
effectuate the prisoner's release.

542 U.S. at 441.

The government argues that *Ex parte Endo* does not apply
because, in this case, Ms. Ozturk "never properly filed her
habeas petition" in the District of Vermont and thus this Court
had not acquired jurisdiction prior to her transfer to a
different district. ECF No. 83 at 9 n.2. The plain language of
the transfer statute, however, states that the transferred
action "shall proceed *as if it had been filed*" in the transferee
court on the same date it was filed in the transferor court. 28
U.S.C. § 1631 (emphasis added); *see Jimenez v. Quarterman*, 555
U.S. 113, 118 (2009) ("[W]hen the statutory language is plain,
we must enforce it according to its terms.").

Had Ms. Ozturk filed her habeas petition in the District of
Vermont on March 25, 2025, the holding of *Ex parte Endo* would
squarely apply. The District of Vermont would have acquired
jurisdiction on that date, and Ms. Ozturk's transfer to
Louisiana would not have stripped the Court of its jurisdiction
because a respondent with the power to effectuate Ms. Ozturk's
release remains within the reach of the District of Vermont. *See*
*Henderson v. I.N.S.*, 157 F.3d 106, 125 (2d Cir. 1998) (noting
that there is "no question that the Attorney General has the
power to produce the petitioners" in case brought by legal
permanent residents who were ordered deported).

22

**D. The Immediate Custodian Rule**

Even if this Court allows Ms. Ozturk's petition to proceed
as if it had been filed on March 25, 2025, in the District of
Vermont, the question remains of whether the Court could not
have properly acquired jurisdiction on that date because the
petition may have failed to name Ms. Ozturk's immediate
custodian as a respondent.

The government contends that "Petitioner named improper
respondents in her original petition because she named
supervisory officials, rather than her immediate custodian in
Vermont when the petition was filed." ECF No. 83 at 10. Of the
supervisory officials named in the Petition, the one closest to
Vermont was Ms. Hyde, the acting ICE Field Office director for
New England. When presented with the question of whether an ICE
Field Office director was the correct respondent in a habeas
petition, other district courts in the Second Circuit have held
that the correct custodian was instead the warden of the local
facility where the petitioner was being held. *See Sanchez v.
Decker*, 2019 WL 6311955, at *4 (S.D.N.Y. Nov. 25, 2019) (finding
that the warden of the county correctional facility where
petitioner was held, rather than the director of ICE's New York
City Field Office, was the immediate custodian); *see also Lemus-
Pineda v. Whittaker*, 354 F. Supp. 3d 473, 475 (S.D.N.Y. 2018)

(holding that county jail warden, rather than ICE field office
director, was proper respondent).

In this case, however, Ms. Ozturk was not at a prison or
jail when the Petition was filed — she was in a vehicle being
transported to an ICE Field Office. There is no "warden" that
Ms. Ozturk could have named. It is also not apparent to the
Court that Ms. Hyde was not functionally the immediate custodian
in that moment. Presumably a call from Ms. Hyde to a subordinate
may have actually freed Ms. Ozturk, just as a call from a warden
to a correctional officer may actually free a prisoner. At oral
argument, government's counsel could not identify who that
immediate custodian would have been if not Ms. Hyde. ECF No. 98
at 30. Because the government has provided insufficient facts to
determine that Ms. Hyde was not Ms. Ozturk's immediate
custodian, the Court will not dismiss her petition on that
basis.

Regardless of whether Ms. Hyde was the immediate custodian,
Ms. Ozturk argues that this case falls within an exception to
the immediate custodian rule because her custodian was unknown
at the time of the Petition's filing. The unknown custodian
exception arises from *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C.
Cir. 1986), in which a habeas petitioner was held by the United
States in a confidential location at the time he filed his
petition. The D.C. Circuit thus ruled that "in these very

24

limited and special circumstances," it would consider the
Attorney General of the United States the appropriate custodian.
784 F.2d at 1116. In *Padilla*, the Supreme Court recognized this
exception by noting that although "[w]hen, as in [*Demjanjuk*], a
prisoner is held in an undisclosed location by an unknown
custodian, it is impossible to apply the immediate custodian and
district of confinement rules[,]" that was not the case in
*Padilla*. 542 U.S. at 450 n.18.

In *Khalil*, the New Jersey district court found that this
exception applied where, at the time of filing the petition,
nothing in the record showed that the petitioner's counsel could
"have determined in real time that the Petitioner had been moved
to New Jersey[.]" 2025 WL 972959, at *27. Although Mr. Khalil's
counsel attempted to locate the petitioner, the ICE Online
Detainee Locator System incorrectly indicated that he was still
being held in New York, and Mr. Khalil was not allowed to call
his attorney. Accordingly, the District of New Jersey court
concluded the unknown custodian exception applied because "the
identity of the immediate custodian [was] virtually unknowable"
when Mr. Khalil filed his habeas petition. *Id.* at *30.

The District of New Jersey court acknowledged that Mr.
Khalil's custodian subsequently became known such that the case
could "simply be dismissed and refiled in Louisiana[,]" where he
was currently being held. *Id.* at 36. It nonetheless concluded

25

that equitable concerns weighed in favor of applying the unknown

custodian exception, explaining that:

> if the exception does not apply, and the case is
> dismissed on that basis, then the implication would be
> that there can be a period of time during which a
> person can be arrested in the United States and then
> moved by federal officials, during which period no
> habeas court would have the power to hear him out ---
> even though, as here, his lawyers and family cannot
> determine where he is only because they have been
> given inaccurate information about his whereabouts,
> and because he has not been allowed to correct that
> information by making a phone call.

*Id.*

For similar reasons, this Court agrees with Ms. Ozturk that

the unknown custodian exception applies in this case. As in

*Demjanjuk*, Ms. Ozturk was being held in "an undisclosed location

by an unknown custodian" on the date her habeas petition was

filed. 542 U.S. at 450 n.18. The government does not dispute

that her counsel could not have known her location; in fact, the

government states in its briefing that it does not permit

immigration detainees "to communicate about their location while

enroute between detention facilities" because doing so "would

raise serious security concerns." ECF No. 83 at 13. The

government thus admits that from the time ICE agents arrested

Ms. Ozturk to the time she arrived at the Louisiana detention

facility, it was keeping her location a secret. And the identity

of Ms. Ozturk's actual custodian at the time of filing, if it is

not one of the Respondents, appears to still be unknown to the

government.

Ms. Ozturk was arrested at 5:25 pm on March 25, 2025, and
ICE did not provide her location to her counsel until the
afternoon of March 26, 2025. This made it "impossible to apply
the immediate custodian" rule for a period of nearly 24 hours
after Ms. Ozturk's initial detention. *Padilla*, 542 U.S. at 450
n.18; *see United States v. Paracha*, 2006 WL 12768, at *6
(S.D.N.Y. Jan. 3, 2006) ("Ordinarily, a habeas writ must be
served on a prisoner's immediate custodian. However, where, as
here, the immediate custodian is unknown, a writ may properly be
served on the prisoner's ultimate custodian.").

The government asserted at oral argument that under
*Padilla*, it is irrelevant whether Ms. Ozturk's counsel made
diligent efforts to ascertain her location — that does not
excuse a petitioner from the immediate custodian requirement.
The *Padilla* majority, however, had no occasion to apply the
unknown custodian exception because the facts there indicated
that the petitioner's counsel may have been "well aware" of Mr.
Padilla's presence in South Carolina before filing a habeas
petition in New York. 542 U.S. at 449 n.17. The majority
rejected the dissent's characterization of the petitioner's
location as secret, finding that "neither Padilla nor the
District court" had "ever suggested that the Government
concealed Padilla's whereabouts from counsel[.]" *Id.* In this
case, Ms. Ozturk argues, and the government does not dispute,

27

that ICE officials were intentionally concealing Ms. Ozturk's whereabouts on the day her petition was filed.

Additionally, application of the unknown custodian exception in this case would not implicate the forum-shopping concerns that underlie the immediate custodian rule. As the Supreme Court explained in *Padilla*, this rule "serves the important purpose of preventing forum shopping by habeas petitioners" because "[w]ithout it, a prisoner could name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction." 542 U.S. at 447. Here, the Court finds that Ms. Ozturk could only have filed her petition in one location: the District of Vermont.

Even if the unknown custodian rule exception did not apply here, had Ms. Ozturk correctly filed the Petition in the District of Vermont but named the incorrect custodian, this Court could have simply allowed her to amend the Petition to include the proper respondent. *See* Fed. R. Civ. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course no later than . . . 21 days after serving it); *see also Destyl v. Garland*, 2023 WL 3603666, at *4 (W.D.N.Y. May 23, 2023) (finding "purely as a procedural matter" that the proper respondent was the officer-in-charge of the Buffalo Federal Detention Facility

28

rather than the United States Attorney General and substituting in the correct respondent).

Accordingly, the Court finds it has habeas corpus jurisdiction to consider Ms. Ozturk's petition.

## II. Habeas Review Limitations in the Immigration and Nationality Act

Having found that habeas corpus jurisdiction is proper, the Court turns to the government's argument that the INA nonetheless bars district court review of Ms. Ozturk's habeas claims related to her detention. The government cites five provisions of the INA which they argue constrain or prohibit the Court's review: 8 U.S.C. § 1201(i); 8 U.S.C. § 1226(e); 8 U.S.C. § 1252(g); 8 U.S.C. § 1252(a)(5); and 8 U.S.C. 1252 (b)(9). For reasons set forth below, the Court finds that none of these provisions limit the Court's review where Ms. Ozturk has raised constitutional and legal challenges to her detention that are separate from removal proceedings.

### A. The Court's Review is Not Barred by § 1226(e)

Ms. Ozturk has been detained under the discretionary detention provision of the INA, codified at 8 U.S.C. § 1226(a). Section 1226 created two mutually exclusive avenues for government detention of individuals who may be subject to removal. One avenue, under the subsection titled "Detention of Criminal Aliens," requires ("shall") the government to "take

29

into custody" individuals who fit certain heightened criteria.
§1226(c). The other avenue – at issue in this case – entitled
"Arrest, Detention, and Release," grants the government
discretion to arrest and detain individuals: "an alien may be
arrested and detained pending a decision on whether the alien is
to be removed from the United States." 8 U.S.C. § 1226(a). The
statute also includes a subsection on judicial review. This
subsection reads in its entirety, "The Attorney General's
discretionary judgment regarding the application of this section
shall not be subject to review. No court may set aside any
action or decision by the Attorney General under this section
regarding the detention of any alien or the revocation or denial
of bond or parole." § 1226(e).[1]

The government argues that § 1226(e) precludes the Court's
review of Ms. Ozturk's detention, notwithstanding the United
States Constitution's Suspension Clause. The Suspension Clause
provides that "[t]he Privilege of the Writ of Habeas Corpus
shall not be suspended, unless when in Cases of Rebellion or
Invasion the public Safety may require it." Because of the
history and importance of the habeas corpus writ, along with a
desire to read statutes to comport with the Constitution, the

---

[1] Note that since the enactment of the INA, Congress created the
Department of Homeland Security and charged the Secretary with
enforcing the INA, 8 U.S.C. § 1103.

Supreme Court has held that "where a provision precluding review
is claimed to bar habeas review, the Court requires a
particularly clear statement that such is Congress' intent."
*Demore v. Kim*, 538 U.S. 510, 511 (2003); *id.* at 517 (finding
that the "clear text" of § 1226(e) does not bar a habeas
challenge to detention). This mandate for statutory construction
is so strict that it has been criticized for establishing a
"magic words" requirement for Congress to preclude habeas
review. *INS v. St. Cyr*, 533 U.S. 289, 327 (2001) (Scalia, J.,
dissenting). Here, the Court does not find such a clear
statement of Congressional intent, let alone any magic words,
that would support a categorical bar to habeas review of
detention under § 1226.

Binding precedent in this Circuit also counters the
government's argument. In *Velasco Lopez v. Decker*, the Second
Circuit squarely considered the availability of habeas review
for the petitioner who was detained under § 1226(a). 978 F.3d
842 (2d Cir. 2020). The Circuit court reviewed a grant of habeas
relief under 28 U.S.C. § 2241 and held that § 1226(e) does not
limit habeas jurisdiction over constitutional claims or
questions of law. *Id.* at 850. Further, habeas review in federal
court can consider claims that the discretionary process itself
was constitutionally flawed. *Id.* In sum, whether a habeas

31

petitioner received due process is not a matter of discretion and is subject to judicial review. *Id.*

As discussed below, Ms. Ozturk has raised questions that are fairly characterized as "constitutional claims or questions of law." *Id.* Ms. Ozturk has also argued that while the government does have discretion in § 1226(a) detention, that discretionary process may be unconstitutional if it allows for the deprivation of constitutional rights. For jurisdictional purposes, the Court need not analyze the merits of these claims at this point. It is enough to acknowledge that because Ms. Ozturk has appropriately raised constitutional claims for this Court to consider in habeas, the nature of those claims defeats any jurisdictional bar set forth in § 1226(e).[2]

The legislative history of the REAL ID Act of 2005 confirms that Congress understood § 1226(e) does not operate as a categorical bar to habeas review of detention. Regarding provisions of the REAL ID Act which purport to deprive the districts courts of habeas jurisdiction of removal proceedings, Congress noted that those provisions "will not preclude habeas review over challenges to detention that are independent of

---

[2] The Court acknowledges case law limiting, but not eliminating, habeas review for "Criminal Aliens" mandatorily detained under § 1226(c). *See e.g., Jennings v. Rodriguez*, 583 U.S. 281 (2018). However, Ms. Ozturk is held in discretionary detention under § 1226(a), not mandatory detention under § 1226(c).

challenges to removal orders." H.R. Cong. Rep. No. 109-72, at
2873 (May 3, 2005). Almost immediately after the Real ID Act was
enacted, the First Circuit confronted the question of continued
district court jurisdiction for habeas challenges to detention
and determined that the REAL ID Act provided no bar in such
cases. *Hernandez v. Gonzales*, 424 F.3d 42, 42 (1st Cir. 2005).
And courts in this Circuit have continued to consider habeas
challenges to detention under § 1226(a) since then. *See, e.g.*,
*Velasco Lopez,* 978 F.3d 842. The Court adheres to that precedent
in this case.

### B. Sections § 1201(i), § 1252(g), § 1252(a)(5), and § 1252(b)(9)

The government argues that, regardless of this Court's
interpretation of 8 U.S.C. § 1226(e), four additional statutory
provisions prevent it from considering Ms. Ozturk's claim for
relief from present detention. Those four provisions – 8 U.S.C.
§ 1201(i), 8 U.S.C. § 1252(g), 8 U.S.C. § 1252(a)(5), and 8
U.S.C. § 1252(b)(9) – each directly relate to removal
proceedings.

At the outset, the Court acknowledges that the Suspension
Clause does not establish an absolute right to seek the writ of
habeas corpus. The Supreme Court has held that Congress may
modify or eliminate the right to seek the writ if Congress
provides "a collateral remedy which is neither inadequate nor

33

ineffective to test the legality of a person's detention." *Swain v. Pressley*, 430 U.S. 372, 381 (1977). For example, as the Court found in *INS v. St. Cyr*, "Congress could, without raising any constitutional questions, provide an adequate substitute through the courts of appeals." 533 U.S. at 314 n.38. If such a substitute is crafted by Congress, courts must then determine "whether the statute stripping jurisdiction to issue the writ avoids the Suspension Clause mandate because Congress has provided adequate substitute procedures for habeas corpus." *Luna v. Holder*, 637 F.3d 85, 93 (2d Cir. 2011) (quoting *Boumediene v. Bush*, 553 U.S. 723, 771 (2008)).

Section 1201 governs the issuance of visas. The jurisdictional bar in § 1201(i) explicitly prohibits judicial review under "section 2241 of title 28 or any other habeas corpus provision, and sections 1361 and 1651 of such title . . . except in the context of a removal proceeding" for individuals challenging the revocation of visas or documents. The government urges the Court to follow the guidance of courts in other jurisdictions who have found "themselves without jurisdiction to consider the merits of a visa revocation upon operation of Section 1201(i)'s language." ECF No. 83 at 24. Here, however, the merits of a visa revocation are not before the Court. While Ms. Ozturk may plan to challenge the revocation of her visa in another forum, she does not do so in the instant Petition.

Section 1252 provides a collateral remedy in the context of
removal proceedings. The government details its understanding of
that procedure succinctly: "Petitioner must seek release before
an immigration judge and must pursue relief from removal in
Immigration Court, whose decision would be reviewable before the
Board of Immigration Appeals ("BIA"), and (if necessary) a
federal circuit court." ECF No. 83 at 4. Courts across the
country, including the Second Circuit, have functionally
endorsed this procedure as a substitute for the writ of habeas
corpus in instances where would-be habeas petitioners seek
judicial review of removal proceedings. *See, e.g., Ruiz-Martinez
v. Mukasey*, 516 F.3d 102, 114 (2d Cir. 2008). Thus, if Ms.
Ozturk sought relief from removal proceedings, this Court would
be obligated to follow Circuit precedent and conclude its review
of that claim.

The government argues that whatever Ms. Ozturk's claims may
be about the constitutionality of her detention, any "challenges
inextricably intertwined with the final order of removal that
precede issuance of any order of removal . . . and decisions to
detain for the purposes of removal" should all be considered
subject to the same jurisdictional bar. ECF No. 83 at 23. The
Second Circuit has held, however, that "a suit brought against
immigration authorities is not *per* se a challenge to a removal
order; whether the district court has jurisdiction will turn on

35

the substance of the relief that a plaintiff is seeking."
*Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (citing
*Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) (finding
that a "district court, not court of appeals, had jurisdiction
where plaintiffs' habeas petitions challenged only the
constitutionality of the arrest and detention, not the
underlying administrative order of removal.")).

The claims for relief before this Court do not challenge
Ms. Ozturk's removal proceedings. Ms. Ozturk's attorneys
acknowledge that claims related to removal are not appropriate
in this action: "While the government's Policy also lay behind
the revocation of her visa and placement in removal proceedings,
she does not, in this Court, challenge those actions. Instead,
she seeks relief on her claims challenging her apprehension,
detention, and the termination of her SEVIS, release from
detention, reinstatement of her SEVIS, and corresponding
declaratory and injunctive relief that the Policy that resulted
in her apprehension, detention, and SEVIS termination are
illegal."[3] ECF. No. 81 at 21. None of these claims raise
challenges to the removal process.

The limitations on habeas review set forth in Section 1252
thus do not apply in this case. Subsection (a)(5) provides for

---

[3] The government notes that Ms. Ozturk's SEVIS record is not the basis
for her detention or removability. ECF No. 83 at 21.

the "Exclusive Means of Review" for habeas petitions challenging
"an order of removal" through the established scheme. Subsection
(b)(9) limits habeas review, except through the established
scheme requiring a final order before appeal to the circuit
court, for "all questions of law and fact, including
interpretation and application of constitutional and statutory
provisions, arising from any action taken or proceeding brought
to remove an alien from the United States under this
subchapter." And subsection (g) limits jurisdiction of courts
outside the established scheme to "hear any cause or claim by or
on behalf of any alien arising from the decision or action by
the Attorney General to commence proceedings, adjudicate cases,
or execute removal orders against any alien under this chapter."

    Subsection (a)(5) can be dispensed of quickly, as no
"removal order" has been issued here and Ms. Ozturk does not
challenge one. Similarly, she has not raised in this Court any
constitutional or legal concerns "arising from" "any action" or
"proceeding" brought to remove her, per subsection (b)(9).
Moreover, the plain text of subsection (g) does not support a
reading that Ms. Ozturk's detention and resulting constitutional
claims arise from the government's "decision or action" to
"commence proceedings, adjudicate cases, or execute removal
orders." Whether removal proceedings have proceeded according to

37

law and in comport with the Constitution is not a question
before this Court.

The government's argument that Ms. Ozturk's detention
"arises from" her removal proceedings stretches the bounds of
the text and the facts of this case. While Ms. Ozturk's
detention may be related to her immigration status following the
revocation of her visa, it does not "arise from" her removal
proceedings. Indeed, there is no causal relationship between the
removal proceedings and her detention. As the government has
confirmed, ICE's decision to arrest and detain her was
*discretionary* under § 1226(e). Her detention did not flow
naturally as a consequence of her removal proceedings. Indeed,
Ms. Ozturk was detained before the commencement of her removal
proceedings. *See* 8 C.F.R. § 1003.14. Whether her detention
comports with the law and the Constitution is the subject of
this Court's habeas review.

The government cites *Jennings v. Rodriguez*, 138 S. Ct. 830,
841 (2018) for the proposition that the habeas corpus bar in §
1252(b)(9) includes challenges to a decision to detain or to
seek removal. *Jennings* does not provide guidance on the question
of reviewability of detention decisions under § 1252(b)(9),
however, in part because that issue was not briefed or argued
before the court. 138 S. Ct. at 841 ("The parties in this case
have not addressed the scope of § 1252(b)(9), and it is not

38

necessary for us to attempt to provide a comprehensive
interpretation. For present purposes, it is enough to note that
respondents are not asking for review of an order of removal;
they are not challenging the decision to detain them in the
first place or to seek removal; and they are not even
challenging any part of the process by which their removability
will be determined. Under these circumstances, § 1252(b)(9) does
not present a jurisdictional bar."). In fact, *Jennings*
explicitly rejected the formulation, proposed in a concurrence,
that the government seeks here. "The concurrence contends that
'detention *is* an "action taken ... to remove" an alien' and that
therefore 'even the narrowest reading of "arising from" must
cover' the claims raised by respondents. *Post* at 855. (*Thomas,
J.,* concurring in part and concurring in judgment). We do not
follow this logic." *Id.* at 841 n.3. Accordingly, this Court also
does not read "arising from" to encompass any activity that has
occurred since the revocation of Ms. Ozturk's visa.[4]

---

[4] In Court proceedings on April 14, 2025, the government reasserted the
argument that the confluence of the opinions of five Justices in
*Jennings* should be read to bar review of Ms. Ozturk's claims in this
Court and instead channel them eventually to a court of appeals, no
matter the nature of the challenged action. But Justice Alito's
opinion for the Court, while not controlling on the matter of
§1252(b)(9), rejects the "staggering results" that would follow
Respondents' interpretation. "Suppose, for example, that a detained
alien wishes to assert a claim under *Bivens v. Six Unknown Fed.
Narcotics Agents*, 403 U.S. 388 (1971), based on allegedly inhumane
conditions of confinement. . . . [C]ramming judicial review of those
questions into the review of final removal orders would be absurd."
*Jennings* 138 S.Ct. at 293.

Similarly, the government's reliance on *Delgado v. Quarantillo* is misplaced. 643 F.3d 52 (2d Cir. 2011). The *Delgado* case did not concern detention. The plaintiff in that case brought a mandamus action to raise an adjustment-of-status challenge, which the Second Circuit determined was "inextricably linked" to a reinstatement of removal order and thus barred by § 1252(a)(5) because "the adjustment of status to that of a lawful permanent resident would render the reinstatement order invalid." 643 F.3d at 55 (cleaned up). Implicit in the *Delgado* court's reasoning is a causal relationship between the relief sought and the removal process. As noted above, the *Delgado* court made clear that district courts must determine jurisdiction by considering the substance of the asked-for relief because suits brought against immigration authorities are not *per se* challenges to removal orders. *Id.* In this case, there is no causal relationship between discretionary detention and removal proceedings. Relief from alleged improper detention would not render any removal proceedings invalid.

Finally, *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019) does not address an analogous situation for the purpose of § 1252(g) interpretation. The government contends that *Ragbir* counsels that "1252(g) strips the district court of jurisdiction to hear a retaliatory First Amendment challenge in a removal case." ECF No. 83 at 26. But, again, the Court is not considering a removal

40

case. The Court is considering a habeas challenge to discretionary detention.

In summary, the government urges the court to interpret challenges to § 1226(a) detention as *per se* challenges to removal proceedings and barred by several provisions in § 1252. The Court declines to adopt that approach, as it has no precedent in this Circuit or at the Supreme Court. Indeed, cases like *Velasco Lopez* suggest that district courts in this Circuit should continue to consider habeas challenges to detention post-REAL ID Act, where otherwise appropriate. Article III courts have an important role to play in evaluating constitutional and legal claims related to detention brought in habeas, and this Court has jurisdiction over this case.

The Court offers one final observation about the government's argument that constitutional challenges to detention must be brought first to an Immigration Judge, then to the Board of Immigration Appeals, and finally via a petition for review to the court of appeals. There are serious questions about whether that process would be an adequate substitute for the writ of habeas corpus in district court, given the limited scope of administrative review.[5] In a similar case proceeding in

---

[5] Respondents' reliance on *Reno v. American-Arab Anti-Discrimination Committee ("AADC")*, 525 U.S. 471 (1999), to "settle" these questions elides the fact that *AADC* was exclusively about removal, not detention.

the District of New Jersey, the government has acknowledged
that, "[i]f the alleged claim is a fundamental constitutional
claim the BIA (or the immigration judge) is powerless to
address, the court of appeals can address that issue in the
first instance." *Khalil*, 2:25-cv-01963-MEF-MAH, ECF No. 185 at 2
(cleaned up). Attorneys for the detainee in that case put it
more bluntly, "both the IJ and the Board of Immigration Appeals
('BIA') lack jurisdiction over constitutional challenges." *Id.*
at ECF No. 189 at 1; *see also Severino v. Mukasey*, 549 F.3d 79,
83 (2d Cir. 2008).

       While timelines may vary on the speed with which detainees
may have their constitutional arguments heard by a court of
appeals in the first instance after the IJ and the BIA
processes, it is evident that it will necessarily be slower than
a petition to a district court, likely by a factor of months,
leading to a gap in their habeas rights. The District Court of
New Jersey held in *Khalil* that to deny jurisdiction would be to
say that for a single day in March, the detainee in that case
"would not have been able to call on any habeas court." 2025 WL
972959, at *37. The Court found that to be "too far" because
"[o]ur tradition is that there is no gap in the fabric of habeas
--- no place, no moment, where a person held in custody in the
United States cannot call on a court to hear his case and decide
it." *Id.*

Consider that the government's argument on this issue boils down to a bold statement that no matter how egregious the type or quantity of First Amendment or due process violations committed by the government in detaining an individual, an Article III court *cannot* consider any alleged constitutional violations until after Article II employees, with no power to consider or address those violations, have moved the case through their lengthy process. Put another way, the government argues that § 1226(a) grants practically limitless, unreviewable power to detain individuals for weeks or months, even if the detention is patently unconstitutional. Fortunately, this Court need not rule on the merits of that argument today, given the Court's rejection of the jurisdictional bar on other grounds. Thus, having found that 8 U.S.C. § 1201(i), § 1226(e), § 1252(g), § 1252(a)(5), and § 1252(b)(9) do not bar the Court's consideration of Ms. Ozturk's constitutional and legal claims, the Court turns to those claims now.

## III. Petitioner's Request for Immediate Release

Ms. Ozturk seeks habeas corpus relief based on alleged violations of her constitutional rights. Her ultimate goal in these proceedings is release from detention, but the Court presently considers her request for immediate release pending the resolution of her habeas petition.

43

Both parties analyze Ms. Ozturk's claim for immediate release pending the adjudication of her petition in reference to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). Such release is authorized by *Mapp* provided the Court finds the habeas petition raises "substantial claims" and that "extraordinary circumstances" exist "that make the grant of bail necessary to make the habeas remedy effective." *Id.* at 230 (cleaned up).

In this section, the Court first considers its power to conduct a habeas review and the proper nature of that review at this point in the case. The Court turns next to a short summary of evidence related to Ms. Ozturk's constitutional claims. The Court then considers Ms. Ozturk's First Amendment and Due Process claims. The Court finds that while Ms. Ozturk has raised serious claims and provided evidence that merit further review, the Court does not yet have enough evidence to make a determination on pre-disposition release under *Mapp*, particularly given the government's limited representations on that question.

**A. Habeas Corpus Review**

District Courts have "inherent power" to consider habeas petitions and grant relief. *Mapp*, 241 F.3d at 226 (citing *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978)). The power is also statutory, as Section 2241 states that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice

44

thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241. "Congress has authorized federal district courts to grant a writ of habeas corpus whenever a petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Black v. Decker*, 2020 WL 4260994, at *5 (S.D.N.Y. July 23, 2020), *aff'd*, 103 F.4th 133 (2d Cir. 2024) (cleaned up).

Historically, "common-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed upon the circumstances." *Boumediene*, 553 U.S. at 779. The "equitable and flexible nature of habeas relief" continues in our system today. *Velasco Lopez*, 978 F.3d at 855. Where appropriate, courts must use their authority to consider not only the present circumstances of confinement, but the actions that led to it. "The intended duration of the detention and the reasons for it bear upon the precise scope of the inquiry. . . . The habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Boumediene*, 553 U.S. at 783. As the *Velasco Lopez* court stated, "[t]he purpose of habeas corpus is to impose limitations on the Government's ability to do these things." 978 F.3d at 855.

The nature of the detention, and any other proceedings that have occurred, will impact the rigor of review. "Where a person

45

is detained by executive order, rather than, say, after being
tried and convicted in a court, the need for collateral review
is most pressing. . . . In this context the need for habeas
corpus is more urgent." *Boumediene*, 553 U.S. at 783.
Accordingly, this Court must conduct an "urgent" investigation
of Ms. Ozturk's detention and consider "both the cause for
detention and the Executive's power to detain." *Id.*

The current questions before this Court are how to evaluate
Ms. Ozturk's claims at this stage of the proceedings and what,
if any, relief is appropriate. Ms. Ozturk argues that her
detention pursuant to the government's authority under 8 U.S.C.
§ 1226(a) is unconstitutional because it is motivated by an
impermissible purpose. She acknowledges that § 1226(a) grants
the government discretion generally as it relates to decisions
to detain individuals who may be subject to removal, but, as her
counsel argued in court, "there's no discretion to violate the
Constitution." ECF No. 98 at 51; *see also id.* at 77 (citing
*Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1261
(2d Cir. 1975) and *Bates v. Town of Cavendish, Vermont*, 735 F.
Supp. 3d 479, 506 (D. Vt. 2024) for the proposition that
government officials cannot violate the Constitution despite
grants of discretion). If her detention is unconstitutional, the
likely remedy is release.

46

In addition to habeas corpus relief, Ms. Ozturk has asked the Court to grant her immediate release pending the adjudication of her Petition. Such release is governed by the *Mapp* factors which, as noted above, require the Court to find that the habeas petition raises "substantial claims" and that "extraordinary circumstances" exist "that make the grant of bail necessary to make the habeas remedy effective." *Id.* at 230 (cleaned up).

The Court must also consider the government's request for dismissal. In *Ashcroft v. Iqbal.* 556 U.S. 662 (2009), the Supreme Court considered claims of unconstitutional conduct relating to immigration detention. *Iqbal* requires the complaint to state "a plausible claim for relief" and "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. However, if "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the Court cannot sustain a claim. *Id.* In short, "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

For the reasons set forth below, the Court finds that Ms. Ozturk has presented significant evidence supporting her constitutional claims, and that those claims easily meet the *Iqbal* standard. Ms. Ozturk argues that her detention is in retaliation for her political speech, thus violating her rights

47

under the First and Fifth Amendments. Her evidence supports her
argument that the government's motivation or purpose for her
detention is to punish her for co-authoring an op-ed in a campus
newspaper which criticized the Tufts University administration,
and to chill the political speech of others. The government has
so far offered no evidence to support an alternative, lawful
motivation or purpose for Ms. Ozturk's detention.

**B. Summary of Facts Supporting Constitutional Claims**

Over a year ago, on March 26, 2024, Ms. Ozturk was one of
four co-authors of an op-ed published in a student newspaper.
*The Tufts Daily* "is the entirely student-run newspaper of record
at Tufts University" which regularly publishes "op-eds submitted
by readers and members of the Tufts community." *About Us*, The
Tufts Daily, https://www.tuftsdaily.com/page/about. The op-ed
was titled "Try again, President Kumar: Renewing calls for Tufts
to adopt March 4 TCU Senate resolutions." Ms. Ozturk describes
the op-ed as "criticiz[ing] the University's dismissal of
several resolutions that had been adopted by the undergraduate
student Senate as 'a sincere effort to hold Israel accountable
for clear violations of international law.' The op-ed urged
Tufts to "trust in the Senate's rigorous and democratic process'
and 'meaningfully engage with and actualize the resolutions
passed by the Senate.'" ECF No. 12 at 2.

Tufts University "declares that this opinion piece was not in violation of any Tufts policies" and "[t]he University maintains that the op-ed was consistent with speech permitted by the Declaration on Freedom of Expression adopted by [University] trustees on November 7, 2009." ECF No. 26 at 67. This declaration from Tufts University was signed by President Kumar, the addressee of Ms. Ozturk's co-authored op-ed. *Id*. at 69.

Ms. Ozturk supports her claim that her adverse treatment from the government is improperly motivated by pointing to several statements made by high-level government officials.[6] On May 14, 2024, then-candidate Donald Trump reportedly said, "any student that protests, I throw them out of the country. You know, there are a lot of foreign students. As soon as they hear that, they're going to behave."[7] On March 28, 2025, Secretary of State Marco Rubio delivered remarks to the press regarding Ms. Ozturk's detention. U.S. Department of State, *Secretary of State*

---

[6] Though Ms. Ozturk offers these statements to support her argument that her detention is related to her speech, these statements do not always neatly differentiate between the issues of visa revocation, legal status in the country, detention, and removal. *See, e.g.*, Secretary Rubio's statement on March 27, 2025, "We'll revoke your visa, and once your visa is revoked, you're illegally in the country and you have to leave." *Secretary Rubio Defends Revoking Turkish Student's Visa*, C-SPAN (Mar. 27, 2025), https://www.c-span.org/clip/news-conference/secretary-rubio-defends-revoking-turkish-students-visa/5158479.

[7] Josh Dawsey, et al., *Trump told donors he will crush pro-Palestinian protests, deport demonstrators*, Washington Post (May 27, 2024), https://www.washingtonpost.com/politics/2024/05/27/trump-israel-gaza-policy-donors/.

*Marco Rubio Remarks to the Press* (Mar. 28, 2025),
https://www.state.gov/secretary-of-state-marco-rubio-remarks-to-
the-press-3/. Secretary Rubio stated in response to a question
about Ms. Ozturk, "The activities presented to me meet the
standard of what I've just described to you: people that are
supportive of movements that run counter to the foreign policy
of the United States." Secretary Rubio further indicated that
Ms. Ozturk's detention was the government "basically asking them
to leave the country." He explicitly noted that "that's why
they've been detained."

Secretary Rubio, however, alluded that the government had
more evidence than the op-ed to support Ms. Ozturk's detention,
stating: "I would caution you against solely going off of what
the media has been able to identify, and those presentations, if
necessary, will be made in court." A March 21, 2025 memo from a
Senior Bureau Official in the Bureau of Consular Affairs with
the Department of State states that, "in response to a request
from DHS/ICE and the assessment from DHS/ICE that Rumeysa OZTURK
had been involved in associations that 'may undermine U.S.
foreign policy by creating a hostile environment for Jewish
students and indicating support for a designated terrorist
organization' *including* co-authoring an op-ed that found common
cause with an organization that was later temporarily banned

from campus, the Bureau of Consular Affairs" revoked Ms.
Ozturk's visa. ECF No. 91 at 6 (emphasis added).

Ms. Ozturk has also provided declarations to this Court
supporting her claim that the manner of her arrest and detention
are irregular. Declarations from five immigration attorneys in
New England provide evidence that her movements through at least
five states and several different government facilities within
24 hours of arrest may be atypical for an individual in her
situation. ECF No. 82 at 17-18. In particular, Ms. Ozturk has
offered evidence to dispute the government's claims that she has
been detained in Louisiana because there were no appropriate
beds available in New England at the time of her detention. *Id.*
at 20.

The government has presented little evidence to rebut Ms.
Ozturk's constitutional violation claims. As noted above, the
government has offered a declaration from the Acting Deputy
Field Office Director for ICE in Burlington, Massachusetts
regarding ICE detention procedures and available bedspace. ECF
No. 19-1. The government has not offered any evidence
specifically regarding its motivation or rationale for Ms.
Ozturk's detention.

### C. First Amendment Claim

The First Amendment's protection of the right to free
speech is often considered the cornerstone of our vibrant

American democracy. As Benjamin Franklin famously wrote in 1737,

"Freedom of speech is a principal pillar of a free government;

when this support is taken away, the constitution of a free

society is dissolved." The Supreme Court has confronted

restrictions on the right to free speech countless times since

our founding, and it recently summarized the history, scope, and

importance of the right to freedom of speech:

> The framers designed the Free Speech Clause of the
> First Amendment to protect the freedom to think as you
> will and to speak as you think. They did so because
> they saw the freedom of speech both as an end and as a
> means. An end because the freedom to think and speak
> is among our inalienable human rights. A means because
> the freedom of thought and speech is indispensable to
> the discovery and spread of political truth. By
> allowing all views to flourish, the framers
> understood, we may test and improve our own thinking
> both as individuals and as a Nation. For all these
> reasons, if there is any fixed star in our
> constitutional constellation, it is the principle that
> the government may not interfere with an uninhibited
> marketplace of ideas. . . . [t]he First Amendment
> protects an individual's right to speak his mind
> regardless of whether the government considers his
> speech sensible and well intentioned or deeply
> misguided and likely to cause anguish and incalculable
> grief. Equally, the First Amendment protects acts of
> expressive association.

*303 Creative LLC v. Elenis*, 600 U.S. 570, 584-86 (2023)

(internal citations and quotations omitted).

It is against this backdrop that Ms. Ozturk alleges that

her detention is retaliation for political speech which is core

First Amendment protected conduct. The only specific act cited

by the government so far as justification for any of their

adverse actions towards Ms. Ozturk is her co-authored op-ed. ECF
No. 91-1. The Supreme Court has repeatedly "reaffirmed that
speech on public issues occupies the highest rung of the
hierarchy of First Amendment values, and is entitled to special
protection," *Connick v. Myers*, 461 U.S. 138, 145 (1983)
(internal quotation omitted), because "political speech [is] at
the core of what the First Amendment is designed to protect,"
*Virginia v. Black*, 538 U.S. 343, 365 (2003). As a general rule,
"the First Amendment means that government has no power to
restrict expression because of its message, its ideas, its
subject matter, or its content." *Ashcroft v. Am. Civil Liberties
Union*, 535 U.S. 564, 573 (2002). Furthermore, First Amendment
protections have long extended to noncitizens residing within
the country. *Bridges v. Wixon*, 326 U.S. 135 (1945).

The Court hesitates to characterize the content of Ms.
Ozturk's speech, which is obviously about public issues, but it
is necessary to clarify that Ms. Ozturk's op-ed does not readily
fall into one of the established exemptions to the First
Amendment's protection from government speech regulation. The
op-ed focuses largely on the authors' belief that the Tufts
University administration erred by not affording sufficient
deference to resolutions adopted by the Tufts undergraduate
student senate. The op-ed quotes school documents to argue that
the school administrators are not upholding their stated values

53

of supporting critical thinking and debate in the community. The authors express their belief regarding violations of international law that have motivated the student senate's resolutions. And as the Armstrong Memorandum cites, the authors note alignment in rejecting the university administration's response to the student senate recommendations with another organization later temporarily barred from the Tufts campus for actions the organization took well after the publication of this op-ed. The op-ed culminates with the co-authors "urg[ing] President Kumar and the Tufts administration to meaningfully engage with and actualize the resolutions by the Senate." Taken together, the op-ed is self-evidently speech regarding public issues, albeit largely focused on the parochial politics of university governance.

The Supreme Court has recognized only "a few limited areas" where the First Amendment permits restrictions based on the content of speech. *See United States v. Stevens*, 559 U.S. 460, 468 (2010) (citation omitted). The Supreme Court summarized these areas in the recent *Counterman v. Colorado* case: "incitement—statements directed at producing imminent lawless action, and likely to do so," "defamation—false statements of fact harming another's reputation," "obscenity—valueless material appealing to the prurient interest," and "true threats of violence." 600 U.S. 66, 73-74 (2023) (cleaned up). This Court

does not believe that a reasonable reader of the op-ed would find a true threat or incitement of lawless action, let alone obscenity or defamation. Tufts University has confirmed that the op-ed did not violate any Tufts policy, that no complaints were filed about the op-ed, that the speech in the op-ed was consistent with University guidelines, and indeed that it was just one of many op-eds discussing the issue published in the school newspaper. ECF No. 26-1 at 67.

The First Amendment protects individuals from government action that is based on improper motives, namely silencing disfavored speech. The Second Circuit has long recognized retaliation in violation of the First Amendment as a defense from government enforcement. In recently affirming this Court, the Circuit identified the appropriate standard: "A plaintiff must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Demarest v. Town of Underhill*, 2025 WL 88417, at *2 (2d Cir. Jan. 14, 2025) (summary order) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 222 (2d Cir. 2015)) (cleaned up). In the criminal context, the Supreme Court has expanded on the standard for the third element: "With respect to the third requirement, '[i]t is not enough to show that an official acted with a retaliatory motive

and that the plaintiff was injured – the motive must cause the injury.'" *Id.* (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Nieves* 587 U.S. at 399). However, given the different nature of criminal detention and immigration detention, as discussed above, it is not altogether clear that this interpretation controls the habeas inquiry. *See Gonzalez v. Trevino* 602 U.S. 653, 658 (2024) (rejecting an "overly cramped" reading of the *Nieves* standard). Regardless of whether it binds the Court here, *Nieves* serves to highlight the importance of identifying the motive for detention.

The Second Circuit has specifically recognized potential retaliation for protected political speech as a cognizable ground for habeas relief in the immigration context, noting that "to allow this retaliatory conduct to proceed would broadly chill protected speech, among not only activists subject to final orders of deportation but also those citizens and other residents who would fear retaliation against others." *Ragbir*, 923 F.3d at 71.

Ms. Ozturk has presented evidence to support her argument that she may qualify for a retaliation claim. Administration officials have identified her speech as the reason her visa was

revoked. If this Court were evaluating the question of motivation for Ms. Ozturk's visa revocation, this inquiry could likely conclude now. It may well be that the Ms. Ozturk's detention shares common motivation with her visa revocation. But as this Court has found that visa revocation and detention proceedings are not inextricably linked, the Court seeks additional evidence of the connection between Ms. Ozturk's speech and her detention.

The court in *Ragbir*, decided before *Nieves*, found that a retaliation claim was satisfied by "plausible — indeed, strong — evidence that officials responsible for the decision to deport him did so based on their disfavor of Ragbir's speech." 923 F.3d at 73. Regardless of whether the standard for establishing a connection is "plausible," "strong," or "causation," the Court's inquiry would benefit from the ability to consider additional evidence. For present purposes it is sufficient to find that Ms. Ozturk's First Amendment claims are serious and worthy of further exploration in this Court.

Secretary Rubio has argued publicly that there are additional justifications for the government's actions adverse to Ms. Ozturk and that these justifications may be filed in court if necessary. The Court invites an immediate submission any such evidence in this case. In the absence of additional information from the government, the Court's habeas review is

likely to conclude that Ms. Ozturk has presented a substantial claim.

### D. Due Process Claim

The Due Process Clause of the Fifth Amendment protects the right of "any person" from "be[ing] deprived of life, liberty, or property, without due process of law." "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Ms. Ozturk alleges that her detention violates the Due Process Clause because it serves no legitimate purpose, or in the alternative because it is motivated by improper purposes. Her due process claims are grounded in a "line of cases which interprets the Fifth and Fourteenth Amendments' guarantee of 'due process of law' to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). Substantive due process claims are available in the context of immigration detention. *Zadvydas*, 533 U.S. at 694 (citing *Wong Wing v. U.S.*, 163 U.S. 228 (1896)). And "the Due Process Clause covers noncitizens, whether their presence here is lawful,

58

unlawful, temporary, or permanent." *Velasco Lopez*, 978 F.3d at
850 (citing *Zadvydas*, 533 U.S. at 693).

In the civil immigration context, potential requirements of
the Due Process Clause frequently conflict with the prerogatives
of Congress and the Executive to manage immigration and foreign
affairs. As discussed above, Congress has granted the Executive
the authority to detain individuals such as Ms. Ozturk pending a
removal decision under 8 U.S.C. § 1226(a). Though detentions
under § 1226(a) do not follow any judicial process, let alone a
criminal conviction, the Supreme Court has found that such
deprivation of liberty is not *per se* unconstitutional. The
Supreme Court "has recognized detention during deportation
proceedings as a constitutionally valid aspect of the
deportation process," *Demore*, 538 U.S. at 523, and determined
that "the Due Process Clause does not require [the government]
to employ the least burdensome means to accomplish its goal,"
*id.* at 528.

Civil detention may be permissible with lower procedural
requirements than criminal detention, but it is not permissible
for the same purposes. Specifically, the Supreme Court has long
recognized that the key rationale for allowing less process in
immigration cases than in criminal cases is that the immigration
system, including detention, is not punitive. *See, e.g., Fong
Yue Ting v. United States*, 149 U.S. 698, 730 (1893); *AADC*, 525

59

U.S. at 491. ICE acknowledges this principle with respect to
immigration detention, *Detention Management*, U.S. Immigrations
and Custom Enforcement, https://www.ice.gov/detain/detention-
management (updated Apr. 16, 2025)("Detention is non-
punitive."), and for good reason. The Supreme Court has
reiterated that immigration detention is "civil, not criminal,
and we assume that they are nonpunitive in purpose and effect."
*Zadvydas*, 533 U.S. at 690. Justice Kennedy confirmed the
majority's understanding in that case that "both removable and
inadmissible aliens are entitled to be free from detention that
is arbitrary or capricious. Where detention is incident to
removal, the detention cannot be justified as punishment nor can
the confinement or its conditions be designed in order to
punish." *Id.* at 721 (Kennedy, J., dissenting). Rather than
punishment, immigration detention must be motivated by the two
valid regulatory goals that the government has previously argued
motivate the statute: "ensuring the appearance of aliens at
future immigration proceedings and preventing danger to the
community." *Id.* at 690 (cleaned up). So long as detention is
motivated by those goals, and not a desire for punishment, the
Court is generally required to defer to the political branches
on the administration of the immigration system.

     Ms. Ozturk argues that her detention is punitive, in
addition to the First Amendment retaliation claims discussed

above. The Secretary of State's recent comments imply that her
detention is motivated by a desire to compel her to voluntarily
depart the country. U.S. Department of State, *Secretary of State
Marco Rubio Remarks to the Press* (Mar. 28,
2025),https://www.state.gov/secretary-of-state-marco-rubio-
remarks-to-the-press-3/. The Secretary also suggests that her
detention advances a message to others in similar situations
that they should choose to leave the country rather than face
detention. "They can do so tomorrow. Buy an airplane ticket and
leave." However, courts have not sanctioned the use of the
immigration detention system to strike fear in or punish
individuals who may seek to contest their removal through lawful
administrative and judicial channels designed for that purpose.
This is an important distinction between civil detention and
criminal incarceration, which allows for punishment and
deterrence. Courts' less exacting due process scrutiny has thus
far been premised on the assumption that the system is operating
for permitted purposes.

Ordinarily, the government may not need to justify its
discretionary decision to detain an individual pursuant to 8
U.S.C. § 1226(e), and it has presented no evidence here as to
its motivations for Ms. Ozturk's detention. Ms. Ozturk's counsel
has informed the Court that DHS contended in immigration court
that "Ms. Ozturk poses a flight risk," though Ms. Ozturk's

attorneys have characterized that claim as "unsupported." ECF No. 99 at 1. An immigration judge found "Danger and Flight Risk," but the Court has not seen the evidence that supported that determination, and Ms. Ozturk has submitted evidence to support the opposite conclusion. ECF 101-1 at 4. Where a detainee presents evidence that her detention, though discretionary, is motivated by unconstitutional purposes in violation of the Due Process Clause, the Court may reasonably conclude the same in the absence of countervailing evidence. As the Court continues consideration of Ms. Ozturk's habeas petition, it will allow the government to present evidence to rebut claims that her detention is improperly motivated.

### E. Ms. Ozturk Has Plausibly Alleged Constitutional Violations, But the Record Is Not Sufficiently Developed to Support Immediate Release

The record before the Court demonstrates that Ms. Ozturk has plausibly pled constitutional violations related to her detention. Ms. Ozturk's Free Speech and Due Process claims are serious, and the Court intends to continue to develop the facts on these issues. However, the Court does not find at this time that such pleadings are sufficient to satisfy the standard for immediate release, given the overarching deference towards the executive branch's authority in the area of immigration enforcement.

Both Ms. Ozturk and the government suggest that it is appropriate for the Court to consider Ms. Ozturk's claim for release pending the resolution of her habeas petition under the Second Circuit's standard in *Mapp*. As noted previously, the *Mapp* standard requires a court contemplating bail to "inquire into whether the habeas petition raises substantial claims and whether extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." 241 F.3d at 230 (cleaned up).

The Court does not find that it has sufficient information to support release under *Mapp*, nor does it determine that Ms. Ozturk is unlikely to be able to meet that standard with additional evidence. The Court notes at the outset that this case has been proceeding rapidly, and new evidence has been emerging regularly. For example, on Friday, April 11, 2025, Ms. Ozturk's counsel transmitted to the Court the Armstrong Memorandum, which contains probative evidence regarding the government's motivations but was received by Ms. Ozturk's counsel after the April 10 filing deadline on these issues. *See* ECF No. 91. Similarly, on Sunday, April 13, less than twenty-four hours before this Court held a hearing on these issues, Ms. Ozturk's counsel submitted as an exhibit an April 13, 2025 Washington Post article reporting on the existence of an additional State Department memorandum, though that memorandum

63

has not yet been provided to this Court. See ECF No. 95. These memoranda, along with any other evidence held by either party but not yet disclosed to the Court, are important to the resolution of both a request for release on bail and a final determination. The Court plans to move expeditiously towards the resolution of these factual questions.

### F. Scope of Federal Judicial Power

Rather than contest the merits of Ms. Ozturk's detention, the government has primarily argued that decisions regarding immigration detention fall squarely under the control of the political branches and should not be second guessed by the courts. This Court follows clear instruction of the Supreme Court on this matter and has "due regard for the deference owed to the Executive Branch in the conduct of foreign affairs." *Noem v. Abrego Garcia*, 2025 WL 1077101, at *1 (U.S. Apr. 10, 2025). This Court has not considered questions of foreign policy or immigration policy in the course of these proceedings. The Court concerns itself only with review of Ms. Ozturk's discretionary domestic detention, within the contours of established precedent.

To be clear, precedent in this Circuit has confirmed that Congress may restrict some judicial review of immigration cases. The *Mapp* decision found that "[t]here can be no doubt that, with respect to immigration and deportation, federal judicial power

is singularly constrained," 241 F.3d at 227, and that Congress
may have "plenary power over immigration matters [that] renders
this [habeas] authority readily subject to congressional
limitation," *id.* at 231. However, the *Mapp* Court also held that,
"[a]bsent a clear direction from Congress, federal judicial
power is unaltered, and the authority of the federal courts to
admit to bail parties properly within their jurisdiction remains
unqualified." *Id.* at 227. As discussed above, no such clear
direction applies here.[8]

Nonetheless, this backdrop will inform the scope and depth
of the Court's review into the merits of Ms. Ozturk's habeas
claims to ensure that the Court does not improperly intrude upon
the prerogatives of the other co-equal branches. *See AADC*, 525
U.S. at 491 (holding that in general courts should not assess
the legitimacy of the Executive's foreign policy objectives or
law enforcement priorities when considering deportation cases
though there may be "a rare case in which the alleged basis of
discrimination is so outrageous" as to warrant judicial review).
Where the executive branch has exercised powers assigned to it
by the legislative branch in compliance with the laws and

---

[8] Further it is not evident that the power of the political branches to
"constrain" or "limit" habeas review is the same as the power to
eliminate it in the district courts, particularly in the context of
detention. Consider the *Jennings* Court's hypothetical regarding
judicial review of inhumane conditions of confinement, which the
Supreme Court found "absurd" to channel to the circuit courts via a
petition for review. *Supra* note 4.

Constitution, this Court will not second guess the government's choices.

## IV.  Petitioner's Request for Return to Vermont

Ms. Ozturk has proposed that, if her request for immediate release is not granted, the Court order her returned to the District of Vermont. The Court finds that Ms. Ozturk's physical return to ICE custody within the District of Vermont is in the interest of justice because transfer would assist the Court's exploration of the important constitutional questions in this case, would allow the Court to conduct appropriate fact-finding including to support a potential bail hearing, and would otherwise have no impact on removal proceedings. Her physical return to Vermont would also give closely proximate effect to the order issued by the District of Massachusetts court at 10:55 p.m. on Tuesday, March 25, 2025, which was not heeded by the government.

### A. Ms. Ozturk's Presence in Vermont Will Facilitate the Fair and Expeditious Resolution of this Matter

The Court finds that Ms. Ozturk's presence in Vermont will facilitate her ability to work with her attorneys, coordinate the appearance of witnesses, and generally present her habeas claims, many of which are based on events that occurred in New England. A transfer to Vermont will also facilitate Ms. Ozturk's ability to receive a neutral medical evaluation, as her medical

66

condition will be a factor for the Court to consider when addressing the question of release. More generally, her presence in the courtroom will assist the Court in determining potential bail conditions and whether release is appropriate.

Ms. Ozturk has informed the Court that her treatment in the Louisiana facility is inadequate. She is suffering from severe asthma attacks and is not provided appropriate medication. Her place of detention is reportedly overcrowded and unsanitary. Her religious needs are not being addressed. The Court takes these issues into consideration when determining the necessity and equities of a transfer.

As discussed previously, the Second Circuit has recognized the "equitable and flexible nature of habeas relief." *Velasco Lopez*, 978 F.3d at 855. The Supreme Court has held that the "exercise of a court's equity powers . . . must be made on a case-by-case basis." *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). The "flexibility" inherent in "equitable procedure" enables courts "to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944). The Court also has the inherent authority and responsibility to protect the integrity of its proceedings which were undoubtedly impacted when Ms. Ozturk was transferred to Louisiana. *See Degen v. United States*,

67

517 U.S. 820, 823 (1996) ("Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities.").

Here, the Court finds that the equities strongly favor Ms. Ozturk's transfer to Vermont. Such transfer will expedite resolution of this matter, provide Ms. Ozturk ready access to legal and medical services, and address concerns about the conditions of her confinement. The Court further finds that a transfer to Vermont will not prejudice the government's removal proceedings, as she may participate in those remotely. The Court plans to proceed to resolution of the habeas petition quickly, and it is essential that Ms. Ozturk be a full participant in the process. Should her petition be denied, the government will have discretion over her place of confinement. Accordingly, pursuant to its inherent equitable power, as well its power under the All Writs Act, the Court orders Ms. Ozturk's transfer as set forth below. *See* 28 U.S.C. § 1651(a) (empowering courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law").

**B. Ms. Ozturk's Return to Vermont Will Give Effect to the District of Massachusetts Court's Order Preserving the Status Quo**

The United States District Court for the District of
Massachusetts issued a valid order in this case at approximately
10:55 p.m. on March 25, 2025. The order was transmitted to the
government immediately, both formally by the court and by Ms.
Ozturk's attorney. ECF No. 26-2 at 3. The order had been issued
by the court within an hour of Ms. Ozturk's attorney filing the
initial habeas petition.

The purpose of the District of Massachusetts' order was to
"order respondent to preserve the status quo." ECF No. 3 at 2.
The order had immediate effect and required that "petitioner
shall not be moved outside the District of Massachusetts without
first providing advance notice of the intended move." Moreover,
the court clearly understood that Ms. Ozturk's physical location
was critical to the court's jurisdiction. The court noted that
the order was intended to preserve its ability "to consider
whether it has subject-matter jurisdiction," and would be "valid
unless and until it is overturned." *Id.* The court further
clarified that the motivation for the order was the court's
recognition that "the action the court enjoins," i.e., Ms.
Ozturk's movement out of the state by the government, "would
otherwise destroy its jurisdiction or moot the case." *Id.*

The government apparently did not take any immediate steps
to comply with the order or to communicate with the court to
ascertain the court's intent. At oral argument, the government

was not able to say who learned about the order or when. The
government's only argument to date has been that the order may
have been impossible to comply with if construed literally,
because by 10:55 p.m., the government had already moved Ms.
Ozturk to Vermont. There is no evidence that officials in the
U.S. Attorney's Office in Massachusetts who were in contact with
Ms. Ozturk's attorney at the time and received the order, or
indeed any other government representatives, made contact with
the court to convey this perceived predicament.

Ms. Ozturk cites Second Circuit precedent stating that it
is the obligation of parties receiving orders from Article III
courts "to observe the objects for which the relief was granted
and to find a breach of the decree in a violation of the spirit
of the injunction, even though its strict letter may not have
been disregarded." *John B. Stetson Co. v. Stephen L. Stetson
Co.,* 128 F.2d 981, 983 (2d Cir. 1942). *Stetson* remains good law
in this Circuit, standing for the proposition that "'it is the
spirit of the order, not the letter, that must be obeyed.'"
*Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, 2020 WL 1900502, at *6
(S.D.N.Y. Apr. 17, 2020) (quoting *Titra California, Inc. v.
Titra Film*, 2001 WL 1382587, at *5 (S.D.N.Y. Nov. 6, 2001)); *see
also Salazar v. Buono*, 559 U.S. 700, 762 (2010) (Breyer, J.
dissenting) (citing *Stetson* for proposition that courts have
long looked to the intent of granted injunctive relief when

70

assessing compliance). The Court agrees that it is appropriate
to consider whether parties have complied with the spirit of an
injunction, where that spirit is readily discernible from an
order.

There is no question here that the District of
Massachusetts intended to preserve the status quo of Ms.
Ozturk's whereabouts while it assessed its jurisdiction to
consider the case. The government of course had already moved
Ms. Ozturk out of state, so that jurisdictional analysis may
have still resulted in the case being heard before this Court.
Nevertheless, the Court holds that after receipt of the order,
the government had an obligation to consider the intent of the
order, even if literal compliance with the order was impossible.
Ms. Ozturk has offered alternative potential actions that the
government could have taken upon receipt of the order, in lieu
of ignoring it entirely. ECF No. 82-1 at 22-23. At minimum, the
government should have informed the issuing court in a timely
fashion that compliance with the order was not literally
possible and sought out clarification. Informing the District of
Massachusetts would have allowed for that court to make any
necessary modifications to either its order or its determination
of its jurisdiction. Ignoring an order, particularly one issued
on an emergency basis in response to events that are currently

unfolding, is not the approach the Court expects from the government.

The remedy for the government ignoring the March 25, 2025, order is simple. Ms. Ozturk should be returned to the status quo at the time of issuance when she was in custody in the District of Vermont. This equitable relief, ordered under this Court's inherent habeas power, will give proximate effect to the District of Massachusetts's order without disadvantaging the government. Giving effect to the spirit of the District of Massachusetts' order is also necessary to ensure continued respect for orders issued by Article III courts. "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911). The Court declines to abet a slide into mockery in this case.

## Conclusion

For the foregoing reasons, the Court concludes that this case will continue in this Court with Ms. Ozturk physically present for the remainder of the proceedings.

The Court has determined that it retains jurisdiction over Ms. Ozturk's habeas petition which shall proceed in the District

of Vermont. The petition, filed in federal district court in Massachusetts, was properly transferred to this Court. There are no technical deficiencies that prevent this Court's consideration of this petition as if it were originally filed here. Furthermore, there is nothing in the INA that categorically prevents a federal district court from reviewing a habeas petition challenging discretionary detention. Therefore, there are no jurisdictional limitations on this Court's consideration of Ms. Ozturk's habeas claims related to her detention.

Upon review of the First Amendment and Due Process claims and the evidence presented by both parties, the Court concludes that Ms. Ozturk has presented viable and serious habeas claims which warrant urgent review on the merits. The Court plans to move expeditiously to a bail hearing and final disposition of the habeas petition, as Ms. Ozturk's claims require no less.

To support the Court's resolution of these issues, the Court orders that Ms. Ozturk be physically transferred to ICE custody within the District of Vermont no later than May 1, 2025. The Court orders that a bail hearing be scheduled in this Court for May 9, 2025, with Ms. Ozturk appearing in person. Parties are ordered to brief the Court and present all evidence related to the issue of bail by May 2, 2025. A hearing on the merits of the habeas petition will be held on May 22, 2025. The

Court stays the effect of this order for four days to allow
either party to appeal this order.


        DATED at Burlington, in the District of Vermont, this 18th
day of April 2025.

                                /s/ William K. Sessions III
                                Hon. William K. Sessions III
                                U.S. District Court Judge

**Addendum B**

**Proposed Issues to be Raised on Appeal and Applicable Standard of Review**

(1)     Whether the Immigration and Nationality Act deprives district courts of authority to order transfers of aliens pending removal proceedings.  De novo.

(2)     Whether the district court lacks jurisdiction over the habeas petition because it was never filed in Ozturk's place of confinement and has never named her immediate custodian as a respondent as *Rumsfeld v. Padilla* requires.  De novo.

(3)     Whether the Immigration and Nationality Act bars the district court's review of Ozturk's claims regarding her arrest, detention, and removal.  De novo.

(4)     Whether Ozturk adequately alleged her detention was retaliatory in violation of the First Amendment.  De novo.

(5)     Whether Ozturk adequately alleged her detention had an improper purpose in violation of the Due Process Clause.  De novo.