# No. 25-1019

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

### RUMEYSA OZTURK,
#### Petitioner-Appellee,

#### v.

### PATRICIA HYDE, in her official capacity as the New England Field Director for U.S. Immigration and Customs Enforcement; MICHAEL KROL, in his capacity as HSI New England Special Agent in Charge, U.S. Immigration and Customs Enforcement; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO A. RUBIO, in his official capacity as Secretary of State; DONALD J. TRUMP, in his official capacity as President of the United States, Respondents-Appellants.

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF VERMONT
### District Court Case No. 2:25-cv-374

---

## RESPONDENTS-APPELLANTS' OPENING BRIEF

---

**BRETT A. SHUMATE**
**Assistant Attorney General**
**Civil Division**

**DREW C. ENSIGN**
**Deputy Assistant Atty. General**
**Office of Immigration Litigation**

**MICHAEL P. DRESCHER**
**Acting United States Attorney**
**District of Vermont**

**DHRUMAN Y. SAMPAT**
**Senior Litigation Counsel**

**ALANNA T. DUONG**
**Senior Litigation Counsel**
**Civil Division, U.S. Dept. of Justice**
**P.O. Box 878, Ben Franklin Station**
**Washington, DC 20044**

**Attorneys for**
**Respondents-Appellants**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................ 1

STATEMENT OF JURISDICTION ............................................ 3

STATEMENT OF THE ISSUES ................................................ 3

STATEMENT OF THE CASE AND RELEVANT FACTS ...................... 4

    I.   Ozturk's Arrest and Transfers ....................................... 4

    II.  Proceedings in the District of Massachusetts ............... 6

    III. Proceedings in the District of Vermont ........................ 7

SUMMARY OF THE ARGUMENT ....................................... 11

STANDARD OF REVIEW .................................................... 13

PERTINENT STATUTES AND REGULATIONS ................. 13

    I.   Removal Proceedings .................................................. 13

    II.  Judicial Review .......................................................... 14

ARGUMENT ........................................................................ 16

    I.   The district court lacked jurisdiction to order the Government to transfer Ozturk from Louisiana to Vermont................................ 16

    II.  The district court lacked habeas jurisdiction over the petition .. 19

        A.    Habeas jurisdiction attaches only if the petition is filed in the district of confinement against the immediate custodian ................................ 20

        B.    None of the district court's justifications for finding habeas jurisdiction is correct .......................................... 22

C.     Ozturk's filing of an amended petition when she was located in Louisiana stripped the District of Vermont of any jurisdiction it might have acquired ...................................... 28

III.   The INA further bars the district court's review of Ozturk's claims ........................................................................... 30

    A.     Section 1252(g) .................................................... 30

    B.     Sections 1252(a)(5) and (b)(9) ............................. 40

IV.   Section 1226(e) bars Ozturk's challenge to detention ................. 45

CONCLUSION ..................................................................... 48

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adejola v. Barr,*
  408 F. Supp. 3d 284 (W.D.N.Y. 2019) ................................................... 18

*Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.,*
  510 F.3d 1 (1st Cir. 2007) ...................................................................... 18

*Ajlani v. Chertoff,*
  545 F.3d 229 (2d Cir. 2008) ................................................................... 41

*Alvarez v. ICE,*
  818 F.3d 1194 (11th Cir. 2016) .............................................................. 36

*Borbot v. Warden Hudson Cty. Corr.,*
  *Fac.*, 906 F.3d 274 (3d Cir. 2018) ......................................................... 46

*Braden v. 30th Jud. Cir. Ct. of Kentucky,*
  410 U.S. 484 (1973) ................................................................................ 21

*Boudin v. Thomas,*
  732 F.2d 1107 (2d Cir. 1984) ................................................................. 25

*Campbell v. Off. of Pers. Mgmt.,*
  694 F.2d 305 (3d Cir. 1982) ................................................................... 24

*Castillo v. Att'y Gen.,*
  109 F.4th 127 (3d Cir. 2024) .................................................................. 23

*Cooper Butt ex rel Q.T.R. v. Barr,*
  954 F.3d 901 (6th Cir. 2020) .................................................................. 37

*De Ping Wang v. Dep't of Homeland Sec.,*
  484 F.3d 615 (2d Cir. 2007) ................................................................... 24

*Delgado v. Quarantillo,*
  643 F.3d 52 (2d Cir. 2011) .........................................................13, 37, 40

*Demjanjuk v. Meese*,
   784 F.2d 1114 (D.C. Cir. 1986) ............................................................ 27

*Demore v. Kim*,
   538 U.S. 510 (2003)............................................................................... 32

*DHS v. Thuraissigiam*,
   591 U.S. 103 (2020)............................................................................... 45

*E. Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021) ................................................................ 11

*Elgharib v. Napolitano*,
   600 F.3d 597 (6th Cir. 2010) ................................................................ 38

*Ex Parte Endo*,
   323 U.S. 283 (1944)........................................................................... 8, 25

*Gomez v. Whitaker*,
   No. 6:18-CV-06900-MAT, 2019 WL 4941865 (W.D.N.Y. Oct. 8, 2019).
   ................................................................................................................ 18

*Gonzalez-Alarcon v. Macias*,
   884 F.3d 1266 (10th Cir. 2018) ............................................................ 42

*Griffin v. United States*,
   621 F.3d 1363 (Fed. Cir. 2010).............................................................. 23

*Harris v. Nelson*,
   394 U.S. 286 (1969)............................................................................... 24

*Humphries v. Various Fed. U.S. INS Emps.*,
   164 F.3d 936 (5th Cir. 1999) .................................................... 36, 38, 39

*INS v. St. Cyr*,
   533 U.S. 289 (2001)......................................................................... 15, 35

*J. E. F. M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) .......................................................... 40, 44

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018).......................................................... 9, 32, 41, 43, 44

*Jones v. Smith,*
   730 F.3d 142 (2d Cir. 2013) .................................................. 25

*Kumar v. Holder,*
   No. 12-cv-5261, 2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013) ............. 39

*Limpin v. United States,*
   828 F. App'x 429 (9th Cir. 2020) .......................................... 36

*Liriano v. United States,*
   95 F.3d 119 (2d Cir. 1996) ................................................ 23

*Mapp v. Reno,*
   241 F.3d 221 (2d Cir. 2001) .......................................... 10, 13

*Mathurin v. Barr,*
   No. 6:19-CV-06885-FPG, 2020 WL 9257062 (W.D.N.Y. Apr. 15, 2020)
   .............................................................................. 18

*Mayorga v. Meade,*
   No. 24-CV-22131, 2024 WL 4298815 (S.D. Fla. Sept. 26, 2024) ......... 46

*McNary v. Haitian Refugee Center, Inc.,*
   498 U.S. 479 (1991) ....................................................... 35

*Monsalvo v. Bondi,*
   604 U.S. ---, 145 S. Ct. 1232 (2024) ..................................... 41

*Nasrallah v. Barr,*
   590 U.S. 573 (2020) ....................................................... 41

*Ortega v. Bonnar,*
   415 F. Supp. 3d 963 (N.D. Cal. 2019) ..................................... 46

*Ozturk v. Hyde,*
   136 F.4th 382 (2d Cir. 2025) ....................................... 3, passim

*Ozturk v. Trump,*
   ---F.Supp.3d ---, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) ....... 7, passim

*P.M. v. Joyce*,
   No. 22-CV-6321 (VEC), 2023 WL 2401458 (S.D.N.Y. Mar. 8, 2023)....
   .................................................................................................. 18

*Paul v. INS*,
   348 F.3d 43 (2d Cir. 2003) .................................................. 23

*Preiser v. Rodriguez*,
   411 U.S. 475 (1973) ........................................................... 34

*Ragbir v. Homan*,
   923 F.3d 53 (2d Cir. 2019) ...................................... 38, 39, 40

*Rasmussen v. Gen. Dynamics Corp., Elec. Boat Div.*,
   993 F.2d 1014 (2d Cir. 1993) ............................................. 34

*Reno v. American-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999).............................................. 2, passim

*Reyna ex rel. J.F.G. v. Hott*,
   921 F.3d 204 (4th Cir. 2019) ............................................. 18

*Royal Canin U. S. A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025)......................................................... 28, 29

*Ruiz v. Mukasey*,
   552 F.3d 269 (2d Cir. 2009) .......................................... 40, 43

*Rumsfeld v. Padilla*,
   542 U.S. 426 (2004)............................................... 2, passim

*Saadulloev v. Garland*,
   No. 3:23-cv-00106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024)......... 46

*Saloum v. U.S. Citizenship & Imm. Servs.*,
   437 F.3d 238 (2d Cir. 2006) ............................................. 47

*Schlanger v. Seamans*,
   401 U.S. 487 (1971)........................................................... 28

*Singh v. Napolitano*,
   500 F. App'x 50 (2d Cir. 2012) ......................................... 40

*Tazu v. Att'y Gen.*,
   975 F.3d 292 (3d Cir. 2020) ................................................... 38

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) ............................................................... 35

*Tilton v. Sec. & Exch. Comm'n*,
   824 F.3d 276 (2d Cir. 2016) ................................................... 13

*Torres-Aguilar v. INS*,
   246 F.3d 1267 (9th Cir. 2001) ............................................... 47

*Trump v. J. G. G.*,
   145 S. Ct. 1003 (2025) ........................................................... 19

*United States v. Gonzalez-Roque*,
   301 F.3d 39 (2d Cir. 2002) ..................................................... 14

*United States v. Rexach*,
   896 F.2d 710 (2d Cir. 1990) ................................................... 13

*Van Dinh v. Reno*,
   197 F.3d 427 (10th Cir. 1999) ............................................... 18

*Vargas v. U.S. Dep't of Homeland Sec.*,
   No. 1:17-cv-00356, 2017 WL 962420 (W.D. La. Mar. 10, 2017) ........... 39

*Vasquez-Ramos v. Barr*,
   No. 20-CV-6206-FPG, 2020 WL 13554810 (W.D.N.Y. June 26, 2020).
   ................................................................................................ 18

*Velasco Lopez v. Decker*,
   978 F.3d 842 (2d Cir. 2020) ........................................... 46, 47

*Washer v. Bullitt County*,
   110 U.S. 558 (1884) ............................................................... 29

*Wood v. U.S.*,
   175 F. App'x 419 (2d Cir. 2006) ........................................... 18

*Xiao Ji Chen v. U.S. DOJ*,
   471 F.3d 315 (2d Cir. 2006) ................................................... 15

*Xiaobin Liu v. Holder*,
  415 F. App'x 298 (2d Cir. 2011) ........................................................ 47

*Zheng v. Decker*,
  No. 14-cv-4663 (MHD), 2014 WL 7190993 (S.D.N.Y. Dec. 12, 2014)......
  ................................................................................................................ 18

*Zundel v. Gonzales*,
  230 F. App'x 468 (6th Cir. 2007) .................................................... 38, 39

## Statutes

8 U.S.C. § 1101(a)(47)(B) .................................................................. 14

8 U.S.C. §1201(i) .................................................................. 4, 9, 44, 45

8 U.S.C. § 1226(a) ........................................................................ 4, passim

8 U.S.C. § 1226(e) ........................................................................ 3, passim

8 U.S.C. § 1227(a)(1)(B) .............................................................. 4, 5, 45

8 U.S.C. § 1229 .................................................................................. 13

8 U.S.C. § 1229a ................................................................................ 13

8 U.S.C. § 1229a(a)(1) ...................................................................... 13

8 U.S.C. § 1229a(c)(1)(A) ................................................................ 13

8 U.S.C. § 1231(g)(1) ........................................................................ 16

8 U.S.C. § 1252 .................................................................... 15, 41, 45

8 U.S.C. § 1252(a) .............................................................................. 14

8 U.S.C. § 1252(a)(2)(A) .................................................................. 15

8 U.S.C. § 1252(a)(2)(B) .............................................................. 15, 18

8 U.S.C. § 1252(a)(2)(B)(ii) ...................................................... 12, 17, 19

8 U.S.C. § 1252(a)(2)(C) .................................................................. 15

8 U.S.C. § 1252(a)(4) ......................................................... 15

8 U.S.C. § 1252(a)(5) ............................................. 2, passim

8 U.S.C. § 1252(b)(9) ............................................. 2, passim

8 U.S.C. § 1252(g) ................................................. 2, passim

8 U.S.C. § 1357(a) ......................................................... 32

28 U.S.C. § 1292(a)(1) ...................................................... 3

28 U.S.C. § 1361 ........................................................... 44

28 U.S.C. § 1631 ..................................... 7, 8, 22, 23, 24

28 U.S.C. § 1651 ..................................................... 3, 44

28 U.S.C. § 2241 ............................................. 12, passim

28 U.S.C. § 2242 ..................................................... 25, 27

## Rule

Federal Rule of Civil Procedure 15(c)(1)(C) ............................................. 29

## Regulations

8 C.F.R. § 1003.1 ......................................................... 14

8 C.F.R. § 1003.13 ....................................................... 13

8 C.F.R. § 1003.14(a) .................................................... 13

No. 25-1019

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**RUMEYSA OZTURK,**
**Petitioner-Appellee,**

**v.**

**PATRICIA HYDE, ET AL.,**
**Respondents-Appellants.**

## RESPONDENTS-APPELLANTS' OPENING BRIEF

## <u>INTRODUCTION</u>

The federal courts are courts of limited jurisdiction—and Congress specifically limited federal-court jurisdiction over immigration matters. Yet the district court's order—compelling the government to transfer Rumeysa Ozturk from a detention facility in Louisiana to a detention facility in Vermont—defies those limits at every turn in a way that irreparably harms the government.

To start, the district court lacked any authority to issue that extraordinary order. The Immigration and Nationality Act ("INA") strips judicial review over the discretionary determination about where an

alien is held during immigration proceedings—as almost every circuit to address the question has held.  On top of that, the district court ordered transfer to aid its consideration of Ozturk's habeas petition even though it had never acquired habeas jurisdiction to begin with.  The Supreme Court's decision in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), holds that petitioners can only file habeas petitions in their district of confinement—here, that district was Louisiana, not Vermont.  The district court then violated a further line of Supreme Court precedent establishing that the INA strips jurisdiction over this entire case, habeas or not.  Among much else, Ozturk challenges her arrest, detention, and removal.  But that is *exactly* what 8 U.S.C. § 1252(g) bars—as the Supreme Court held in *Reno v. American-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471 (1999).

The district court erred again when it determined that the INA channeling provisions, 8 U.S.C. §§ 1252(a)(5) and (b)(9), did not divest it of subject matter jurisdiction.  Congress created a singular path for aliens to raise challenges related to removal.  That path preserves Article III judicial review by way of a petition for review to the appropriate court of appeals.  The district court has no role to play in the process.  Finally,

2

8 U.S.C. § 1226(e) prohibits the district court from reviewing the Executive's decision to detain an alien. Ozturk's habeas petition challenges that decision, and Congress intended to divest courts from second-guessing these sorts of decisions. This Court should thus reverse the district court's decision.

## STATEMENT OF JURISDICTION

The district court's transfer order under the All Writs Act, 28 U.S.C. § 1651, is an appealable order under 28 U.S.C. § 1292(a)(1). *See Ozturk v. Hyde*, 136 F.4th 382, 389-90 (2d Cir. 2025).

## STATEMENT OF THE ISSUES

I.   Whether the INA deprives district courts of authority to order transfers of aliens pending removal proceedings.

II.  Whether the district court lacked habeas jurisdiction over Ozturk's petition because it was never filed in Ozturk's place of confinement and has never named her immediate custodian as a respondent as *Padilla* requires.

III. Whether the INA deprives the district court of subject-matter jurisdiction to review Ozturk's First and Fifth Amendment claims because they arise from, and are intertwined with, her removal proceedings.

3

IV.   Whether the INA further bars Ozturk's challenge to her detention.

## STATEMENT OF THE CASE AND RELEVANT FACTS

## I.   Ozturk's Arrest and Transfers

Ozturk is a citizen of Turkey.  *See* JA-288.  She entered the United States pursuant to a student visa.  JA-17, ¶ 8.  After the Department of State revoked her visa under 8 U.S.C. § 1201(i), U.S. Immigration and Customs Enforcement ("ICE") arrested Ozturk at approximately 5:25 PM on March 25, 2025, pursuant to 8 U.S.C. § 1226(a).  *See* JA-75, ¶ 5.  With her visa revoked, Ozturk is subject to removal under 8 U.S.C. § 1227(a)(1)(B) as an alien "whose nonimmigrant visa … has been revoked under section 1201(i)."  JA-76, ¶ 14; *see* 8 U.S.C. § 1227(a)(1)(B).

Prior to the arrest, ICE determined that there was no available bedspace for Ozturk at a facility within the New England region where she could be detained and still appear for a hearing in Immigration Court.  JA-75, ¶ 6.  ICE therefore decided that Ozturk would be transferred to the South Louisiana Correctional Facility in Basile, Louisiana, and made necessary transfer and flight arrangements.  *Id.* ¶¶ 6, 8.  Transfers out of state, and out of the Enforcement and Removal Operations ("ERO") Boston Area of Responsibility, are routinely

4

conducted after arrest, due to operational necessity. *Id.* ¶ 7. As a result, at 5:49 PM on March 25, ICE officials departed Somerville, Massachusetts, and transported Ozturk to Methuen, Massachusetts, arriving at 6:22 PM. *Id.* ¶ 10.

At 6:36 PM, ICE officials departed from Methuen and transported Ozturk to Lebanon, New Hampshire. *Id.* ¶ 11. At 9:03 PM, ICE officials departed Lebanon to transport Ozturk to the ICE field office in St. Albans, Vermont, arriving at 10:28 PM. *Id.* ¶¶ 12-13. While at the facility in St. Albans, ICE issued Ozturk a Notice to Appear in the Immigration Court at Oakdale, Louisiana, on April 7, 2025, and charged her as removable under 8 U.S.C. §1227(a)(1)(B). JA-76, ¶¶ 14-15.

Ozturk spent the night at the ICE Field Office in St. Albans, Vermont, on March 25. JA-75-76, ¶¶ 13, 16. On March 26 at 4:00 AM, ICE officials departed the St. Albans Field Office and transported Ozturk to the airport in Burlington, Vermont. JA-76, ¶ 16. At 5:31 AM, Ozturk departed Burlington. *Id.* ¶ 17. At 2:35 PM, she arrived in Louisiana and was transported to the South Louisiana Correctional Facility. *Id.* ¶¶ 18-19. At the time of Ozturk's arrest, ICE was not aware of a counsel of record. *Id.* ¶ 20. Once ICE obtained Ozturk's counsel's contact

5

information, it was provided to Ozturk, who then spoke with her counsel. *Id.* ¶¶ 20-21.

## II. Proceedings in the District of Massachusetts

Ozturk filed her original petition with the District of Massachusetts on March 25, 2025 at 10:01 PM. JA-1. Ozturk named as Respondents Patricia Hyde, the Acting Director of ICE's ERO Boston Field Office, Michael Krol, ICE's Boston Homeland Security Investigation's Special Agent in Charge, Todd Lyons, the Acting Director of ICE, and Kristi Noem, the Secretary of Homeland Security. JA-2. Ozturk alleged that she was "currently in custody in the District of Massachusetts" and that "one or more of the named Respondents is her immediate custodian." *Id.* ¶ 12. But Ozturk was in fact in Vermont, set to be transferred to Louisiana—a decision made by ICE officials before any petition was filed. JA-75, ¶¶ 6-8, 10-13.

On March 28, 2025, Ozturk filed an Amended Petition. JA-14. Ozturk added President Donald J. Trump and Secretary of State Marco Rubio as Respondents. JA-17-18, ¶¶ 9-14. She asserted that venue was proper in the District of Massachusetts under the theory that she "had been detained in the District of Massachusetts by [ICE] and under the

custody and control of ICE officials in Massachusetts at the time of the filing of this petition." JA-16-17, ¶ 7. Ozturk added claims under the First Amendment and the Administrative Procedures Act ("APA"), amended her claim under the Due Process Clause, and sought release on bail. JA-33. Ozturk asked that the district court order that she be returned to Massachusetts and that she be released. JA-35.

Respondents opposed the habeas petition and moved to dismiss it, and alternatively, to transfer the matter to the Western District of Louisiana. *See* JA-78-103 (transfer order). On April 4, 2025, the Massachusetts district court denied Respondents' motion to dismiss and its alternative request to transfer the matter to Louisiana. JA-102. Because Ozturk was, at the time of the filing, detained in Vermont, the Massachusetts district court transferred the action to the District of Vermont under 28 U.S.C. § 1631. *Id.*

## III. Proceedings in the District of Vermont

On April 18, 2025, after supplemental briefing, the Vermont district court denied the government's motion to dismiss. *See Ozturk v. Trump*, ---F.Supp.3d ---, 2025 WL 1145250 (D. Vt. Apr. 18, 2025), *amended sub nom. Ozturk*, 136 F.4th at 382. Addressing Ozturk's transfer to Vermont

7

under 8 U.S.C. § 1631, the district court concluded that, because Ozturk's petition could have been brought in the District of Vermont at the time it was filed, the Massachusetts district court's decision to transfer the petition to Vermont complied with § 1631. *Id.* at *5-6.

Turning to its jurisdiction, the district court concluded that Ozturk's transfer to the District of Vermont cured her failure to file the habeas petition in the district of confinement, and that ICE's transfer of Ozturk to the Western District of Louisiana did not deprive the court of jurisdiction. *Id.* at *6-7. Relying on *Ex Parte Endo*, the district court concluded that, had Ozturk filed her petition in Vermont on March 25, the court would have acquired jurisdiction on that date, and maintained jurisdiction after her transfer to Louisiana because a respondent with the power to effectuate her release remained within the reach of the District of Vermont. *Id.* at *8 (citing *Ex Parte Endo*, 323 U.S. 283 (1944); *Padilla*, 542 U.S. at 426). The district court also concluded that any failure by Ozturk to name an immediate custodian as a respondent was excused by her lack of knowledge of the custodian's identity, invoking the "unknown custodian exception." *Id.* at *8-9.

8

Regarding the jurisdictional bars under 8 U.S.C. §§ 1201(i), 1226(e), 1252(g), 1252(a)(5), and 1252(b)(9), the district court concluded that none of these provisions deprived it of jurisdiction to review Ozturk's habeas claims. *Ozturk*, 2025 WL 1145250, at *10-15. First, § 1226(e)'s bar on judicial review of discretionary judgment did not apply because, notwithstanding Ozturk's detention under the discretionary detention provision 8 U.S.C. § 1226(a), Ozturk had raised questions that were "fairly characterized as 'constitutional claims or questions of law.'" *Id.* at *10-11. Second, § 1201(i)'s bar regarding judicial review of visa revocation decisions did not apply because Ozturk was not challenging her visa being revoked. *Id.* at *12. Third, §§ 1252(a)(5), (b)(9), and (g)'s bars on judicial review of questions arising from removal proceedings and removal orders did not apply because Ozturk's claims for relief did not challenge her removal proceedings and thus did not "arise from" them. *Id.* at *11-15. In so ruling, the district court rejected the government's argument that, under *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the habeas corpus bar in § 1252(b)(9) includes challenges to a decision to detain or to seek removal. *Ozturk*, 2025 WL 1145250, at *13-15.

9

Addressing the merits of Ozturk's claim for purposes of immediate release under *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), the district court concluded that Ozturk adequately alleged her detention was retaliatory in violation of the First Amendment and had an improper purpose in violation of the Due Process Clause. *Ozturk*, 2025 WL 1145250, at *18-21. However, the district court found that it did not have sufficient information to support release under *Mapp* and deferred ruling for further factual development. *Id.* at *22.

Lastly, relying on the "equitable and flexible nature of habeas relief," the district court ordered that Ozturk be transferred to ICE custody within the District of Vermont no later than May 1, 2025. *Id.* at *23, 25. The district court stayed the effect of its order for four days. *Id.* at *25. On April 22, 2025, the government filed a notice of appeal and moved for a continued stay of its order pending appeal before this Court, which the district court denied. This Court denied the government's motion for emergency stay of the district court's order and ordered that Ozturk be transferred to ICE custody within the District of Vermont within seven days of its order. *See Ozturk*, 136 F.4th at 403-04.[1] After

---

[1] The decision of the stay panel, while published, is not binding on the

10

this Court denied the motion for a stay pending appeal, at Ozturk's request, the district court held a bail hearing on May 9, before Ozturk was to be transferred to Vermont and at which Ozturk appeared remotely. At the end of that hearing, the district court ordered her released, and she was released later that day from the Louisiana facility. *See* JA-497-98, 499-526.

## SUMMARY OF THE ARGUMENT

The district court's order should be set aside. The INA firmly commits the decision about where to detain an alien who is undergoing removal proceedings to the Executive's discretion. And Congress divested district courts of jurisdiction over challenges related to removal, regardless of how they are styled. When an alien challenges her detention on the ground that she should not be removed, it is in substance a challenge to her removal. But both the INA, which governs federal

---

merits panel because the inquiry with respect to the motion for stay of the district court's order differs from the merits panel's inquiry as to the motion for transfer. *Cf. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021) ("In deciding whether the court should stay the grant or denial of a preliminary injunction pending appeal, the stay panel is predicting the likelihood of success of the appeal. That is, the stay panel is predicting rather than deciding what our merits panel will decide.").

11

courts' jurisdiction over immigration-related orders, and the federal habeas statute, 28 U.S.C. § 2241, which governs federal courts' jurisdiction over habeas petitions, bar jurisdiction. Section 1252(a)(2)(B)(ii) deprives district courts of jurisdiction to dictate to the Executive Branch where it must detain an alien during removal proceedings. Section 1252(g) deprives district courts of jurisdiction to review claims arising from the decision or action to "commence proceedings." Sections 1252(a)(5) and (b)(9) deprive district courts of jurisdiction to review actions taken or proceedings brought to remove aliens, and channel such challenges to the courts of appeals. Finally, Section 1226(e) bars Ozturk's challenge to her detention. Yet blazing past these statutory bars, the district court ordered the Executive to transfer Ozturk. This Court should hold otherwise and reverse the district court's order.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's determination of subject matter jurisdiction and its conclusion that the federal courts have inherent authority to release habeas petitioners on bail. *See Mapp*, 241 F.3d at 224; *Delgado v. Quarantillo*, 643 F.3d 52, 54 (2d Cir. 2011); *Tilton v. Sec. & Exch. Comm'n*, 824 F.3d 276, 281 (2d Cir. 2016); *see generally United States v. Rexach*, 896 F.2d 710, 713 (2d Cir. 1990) ("Whether the district court applied correct principles of law is a matter of law that we may view *de novo*.").

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are reproduced in the addendum to this brief.

## I.    Removal Proceedings

Pursuant to the INA, removal proceedings generally provide the exclusive means for determining whether an alien is both removable and eligible for any relief or protection from removal. *See* 8 U.S.C. § 1229a. Section 1229, entitled "[i]nitiation of removal proceedings," explains that an alien must be given written notice of the initiation of removal proceedings though a charging document, which may include a "Notice to Appear." 8 U.S.C. § 1229; *see* 8 C.F.R. § 1003.13. To commence removal proceedings, the Department of Homeland Security ("DHS") files the

notice with the immigration court. *See* 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court.").

Removal proceedings are conducted before an immigration judge. 8 U.S.C. § 1229a(a)(1). "At the conclusion of [a removal] proceeding the immigration judge shall decide whether an alien is removable from the United States." *Id.* § 1229a(c)(1)(A). An immigration judge, however, does not have the last word in an alien's immigration proceedings. An alien can (and must, to preserve a claim) appeal an immigration judge's decisions to the Board of Immigration Appeals ("BIA"). *See United States v. Gonzalez-Roque*, 301 F.3d 39, 47-48 (2d Cir. 2002); 8 C.F.R. § 1003.1 (setting out the organization, jurisdiction, and powers of the BIA). An alien's order of removal does not become final until the BIA affirms the order, or the time permitted to appeal runs. 8 U.S.C. § 1101(a)(47)(B).

## II. Judicial Review

An alien may seek judicial review of the BIA's decision by filing a petition for review in the appropriate court of appeals. *See* 8 U.S.C. § 1252(a). Congress has repeatedly legislated to ensure federal circuit

courts are the exclusive Article III forum for aliens to challenge their administrative proceedings. Specifically, in 1996, Congress "comprehensive[ly]" amended the INA through passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *INS v. St. Cyr*, 533 U.S. 289, 291 (2001). Among other reforms, IIRIRA eliminated district court jurisdiction and provided that the courts of appeals oversee the immigration system exclusively through petitions for review. *See* 8 U.S.C. § 1252 (codifying IIRIRA's judicial review provisions, including later revisions discussed *infra*). Congress again amended the INA through the REAL ID Act of 2005. *Xiao Ji Chen v. U.S. DOJ*, 471 F.3d 315, 326 (2d Cir. 2006). The REAL ID Act repeatedly inserted language into the relevant provisions of 8 U.S.C. § 1252, clarifying that their jurisdiction-stripping effects apply notwithstanding any other provision of law, whether "statutory or nonstatutory," and confirmed that habeas review was not available. *See* REAL ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231 (2005) (quoted language codified at 8 U.S.C. §§ 1252(a)(2)(A), (B), (C), (a)(4), (a)(5), (b)(9)). Thus, Congress has repeatedly legislated to design, implement, and refine a three-tier administrative and judicial system—namely, the immigration court, the

15

BIA, and the Court of Appeals—to determine if and when an alien is removable from the United States. And Congress expressly excluded the district courts from that process.

## ARGUMENT

## I. The district court lacked jurisdiction to order the Government to transfer Ozturk from Louisiana to Vermont

The district court had no authority to order that Ozturk be transferred from her place of confinement in Louisiana to Vermont. Although the district court justified its transfer order on the "equitable and flexible nature of habeas relief," *Ozturk*, 2025 WL 1145250, at *23, the INA specifically forecloses that remedy.

The INA commits decisions about where to detain an alien pending removal proceedings to the Secretary of Homeland Security's sole discretion. The statute gives the Attorney General broad discretion to "arrest[] and detain[]" an alien "pending a decision on whether the alien should be removed from the United States," 8 U.S.C. § 1226(a), and it authorizes the Secretary to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," *id.* § 1231(g)(1). Having granted the Secretary that broad discretion, the INA then prohibits courts from reviewing those discretionary decisions,

16

"[n]otwithstanding any other provision of law," including the habeas corpus statute:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, … , no court shall have jurisdiction to review— … (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

*Id.* § 1252(a)(2)(B)(ii). Combined, these statutes unambiguously strip district courts of jurisdiction to adjudicate the Executive's determination of where an alien should be housed pending removal proceedings. And because district courts have no jurisdiction to *review* the Executive's decision of where an alien should be housed, they cannot bypass that jurisdictional limit by ordering through a transfer motion that the alien be detained elsewhere.[2]  Indeed, courts in this circuit have repeatedly held that district courts lack the authority to dictate to the Executive

---

[2] The stay panel reasoned that decisions about the place of detention are not "discretionary" because it says the Attorney General "*shall* arrange for appropriate places of detention." *Ozturk*, 136 F.4th at 395. However, the fact that the Attorney General has to find *a* place to detain an alien does not mean that *which* place is not a matter of discretion.

Branch where it must detain aliens during removal proceedings.[3] Federal courts have no authority to order that an alien be held in one ICE facility over another. *See also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities").

Although other circuits have reached a different conclusion, those decisions all rest on the faulty premise that § 1252(a)(2)(B) extends only to provisions that *expressly* confer discretion. *See, e.g.*, *Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 209-10 (4th Cir. 2019); *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 20 (1st Cir. 2007). But as this Court recognized in *Wood v. United States*, "statutory discretion" can come in many forms, including where the Secretary is given the power to do something, without being simultaneously "required" to do so in any "particular" way. 175 F. App'x

---

[3] *See, e.g.*, *Zheng v. Decker*, No. 14-cv-4663 (MHD), 2014 WL 7190993, at *15-16 (S.D.N.Y. Dec. 12, 2014); *Salazar v. Dubois*, No. 17-cv-2186 (RLE), 2017 WL4045304, at *1 (S.D.N.Y. Sept. 11, 2017); *Mathurin v. Barr*, No. 6:19-CV-06885-FPG, 2020 WL 9257062, at *11 (W.D.N.Y. Apr. 15, 2020); *P.M. v. Joyce*, No. 22-CV-6321 (VEC), 2023 WL 2401458, at *5 (S.D.N.Y. Mar. 8, 2023); *Vasquez-Ramos v. Barr*, No. 20-CV-6206-FPG, 2020 WL 13554810, at *6 (W.D.N.Y. June 26, 2020); *Adejola v. Barr*, 408 F. Supp. 3d 284, 287 (W.D.N.Y. 2019); *Gomez v. Whitaker*, No. 6:18-CV-06900-MAT, 2019 WL 4941865, at *6 (W.D.N.Y. Oct. 8, 2019).

419, 420 (2d Cir. 2006). So too here: The Secretary has discretion over whether and where to detain Ozturk; that sort of "discretionary judgment" is unreviewable. *See also* 8 U.S.C. § 1226(e). Even on their own terms, those cases are inapposite. Each case involves a challenge to some specific aspect of the transfer. None involved—let alone blessed— a court deciding for itself what judicial district is most "appropriate" in light of other considerations.

At bottom, the INA commits to DHS's discretion *where* to detain an alien in removal proceedings; a *transfer* order, by definition, interferes with that judgment call, and injects the courts into an area that Congress assigned exclusively to the Executive. *See* 8 U.S.C. §§ 1226(e), 1252(a)(2)(B)(ii).

## II. The district court lacked habeas jurisdiction over the petition

The district court had no power to act in this case because it never acquired habeas jurisdiction over Ozturk's petition. The Supreme Court has repeatedly made clear that for claims that "fall within the 'core' of the writ of habeas corpus," "jurisdiction lies in *only one district*: the district of confinement." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1005-06 (2025) (emphasis added) (citing *Padilla*, 542 U.S. at 443). For Ozturk,

that is the Western District of Louisiana.  The District of Vermont has no authority to adjudicate her habeas petition.

### A. Habeas jurisdiction attaches only if the petition is filed in the district of confinement against the immediate custodian

The Supreme Court's decision in *Padilla* established two rules for habeas jurisdiction:  First, a habeas petitioner may file that petition only in the district where she is detained, and, second, the petition must name the custodian detaining her in that district.  542 U.S. at 434-35.  Indeed, *Padilla* rebuked this Court's relaxed approach to the immediate custodian rule.  *See* 542 U.S. at 437-38 (rejecting the Second Circuit's "view that we have relaxed the immediate custodian rule in cases involving prisoners detained for 'other than federal criminal violations,' and that in such cases the proper respondent is the person exercising 'the reality of control over the petitioner'").

Under those straightforward rules, the district court lacked habeas jurisdiction.  When Ozturk filed her original habeas petition in the District of Massachusetts—naming supervisory officials, rather than her immediate custodian—she was located in Vermont.  *See* JA-2, 75-76.  And when Ozturk filed her amended habeas petition in the District of

20

Massachusetts—again, naming supervisory officials, rather than her immediate custodian—she was located in Louisiana. JA-17-18, 76. She was not in Massachusetts when her petition was first filed (or later amended) in that district, and no petition was filed in Vermont during the period she was located there. Therefore, the Vermont district court never acquired jurisdiction over this petitioner.

Moreover, neither her original nor amended petition named her immediate custodian when it was filed or amended, and her immediate custodian before she was released was not located within Vermont. Because her ultimate destination was Louisiana—a decision made prior to her arrest (JA-75, ¶ 6)—her custodian was the person who would have ultimate control over her, namely, the warden of the Louisiana facility (or at the very least, the warden of the Vermont facility when she was en route to Vermont). *See Padilla*, 542 U.S. at 435. As the Supreme Court recognized in *Braden v. 30th Judicial Circuit Court*, the prisoner's dispute was not with the State of Alabama, where he was held, but with the Commonwealth of Kentucky, because the Commonwealth of Kentucky had issued the detainer against him. *See* 410 U.S. 484, 499 (1973) (ruling that Alabama prisoner's habeas petition challenging

21

Kentucky detainer—which would result in future detention in Kentucky—is properly filed in Kentucky, not Alabama). Similarly, Ozturk's dispute was with the warden of the Louisiana facility, as that person could produce her to the habeas court. *See id.* ("In such a case, the State holding the prisoner in immediate confinement acts as agent for the demanding State, and the custodian State is presumably indifferent to the resolution of the prisoner's attack on the detainer."). Under *Padilla*, the Vermont court lacked habeas jurisdiction.

## B.     None of the district court's justifications for finding habeas jurisdiction is correct

None of the district court's reasons justifies its departure from *Padilla*'s straightforward command. As its primary rationale, the district court held that habeas jurisdiction was proper in Vermont by operation of the general transfer statute, which allows a district court to transfer a "civil action" where "there is a want of jurisdiction" to "any other … court … in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631; *see Ozturk*, 2025 WL 1145250, at *6. That was error. The general transfer statute cannot override the specific statutory perquisites for the exercise of habeas jurisdiction. Section 1631 serves a narrow function: "[T]o rescue cases

22

mistakenly filed in the wrong court, and to allow transfer to reach a just result." *Castillo v. Att'y Gen.*, 109 F.4th 127, 135 (3d Cir. 2024) (quotations omitted); *see Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996). Specifically, the statute allows transferee courts to excuse "technical obstacles" that would otherwise prevent it from exercising its *existing authority* over a case. *Griffin v. United States*, 621 F.3d 1363, 1365 (Fed. Cir. 2010). The statute thus provides that a court may transfer a case to another court "in which the action or appeal could have been brought at the time it was filed or noticed," and that case "shall proceed as if it had been filed in [that court] to which it is transferred on the date upon which it was actually filed." 28 U.S.C. § 1631.

There is a fundamental difference, however, between using § 1631 to excuse a threshold technical or procedural defect and using it to try to acquire *substantive authority* that a court lacks. The former is using the statute as intended; the latter is stretching it beyond its bounds. *See, e.g.*, *Paul v. INS*, 348 F.3d 43, 46 (2d Cir. 2003); *Liriano*, 95 F.3d at 122-23.

The district court's order falls on the wrong side of that line. Section 2241, at bottom, is a specific federal statute that authorizes the federal

courts to issue a specific sort of remedy (habeas), if and only if certain preconditions are satisfied. *See Padilla*, 542 U.S. at 434-35. Nothing in § 1631 vests the district court to issue habeas relief, when that court has not—and cannot—satisfied the specific statutory prerequisites that Congress set for doing so. Notably, this Court has held that § 1631 does not allow courts to ignore substantive limits on jurisdiction. *See De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 617-18 (2d Cir. 2007) ("Because we would have lacked jurisdiction over Wang's petition for review had it been filed in this Court 'at the time it was filed or noticed' in the District Court, transfer under § 1631 was not permitted."); *accord Campbell v. Off. of Pers. Mgmt.*, 694 F.2d 305, 309 n.6 (3d Cir. 1982). So too here: Nothing in § 1631 vests the district court to issue habeas relief, when that court has not—and cannot—satisfied the specific statutory prerequisites that Congress set for doing so.

Section 1631 does not apply for a second reason: It applies only to "civil actions." As the Supreme Court has recognized, labeling habeas proceedings as "civil actions" may be convenient shorthand, but "the label is gross and inexact," because habeas actions are "unique." *Harris v. Nelson*, 394 U.S. 286, 293-94 (1969). The issues in habeas proceedings

"are materially different from those dealt with in the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure," which is the reason why rules promulgated for civil cases should not be applied wholesale to habeas petitions "because their specific provisions are ill-suited to the special problems and character of such proceedings." *Id.* at 296, 300 n.7.

This Court has declined to bring habeas under the umbrella of "civil action[s]" in other statutory contexts. *See Boudin v. Thomas*, 732 F.2d 1107, 1112 (2d Cir. 1984) (addressing issue in context of Equal Access to Justice Act); *Jones v. Smith*, 730 F.3d 142, 146 (2d Cir. 2013) (holding that habeas petitions are not considered civil actions for purposes of Section 1915(g) of the Prison Litigation Reform Act). The takeaway is clear: habeas proceedings are distinct from civil actions, and so should not be subjected to the same rules (including transfer rules) that apply to civil actions. Doing so would undermine Congress's directive in 28 U.S.C. § 2242 that district courts may issue a habeas writ only if they have jurisdiction over the custodian of the petitioner. *Padilla*, 542 U.S. at 442.

*Ex Parte Endo* does not confer jurisdiction on the District of Vermont. The Supreme Court has explained that *Endo* supplies a

25

"limited" exception that applies only when a petitioner has "properly file[d]" a habeas petition in the original court. *Padilla*, 542 U.S. at 441. In those circumstances, the original court can "retain[]" jurisdiction, notwithstanding the government's subsequent decision to transfer the petitioner to a different judicial district. *Id.* Where habeas jurisdiction never vested in a district court, there is nothing for that court to retain. And that is the case here. Because Ozturk never filed a habeas petition in the District of Vermont when she was detained there, habeas jurisdiction never vested in the District of Vermont and so it had no jurisdiction to retain when Ozturk was transferred to Louisiana. Yet the stay panel failed to understand this reality and instead latched onto the district court's erroneous "could have been brought" fiction. *See Ozturk*, 136 F.4th at 391-92; *Ozturk*, 2025 WL 1145250, at *5-6. The bottom line, regardless of the fictions the stay panel or district court attempts to create, is that Ozturk never filed a petition when she was in Vermont.

The district court relied on the judge-made "unknown custodian exception" to excuse Ozturk's failure to name a proper respondent. That exception, however, allows a district court to relax the immediate-custodian rule (and the district-of-confinement rule) only in the "limited

26

and special circumstance[]" where the government is refusing to disclose the location of the habeas petitioner (and, therefore, the identity of the custodian) for a prolonged period and the petitioner's counsel cannot feasibly ascertain where the petitioner is being housed. *Demjanjuk v. Meese*, 784 F.2d 1114, 1115-16 (D.C. Cir. 1986); *see also Padilla*, 542 U.S. at 450 n.18 (exception applies when "a prisoner is held in an undisclosed location by an unknown custodian" because "it is impossible to apply the immediate custodian and district of confinement rules"). Those "limited and special circumstances," *Demjanjuk*, 784 F.2d at 1116, do not apply where, as here, counsel for Ozturk's inability to identify the proper custodian lasts for only a brief period.[4]  While the stay panel complained of the practical effect of this exception (*see Ozturk*, 136 F.4th at 393), the reality is that the exception only applies in "limited and special circumstances" where the custodian is actually *unknowable* for some deliberate and permanent reason. *See id.* at 115-16. And although the stay panel noted the "if known" language in § 2242, the panel glossed

---

[4]  For that reason, this is not a case where the alien is being held in an unknown location "for some unspecified period of time." *Ozturk*, 136 F.4th at 393.  As the stay panel acknowledged, *Ozturk*'s location was known to counsel for less than a day, as a result of the "security concerns" related to disclosing the location of an alien mid-transit. *Id.* at 392.

over the fact that Ozturk never named any warden of any facility as a respondent. *See* JA-2, 17-1. Notably, in both petitions she named only supervisory officials (*see* JA-2, 17-18), and indeed, even in her amended petition—filed a month after she arrived in Louisiana—she failed to name a warden. *See* JA-14, 76. The stay panel faulted the government for its action transporting Ozturk to Louisiana (though it followed procedures based on security concerns), but the panel readily excused Ozturk's counsel's lack of effort during that period, and even after it, to comply with *Padilla*. Because no exception applies, Ozturk's failure to name the proper respondent subject to a district court's jurisdiction is "fatal." *Schlanger v. Seamans*, 401 U.S. 487, 489-91 (1971).

### C. Ozturk's filing of an amended petition when she was located in Louisiana stripped the District of Vermont of any jurisdiction it might have acquired

Even if the Vermont court ever acquired habeas jurisdiction over Ozturk's habeas petition, it lost that jurisdiction when Ozturk amended her petition on March 28, 2025, when she was detained in Louisiana.

"The plaintiff is the master of the complaint, and therefore controls much about her suit." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (cleaned up). "If a plaintiff amends her complaint, the new

pleading 'supersedes' the old one:   The original pleading no longer performs any function in the case." *Id.*  Those same principles apply in the habeas context.  "When a petition is amended," the "cause proceeds on the amended petition." *Washer v. Bullitt County*, 110 U.S. 558, 562 (1884).  And an amended petition, just like an amended complaint, must satisfy the requirements of jurisdiction. *Cf. Royal Canin*, 604 U.S. at 39 (holding when plaintiffs amends complaint to remove federal claims, then federal court lacks supplemental jurisdiction and must remand).

At the time Ozturk amended her habeas petition, she was in the Western District of Louisiana, not Vermont, and her immediate custodian was located there, too. *See* JA-20, ¶¶ 30-31, 76 ¶¶ 18-19. Whatever can be said of the District of Vermont's claim over Ozturk's *original* petition, there is no basis for it to claim jurisdiction over the *amended* one.  Although the stay panel relied on the relation-back provision of Federal Rule of Civil Procedure 15(c)(1)(C) to justify the Vermont court's jurisdiction (*see Ozturk*, 136 F.4th at 393-94), Ozturk was already in Louisiana when she filed her amended petition *again* in Massachusetts and she *again* only named supervisory officials. *See* JA-17, 76.  Stated differently, any relation back does not help Ozturk

solve her jurisdictional issues. Thus, by the time she filed her amended complaint, habeas jurisdiction was only proper in the Western District of Louisiana. Moreover, the stay panel blamed "[a]ny confusion about habeas jurisdiction on the government's conduct during the twenty-four hours following Ozturk's arrest," *Ozturk*, 136 F.4th at 390, but such blame is unfounded. Once Ozturk was in Louisiana and was in contact with her attorney, nothing prevented her, through counsel, from filing the amended petition in the Western District of Louisiana or naming the warden of the Louisiana facility as a respondent.

## III. The INA further bars the district court's review of Ozturk's claims

The district court's order was also improper because multiple provisions of the INA independently strip district courts of jurisdiction to adjudicate habeas claims like this one.

### A. Section 1252(g)

Ozturk's preemptive challenge to her arrest, detention, and removal is barred by 8 U.S.C. § 1252(g). In § 1252(g), Congress provided that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings … against the alien," "notwithstanding

30

any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. By its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 of claims arising from a decision or action to commence removal proceedings. *See AADC*, 525 U.S. at 482. The decision as to the method by which removal proceedings are commenced, which is the genesis of Ozturk's detention, is a discretionary one that § 1252(g) renders non-reviewable by a district court . *See id*. at 487.

Importantly, the Supreme Court held that a prior version of § 1252(g) barred claims similar to those brought here. In *AADC*, aliens alleged that the "INS was selectively enforcing the immigration laws against them in violation of their First and Fifth Amendment rights," and the government admitted "that the alleged First Amendment activity was the basis for selecting the individuals for adverse action." 525 U.S. at 473-74, 488 n.10. Nonetheless, the Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)." *Id*. at 487.

The district court concluded that § 1252(g) does not apply by distinguishing between Ozturk's detention and the commencement of

31

removal proceedings; specifically, the court reasoned that the decision to detain Ozturk was discretionary and so her detention "did not flow naturally as a consequence of her removal proceedings." *Ozturk*, 2025 WL 1145250, at *23. The stay panel also embraced this distinction. *See Ozturk*, 136 F.4th at 396-97. But detention and removal proceedings go hand-in-hand. Detention is constitutionally authorized "for the brief period necessary for … removal proceedings," *Demore v. Kim*, 538 U.S. 510, 513 (2003), and the INA authorizes the Attorney General "to issue warrants for their arrest and detention *pending removal proceedings*," *Jennings*, 583 U.S. at 303 (emphasis added) (citing 8 U.S.C. § 1226(a)); *see also* 8 U.S.C. § 1357(a). The power to detain is incidental to the power to commence removal proceedings, and, like the commencement of removal proceedings, the decision to place an alien in detention requires an exercise of the Executive's discretion.

Although the phrase "arising from" is not "indefinitely elastic," *Ozturk*, 136 F.4th at 397, Ozturk's claims in this case do arise from the government's commencement of her removal proceedings. *See AADC*, 525 U.S. at 482. In its efforts to distinguish the decision to detain from the commencement of removal proceedings and Ozturk from *AADC*, the

32

stay panel failed to appreciate that Ozturk was detained *because* the government had decided to initiate removal proceedings against her. *Ozturk*, 136 F.4th at 397-98. Indeed, DHS served her with the Notice to Appear the day she was arrested. *See* JA-76, ¶¶ 14-15. Similarly, the stay panel's attempt to sideline *AADC* because "[t]he habeas claims in that case did not sound in unlawful detention at all," *Ozturk*, 136 F.4th at 398, falls flat. *AADC* held that § 1252(g) barred those petitioners' challenges to the commencement of removal proceedings against them. 525 U.S. at 943. And because the decision to detain is inextricably linked with the Executive's discretionary decision to commence removal proceedings, Ozturk's claim is barred for the same reason as the petitioners' in *AADC*. Moreover, at the time *AADC* was decided, Congress had not expanded § 1252(g)'s reach of judicial limit to explicitly cover habeas proceedings—a change that makes clear that Congress sought to sweep challenges to detention within the scope of § 1252(g). As such, detention determinations fall squarely within the government's "decision or action" to "commence proceedings" against Ozturk. 8 U.S.C. § 1252(g).

In addition, the district court's effort to drive a wedge between detention and removal proceedings cannot be reconciled with § 1252(g)'s express reference to the habeas statute. *See* 8 U.S.C. § 1252(g) (referencing 28 U.S.C. § 2241). After all, the whole purpose of habeas is to challenge the legality of detention. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (holding that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). If the act of detention is not included within the "decision[s] or action[s]" of the Attorney General that are shielded from judicial review by § 1252(g), then there would have been no need for Congress to list the habeas statute in § 1252(g), and its inclusion serves no purpose. *See Rasmussen v. Gen. Dynamics Corp., Elec. Boat Div.*, 993 F.2d 1014, 1017 (2d Cir. 1993) ("It is well settled that a statute must not be interpreted to render a portion of the statute meaningless or without effect.") (citation omitted). By contrast, reading § 1252(g) to treat detention pending removal to be part and parcel of the removal process, including the decision to commence proceedings, gives meaning to the entire statutory provision.

The history of § 1252(g) confirms this reading. Before the enactment of IIRIRA, district courts assumed jurisdiction over cases

34

brought forward by aliens who sought review of their deportation proceedings. *See, e.g., McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991). Through IIRIRA, Congress included "expansive language" demonstrating its "fairly discernable" intent to preclude district court involvement in removal cases, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215-16 (1994), but in *INS v. St. Cyr*, the Supreme Court held that IIRIRA's judicial review amendments did not preclude district court review of removal orders, and therefore aliens, who were barred from raising legal questions directly in the court of appeals could raise such claims in habeas proceedings. *See* 533 U.S. 289, 314 (2001). In response to *St. Cyr*, Congress enacted the REAL ID Act of 2005 and expanded IIRIRA's jurisdictional bars to expressly preclude habeas corpus review within the same statutory body that precludes judicial review of the government's decision "to commence proceedings, adjudicate cases, or execute removal orders." *See* 8 U.S.C. § 1252(g). By expanding § 1252(g) to include habeas Congress clearly intended to preclude review of the government's decision to detain an alien—even if presenting constitutional claims.

35

As her habeas petition makes clear, Ozturk is challenging the fact that she is detained on an improper removal ground. *See* JA-31-34, ¶¶ 69, 73-75, 78, 85-86. That falls within the heartland of § 1252(g). *See, e.g., Limpin v. United States*, 828 F. App'x 429, 429 (9th Cir. 2020) ("[C]laims stemming from the decision to arrest and detain an alien at the commencement of removal proceedings are not within any court's jurisdiction."); *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("[Section 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and reviewing "ICE's decision to take him into custody and to detain him during removal proceedings."); *Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (similar). Indeed, as the district court stated, Ozturk "seeks relief on her claims "challenging her apprehension, detention," "release from detention," and sought "corresponding declaratory and injunctive relief that the Policy that resulted in her apprehension, detention" are illegal. *Ozturk*, 2025 WL 1145250, at *12. Anything less would neuter the very purpose of § 1252(g): It would allow every alien to attack the merits of her removal, through a habeas suit nominally challenging her detention; and in turn, the government would be subject to the sort of burdensome,

parallel litigation the INA endeavored to stop. *AADC*, 525 U.S. at 482-86. Instead, what matters is the "substance" of the challenge. *Delgado*, 643 F.3d at 55. And where, as here, a challenge to detention is in substance a collateral attack on the decision to remove, § 1252(g) bars it.

The mere fact that Ozturk is presenting *constitutional* questions related to her detention and the commencement of removal proceedings does not grant the district court jurisdiction. The Supreme Court made clear in *AADC*—a case in which lawfully admitted residents alleged that they were placed in deportation proceedings because of their political affiliation—that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." 525 U.S. at 488. There, the government even admitted that "the alleged First Amendment activity was the basis for selecting the individuals for adverse action." *Id.* at 488 n.10. Nonetheless, the Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g). *Id.* at 487; *see also Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 908-09 (6th Cir. 2020) (holding that the district court did not have jurisdiction to review a claim that the plaintiffs' father "was removed

37

'based upon ethnic, religious, and racial bias' in violation of the Equal Protection Clause of the Fifth Amendment."); *Ragbir v. Homan*, 923 F.3d 53, 73 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020); *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007); *Humphries*, 164 F.3d at 945. Similarly here, Ozturk's allegation that the detention and the commencement of proceedings against her violate the First Amendment does not escape § 1252(g)'s reach. *See, e.g.*, *AADC*, 525 U.S. at 487-92.

As a result, district courts lack jurisdiction to review both statutory and constitutional claims because § 1252(g) bars review of "*any* cause or claim" that arises from the commencement of removal proceedings." *See, e.g.*, *Tazu v. Att'y Gen.*, 975 F.3d 292, 296-98 (3d Cir. 2020) (holding that any constitutional claims must be brought in a petition for review, not a separate district court action); *Elgharib v. Napolitano*, 600 F.3d 597, 602-04 (6th Cir. 2010) (noting that "a natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution" and finding additional support for the court's interpretation from the remainder of the statute); *Ragbir*, 923 F.3d at 73 (finding habeas jurisdiction appropriate only because the opportunity to

38

present the constitutional claim in a petition for review to the appropriate circuit court of appeal was no longer available); *Zundel*, 230 F. App'x at 475 (explaining that First Amendment challenges related to immigration enforcement action "is properly characterized as a challenge to a discretionary decision to 'commence proceedings' … [and] is insulated from judicial review"); *Humphries*, 164 F.3d at 345 (ruling that § 1252(g) prohibited review of an alien's First Amendment claim based on decision to put him into exclusion proceedings); *Vargas v. U.S. Dep't of Homeland Sec.*, No. 1:17-cv-00356, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) (claim that ICE "violated her First Amendment right to free speech by arresting her and initiating her removal after she made statements to the media … is barred by 8 U.S.C. §1252(g)."); *Kumar v. Holder*, No. 12-cv-5261, 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013) (claim of initiation of proceedings in a retaliatory manner "falls squarely within section 1252(g) … [and] [t]he pending immigration proceedings are the appropriate forum for addressing petitioner's retaliation claim in the first instance."). Of note, this Court in *Ragbir* analyzed § 1252(g) and the expansion of the jurisdictional limits the REAL ID Act implemented and found "that by adding the words

'statutory or nonstatutory,' Congress further clarified … it applies even to constitutional claims." *Ragbir*, 923 F.3d at 65.

## B.    Sections 1252(a)(5) and (b)(9)

The INA provides that "[j]udicial review of *all* questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action" to remove an alien are "available only in judicial review of a final order [of removal]." 8 U.S.C. § 1252(b)(9) (emphasis added). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed only through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Thus, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals." 8 U.S.C. §§ 1252(a)(5), (b)(2). That includes challenges inextricably intertwined with the final order of removal that precede issuance of any order of removal, as well as both direct and indirect challenges to removal orders. *See, e.g.*, *Delgado*, 643 F.3d at 55; *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009); *Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012). It also includes decisions to detain for

purposes of removal. *See Jennings*, 583 U.S. at 294 (Section 1252(b)(9) bar challenges to any "decision to detain [an alien] in the first place or to seek removal," which precedes any issuance of a Notice to Appear); *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) (recognizing that the REAL ID Act clarified that removal orders may not be reviewed in district courts, "even via habeas corpus".).

Through § 1252, Congress channeled into the statutorily prescribed removal process all legal and factual questions—including constitutional issues—that may arise from the removal of an alien, with judicial review of those decisions vested exclusively in the court of appeals. *See AADC*, 525 U.S. at 483. As a result, district courts are explicitly prohibited from adjudicating such issues. Instead, § 1252 requires an alien to exhaust all issues first in immigration court at the BIA, and then once subjected to a final order of removal, she may seek judicial review of any legal, constitutional, or factual question in the court of appeals through a petition for review. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9); *see also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008); *accord Monsalvo v. Bondi*, 604 U.S. ---, 145 S. Ct. 1232, 1241 (2024) ("Section 1252 permits individuals to petition for judicial review of 'final orders of removal' and

41

indicates that those petitions supply the *exclusive* means for securing '[j]udicial review of all questions of law.'" (emphasis added)).  Section 1252(b)(9) supports this goal because it covers "all questions of law and fact … arising from any action taken or proceeding brought to remove an alien" and that language covers detention-related challenges, especially when combined with challenges that question the validity of their removal proceedings.  *See, e.g.*, *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) ("Although Gonzalez-Alacron seeks release from detention, his claim is based on the alleged invalidity of his removal order.").

Congress divested the district court jurisdiction, including habeas jurisdiction, over claims like Ozturk's and instead channeled all challenges to immigration proceedings to the court of appeals.  *See* 8 U.S.C. § 1252(b)(9) (providing that "no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision" to review questions of law or fact that arises "from any action taken or proceeding brought to remove an alien from the United States" by any other means but review of a final order of removal).  The Supreme Court has recognized § 1252(b)(9) as an "unmistakable 'zipper' clause"

42

that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. Accordingly, Ozturk's claims in this case must be consolidated in one proceeding before the appropriate court of appeals after her removal proceedings conclude.

All this follows from a straightforward reading of § 1252(b)(9): "Section 1252(b)(9) is a 'general jurisdictional limitation' that applies to 'all claims arising from deportation proceedings' ... [including] [d]etaining an alien" and further describes "detention during removal proceedings as an 'aspect to the deportation process.'" *Jennings*, 583 U.S. at 318 (Thomas, J., concurring in part). As this Court put it, only when the action is "*unrelated* to any removal action or proceeding" is it within a district court's jurisdiction. *Ruiz*, 552 F.3d at 274 n.3 (emphasis added). Therefore, "[c]laims challenging detention during removal proceedings thus fall within the heartland of 1252(b)(9)." *Jennings*, 583 U.S. at 318 (Thomas, J. concurring in part). Ozturk's challenge falls under this umbrella. The stay panel thus missed the mark when it concluded that § 1252(b) does not apply because no order of removal is at issue (Ozturk's removal proceedings remain ongoing), and "even substantial substantive

overlap" does not make one claim arise out of the other. *See Ozturk*, 136 F.4th at 399-400. The operative language in § 1252(b)(9) is the "arising from" language. When a claim by an alien, however it is framed, challenges a determination that is inextricably linked to removal proceedings, as Ozturk's claims are here, it is covered by § 1252(a)(5). *Cf. J. E. F. M.*, 837 F.3d at 1031 ("Section 1252(b)(9) is … breathtaking in scope and vise-like in grip and therefore swallows up virtually all claims that are tied to removal proceedings."). This result is not "absurd," *Ozturk*, 136 F.4th at 401; it is simply a reflection of the fact that "detention *is* an 'action taken … to remove' an alien," *Jennings*, 583 U.S. at 318 (Thomas, J. concurring) (emphasis in original), and so falls squarely within the jurisdictional bar.

Section 1201(i) further confirms that Ozturk must bring her challenge through the petition-for-review process prescribed by the statute. After a visa is issued, a "consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation," and "[t]here shall be no means of judicial review (including review pursuant to *section 2241 of title 28 or any other habeas corpus provision*, and sections 1361 and 1651 of such title) of a revocation

44

under this subsection, *except in the context of a removal proceeding* if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title."  8 U.S.C. § 1201(i) (emphasis added).

That provision makes clear that the *only* avenue for judicial review of a visa revocation is through the petition-for-review process established in the INA.  Allowing Ozturk to pursue her challenge to her detention through a habeas proceeding would nullify Congress's claim-channeling and jurisdiction-stripping provisions.  It is also at odds with *Thuraissigiam*'s clarification that the scope of habeas jurisdiction not channeled by § 1252 excludes "the right to enter or remain" in the country—that is, the very definition of the challenge that Ozturk seeks review of here.  *DHS v. Thuraissigiam*, 591 U.S. 103, 117 (2020).

## IV.  Section 1226(e) bars Ozturk's challenge to detention

The district court's order is also barred by 8 U.S.C. § 1226(e).  Section 1226(a) is the discretionary detention statute that authorizes detention pending a final decision in removal proceedings.  *See* 8 U.S.C. § 1226(a) (authorizing ICE to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States").  Section 1226(e), in turn, bars judicial review of the discretionary decision

45

whether to detain someone placed in removal proceedings. It provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section *regarding the detention* of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e) (emphasis added).

Section 1226(e) divests the district court of jurisdiction to review DHS's decision to detain Ozturk. *See Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (finding that § 1226(e) did not bar review because the petitioner did not challenge "his initial detention"); *see also Borbot v. Warden Hudson Cty. Corr. Fac.*, 906 F.3d 274, 279 (3d Cir. 2018) (not applying § 1226(e) because the petitioner challenged the statutory framework for detention rather than "a particular action or decision"); *Mayorga v. Meade*, No. 24-CV-22131, 2024 WL 4298815, at *7 (S.D. Fla. Sept. 26, 2024) (applying § 1226(e) to hold that a § 1226(a) detainee "failed to establish that his detention is subject to review"); *Saadulloev v. Garland*, No. 3:23-cv-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) (recognizing that there is no judicial review of the threshold detention decision); *cf. Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D.

46

Cal. 2019) (not applying § 1226(e) because the petitioner did not challenge the "*initial detention* or bond decision") (emphasis added).

The district court refused to apply § 1226(e) on the theory that it does not preclude review of constitutional claims. *See Ozturk*, 2025 WL 1145250, at *10-11. And the stay panel refused to apply § 1226(e) because it does not contain an explicit provision barring habeas review. *See Ozturk*, 136 F.4th at 401. But this Court has routinely recognized that one cannot circumvent judicial review bars to discretionary decisions by cloaking them in constitutional garb. *See, e.g.*, *Saloum v. U.S. Citizenship & Imm. Servs.*, 437 F.3d 238, 243-44 (2d Cir. 2006) (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)); *Xiaobin Liu v. Holder*, 415 F. App'x 298, 300 (2d Cir. 2011). Although this Court has recognized that § 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law," a constitutional challenge to initial detention—that is, this case—is covered by § 1226(e). *Velasco Lopez*, 978 F.3d at 850.

## CONCLUSION

The Court should reverse the district court's transfer order.

Respectfully submitted,

*/s/Alanna T. Duong*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

MICHAEL P. DRESCHER
Acting United States Attorney
District of Vermont

DHRUMAN Y. SAMPAT
Senior Litigation Counsel

ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel:  (202) 305-7040
alanna.duong@usdoj.gov

June 27, 2025

Attorneys for
Respondents-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

The government requests oral argument in this case because argument would assist the Court's understanding of the facts and legal arguments.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

June 27, 2025                    Attorney for Respondents-Appellants


## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and (C), and Second Circuit Rule 32(a)(2), I certify that Microsoft Word 365 was used to prepare this opening brief and that the brief complies with the type-volume limitation because it uses proportionately spaced, 14-point Times New Roman typeface, and contains 9559 words, excluding the exempted parts.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

June 27, 2025                    Attorney for Respondents-Appellants

## CERTIFICATE OF SERVICE

I certify that on June 27, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate ACMS system. I further certify that all participants in the case are registered ACMS users and that service will be accomplished through that system.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

# ADDENDUM

# PERTINENT STATUTES

## 8 U.SC. § 1201(i) Revocation of visas or documents

After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation.  Notice of such revocation shall be communicated to the Attorney General, and such revocation shall invalidate the visa or other documentation from the date of issuance: *Provided*, That carriers or transportation companies, and masters, commanding officers, agents, owners, charterers, or consignees, shall not be penalized under section 1323(b) of this title for action taken in reliance on such visas or other documentation, unless they received due notice of such revocation prior to the alien's embarkation.  There shall be no means of judicial review (including review pursuant to section 2241 of Title 28 or any other habeas corpus provision, and sections 1361 and 1651 of such title) of a revocation under this subsection, except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title.

## 8 U.S.C. § 1226(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

## 8 U.S.C. § 1226(e) Judicial review

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

1

**8 U.S.C. § 1231(g) Places of detention**

**(1) In general**
The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal. When United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General may expend from the appropriation "Immigration and Naturalization Service--Salaries and Expenses", without regard to section 6101 of Title 41, amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities (including living quarters for immigration officers if not otherwise available) necessary for detention.

**8 U.S.C. § 1252(a)(2)(B) Denials of discretionary relief**

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--

…

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

2

**8 U.S.C. § 1252(a)(5) Exclusive means of review**

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

**8 U.S.C. § 1252(b)(9)**
**Consolidation of questions for judicial review'**

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

**8 U.S.C. § 1252(g) Exclusive jurisdiction**

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

**28 U.S.C. § 1631 Transfer to cure want of jurisdiction**

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

**28 U.S.C. § 2241 Power to grant writ**

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

(b) The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.

(c) The writ of habeas corpus shall not extend to a prisoner unless—

    (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

    (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

    (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

    (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

    (5) It is necessary to bring him into court to testify or for trial.

(d) Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

(e)(1) No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

5

(2) Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

## 8 U.S.C. § 2242 Application

Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf.

It shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known.

It may be amended or supplemented as provided in the rules of procedure applicable to civil actions.

If addressed to the Supreme Court, a justice thereof or a circuit judge it shall state the reasons for not making application to the district court of the district in which the applicant is held.