# 25-1019

# United States Court of Appeals
### *for the*
# Second Circuit

---

RÜMEYSA ÖZTÜRK,

*Petitioner-Appellee,*

— v. —

PATRICIA HYDE, in her official capacity as the New England Field Director for U.S. Immigration and Customs Enforcement, MICHAEL KROL, in his official capacity as HSI New England Special Agent in Charge, U.S. Immigration and Customs Enforcement, TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security, MARCO A. RUBIO, in his official capacity as Secretary of State, DONALD J. TRUMP, in his official capacity as President of the United States,

*Respondents-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT IN NO. 2:25-CV-374

---

**BRIEF OF *AMICI CURIAE* AMERICAN JEWISH ORGANIZATIONS IN SUPPORT OF PETITIONER-APPELLEE RÜMEYSA ÖZTÜRK AND AFFIRMANCE OF THE DISTRICT COURT'S DECISION**

---

ADAM S. SIEFF
RACHEL R. GOLDBERG
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, Suite 2700
Los Angeles, California 90071
(213) 633-6800

VICTOR A. KOVNER
ROBERT D. BALIN
JEREMY A. CHASE
LINDA STEINMAN
ABIGAIL EVERDELL
RACHEL STROM
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
(212) 489-8230

*Attorneys for Amici Curiae*

*(For Continuation of Appearances See Inside Cover)*

---

NATHAN SIEGEL
ALISON SCHARY
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW
Suite 500 East
Washington, DC 20005
(202) 973-4200

*Attorneys for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for amici curiae certifies that all amici curiae are non-profit corporations. None has a parent corporation, and no publicly held corporation holds 10% or more of any stock in these amici curiae.

Respectfully submitted,

/s/  Victor A. Kovner

Victor A. Kovner
DAVIS WRIGHT TREMAINE LLP
1251 Ave. of the Americas, 21st Fl.
New York, NY 10020-1104
Phone: (212) 489-8230
Fax:   (212) 489-8340
victorkovner@dwt.com
Counsel for Amicus Curiae

Dated: August 25, 2025

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES ...................................................................... iii

I.  STATEMENT OF IDENTIFICATION OF *AMICI* ............................................. 1

II. INTEREST OF *AMICI* .................................................................... 2

III. ARGUMENT ............................................................................... 3

    A.    The First Amendment Prohibits Detaining Noncitizens Because Of Their Protected Speech. .................................................................. 3

    B.    The Government's Detention of Öztürk Violates The First Amendment. .. 6

IV. CONCLUSION ............................................................................. 9

CERTIFICATE OF COMPLIANCE ............................................................ 17

CERTIFICATE OF SERVICE ................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Aref v. Lynch*,
  833 F.3d 242 (D.C. Cir. 2016) ............................................................................7

*Bridges v. Wixon*,
  326 U.S. 135 (1945) ............................................................................................5

*Demarest v. Town of Underhill*,
  No. 24-147, 2025 WL 88417 (2d Cir. Jan. 14, 2025),
  *cert. denied*, No. 24-1085, 2025 WL 1426699 (2d Cir. May 19, 2025)...............7

*Hannon v. Beard*,
  645 F.3d 45 (1st Cir. 2011) .................................................................................7

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1951) ............................................................................................5

*Houston Cmty. Coll. Sys. v. Wilson*,
  595 U.S. 468 (2022) ............................................................................................6

*Houston v. Hill*,
  482 U.S. 451 (1987) ............................................................................................8

*Khalil v. Joyce*,
  No. 25-CV-01963, 2025 WL 1232369 (D.N.J. Apr. 29, 2025)...........................9

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) ............................................................................................5

*Lamont v. Postmaster Gen. of United States*,
  381 U.S. 301 (1965) ............................................................................................6

*Nieves v. Bartlett*,
  587 U.S. 391 (2019) ............................................................................................8

*Ozturk v. Hyde*,
  136 F. 4th 382 (2d Cir. 2025) .............................................................................8

*Rafeedie v. I.N.S.*,
  795 F. Supp. 13 (D.D.C. 1992) ..........................................................................5

*Snyder v. Phelps*,
    562 U.S. 443 (2011).........................................................................................8

*Texas v. Johnson*,
    491 U.S. 397 (1989).........................................................................................8

*United States v. Robel*,
    389 U.S. 258 (1967).........................................................................................6

**Rules**

Fed. R. App. P. 29(a)(4)(E)..................................................................................2

**Constitutional Provisions**

U.S. Const. amend. I ...............................................................................3, 5, 6, 9

**Other Authorities**

David Cole, *The First Amendment's Borders: The Place of Holder v. Humanitarian Law Project in First Amendment Doctrine*, 6 Harv. L. & Pol'y Rev. 147 (2012)6

Rümeysa Öztürk et al., *Try again, President Kumar: Renewing calls for Tufts to adopt March 4 TCU Senate resolutions,* THE TUFTS DAILY (Mar. 26, 2024), at https://www.tuftsdaily.com/article/2024/03/4ftk27sm6jkj...................................7

*Secretary Rubio Defends Revoking Turkish Student's Visa*, C-SPAN (Mar. 27, 2025), https://www.c-span.org/clip/news-conference/secretary-rubio-defends-revoking-turkish-students-visa/5158479 ..............................................................7

## I.    STATEMENT OF IDENTIFICATION OF *AMICI*

The following American Jewish congregations and organizations join in this *amici* brief in opposition to the Government's appeal of the district court's order dated April 18, 2025:

- Adat Shalom Reconstructionist Congregation
- Bend the Arc: A Jewish Partnership for Justice
- B'nai Jeshurun
- Congregation Beth Elohim
- Congregation Dorshei Tzedek (West Newton, MA)
- Harvard Jewish Progressive Alumni
- J Street
- Jewish Alliance for Law and Social Action
- Jewish Center for Justice
- Jewish Labor Committee
- Leo Baeck Temple
- New England Jewish Labor Committee
- New Israel Fund
- New Jewish Narrative
- New York Jewish Agenda
- Nexus Project
- T'ruah:  The Rabbinic Call for Human Rights
- Temple Micah (Washington, D.C.)
- The Boston Workers Circle
- The Reconstructionist Rabbinical Association
- The Workers Circle
- Worcester Havurah

For descriptions of the *amici*, please see Appendix A attached hereto.[1]

---

[1] Both Petitioner-Appellee and Respondents-Appellants have consented to the filing of this amicus brief.  No party or its counsel authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief.  No person other than *amici*, their members, or their counsel contributed money intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

## II. INTEREST OF *AMICI*

*Amici* are American Jewish congregations and organizations who revere the Constitution and cherish its guarantee of freedom of speech. Without presuming to speak for all of Jewish America—a diverse community that holds a multitude of viewpoints—*amici* are compelled to file this brief because the detention of Rümeysa Öztürk for her protected speech violated the most basic constitutional rights. The Administration claimed its actions against Öztürk supported efforts to combat antisemitism—a goal that, on its face, is laudable. Antisemitism is a persistent scourge that has threatened the Jewish people for centuries, and about which *amici*, like Jews everywhere, remain ever-vigilant. But detaining Öztürk did not assist in eradicating antisemitism. Nor was that the government's apparent purpose. The government instead appears to be exploiting Jewish Americans' legitimate concerns about antisemitism as pretext for undermining core pillars of American democracy, the rule of law, and the fundamental rights of free speech and academic debate on which this nation was built.

Further, it is imperative that the federal courts be able to entertain habeas petitions from noncitizens like Öztürk to promptly address violations of the First Amendment. We urge the Court to reject the government's argument that the Immigration and Nationality Act ("INA") strips the federal courts of the right to review such a petition. If Öztürk and others in her shoes can be kept in detention for

exercising their First Amendment rights without immediate access to the federal courts while their cases slowly wend their way to an Immigration Judge and then to the Board of Immigration Appeals before review by the Court of Appeals, those rights have little meaning, and speech will be irreparably chilled.

### III.   ARGUMENT

### A.   The First Amendment Prohibits Detaining Noncitizens Because Of Their Protected Speech.

Öztürk, a Turkish national PhD student at Tufts University, co-authored a March 2024 op-ed in her school newspaper, *The Tufts Daily*, criticizing the University's response to the Tufts undergraduate student senate's resolutions calling for divestment from Israel and characterizing Israel's military actions in Gaza as a genocide.  While many *amici* may disagree with these sentiments, nothing in the op-ed violates any law.  In short, it peacefully expressed dissent and called for action. Indeed, Tufts University submitted a declaration in this case stating that the opinion piece was not in violation of any Tufts policy.

On March 25, 2025, six masked plain-clothes officers apprehended Öztürk on the street as she was going to an iftar dinner to break her Ramadan fast.  They surrounded her, handcuffed her, placed her in a vehicle, and eventually transported her to an Immigration and Customs Enforcement facility in Louisiana.  The video of the arrest was alarming.  It was later revealed that Secretary of State Marco Rubio had revoked Öztürk's student visa without notice to her because she had co-authored

3

the op-ed.  As set forth in a letter addressed to Öztürk, the government justified these extraordinary measures in part under a rarely invoked statute that expressly prohibits the Secretary of State from detaining and removing a noncitizen because of their "past, current, or expected beliefs, statements, or associations," when lawful within the United States.  But the same statute includes an unconstitutionally vague exception allowing deportation if an individual's presence is deemed to "compromise a compelling U.S. foreign policy interest."  *Amici* cannot fathom how Öztürk's continued presence in this country, nor how her freedom pending any immigration decision, poses such a threat.

Jewish people came to America to escape generations of similar predations. Yet the images of Öztürk's arrest in twenty-first century Massachusetts evoke the oppressive tactics employed by the authoritarian regimes that many ancestors of *amici*'s members left behind in Odessa, Kishinev, and Warsaw, among a great many others.  To watch state authorities undermine the same fundamental rights that empowered so many Jewish Americans is chilling; to know it is being done in the name of the Jewish people is profoundly disturbing.  And if anything, *amici* believe such unjust treatment of lawful residents like Öztürk will *aggravate* risks to American Jews, not ease them.

Our Constitution secures to all students and scholars, including noncitizens, the right to peacefully express political beliefs without fear of government reprisal.

4

Öztürk's constitutionally protected expression does not, and cannot, cause her continued presence in the U.S. to compromise a compelling U.S. foreign policy interest, as the Secretary of State claims. Our foreign policy is not so fragile that an op-ed in a student newspaper could so easily compromise it, and our constitutional guarantees are not so feeble that they may be so easily discarded. As the district court held, it is well-settled that "[f]reedom of speech and of press is accorded aliens residing in this country." *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) (citation omitted). While the government may have broad discretion to deny entry to noncitizens, "once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders." *Id.* at 161 (Murphy, J., concurring); *see also Rafeedie v. I.N.S.*, 795 F. Supp. 13, 22 (D.D.C. 1992). [2]

The government's pretextual assertion of U.S. foreign policy interests cannot justify its censorship of noncitizen speakers. *See generally* David Cole, *The First Amendment's Borders: The Place of Holder v. Humanitarian Law Project in First*

---

[2] The Supreme Court has never retreated from its holding that the First Amendment protects noncitizens living in the United States. Although *Harisiades v. Shaughnessy*, 342 U.S. 580, 592 & nn.18-19 (1951) permitted the deportation of a non-citizen resident speaker, it did so only because the non-citizen's speech was unlawful incitement to violence not protected by the First Amendment. And while *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972) declined to find that American audiences possess a First Amendment right *to bring a foreign speaker into the United States* from abroad, it left undisturbed *Bridges*' holding that the First Amendment applies without qualification to noncitizen speakers already on American soil. Each of these cases are easily distinguishable, as the only asserted basis for the actions taken against Öztürk was her co-authorship of the op-ed while a student in Massachusetts.

*Amendment Doctrine*, 6 Harv. L. & Pol'y Rev. 147 (2012). Foreign policy or national defense "cannot be invoked as a talismanic incantation" to support any government action "which can be brought within its ambit." *United States v. Robel*, 389 U.S. 258, 263 (1967). "Implicit in the term 'national defense' is the notion of defending those values and ideals which set this Nation apart," and the risks inherent in a free society have never licensed the government to trammel the foundational expressive liberties that "make[] the defense of the Nation worthwhile." *Id.* at 264. Enforcing the First Amendment's protections for all speakers in the United States only "highlights the cherished values of our constitutional framework." *Lamont v. Postmaster Gen. of United States*, 381 U.S. 301, 310 (1965) (Brennan, J., concurring).

**B.    The Government's Detention of Öztürk Violates The First Amendment.**

As the district court underscored, the First Amendment "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (citation omitted). A violation occurs when (1) a speaker engages in protected speech, (2) the government takes adverse action against her, and (3) the speaker's exercise of her speech rights is a reason for the government's action. *See Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016); *Demarest v. Town of Underhill*, No. 24-147, 2025 WL 88417, at

6

*2 (2d Cir. Jan. 14, 2025) (summary order), *cert. denied*, No. 24-1085, 2025 WL 1426699 (2d Cir. May 19, 2025).

The government acknowledges that Öztürk's protected speech was the basis of her arrest. "We gave you a visa to come and study and get a degree," Secretary of State Rubio said of Öztürk, "not to become a social activist that tears up our university campuses." *Secretary Rubio Defends Revoking Turkish Student's Visa*, C-SPAN (Mar. 27, 2025), https://www.c-span.org/clip/news-conference/secretary-rubio-defends-revoking-turkish-students-visa/5158479. Yet Öztürk has never been charged with any crime, nor even accused of "tear[ing] up" her college campus. The specific offense the government has identified to date is her co-authoring the opinion essay in March 2024—resurfaced by bloggers in February 2025.[3] While many *amici* find the op-ed's assertions deeply misguided, "[t]he government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson,* 491 U.S. 397, 414 (1989). Öztürk's essay addressed matters of public concern and constitutes core political speech at "the heart of . . . First Amendment [ ] protection." *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011).

Öztürk was swept off the street, placed in a vehicle, and transferred to a

---

[3] Rümeysa Öztürk et al., *Try again, President Kumar: Renewing calls for Tufts to adopt March 4 TCU Senate resolutions,* THE TUFTS DAILY (Mar. 26, 2024), at https://www.tuftsdaily.com/article/2024/03/4ftk27sm6jkj.

Louisiana prison 1,600 miles away because of opinions she expressed in a student newspaper. As the district court's decision emphasizes, this is not who we are. The freedom to express unpopular ideas without risking arrest and detention is "one of the principal characteristics by which we distinguish a free nation." *Houston v. Hill,* 482 U.S. 451, 463 (1987). If the government could simply "silence those who voice unpopular ideas, little would be left of our First Amendment liberties, and little would separate us from the tyrannies of the past or the malignant fiefdoms of our own age." *Nieves v. Bartlett*, 587 U.S. 391, 412 (2019) (Gorsuch, J., concurring). Detaining Öztürk was a betrayal of the constitutional values that attracted *amici* and their families who immigrated to this great country's shores.

Finally, it is critical that federal courts retain the jurisdiction to quickly hear habeas petitions where individuals, like Öztürk, have been detained in retaliation for their exercise of their free speech rights. As the Second Circuit earlier observed, "Öztürk's core argument is that her free speech and due process rights are being violated, **now**." *Ozturk v. Hyde*, 136 F. 4th 382, 401 (2d Cir. 2025). As it reinforced, a period of delay while the case is pending before the immigration courts is inconsistent with Supreme Court precedent "'that meaningful review of First Amendment claims generally means **rapid, prioritized review**.'" *Id.* (quoting *Khalil v. Joyce*, No. 25-CV-01963, 2025 WL 1232369, at *30 (D.N.J. Apr. 29, 2025). Further, any regime under which Öztürk remains in detention for months

despite a fundamental violation of her First Amendment rights sends a strong signal to all other potential noncitizen speakers that they risk detention, however ultimately unlawful, if they raise their voices in protest.

### IV. CONCLUSION

While many *Amici* may disagree with the substance of Öztürk's statements, they firmly stand behind her right to voice her dissent and will not condone the government's invocation of antisemitism as a pretext for her detention. In our republic founded on the separation of powers, it is the duty of the federal judiciary to defend liberty and protect our most fundamental freedoms whenever the government attempts to undermine them. *Amici* respectfully urge the Court to deny the Government's appeal of the District Court's decision.

Dated: August 25, 2025    Respectfully Submitted,

*/s/* Victor A. Kovner
Victor A. Kovner

DAVIS WRIGHT TREMAINE LLP
Robert D. Balin
Jeremy A. Chase
Linda Steinman
Abigail Everdell
Rachel Strom
1251 Ave. of the Americas, 21st Fl.
New York, NY 10020-1104
Phone: (212) 489-8230
Fax:   (212) 489-8340
victorkovner@dwt.com
robbalin@dwt.com

jeremychase@dwt.com
lindasteinman@dwt.com
abigaileverdell@dwt.com
rachelstrom@dwt.com

DAVIS WRIGHT TREMAINE LLP
Adam S. Sieff
Rachel R. Goldberg
350 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071-3487
Telephone: (213) 633-6800
Fax: (213) 633-6899
adamsieff@dwt.com
rachelgoldberg@dwt.com

DAVIS WRIGHT TREMAINE LLP
Nathan Siegel
Alison Schary
1301 K Street NW
Washington, DC 20005
Telephone: (202) 973-4200
nathansiegel@dwt.com
alisonschary@dwt.com

*Counsel for Amici Curiae*

## APPENDIX A

*Amici* consist of the following organizations and congregations:

1.  **Adat Shalom Reconstructionist Congregation** in Bethesda, Maryland strives to be a progressive, participatory, diverse and inclusive synagogue community. They revere Torah and our evolving Jewish tradition, embrace meaningful innovation in all aspects of communal life, and heed our spiritual tradition's call to care for creation and pursue justice and peace.

2.  **Bend the Arc** is the nation's leading progressive Jewish voice empowering Jewish Americans to fight for justice and equality for all and is the only national Jewish organization focused exclusively on social change in the United States. Bend the Arc mobilizes Jewish Americans beyond religious and institutional boundaries through bold leadership development, innovative civic engagement, and robust advocacy.

3.  **B'nai Jeshurun** is a synagogue of nearly 2000 families located on the Upper West Side of New York City but with members around the globe. Since its founding in 1825—when a group of visionary Jewish leaders dared to dream of a community rooted in the revolutionary ideals of religious freedom and inclusion— BJ has grown into a community rooted in deep spirituality and transformative music, bound by love and justice, and committed to a relevant Judaism, shaping the story of American Jewish life.

11

4.     **Boston Workers Circle** is a 125-year-old progressive Jewish organization focused on Jewish cultural engagement, Yiddish language learning, and social justice activism, serving as a community and spiritual home for secular Jewish life.  BWC advocates for social change and celebrates Yiddish, Jewish, and progressive culture through arts, education, and community engagement.

5.     **Congregation Beth Elohim** is the largest Reform congregation in Brooklyn and is a welcoming and inclusive synagogue, proudly rooted in Jewish history and identity, embracing of different backgrounds and divergent points of view.  With a long tradition of engaging in tikkun olam (repairing the world), they take seriously their Jewish responsibility to care for the stranger, the immigrant, and the most vulnerable, as they know that they themselves have been strangers in many lands throughout their own long history.

6.     **Congregation Dorshei Tzedek** is a Reconstructionist community in West Newton, Massachusetts dedicated to creating a caring and inclusive community, and to enhancing Jewish practice and learning in the lives of their members.  "Dorshei Tzedek" means "seekers of justice," and as their name implies, they are seekers of meaningful spirituality, of serious Jewish learning, and of social justice.

7.     **Harvard Jewish Progressive Alumni** was founded in 2019 to advance racial and economic equity at Harvard University.  Made up of Jewish alumni across

many of Harvard's schools and across several generations, it affirms its pride in the presence of Jews at Harvard, and it seeks to ensure that the history of anti-Jewish quotas in the Ivy League is not misused to reduce diversity in higher education today.

8.      **J Street** represents Jewish and other Americans who care deeply about the state of Israel and support a diplomatic resolution of Israel's conflicts with its neighbors, the democratic principles on which the United States and Israel were founded and the values of justice, equality and freedom that are central to their identity.

9.      **Jewish Alliance for Law and Social Action (JALSA)** is a statewide membership-based non-profit organization based in Boston working for social and economic justice, civil and constitutional rights, and civil liberties for all. Mindful that Jewish history teaches that Jews have thrived most in cultures where freedom of speech is protected and valued, JALSA believes that people of all backgrounds deserve to live in a free society where all are able to speak their minds.

10.     **The Jewish Center for Justice** is a leading organization dedicated to social justice, education, and leadership development.  Their mission is to empower current and future leaders to create a more just and compassionate society.  Rooted in the Jewish commitment to tikkun olam (repairing the world), JCJ advocates and takes action to protect the most vulnerable and advance justice for all.

11.     **Jewish Labor Committee (JLC)** was founded in 1934 to rescue Jews and labor unionists from deprivation of their rights and death by the Nazis in Europe. Together with trade union leaders, the JLC continues the fight to protect the rights of Jews and union members wherever those rights are threatened.

12.     **Leo Baeck Temple**, founded in 1948, is a prominent Jewish congregation located on the west side of Los Angeles, California.

13.     **The New England Jewish Labor Committee (NEJLC)**, an affiliate of fellow *amicus* Jewish Labor Committee (JLC), adopts the statement of interest of JLC.  The NEJLC is committed to fighting antisemitism while at the same time protecting free speech rights.

14.     **New Israel Fund**, headquartered in New York, is the premier engine of Israeli civil society.  Founded in 1979, the New Israel Fund is widely credited with its building and today funds a range of not-for-profit organizations that insist on the liberal democratic values enshrined in Israel's Declaration of Independence — organizations that work to ensure human and civil rights, a future that is shared between Jews and Arabs, and equality for all.

15.     **New Jewish Narrative** was formed from the merger of Americans for Peace Now and Ameinu. They are committed to shaping a future where values of democracy, equality, and peace guide us all.

16.     **New York Jewish Agenda** advocates, organizes, and convenes to promote the values of liberal Jewish New Yorkers to influence state and local policies, politics, and the communal discourse.

17.     **The Nexus Project** works with policymakers and community leaders to fight antisemitism, uphold democracy, and protect free speech, recognizing that these tasks are intertwined and interdependent.

18.     **T'ruah: The Rabbinic Call for Human Rights** brings the Torah's ideals of human dignity, equality, and justice to life by empowering rabbis and cantors to be the moral voice and to lead Jewish communities in advancing democracy and human rights for all people in the US, Canada, Israel and the occupied Palestinian territories.

19.     **Temple Micah** is a vibrant and creative Reform congregation of nearly 700 families in Washington, DC. They offer a hopeful, inclusive narrative that gives people a greater sense of coherence, meaning, and possibility about where they have come from as Jews and the journey that they are on together. Together they attempt to answer the question of what it means to live both a fully American and fully Jewish life.

20.     **The Reconstructionist Rabbinical Association (RRA)** was established in 1974. The RRA is the professional association of Reconstructionist rabbis. Comprised of over 350 rabbis, the RRA has three primary missions: (1) It

serves as a collegial community, in which professional and personal support and resources are provided to rabbis; (2) The RRA represents the rabbinic voice within the Reconstructionist movement, bringing the teachings, stories, and traditions of Judaism to bear on contemporary issues and challenges, and helping to define Reconstructionist positions on Jewish issues for our time; and (3) The RRA represents the Reconstructionist rabbinate to the larger Jewish and general communities, through participation in programs, commissions, and other activities.

21.     **The Workers Circle** is a national secular Jewish social justice organization. They were founded by Eastern European Jewish immigrants fleeing autocracy and persecution and seeking democratic freedoms. That history drives their work for an inclusive democracy and social equality today.

22.     **Worcester Havurah** is an independent group of Jews and friends-of-Jews of all ages in and around Worcester, MA—Nipmuc territory.  They come together to celebrate, sing, pray, and grapple with Jewish texts and traditions from a diasporic, liberatory framework.  They are committed to Jewish ritual decoupled from Zionism, oriented instead around Torah, their relationships to each other, and their local context; this solidarity sustains them in the collective struggle against racism, white supremacy, and capitalism.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 29 and 32, undersigned counsel certifies that the foregoing brief:

1. Complies with the type-volume limitation of Local Rules 29.1(c) and 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,205 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

August 25, 2025          Respectfully Submitted,

*/s/* Victor A. Kovner
Victor A. Kovner

*Counsel for Amici Curiae*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2025, an electronic copy of the brief of amici curiae American Jewish Organizations was filed with the Clerk of the United States Court of Appeals for the Second Circuit by using the ACMS system. I also certify that all participants are registered ACMS users and will be served via the ACMS system.


August 25, 2025                          Respectfully Submitted,

                                         */s/* Victor A. Kovner
                                         Victor A. Kovner

                                         *Counsel for Amici Curiae*