# No. 25-1019

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

RÜMEYSA ÖZTÜRK,

*Petitioner–Appellee,*

PATRICIA HYDE, in her official capacity as the New England Field Director
for U.S. Immigration and Customs Enforcement; MICHAEL KROL, in his
official capacity as HSI New England Special Agent in Charge, U.S.
Immigration and Customs Enforcement; TODD LYONS, in his official
capacity as Acting Director, U.S. Immigration and Customs Enforcement;
KRISTI NOEM, in her official capacity as Secretary of the United States
Department of Homeland Security; MARCO RUBIO, in his official capacity
as Secretary of State; DONALD J. TRUMP, in his official capacity as President
of the United States;

*Respondents–Appellants.*

---

**On Appeal from the U.S. District Court for the District of Vermont**

---

**PETITIONER–APPELLEE'S BRIEF IN OPPOSITION**

---

*(Counsel listed on next page)*

Noor Zafar
Sidra Mahfooz
Michael K.T. Tan
Brian Hauss
Esha Bhandari
Brett Max Kaufman
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
nzafar@aclu.org
smahfooz@aclu.org
m.tan@aclu.org
bhauss@aclu.org
ebhandari@aclu.org
bkaufman@aclu.org

Jessie J. Rossman
Adriana Lafaille
Rachel E. Davidson
Julian Bava
ACLU FOUNDATION OF
    MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org
rdavidson@aclum.org
jbava@aclum.org

Lia Ernst
Monica H. Allard
ACLU FOUNDATION OF VERMONT
PO Box 277
Montpelier, VT 05601
(802) 223-6304
lernst@acluvt.org
mallard@acluvt.org

Ramzi Kassem
Naz Ahmad
Mudassar Toppa
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu

Matthew D. Brinckerhoff
Katherine Rosenfeld
Vasudha Talla
Sonya Levitova
EMERY CELLI BRINCKERHOFF ABADY
    WARD & MAAZEL LLP
One Rockefeller Plaza, 8th Floor
New York, NY 10020
(212) 763-5000
mbrinckerhoff@ecbawm.com
krosenfeld@ecbawm.com
vtalla@ecbawm.com
slevitova@ecbawm.com

*Counsel for Petitioner–Appellee*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION ........................................................................................... 1

JURISDICTIONAL STATEMENT .................................................................. 4

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 4

STATEMENT OF THE CASE ......................................................................... 5

SUMMARY OF THE ARGUMENT ................................................................ 15

STANDARD OF REVIEW ............................................................................. 18

ARGUMENT ................................................................................................ 18

    I.   This Court lacks jurisdiction over, and should dismiss, the
        appeal. .......................................................................................... 18

        A.  The appeal is moot ................................................................. 18

        B.  The transfer order is not appealable as of right .................. 20

    II.  The district court has habeas jurisdiction .................................... 24

    III.The INA does not strip the district court's jurisdiction to
        review Ms. Öztürk's unlawful detention claims or order her
        transfer ....................................................................................... 38

        A.  The INA does not bar the district court's exercise of its
            inherent equitable power to order Ms. Öztürk's return
            to Vermont ......................................................................... 40

        B.  8 U.S.C. § 1252(g) does not bar review of Ms. Öztürk's
            unconstitutional detention claims ...................................... 44

        C.  8 U.S.C. §§ 1252(a)(5), (b)(9), and 1201(i) do not bar
            review of Ms. Öztürk's unconstitutional detention
            claims ................................................................................. 51

D. 8 U.S.C. § 1226(e) does not bar review of Ms. Öztürk's unconstitutional detention claims........................................57

CONCLUSION...............................................................................59

# TABLE OF AUTHORITIES

<u>Cases</u>

*Aguilar v. ICE,*
 510 F.3d 1 (1st Cir. 2007) ....................................................41, 42, 53, 55

*Ali v. Mukasey,*
 524 F.3d 145 (2d Cir. 2008) ...................................................47

*Al-Siddiqi v. Achim,*
 531 F.3d 490 (7th Cir. 2008) .................................................58

*Alvarez v. ICE,*
 818 F.3d 1194 (11th Cir. 2016) ............................................50

*Anariba v. Director Hudson County Correctional Center*
 17 F.4th 434 (3d Cir. 2021) ............................................30, 37

*Arce v. United States,*
 899 F.3d 796 (9th Cir. 2018) .................................................47

*Arizonans for Official English v. Arizona,*
 520 U.S. 43 (1997) ..................................................................19

*Bello-Reyes v. Gaynor,*
 985 F.3d 696 (9th Cir. 2021) .................................................46

*Black v. Decker,*
 103 F.4th 133 (2d Cir. 2024) .................................................39

*Borbot v. Warden Hudson County Correctional Facility,*
 906 F.3d 274 (3d Cir. 2018) ..................................................58

*Boumediene v. Bush,*
 553 U.S. 723 (2008) .........................................35, 36, 37, 56

*Braden v. 30th Judicial Circuit Court,*
 410 U.S. 484 (1973) ...............................................................32

iii

*Byrd v. Hollingsworth,*
2014 WL 6634932 (D.N.J. Nov. 21, 2014) ........................................... 44

*Byrd v. Warden Fort Dix FCI,*
611 F. App'x 62 (3d Cir. 2015) ............................................................. 44

*Campbell v. Office of Personnel Management,*
694 F.2d 305 (3d Cir. 1982) ................................................................. 28

*Christian v. Hawk,*
923 F.2d 200 (D.C. Cir. 1990) .............................................................. 29

*Cooper Butt ex rel Q.T.R. v. Barr,*
954 F.3d 901 (6th Cir. 2020) ................................................................ 51

*Cruz-Aguilera v. INS,*
245 F.3d 1070 (9th Cir. 2001) .............................................................. 29

*De Ping Wang v. DHS,*
484 F.3d 615 (2d Cir. 2007) ................................................................. 28

*Delgado v. Quarantillo,*
643 F.3d 52 (2d Cir. 2011) ...................................................... 53, 54, 55

*Demjanjuk v. Meese,*
784 F.2d 1114 (D.C. Cir. 1986) ........................................................... 33

*Demore v. Kim,*
538 U.S. 510 (2003) ....................................................................... 48, 58

*Dennin v. Connecticut Interscholastic Athletic Conference, Inc.,*
94 F.3d 96 (2d Cir. 1996) ..................................................................... 20

*DHS v. Regents of the University of California,*
591 U.S. 1 (2020) ................................................................. 45, 49, 52

*DHS v. Thuraissigiam,*
591 U.S. 103 (2020) ............................................................................. 57

iv

*Dragenice v. Ridge,*
  389 F.3d 92 (4th Cir. 2004) ................................................... 29

*E.O.H.C. v. Secretary of DHS,*
  950 F.3d 177 (3d Cir. 2020) .................................... 44, 55, 56

*Elgharib v. Napolitano,*
  600 F.3d 597 (6th Cir. 2010) ................................................. 50

*Elrod v. Burns,*
  427 U.S. 347 (1976) .............................................................. 56

*Ex parte Endo,*
  323 U.S. 283 (1944) ................................................ 11, 24, 30

*Fischer v. New York State Department of Labor,*
  812 F.3d 268 (2d Cir. 2016) ........................................ 21, 23

*Garcia v. Attorney General of United States,*
  553 F.3d 724 (3d Cir. 2009) ........................................ 47, 48

*German Santos v. Warden Pike County Correctional Facility,*
  965 F.3d 203 (3d Cir. 2020) ................................................. 39

*Gonzalez v. ICE,*
  975 F.3d 788 (9th Cir. 2020) ............................................... 53

*Gonzalez-Alarcon v. Macias,*
  884 F.3d 1266 (10th Cir. 2018) ............................................ 54

*Greene v. United States,*
  13 F.3d 577 (2d Cir. 1994) ................................................... 28

*Griffin v. Ebbert,*
  751 F.3d 288 (5th Cir. 2014) ............................................... 37

*Guerrero-Lasprilla v. Barr,*
  589 U.S. 221 (2020) .............................................................. 39

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988) ............................................................... 21

*Harris v. Nelson*,
394 U.S. 286 (1969) ............................................................... 35

*Humphries v. Various Fed. USINS Emps.*,
164 F.3d 936 (5th Cir. 1999) ................................................ 50

*INS v. St. Cyr*,
533 U.S. 289 (2001) ........................................................ 46, 52

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) .............................................. 54

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .................................................. *passim*

*John B. Stetson Co. v. Stephen L. Stetson Co.*,
128 F.2d 981 (2d Cir. 1942) ................................................. 10

*Johnson v. Arteaga-Martinez*,
596 U.S. 573 (2022) ............................................................... 53

*Johnson v. Guzman Chavez*,
594 U.S. 523 (2021) ........................................................ 52, 53

*Kellici v. Gonzales*,
472 F.3d 416 (6th Cir. 2006) .......................................... 46, 53

*Khalil v. Joyce*,
2025 WL 1232369 (D.N.J. Apr. 29, 2025) ........................... 56

*Khalil v. Joyce*,
777 F. Supp. 3d 369 (D.N.J. 2025) ....................... 24, 30, 33, 36

*Kong v. United States*,
62 F.4th 608 (1st Cir. 2023) .............................. 39, 45, 46, 49

*Kucana v. Holder,*
 558 U.S. 233 (2010) ........................................................... 39, 41

*Kumar v. Holder,*
 2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013) .......................... 51

*Liriano v. United States,*
 95 F.3d 119 (2d Cir. 1996) ...................................................... 29

*Lyndonville Savings Bank & Trust Co. v. Lussier,*
 211 F.3d 697 (2d Cir. 2000) ..................................................... 18

*Madu v. U.S. Attorney General,*
 470 F.3d 1362 (11th Cir. 2006) ......................................... 46, 47

*Mahdawi v. Trump,*
 136 F.4th 443 (2d Cir. 2025) ............................................. 38, 48

*Mapp v. Reno,*
 241 F.3d 221 (2d Cir. 2001) ....................................................... 8

*Marbury v Madison,*
 5 U.S. (1 Cranch) 137 (1803) .................................................... 37

*Mayorga v. Meade,*
 2024 WL 4298815 (S.D. Fla. Sept. 26, 2024) ......................... 59

*McNary v. Haitian Refugee Center, Inc.,*
 498 U.S. 479 (1991) ................................................................. 39

*Miranda v. Garland,*
 34 F.4th 338 (4th Cir. 2022) .................................................... 39

*Mitchell v. Forsyth,*
 472 U.S. 511 (1985) ................................................................. 23

*Mohawk Industries, Inc. v. Carpenter,*
 558 U.S. 100 (2009) ................................................................. 23

*Murphy v. Hunt,*
    455 U.S. 478 (1982) ............................................................. 20

*Nadarajah v. Gonzales,*
    443 F.3d 1069 (9th Cir. 2006) .............................................. 39

*Najera v. United States,*
    926 F.3d 140 (5th Cir. 2019) ................................................ 58

*Nethagani v. Mukasey,*
    532 F.3d 150 (2d Cir. 2008) ........................................... 41, 42

*Nielsen v. Preap,*
    586 U.S. 392 (2019) .................................................. 39, 52, 53

*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................................. 42

*Öztürk v. Hyde,*
    136 F.4th 382 (2d Cir. 2025) ........................................ *passim*

*Öztürk v. Trump,*
    2025 WL 1145250 (D. Vt. Apr. 18, 2025) ............................. 24

*Öztürk v. Trump,*
    777 F. Supp. 3d 26 (D. Mass. 2025) .................................... 24

*Parra v. Perryman,*
    172 F.3d 954 (7th Cir. 1999) ................................................ 46

*Partee v. Attorney General,*
    451 F. App'x 856 (11th Cir. 2012) ........................................ 29

*Pham v. Ragbir,*
    141 S. Ct. 227 (2020) .......................................................... 50

*Phillips v. Seiter,*
    173 F.3d 609 (7th Cir. 1999) ................................................ 29

*Preiser v. Newkirk,*
422 U.S. 395 (1975) ................................................................ 19

*Public Citizen, Inc. v. Federal Energy Regulatory Commission,*
92 F.4th 1124 (D.C. Cir. 2024) ............................................... 19

*Ragbir v. Homan,*
923 F.3d 53 (2d Cir. 2019) ...................................................... 50

*Ragbir v. United States,*
2018 WL 1446407 (D.N.J. Mar. 23, 2018) ............................. 43

*Reno v. American-Arab Anti-Discrimination Committee,*
525 U.S. 471 (1999) ......................................................... 44, 45

*Reyna ex rel. J.F.G. v. Hott,*
921 F.3d 204 (4th Cir. 2019) ................................................... 41

*Robinson v. Johnson,*
313 F.3d 128 (3d Cir. 2002) .................................................... 29

*Roman v. Ashcroft,*
340 F.3d 314 (6th Cir. 2003) ................................................... 29

*Royal Canin U.S.A., Inc. v. Wullschleger,*
604 U.S. 22 (2025) .................................................................. 37

*Ruiz v. Mukasey,*
552 F.3d 269 (2d Cir. 2009) .................................................... 54

*Rumsfeld v. Padilla,*
542 U.S. 426 (2004) ....................................................... *passim*

*Saadulloev v. Garland,*
2024 WL 1076106 (W.D. Pa. Mar. 12, 2024) ......................... 59

*Saloum v. USCIS,*
437 F.3d 238 (2d Cir. 2006) .................................................... 59

*Schell v. Vaughn,*
    549 F. App'x 788 (10th Cir. 2013) ........................................................... 29

*Shoop v. Twyford,*
    596 U.S. 811 (2022) ........................................................... 22, 23

*Singh v. Holder,*
    638 F.3d 1196 (9th Cir. 2011) ........................................................... 58

*Singh v. Napolitano,*
    500 F. App'x 50 (2d Cir. 2012) ........................................................... 54

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ........................................................... 28

*Skaftouros v. United States,*
    667 F.3d 144 (2d Cir. 2011) ........................................................... 25

*Storey v. Lumpkin,*
    8 F.4th 382 (5th Cir. 2021) ........................................................... 29

*Suri v. Trump,*
    2025 WL 1310745 (E.D. Va. May 6, 2025) ........................................................... 24

*Suri v. Trump,*
    2025 WL 1806692 (4th Cir. July 1, 2025) ........................................................... *passim*

*Tazu v. Attorney General of the United States,*
    975 F.3d 292 (3d Cir. 2020) ........................................................... 50

*Trump v. J.G.G.,*
    145 S. Ct. 1003 (2025) ........................................................... 57

*United States v. Blackburn,*
    461 F.3d 259 (2d Cir. 2006) ........................................................... 19

*United States v. Hovsepian,*
    359 F.3d 1144 (9th Cir. 2004) ........................................................... 47

*United States v. Moussaoui,*
382 F.3d 453 (4th Cir. 2004) ................................................. 33

*United States v. Williams,*
475 F.3d 468 (2d Cir. 2007) .................................................. 19

*Van Dinh v. Reno,*
197 F.3d 427 (10th Cir. 1999) ............................................... 42

*Van Wie v. Pataki,*
267 F.3d 109 (2d Cir. 2001) .................................................. 20

*Vargas v. DHS,*
2017 WL 962420 (W.D. La. Mar. 10, 2017) ........................... 51

*Vasquez v. Reno,*
233 F.3d 688 (1st Cir. 2000) ................................................. 37

*Velasco Lopez v. Decker,*
978 F.3d 842 (2d Cir. 2020) .................................................. 58

*Will v. Hallock,*
546 U.S. 345 (2006) ....................................................... 21, 23

*Wood v. United States,*
175 F. App'x 419 (2d Cir. 2006) ............................................ 43

*Xiaobin Liu v. Holder,*
415 F. App'x 298 (2d Cir. 2011) ............................................ 59

*Zadvydas v. Davis,*
533 U.S. 678 (2001) ....................................................... 44, 48

*Zundel v. Gonzales,*
230 F. App'x 468 (6th Cir. 2007) ........................................... 50

**Statutes**

28 U.S.C. § 1292 ............................................................... 20, 21

28 U.S.C. § 1331 ................................................................. 4

28 U.S.C. § 1631 ......................................................... *passim*

28 U.S.C. § 1651 .......................................................... 4, 16

28 U.S.C. § 2201 ................................................................. 4

28 U.S.C. § 2241 ................................................................. 4

28 U.S.C. § 2242 ........................................... 16, 26, 33, 35

8 U.S.C. § 1201 ................................................... 18, 51, 57

8 U.S.C. § 1225 ........................................................ 48, 59

8 U.S.C. § 1226 .......................................................... *passim*

8 U.S.C. § 1231 .......................................................... *passim*

8 U.S.C. § 1242 ............................................................... 17

8 U.S.C. § 1252 .......................................................... *passim*

## Constitutional Provisions

U.S. Const. art. I, § 9, cl. 2 ...................................... 4, 56

## Rules

Federal Rule of Civil Procedure 15 ............................. 37

## Other Authorities

3 William Blackstone, *Commentaries* 131 ................. 36

Associated Press, *Video Shows Masked Federal Agents Handcuffing Turkish Student at Tufts University*, YouTube (Mar. 26, 2025) ................. 6

Brief for Petitioners, *United States v. Texas*, 2022 WL 4278395 (Sep. 12, 2022) ........................................ 48

Executive Office for Immigration Review, *EOIR Automated Case Information* .......................................................................... 49

H.R. Rep. No. 109-72 (2005) (Conf. Rep.) ........................................... 45, 53

Joseph Story, *Commentaries on the Constitution of the United States* § 1341 (3d ed. 1858) ............................................................. 36

Order, *Khalil v. Trump*, No. 25-8019 (3d Cir. May 6, 2025) ........................ 25

Order, *Khalil v. Trump*, No. 25-2162 (3d Cir. July 30, 2025) ...................... 38

Petition for Certification of Interlocutory Appeal, *Khalil v. Trump*, No. 25-8019 (3d Cir. Apr. 14, 2025) ............................................... 32

Rümeysa Öztürk, *"Even God Cannot Hear Us Here": What I Witnessed Inside an ICE Women's Prison*, Vanity Fair (July 17, 2025) .................... 14

## INTRODUCTION

Earlier this year, Petitioner–Appellee Rümeysa Öztürk spent more than six weeks behind bars for having co-authored an op-ed in her student newspaper the year before—a shocking violation of the First Amendment. Four months later, that is still the only justification Respondents have identified for her detention. If this had occurred in any other country, Americans would shudder at the thought, and thank the Founders for drafting the Constitution. But here, Respondents argue that notwithstanding their blatantly unconstitutional actions against Ms. Öztürk and the ancient right of habeas corpus, the federal courts have no power to review her unlawful detention. Specifically, Respondents contend that the district court lacked authority to order Ms. Öztürk's transfer from immigration custody in Louisiana to immigration custody in Vermont, where her habeas case is proceeding, to facilitate her participation in a bail hearing and in the habeas litigation more generally.

After the district court issued the order under appeal here, Respondents sought a stay, and a motions panel of this Court rejected as unlikely to succeed almost every argument they now reprise. *See Öztürk v. Hyde*, 136 F.4th 382

(2d Cir. 2025) (denying motion to stay transfer order). This Court should similarly reject Respondents' arguments here.

First, this Court lacks jurisdiction because the appeal is moot. Were Respondents to prevail, the parties' positions would not change at all, because before the transfer order could take effect, the district court released Ms. Öztürk on bail. And even if the appeal is not moot, the Court still lacks jurisdiction, because the transfer order is not an appealable interlocutory order.

Second, as both the motions panel and multiple other courts have now found, the district court correctly applied a federal transfer statute and Supreme Court precedent to conclude that it has habeas jurisdiction over Ms. Öztürk's petition. Respondents' argument is that because, in a sordid bit of business lasting more than 24 hours after Ms. Öztürk's arrest by masked agents in Massachusetts, Respondents swept her through three northeastern states without disclosing her location to her attorneys and then flew her to Louisiana, Ms. Öztürk's habeas petition could only have been filed in the jurisdiction they themselves selected. But as the district court concluded, because Ms. Öztürk was physically in Vermont at the time her lawyers filed

the petition, the transfer statute straightforwardly permits it to adjudicate her case. And none of Respondents' arguments to the contrary work.

Fourth, again as both the motions panel and multiple other courts have found, the Immigration and Nationality Act ("INA") does not bar judicial review of Ms. Öztürk's claims challenging her unconstitutional detention. Respondents' argument boils down to the claim that if they violate the Constitution by putting a noncitizen in detention using immigration laws, no federal court can review their conduct until the executive-adjudicated administrative process plays out over many months or even years. But in drafting the INA, Congress clearly did not intend to permit the executive to hold people in unlawful detention for the sake of, as Respondents claim, efficiency and judicial resources. Nor does the INA allow the executive to effectuate a regime of censorship unlawfully detaining any noncitizen as punishment for their constitutionally protected speech, thereby chilling their speech and that of untold others, for as long as the executive takes to administer its executive-branch immigration procedures.

This Court should dismiss this appeal, or if not, affirm the district court's transfer order.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the habeas petition under 28 U.S.C. § 2241 (habeas statute); Art. I, § 9, cl. 2 of the Constitution (Suspension Clause); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 2201 (Declaratory Judgment Act). It had jurisdiction to issue the transfer order under the habeas statute and 28 U.S.C. § 1651(a) (All Writs Act).

While a motions panel of this Court held that the district court order of which Respondents seek review was appealable under the collateral-order doctrine, *see Öztürk*, 136 F.4th at 389-90, that provisional ruling was incorrect, *see infra* Part I.B, and regardless, the appeal is moot, *see infra* Part I.A.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Whether the appeal is moot.

2.  Whether this Court has appellate jurisdiction over the district court's order transferring Ms. Öztürk back to the District of Vermont, the district where she was confined when her habeas petition was filed.

3.  Whether the district court properly applied a federal statute, 28 U.S.C. § 1631, requiring, when "it is in the interest of justice," the

4

transfer of a "civil action" for which there is "want of jurisdiction" to any court where the case "could have been brought at the time it was filed," to accept transfer of a habeas petition filed in another district.

4. Whether the INA prevents a district court from exercising its inherent power to order the return of a habeas petitioner to the district from which she was taken after filing a petition in order to facilitate habeas litigation, including a bail hearing.

5. Whether the INA strips district courts of subject-matter jurisdiction over Petitioner's unlawful detention claims.

## STATEMENT OF THE CASE

Ms. Öztürk is a Turkish national and doctoral candidate at Tufts University. JA412. In March 2024, she co-authored an op-ed in her student newspaper that criticized the university's rejection of various student government resolutions concerning Israel's military campaign in Gaza. JA411. A year later, at around 5:25 p.m. on March 25, 2025, six masked, plainclothes officers appeared without warning and seized her from the street near her apartment in Somerville, Massachusetts, driving her away in an unmarked

vehicle. JA414.[1] Though she had been in the country on a valid F-1 visa, four days earlier, without notification to her, the government had revoked it. JA412-14; JA418. In the five hours after her arrest, the government moved her through three states—from Massachusetts to New Hampshire and then to Vermont. JA414.

"All of this was unknown to Öztürk's attorney, who did not know her client's whereabouts upon learning of her arrest." JA81. After making numerous efforts to locate her, just after 10 p.m. on March 25, Ms. Öztürk's lawyer filed a habeas petition seeking her release in the District of Massachusetts, her last known location. JA81; JA414. Within the hour, the district court issued a temporary restraining order ("TRO") to "preserve the status quo," commanding that she "not be moved outside the District of Massachusetts" without advance notice. JA414-15.

Unbeknownst to her lawyer, at the time the petition was filed, Ms. Öztürk was in a vehicle, in Vermont, being driven by officers from Immigrations and Customs Enforcement ("ICE"), whose Enforcement and

---

[1] There is video of the arrest. *See* Associated Press, *Video Shows Masked Federal Agents Handcuffing Turkish Student at Tufts University*, YouTube (Mar. 26, 2025), https://www.youtube.com/watch?v=7-fSpi7ZHoQ.

Removal Operations branch for the New England region is run from the Boston Field Office. JA80-81; JA414; JA431-32. And although the U.S. Attorney's Office for the District of Massachusetts received both the petition and the district court's TRO that same night, the government continued to move Ms. Öztürk without notifying her attorney or the Court. Around 10:28pm, she arrived at the St. Albans (Vermont) Field Office (a suboffice of the Boston Field Office). JA415. Hours later, she was put on a plane to Louisiana, where she arrived the afternoon of March 26. JA415.

Throughout that time, Ms. Öztürk's lawyer consistently sought and failed to obtain her location. JA415-16. Inquiries to ICE and the U.S. Attorney's Office, and even an in-person visit to ICE from the Turkish consulate, yielded no answers. JA416. Finally, more than 24 hours after her arrest, Ms. Öztürk was permitted to speak with her lawyer from a detention facility in Louisiana. JA417.

Litigation initially proceeded in Massachusetts, with the filing of an amended petition (alleging violations of the First and Fifth Amendments and the Administrative Procedure Act), JA14-37, Respondents' opposition (seeking to dismiss the petition for lack of habeas jurisdiction or transfer it to

Louisiana), JA45-77, and Ms. Öztürk's reply, ECF 26.[2] After a hearing, the court transferred the case "in the interest of justice" to the District of Vermont. JA100-02.

After transfer, the District of Vermont quickly ordered briefing to account for potential differences in circuit law. JA420. Because the Massachusetts court had not resolved Ms. Öztürk's habeas claims on the merits, the parties briefed various issues: the request in her amended petition for release on bail, under *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), pending the habeas litigation or, alternatively, her return to Vermont, JA34-35; JA182-293; ECF 84, 91, 95, 99, 101, 103, 108; and Respondents' renewed argument that the court should dismiss the petition or transfer it to Louisiana, arguing in part that the court lacked subject-matter jurisdiction over the habeas claims under various INA provisions, ECF 81, 83, 91.

After a hearing, JA294-408, on April 14, the court denied Respondents' request for dismissal, determining it had habeas jurisdiction. JA421-37. It also concluded that "none of" the INA "provisions" relied on by Respondents "limit the Court's review where Ms. Öztürk has raised constitutional and legal

_____

[2] "ECF" numbers reference documents on the district court docket, No. 25-cv-374 (D. Vt.), that are not included in the Joint Appendix.

8

challenges to her detention that are separate from removal proceedings." JA437-51. And while it did not decide the merits of Ms. Öztürk's constitutional claims, the court made clear that they are substantial. *See* JA456 (record suggests "that the government's motivation or purpose for her detention is to punish her for co-authoring an op-ed" and lacks any "evidence to support an alternative, lawful motivation or purpose for Ms. Öztürk's detention"); JA455; JA465-66 (on current record, court would be "likely to conclude that Ms. Öztürk has presented a substantial claim" under the First and Fifth Amendments); JA470.

Finally, the court set a schedule for proceeding with those claims, ordering additional briefing, a bail hearing on May 9, and a merits hearing on the petition on May 22. JA481. Under its All Writs Act ("AWA") and inherent powers, the court also ordered Respondents to return Ms. Öztürk to Vermont (in ICE custody) by May 1. JA481. In support of that order, the court explained that Ms. Öztürk's transfer would "facilitate her ability to work with her attorneys, coordinate the appearance of witnesses, and generally present her habeas claims"; "facilitate [her] ability to receive a neutral medical evaluation," which would be "a factor for the Court to consider when addressing the question of release"; "assist the Court in determining potential

bail conditions and whether release is appropriate"; and "expedite resolution of this matter." The court also found that Ms. Öztürk's transfer to Vermont would "give proximate effect to the District of Massachusetts's" TRO prohibiting Ms. Öztürk's her removal from that district—which the court found, as a factual matter, Respondents had "ignor[ed]" the night of her arrest—by "return[ing]" matters as close as possible to "the status quo." JA474-80 (citing, *inter alia*, *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942)).

Respondents appealed, JA483, and sought a stay of the transfer order in district court, JA484-89. After being denied a stay, JA490-96, on April 24, they sought emergency relief in this Court. Dkt. 19.[3] On April 28, a motions panel of this Court entered an administrative stay of the transfer order's May 1 deadline, and it set Respondents' motion for argument on May 6, Dkt. 45.

One day after holding argument, the panel denied the motion, clearing the path for Ms. Öztürk's transfer back to Vermont by May 14. *Öztürk*, 136 F.4th 382. In its opinion, the panel rejected the same arguments Respondents make on appeal.

---

[3] "Dkt." numbers reference the appellate proceedings in this case.

First, the panel concluded that transfer of the habeas petition from the D. Mass. to the D. Vt. was likely proper under 28 U.S.C. § 1631, explaining that transfer under the statute did not "convey . . . 'substantive authority' the court would otherwise lack," but "merely remedie[d] the procedural defect" of the petition being filed in Massachusetts instead of Vermont, where Petitioner was at the time of filing, based on "the government's conduct during the twenty-four hours following Öztürk's arrest." 136 F.4th at 390-92. It also concluded that Respondents' transfer of Ms. Öztürk to Louisiana likely did not "strip the District of Vermont of habeas jurisdiction," *id.* at 392 (citing *Ex parte Endo*, 323 U.S. 283 (1944), and *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004)). It further determined that either Ms. Öztürk properly named her immediate custodian, *id.* at 393, or her "failure to name her 'immediate custodian' is [not] fatal" to habeas jurisdiction because the government "*intentionally*" withheld information about "where, or by whom, she was being detained," and the "unknown custodian" exception to the default rules of habeas jurisdiction applies, *id.* at 392-93. Finally, the panel rejected Respondents' argument that even if the district court did have habeas jurisdiction over the original petition, it lost that jurisdiction when Ms. Öztürk amended it. *Id.* at 394.

Second, the panel rejected Respondents' arguments that "jurisdiction-stripping provisions of the INA deprived the district court of authority to order the government to transfer Öztürk to Vermont," and "that various other provisions of the INA stripped the district court of jurisdiction over Öztürk's petition as a whole." *Id.* "[G]uided by longstanding principles of statutory interpretation requiring Congress to speak clearly and specifically when it wishes to deprive the federal courts of jurisdiction," *id.,* the panel rejected Respondents' arguments as wrong and even "dramatically overstate[d]." *Id.* at 397, 395–401.

Third, the panel concluded that Respondents had failed to demonstrate any irreparable injury, and that "the balance of the equities decisively disfavor[ed] a stay." *Id.* at 401-02. It rejected their contention that "logistical" concerns and "unspecific financial and administrative concerns" amounted to irreparable injury. *Id.* at 403 (cleaned up). It pointed to how the transfer order would "provide [Ms. Öztürk] ready access to legal and medical services, address concerns about the conditions of her confinement, and expedite resolution of this matter." *Id.* at 402. It further underscored that transfer would facilitate "[her] ability to participate meaningfully in her habeas proceedings," and that the government's argument that the order improperly

12

"prioritizes" the habeas proceedings over the immigration proceedings was "particularly weak." *Id.* (cleaned up). And the Court emphasized that, as a matter of equity, Respondents were proceeding on shaky ground, because even if they were not "technically non-compliant," they had defied the spirit of the District of Massachusetts' post-arrest order not to remove Ms. Öztürk from the district. *Id.* at 403 (discussing JA476-80).

After this Court's decision on Respondents' motion to stay, rather than wait for Ms. Öztürk's transfer to Vermont, on May 9, the district court held a bail hearing with Ms. Öztürk participating remotely, and at the conclusion of the hearing, the court ordered her immediate release pursuant to *Mapp*. JA497-98. A week later, the court issued a text order and a written opinion supplementing its order from the bench regarding Ms. Öztürk's bail. JA499-526. It explained that Ms. Öztürk had "demonstrated substantial claims of First Amendment and Due Process Clause violations related to her detention." JA525. It further laid out that "[h]er substantial claims, which have been largely unrebutted by the government, are that her detention is retaliation for her op-ed in a school newspaper and that her detention is punitive, in part to serve as a message to others contemplating similar speech." JA525. The court also found that Ms. Öztürk's case presented extraordinary circumstances,

13

including "the government's actions in ignoring a court order while arresting and transporting her to Louisiana," "the nature and strength of [her] constitutional claims[,] and her demonstration that her detention exacerbated an underlying medical condition." JA525-26. Respondents did not appeal the bail order.

During her time in detention, Ms. Öztürk experienced a "nightmare," and later described "damp, dusty, overcrowded conditions with poor air and triggers that made [her] asthma significantly worse," inattentive medical care, little sleep, and unhealthy food.[4] Despite that, she managed to "connect[] with remarkable women who shared their stories," which "opened [her] eyes to a new realm of humanitarian crisis, expanding the circle of grief and compassion in [her] heart."[5] Since regaining her freedom, Ms. Öztürk has continued her studies in pursuit of completing her doctorate later this academic year at Tufts.

---

[4] Rümeysa Öztürk, *"Even God Cannot Hear Us Here": What I Witnessed Inside an ICE Women's Prison*, Vanity Fair (July 17, 2025), https://perma.cc/936M-9SMA.

[5] *Id.*

## SUMMARY OF THE ARGUMENT

First, the Court should dismiss the appeal. The appeal is moot because, now that Ms. Öztürk has been released on bail—via an order that Respondents have not appealed—a reversal of the district court's transfer order at issue here would not have any non-speculative effect on either party. And even if the appeal is not moot, the transfer order is not an appealable interlocutory order, including under the collateral-order doctrine.

Second, the district court has habeas jurisdiction. The petition was initially filed in the District of Massachusetts, where Ms. Öztürk was arrested. Unbeknownst to her lawyers, the government had already taken her out of the district, and at the time her petition was filed, she was in ICE custody in transit in Vermont. A judge in the District of Massachusetts determined that, because of that fact, the court lacked habeas jurisdiction under the default "district of confinement" rule. But it transferred the petition to the District of Vermont, where, under the default habeas rule, the petition could have been brought when filed, under a federal transfer statute (28 U.S.C. § 1631) that makes such transfer mandatory when (as the court found) it is in the interests of justice.

Like many courts in recent months, this Court should reject all Respondents' counterarguments, including that the district court improperly relied on section 1631 and that its movement of Ms. Öztürk to Louisiana after filing stripped the court of habeas jurisdiction. Respondents are also wrong that the petition did not properly name her immediate custodian, and even if it had not, the recognized "unknown custodian" exception to the default "immediate custodian" rule—which has been endorsed by the Supreme Court, in *Padilla*, 542 U.S. at 450 n.18, and by Congress in the habeas pleading statute, 28 U.S.C. § 2242—applies here. Respondents' narrow view of the exception would undermine the very purpose of the Great Writ by granting the executive the ability to withhold a detainee's access to a habeas court for a period of time of its choosing.

Third, the INA does not strip the district court of subject-matter jurisdiction over Ms. Öztürk's unlawful detention claims or her transfer order. Respondents cite various INA provisions to make their case, but none of them work.

The district court issued the transfer order pursuant to its inherent equitable power under the AWA, 28 U.S.C. § 1651(a), to facilitate the litigation of her habeas petition. Respondents are wrong that 8 U.S.C.

§§ 1252(a)(2)(B)(ii) and 1231(g) foreclose review of the order, because the latter does not specifically commit transfer decisions to government discretion, as the former requires. As the Supreme Court has made clear, section 1252(g) is a narrow provision that does not apply to Respondents' decision to detain Ms. Öztürk.

Likewise, 8 U.S.C. § 1242(a)(5) and (b)(9) do not strip jurisdiction, as they are meant only to channel review of final orders of removal into immigration courts and appeals—and there is no final order in this case. Moreover, the Supreme Court has rejected extreme readings of section 1252(b)(9) that would make challenges to detention "effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 292-93 (2018) (plurality opinion). This Court and other circuits have endorsed that view, concluded that federal courts retain jurisdiction over claims for relief, including detention claims, that cannot be provided through a petition for review ("PFR") of a final order. Here, because each day in retaliatory detention violates Ms. Öztürk's First Amendment rights on an ongoing basis by censoring her speech, forcing her to wait months or years until the lengthy PFR process concludes would mean any ruling in his favor would come far too late to redress the harm.

17

Next, 8 U.S.C. § 1201(i) does not strip jurisdiction over Ms. Öztürk's detention claims, as that statute only channels review of certain visa revocation claims, which are not before the Court. And binding precedent in this Circuit rejects Respondents' argument that 8 U.S.C. 1226(e) bars review of a constitutional challenge to initial immigration detention.

Accordingly, this Court should either dismiss the appeal or affirm the district court's transfer order as a proper exercise of its inherent authority.

## STANDARD OF REVIEW

"The standard of review for determinations regarding subject-matter jurisdiction is clear error for factual findings, and de novo for the legal conclusion as to whether subject matter jurisdiction exists." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000). The same standards apply in appellate review of habeas petitions. *See, e.g., Jenkins v. Artuz*, 294 F.3d 284, 290 (2d Cir. 2002).

## ARGUMENT

I. **This Court lacks jurisdiction over, and should dismiss, the appeal.**

A. **The appeal is moot.**

Article III conditions the exercise of judicial power on the existence of "an actual controversy . . . at all stages of review . . . ." *Arizonans for Off. Eng.*

18

*v. Arizona*, 520 U.S. 43, 67, (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Williams*, 475 F.3d 468, 478-79 (2d Cir. 2007) (cleaned up). "Generally, 'if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the Court] must dismiss the [appeal].'" *Id.* at 479 (quoting *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006)). Thus, "[e]ven where litigation poses a live controversy when filed," a court must "refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pub. Citizen, Inc. v. Fed. Energy Regul. Comm'n*, 92 F.4th 1124, 1127-28 (D.C. Cir. 2024) (cleaned up). "This rule ensures that federal courts respect the bounds of their constitutionally assigned role," including by "protect[ing] courts from rendering impermissible advisory opinions." *Id.* at 1128.

The district court's May 9 bail order conditionally released Ms. Öztürk from custody in Louisiana. JA497-98. As a result of that order (and

Respondents' failure to appeal it), the appeal of the court's order compelling her transfer from immigration custody in Louisiana to immigration custody in Vermont is now moot. The bail order is conditional, but any argument that Ms. Öztürk will violate its conditions, and that the district court would, on those grounds, revoke the order, is entirely speculative. Other than that, the bail order has no expiration date apart from the end of Petitioner's habeas case. And Ms. Öztürk is now free, back living and studying in Massachusetts. Were Respondents to prevail on appeal, it would have no effect on the parties' positions. The appeal is moot as can be, and the Court should dismiss it.[6]

### B. The transfer order is not appealable as of right.

Because the district court's transfer order is interlocutory, this Court may review it on appeal only if it is: (1) an injunction, 28 U.S.C. § 1292(a);

---

[6] Respondents might claim that an exception to mootness applies—most likely, the exception for issues "capable of repetition yet evading review." *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001) (cleaned up). This exception, which "applies only in exceptional situations," requires that (1) "the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration," and (2) "there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* at 113-14 (cleaned up). Here, Respondents can establish neither, and any claim to the contrary would rest on "speculative and theoretical assertion[s]." *Id.* at 114 (citing, *inter alia*, *Murphy v. Hunt*, 455 U.S. 478, 482-83 (1982) (per curiam)); *see Dennin v. Conn. Interscholastic Athletic Conf., Inc.*, 94 F.3d 96, 101 (2d Cir. 1996).

(2) certified by both the district court and this Court, *id.* § 1292(b); or (3) an appeal under the collateral-order doctrine, *see, e.g., Fischer v. N.Y. State Dep't of L.*, 812 F.3d 268, 273 (2d Cir. 2016). It is not.[7]

First, an order in aid of jurisdiction under the AWA and pursuant to the Court's inherent powers returning Ms. Öztürk to Vermont lacks "the practical effect" of an injunction that has "serious, perhaps irreparable, consequence." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287-88 (1988) (cleaned up). And even if the transfer order did have such an effect months ago, at this point, it does not. *See supra* Part I.A.

Second, this is not a certified appeal.

Third, the collateral-order doctrine does not apply. While the order meets two of the doctrine's three "'stringent'" requirements, it fails the middle one: that an order "'resolve an important issue completely separate from the merits of the action.'" *Fischer*, 812 F.3d at 273 (quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006)).

---

[7] Indeed, Respondents appeared to recognize their shaky jurisdictional ground by seeking mandamus—for the same relief, but requiring them to meet a more stringent legal standard—as an alternative to their motion to stay. *Öztürk*, 136 F.4th at 403.

As an initial matter, Respondents' appeal does not present issues that are "completely separate from the merits" of the underlying habeas action, because Respondents' arguments—about the absence of habeas and subject-matter jurisdiction—are overlapping if not identical to those they have put forward in contesting Ms. Öztürk's entitlement to bail, ECF 84, and that it is certain to put forward in future litigation on the petition.

Even if the transfer order presents issues separate enough to partially satisfy the doctrine, Respondents' appeal does not present the kind of important issue for which the collateral-order doctrine is narrowly reserved. In finding likely jurisdiction over Respondents' stay motion, the motions panel only briefly reasoned that it was "bound" by a footnote in a recent Supreme Court decision to conclude that "federal courts of appeal have appellate jurisdiction to review a transportation order under the" AWA. *Öztürk*, 136 F.4th at 389-90 (relying on *Shoop v. Twyford*, 596 U.S. 811, 817 n.1 (2022)). In *Shoop*, five justices concluded that they had jurisdiction to review an AWA order from a federal habeas court to the State of Ohio "to transport a prisoner in its custody to a hospital for medical testing," 596 U.S. at 814, in the context of federal court review of a state conviction where federal law restricted federal habeas review of final state convictions. The Supreme Court's

22

conclusion as to the second requirement was solely that the order "resolve[d] *an important question of state sovereignty* conceptually distinct from the merits of the prisoner's claims." *Id.* at 817 n.1 (emphasis added).

Because the transfer order at issue here does not implicate similar questions of federalism or immunity from suit, but merely involves the location of federal immigration custody, *Shoop* does not control this case. As this Court has explained, the collateral-order doctrine is a limited exception to the longstanding final judgment rule that most commonly applies "to motions asserting—as a matter of law—'an *immunity from suit*.'" *Fischer*, 812 F.3d at 274-75 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). And the Supreme Court itself has warned courts to keep "the class of collaterally appealable orders . . . narrow and selective." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) (quoting *Will*, 546 U.S. at 350). The motions panel's broadening of that class from a case addressing a narrow category of truly "important," state-sovereignty-implicating transfer orders to include *all* AWA transfer orders, even those that lack the required importance under the collateral-order doctrine, was wrong.

23

## II. The district court has habeas jurisdiction.

The district court correctly concluded that it has habeas jurisdiction over the transferred petition based on the plain text of a federal transfer statute (28 U.S.C. § 1631), the clear legal default rules concerning habeas jurisdiction and their exceptions (*Padilla*, 542 U.S. at 435, 450 n.18), and longstanding precedent regarding the movement of habeas petitioners (*Endo*, 323 U.S. 283). This Court should firmly reject Respondents' argument that the habeas statute—which enshrines the Great Writ, the most fundamental judicial check upon executive abuse in our legal tradition—should be construed to permit the kind of attempted government manipulation of judicial review that took place in this case.

As six courts (including a motions panel of this one) have concluded since March, none of Respondents' counterarguments work. *See Öztürk v. Hyde*, 136 F.4th 382, 392-93 (2d Cir. 2025) (denying stay pending appeal); *Suri v. Trump*, 2025 WL 1806692, at *4-6 (4th Cir. July 1, 2025) (same); *Suri v. Trump*, 2025 WL 1310745, at *7-14 (E.D. Va. May 6, 2025); *Öztürk v. Trump*, 2025 WL 1145250, at *5-10 (D. Vt. Apr. 18, 2025); *Öztürk v. Trump*, 777 F. Supp. 3d 26, 33-44 (D. Mass. 2025); *Khalil v. Joyce*, 777 F. Supp. 3d 369, 391-410 (D.N.J. 2025), *motion to certify appeal denied*, Order, No. 25-

8019 (3d Cir. May 6, 2025). Remarkably, Respondents hardly engage with these opinions' reasoning, choosing instead to act as if their arguments have not been rejected time and again in recent months. Regardless, once again, their arguments ignore the plain text of congressional statutes, misread key precedent, and fail to grapple with the intolerable consequences of their position.

First, Respondents are wrong that the Supreme Court's discussion of "two rules for habeas jurisdiction," Dkt. 102 ("Br.") at 20, in *Rumsfeld v. Padilla*, 542 U.S. at 434-35—the "district of confinement" and "immediate custodian" rules—are invariable "preconditions" or "specific statutory prerequisites" for habeas jurisdiction. Br. 24. Instead, they are, as the *Padilla* Court itself emphasized, only "*default* rule[s]," to which various "exceptions" apply. 542 U.S. at 435 (emphasis added); *see Öztürk*, 136 F.4th at 392; *Suri*, 2025 WL 1806692, at *4. As this Court has explained, habeas jurisdiction is not subject-matter jurisdiction. *Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011); *see Öztürk*, 136 F.4th at 394 (citing *Padilla*, 542 U.S. at 434 n.7); *see also Padilla*, 542 U.S. at 451 (Kennedy, J., concurring). Indeed, even Respondents acknowledge the "judge-made 'unknown custodian exception,'" Br. 26—discussed further below—a recognition at complete odds

with their position. Indeed, *Padilla* explained that while the rules are "derived from the terms of" the habeas statute, 542 U.S. at 447 (majority opinion), they are not *in* it. What *is* in the statute, by contrast, is Congress's clear instruction that a petitioner may omit the name of an unknown custodian. 28 U.S.C. § 2242 (petitioner must include "the name of the person who has custody over him . . . , *if known*" (emphasis added)).[8]

Second, the filing of Ms. Öztürk's habeas petition in Massachusetts at a time she was physically in Vermont does not run afoul of the district-of-confinement rule because the petition was properly transferred to the District of Vermont under 28 U.S.C. § 1631. Section 1631 *requires*, when in the "interest of justice," that a district court transfer a "civil action" for which there is "want of jurisdiction" to a court where the case "could have been brought at the time it was filed," and specifies that the case shall then

---

[8] Respondents' characterization of *Padilla* as having "rebuked this Court's relaxed approach to the immediate custodian rule," Br. 20, is both misleading and irrelevant. In *Padilla*, the Supreme Court rejected this Court's conclusion below that the Secretary of Defense, as a supervisory official, was a proper respondent to a habeas petition challenging a detainee's physical confinement in military custody because the petitioner there was "detained for other than federal criminal violations." 542 U.S. at 433 (cleaned up). But after emphasizing the "default" nature of the rule, the Supreme Court concluded that the rule had not been met *and* that no exceptions applied. *Id.* at 435-36. Here, that is not true. *See Öztürk*, 136 F.4th at 392.

"proceed as if it had been filed" in the transferee court at the original time of filing in the transferor court. Respondents deride this language as an "erroneous 'could have been brought' fiction," Br. 26, but it is the unambiguous text of a federal statute. Here, because Ms. Öztürk was physically in Vermont when her lawyers filed her petition, under the default district-of-confinement rule for habeas jurisdiction, *Padilla*, 542 U.S. at 435; *see* JA426; *Öztürk*, 136 F.4th at 390-92, the petition "could have been brought" there. And as three courts have concluded, transfer to the District of Vermont from the District of Massachusetts was in the "interest of justice," JA102; JA424-25; *Öztürk*, 136 F.4th at 391 n.1, so transfer there was mandatory under the statute. And the statute explicitly requires a transferee court to proceed "as if [the case] had been filed" there. Thus, in every important respect, the petition *was* "filed in Vermont on March 25 at 10:02 p.m." JA101; JA426-28.

Respondents argue that section 1631 cannot be used "to acquire substantive authority that a court lacks." Br. 23 (emphasis omitted). "That is true," *Öztürk*, 136 F.4th at 391, but that is not what happened here. "Had the petition been filed in the District of Vermont at 10:01pm on March 25, the case would have properly been before that court," *id.*, because it would have

27

undoubtedly met the default district-of-confinement rule, JA424–25 (noting Respondents' concession on this point). As a result, "[t]he action's transfer merely remedies the procedural defect—it conveys no substantive authority the court would otherwise lack." *Öztürk*, 136 F.4th at 391-92. Respondents' insistence that the transfer here was "substantive" rather than the kind of "threshold technical or procedural defect" to which they concede the statute applies is simply wishful thinking. Br. 23.[9]

Respondents next contend that habeas petitions cannot be transferred under section 1631 *at all*, because they are not "civil actions." Br. 24-25. But the government did not make this argument below, and it is therefore forfeited.[10] In any case, it is also wrong. While Respondents hunt and peck

---

[9] Respondents again cite *De Ping Wang v. DHS*, 484 F.3d 615 (2d Cir. 2007), but as the motions panel explained, that case is neither here nor there, because it involved "a petition [that] was both *untimely filed* and filed in the wrong court, [and] transferring it to the proper court [under section 1631] could not change the fact that it was untimely." *Öztürk*, 136 F.4th at 391 (emphasis added); *see* JA427 (similar). Respondents also cite *Campbell v. Off. of Pers. Mgmt.*, 694 F.2d 305 (3d Cir. 1982), but that is another case that could *not* have been brought in another court. *See id.* at 309 n.6 (rejecting transfer to newly created federal court that *did not exist* at original time of filing because decision at issue was "not subject to review" by any court, *anywhere*).

[10] *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994).

for useful quotations in cases far afield from section 1631 to show that in some contexts relevant to other statutes, habeas actions are not considered "civil," Br. 24-25, every circuit court to address the specific question, including this one, has concluded that section 1631 applies to habeas petitions. *See, e.g., Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996).[11]

Third, Respondents argue that because they transferred Ms. Öztürk to Louisiana, they managed to strip the Vermont court of habeas jurisdiction. Br. 25-26. But as the motions panel and district court have explained, that outcome runs headlong into the rule of *Ex parte Endo. See Öztürk*, 136 F.4th at 392; JA429-30. The *Endo* rule, still unquestioned by any court for more than eighty years, is that a habeas court that otherwise has jurisdiction over a case does not lose that jurisdiction just because the habeas petitioner has been moved out of the district. *See Öztürk*, 136 F.4th at 392 (citing *Padilla*, 542 U.S. at 441, itself discussing *Endo*). Contrary to Respondents'

---

[11] *See also, e.g., Robinson v. Johnson*, 313 F.3d 128, 139 (3d Cir. 2002); *Dragenice v. Ridge*, 389 F.3d 92, 97 (4th Cir. 2004); *Storey v. Lumpkin*, 8 F.4th 382, 390 (5th Cir. 2021); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003); *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999); *Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001); *Schell v. Vaughn*, 549 F. App'x 788, 790 (10th Cir. 2013); *Partee v. Att'y Gen.*, 451 F. App'x 856, 858 (11th Cir. 2012); *Christian v. Hawk*, 923 F.2d 200 (D.C. Cir. 1990).

characterization, the district court did not conclude that *Endo* "confer[red] jurisdiction" there, Br. 25; instead, the court correctly understood *Endo* to prevent Respondents' movement of Ms. Öztürk from Vermont to Louisiana from *depriving* it of jurisdiction it already had pursuant to section 1631, *Öztürk*, 136 F.4th at 392; JA430. As *Endo* explains, the "objective" of habeas relief "may be in no way impaired or defeated by the removal of the prisoner from" a district court's "territorial jurisdiction." 323 U.S. at 307; *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 447 (3d Cir. 2021) (*Endo* bars "transfer" of a habeas petitioner "to a jurisdiction that is more amenable to the Government's position"). Respondents' dim view of *Endo* is that it only protects habeas petitioners only where habeas jurisdiction originally "vested" in a particular court. Br. 26. But "[u]nder § 1631," jurisdiction *did* vest in the District of Vermont, because "the transferee court inherits the filing time of the transferor court." *Öztürk*, 136 F.4th at 392; JA430; *see Khalil*, 777 F. Supp. 3d at 391. And the court below "retain[ed jurisdiction] even in light of [Ms.] Öztürk's subsequent transfer" by the government "to Louisiana." *Öztürk*, 136 F.4th at 392.

Fourth, Respondents' argument that the district court lacks habeas jurisdiction because the petition did not name her immediate custodian is

both wrong and Kafkaesque. When Ms. Öztürk's lawyers filed her petition, she was "in transit," not at a detention facility. *Id.* at 393; JA414; JA431-32. Her petition named Respondent Hyde—the director of ICE's Boston Field Office, in whose jurisdiction Ms. Öztürk was arrested and the one person who had the power to produce Ms. Öztürk to the habeas court at the time the petition was filed—as her immediate custodian. JA431-32. It is true that, from the start of this case, Respondents have disputed that Ms. Hyde was the proper custodian. JA431. But they have also struggled mightily to identify anyone else the custodian might have been. At first, government counsel "[didn't] have a name for [the district court] right now." JA323; JA432. Those were early days, but more than a month later, before the motions panel, the government's lawyer still professed that he "[did] not know who Öztürk's immediate custodian was while she was in transit," then, when pressed, scrounged up the "novel position" (without authority) that the immediate custodian "was the warden of the Vermont facility to which she had not yet arrived." *Öztürk*, 136 F.4th at 393 n.3. Now, still without authority, Respondents continue to complain that Ms. Öztürk "never named any warden of any facility," ultimately insinuating that her immediate custodian was the warden of the *Louisiana* facility, because only "that person could produce her

31

to the habeas court." Br. 22, 28; *see* Br. 21-22 (arguing that *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484 (1973), supports their position that Ms. Öztürk's "dispute was with the warden of the Louisiana facility").[12] But under these circumstances, where "[t]here is no 'warden' that Ms. Öztürk could have named," JA432, Respondent Hyde was the only possible immediate custodian when the petition was filed, and the petition properly named her. *See Öztürk*, 136 F.4th at 393.

Even if Respondent Hyde was not Ms. Öztürk's immediate custodian at that time, the "unknown custodian" exception to the default rules applies. Under this exception—more accurately understood as both an "unknown custodian" and an "unknown location" exception—when the government holds someone "in an undisclosed location by an unknown custodian, it is

---

[12] The suggestion that when Ms. Öztürk was physically in Vermont, her immediate custodian was somehow in Louisiana, because that is where Respondents planned to eventually take her, is certainly bizarre. But the government has made the same argument more explicitly in similar litigation. *See, e.g.*, *Suri*, 2025 WL 1806692, at *4 n.4 ("the government points to no case indicating[] that a habeas petition challenging present confinement could be filed in a district to which a petitioner had not yet been"); Pet. for Certification of Interlocutory Appeal at 18, *Khalil v. Trump*, No. 25-8019 (3d Cir. Apr. 14, 2025) (arguing petitioner's immediate custodian was "knowable" because his "notice to appear list[ed] Jena, Louisiana[, as] where he would be detained" in the future, even though he was physically in New Jersey at the time of the habeas filing).

impossible to apply the immediate custodian and district of confinement rules." *Padilla*, 542 U.S. at 450 n.18 (citing *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986)); *see id.* at 458 (Stevens, J., dissenting) (noting the Court's unanimous agreement on this exception); *Öztürk*, 136 F.4th at 392-93; *Suri*, 2025 WL 1806692, at *4-6; *United States v. Moussaoui*, 382 F.3d 453, 464-65 (4th Cir. 2004); *Khalil*, 777 F. Supp. 3d at 400-10; *see also* 28 U.S.C. § 2242. That exception straightforwardly applies here, as not only was Ms. Öztürk's custodian and location unknown, but "the government concedes that it withheld . . . information [about Ms. Öztürk's whereabouts and custodian] *intentionally*." *Öztürk*, 136 F.4th at 392; JA434 ("The government does not dispute that her counsel could not have known her location," and it "admits that from the time ICE agents arrested Ms. Öztürk to the time she arrived at the Louisiana detention facility, it was keeping her location a secret.").[13] And far from simply being unknown on March 25 at 10:02 p.m., "the identity of Ms. Öztürk's actual custodian . . . appears to *still* be unknown

---

[13] To be clear, applying the unknown-custodian exception does not require any finding of bad faith on the part of the government, but merely allows for the filing of a petition when a detainee's immediate custodian or location are, in fact, unknown.

to the government," even today. JA434 (emphasis added); *see Öztürk*, 136 F.4th at 393 n.3. The exception fits this case to a tee.[14]

As they have done in courts around the country in recent months, Respondents ominously contend that the unknown-custodian exception is limited to cases involving "prolonged" secret detention, "where the custodian is actually *unknowable* for some deliberate and permanent reason." Br. 27. There is incommunicado detention, Respondents suggest, and there is "brief" incommunicado detention. Br. 27. Further, Respondents say, the blame is on Ms. Öztürk's lawyers, whose "lack of effort during" the more than 24 hours

---

[14] At the outset of this litigation, Ms. Öztürk argued that under the unknown-custodian exception, habeas jurisdiction was proper in the District of Massachusetts. *See* ECF 26 at 10–13; *see also Suri*, 2025 WL 1806692, at *6 (concluding that exception likely excused *both* the immediate-custodian and district-of-confinement rules and permitted "fil[ing] a habeas petition in [a] detainee's *last-known location against their ultimate custodian*" where "the government moves a detainee from a district and their attorney cannot discover their location with reasonable inquiry" (emphasis added)); *cf. Padilla*, 542 U.S. at 454 (Kennedy, J., concurring) (suggesting that in cases where "there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention, . . . habeas jurisdiction would be in the district court *from whose territory the petitioner had been removed*." (emphasis added)). After transfer to the Vermont, Ms. Öztürk did not seek re-transfer on those grounds; as such, the argument was not before the motions panel and is not before this Court.

their client was being held in secret locations by untold authorities is the real root cause of Ms. Öztürk's predicament. Br. 28.[15]

Courts have appropriately been astonished at this "extraordinary proposition." *Öztürk*, 136 F.4th at 393. "The only authority [the government] cites for [it] is *Demjanjuk*, which says no such thing. Neither does *Padilla*." *Suri*, 2025 WL 1806692, at *6 (cleaned up); *see Öztürk*, 136 F.4th at 393 ("such a rule finds no support in the law," and the plain text of 28 U.S.C. § 2242 "likely precludes" it).

The argument is particularly galling because it "is contrary to longstanding tradition." *Öztürk*, 136 F.4th at 393. The unknown-custodian exception is based in equity, fairness, and the necessary availability of the Great Writ—the most "adaptable" remedy in American law. *Boumediene v. Bush*, 553 U.S. 723, 779 (2008); *see Harris v. Nelson*, 394 U.S. 286, 291 (1969) ("The very nature of the writ demands that it be administered with

---

[15] That Ms. Öztürk's lawyers failed to take efforts to locate their client is absurd. Counsel contacted multiple government offices with no response. JA20. Counsel then contacted all major known ICE detention facilities in New England; and consulted the ICE online detainee locator; called numerous area hospitals. JA20. Counsel then engaged the services of the Turkish consulate, which made an in-person visit to ICE offices in Burlington, Massachusetts. JA20. In fact, even the Department of Justice lawyers working on this matter below informed counsel that *they* could not locate Ms. Öztürk, either. JA20.

the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."). But "the practical effect of" the government's rule "would be that for some unspecified period of time after detention—seemingly however long the government chooses to take in transporting a detainee between states or between facilities—a detainee would be unable to file a habeas petition at all, anywhere." *Öztürk*, 136 F.4th at 393. And "[o]ur tradition is that there is no gap in the fabric of habeas— no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it." *Khalil*, 777 F. Supp. 3d at 410 (citing 3 William Blackstone, *Commentaries* 131; Joseph Story, *Commentaries on the Constitution of the United States* § 1341, p. 237 (3d ed. 1858); and *Boumediene*, 553 U.S. at 741). "Otherwise, [a] detainee would lack the ability to seek habeas relief as long as the government kept their location and custodian a secret, thus granting 'the political branches . . . the power to switch the Constitution on or off at will,' 'leading to a regime in which . . . the President, not the Supreme Court, says "what the law is.""" *Suri*,

2025 WL 1806692, at *6 (cleaned up) (quoting *Boumediene*, 553 U.S. at 765 (quoting *Marbury v Madison*, 5 U.S. (1 Cranch) 137, 177 (1803))).[16]

Fifth and finally, relying on a case the motions panel dismissed as "plainly inapposite," *Öztürk*, 136 F.4th at 394, Respondents argue that even if the district court had habeas jurisdiction over the original petition (because, at the time of filing, she was physically present in Vermont), it lost that jurisdiction when Ms. Öztürk amended the petition (because, at that time, she was physically present in Louisiana). Br. 28-30 (citing *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) (involving the absence of federal court jurisdiction over amended complaints that remove federal claims and leave only state ones)). Of course, amendments to habeas petitions relate back to the time of filing, *see* Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii), so if there is jurisdiction over the first petition, there is jurisdiction over later amended versions. *See Öztürk*, 136 F.4th at 394. Respondents' argument that "any

---

[16] It is also relevant that the *Padilla* rules serve "the important purpose of preventing forum shopping by habeas petitioners." 542 U.S. at 447. Forum-shopping concerns are not limited to Petitioners. *See, e.g.*, *Anariba*, 17 F.4th at 447; *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000); *Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014). Respondents' rule would allow them to detain people and secretly whisk them away, at will, to jurisdictions they believe will review their behavior more favorably.

relation back does not help Öztürk solve her jurisdictional issues," Br. 29-30, is confusing, but it appears to simply repackage their losing argument that the transfer statute did not properly confer jurisdiction on the District of Vermont in the first place. As explained above, it did.

### III. The INA does not strip the district court's jurisdiction to review Ms. Öztürk's unlawful detention claims or order her transfer.

Respondents argue that various provisions of the INA strip the district court of jurisdiction to review Ms. Öztürk's detention claims and order her transfer to the District of Vermont. Br. 16-19, 30-47. A motions panel has already considered this argument and rejected it, concluding that the INA likely does not deprive courts of habeas jurisdiction over claims of unlawful detention. *See Öztürk*, 136 F.4th at 394-401; *Mahdawi v. Trump,* 136 F.4th 443, 449-53 (2d Cir. 2025). So, too, have motions panels in sister circuits. *See Suri*, 2025 WL 1806692, at *7-9; *see also* Order, *Khalil v. Trump*, No. 25-2162 (3d Cir. July 30, 2025) (denying, without opinion, motion for stay of habeas bail order pending appeal because government failed to demonstrate irreparable harm). This Court should reaffirm the motions panel's view and reject Respondents' arguments.

"Repeatedly, including in the INA context, the Supreme Court has declared that [courts] should take account of the presumption favoring

interpretations of statutes to allow judicial review absent clear statement."
*Öztürk*, 136 F.4th at 394 (cleaned up) (citing *Kucana v. Holder*, 558 U.S. 233,
237 (2010), and *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483-84
(1991)). The presumption can "only be overcome by clear and convincing
evidence of congressional intent to preclude judicial review." *Guerrero-
Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (cleaned up). Respondents cannot
meet this burden here. *See Öztürk*, 136 F.4th at 394.

The Supreme Court has consistently affirmed that the jurisdiction-
stripping provisions of the INA leave intact district courts' habeas jurisdiction
over claims of illegal civil immigration detention. *See, e.g., Jennings*, 583 U.S.
at 292-93; *Nielsen v. Preap*, 586 U.S. 392, 402 (2019). And the Second Circuit
and others have reviewed such claims in habeas. *See, e.g., Black v. Decker*,
103 F.4th 133, 138-39 (2d Cir. 2024); *Kong v. United States*, 62 F.4th 608,
609 (1st Cir. 2023); *Miranda v. Garland*, 34 F.4th 338, 352-53 (4th Cir. 2022);
*German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir.
2020); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1079 (9th Cir. 2006). None of

the INA provisions that Respondents cite preclude the district court's transfer order or its review of Ms. Öztürk's unconstitutional detention claims.[17]

### A. The INA does not bar the district court's exercise of its inherent equitable power to order Ms. Öztürk's return to Vermont.

The district court ordered Ms. Öztürk's return to Vermont, "pursuant to its inherent equitable power [and its] power under the All Writs Act," JA476, to "facilitate" the fair and expeditious resolution of her case and "give proximate effect" to the District of Massachusetts order preventing her transfer out of that jurisdiction. JA474. Respondents contend that this intrudes on their "discretionary decision[]" about "where to detain an alien pending removal proceedings," and 8 U.S.C. §§ 1252(a)(2)(B)(ii) and 1231(g) thus foreclose review. Br. 16-17. This is incorrect.

Section 1252(a)(2)(B)(ii) strips "jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the

---

[17] In concluding that it had jurisdiction to consider Ms. Öztürk's "constitutional and legal challenges to [] detention," JA437, the district court did not consider her non-detention claims. JA444. Accordingly, she focuses her jurisdictional arguments on the detention and transfer claims, as the other claims are not at issue here. *See Öztürk*, 136 F.4th at 397 n.6 ("So long as part of [Petitioner's] challenge to her detention falls outside of [the INA's jurisdictional stripping provisions], her petition survives.").

discretion of the Attorney General or the Secretary of Homeland Security." It "applies only to those decisions where Congress has expressly 'set out the Attorney General's discretionary authority in the statute.'" *Öztürk*, 136 F.4th at 395 (quoting *Kucana*, 558 U.S. at 247). "[W]hen a statute authorizes the Attorney General to make a determination, but lacks additional language specifically rendering that determination to be within his discretion . . . the decision is not" covered by section 1252(a)(2)(B)(ii). *Nethagani v. Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008).

Section 1231(g) "has no such additional language." *Öztürk*, 136 F.4th at 395. It states, in relevant part, that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). It "does not address transfers at all," but instead deals with "the government's brick and mortar obligations for obtaining facilities in which to detain aliens." *Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 209-10 (4th Cir. 2019); *see Aguilar v. ICE*, 510 F.3d 1, 20 (1st Cir. 2007).

Moreover, section 1231(g)(1)'s use of the obligatory "shall" in reference to "places of detention" rather than a permissive "may"—which it does use later when referring to the Attorney General's authority to expend certain

appropriations—further confirms that it is not directed at discretionary action regarding detention location. *See Öztürk*, 136 F.4th at 396, n.5; *see also Nken v. Holder*, 556 U.S. 418, 430 (2009) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (cleaned up)). Respondents counter that while they may be required to "find *a* place to detain" Ms. Öztürk, they retain discretion over "*which* place" that is. Br. 17 n.2. But "the question is not [simply] whether § 1231(g) requires an exercise of discretion[,] because even if it probably does, the crux is whether the text *specifies* that the decision is in the discretion of the Attorney General." *Öztürk*, 136 F.4th at 395 (cleaned up and emphasis added). Section 1231(g) does not "explicitly characterize[]" detention or transfer decisions as committed to the Attorney General's discretion. *Nethagani,* 532 F.3d at 154.

Respondents rely on a "minority view," *Aguilar*, 510 F.3d at 20, to suggest that section 1252(a)(2)(B)(ii) does not require an "express[]" conferral of discretion. Br. 18 (emphasis omitted) (citing *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999)); *see also Aguilar*, 510 F.3d at 20 (rejecting *Van Dinh* and collecting cases doing same). But the cases they cite pre-date

42

and contradict the Supreme Court's instruction in *Kucana* and this Court's holding in *Nethagani*, which explain that the section 1252(a)(2)(B)(ii) bar only operates when qualifying statutes *specify* that a power is discretionary. Nor is *Wood v. United States* to the contrary, Br. 18; there, the Court assumed jurisdiction over plaintiff's claim but rejected it on the merits, 175 F. App'x 419, 420 (2d Cir. 2006). And the unpublished district court cases that Respondents cite, Br. 18 n.3, did not involve, as here, the court's independent "inherent power," of a "constitutional dimension," as well as its power under the AWA, to "maintain a party's access to the court and preserve the court's ability to adjudicate the case fully and fairly," *Ragbir v. United States*, 2018 WL 1446407, at *1 (D.N.J. Mar. 23, 2018).

At bottom, the transfer order was intended to facilitate the resolution of the petition, which challenges Ms. Öztürk's unlawful arrest, punitive detention, and rendition across multiple state lines in retaliation for engaging in protected speech. JA30-31, 474. And it was also meant to return her "to the status quo at the time" the District of Massachusetts prohibited her removal from the district so as "to ensure continued respect for orders issued by Article III courts." JA480. "[T]he powers conferred by the [AWA] . . . are utilized in extraordinary circumstances" like the ones here, "where equitable

measures are required to facilitate adjudication . . . or peripheral aspects of habeas adjudication." *Byrd v. Hollingsworth*, 2014 WL 6634932, at \*2 (D.N.J. Nov. 21, 2014), *aff'd sub nom. Byrd v. Warden Fort Dix FCI*, 611 F. App'x 62 (3d Cir. 2015).

Moreover, challenges to "the extent of the [government's] authority under the" Constitution are "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *E.O.H.C. v. Sec'y of DHS*, 950 F.3d 177, 191 (3d Cir. 2020). Respondents' argument proves far too much, as it would mean that no court could *ever* compel the government to move an immigration detainee, for any purpose, including to testify in a proceeding as a witness or party, and "no matter how egregious the type or quantity of First Amendment or due process violations committed by the government . . . ." JA451.

### B. 8 U.S.C. § 1252(g) does not bar review of Ms. Öztürk's unconstitutional detention claims.

Section 1252(g) is "narrow[ly]" tethered to exercises of discretion by the Attorney General and "applies only to three discrete actions": "to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999) (citing 8 U.S.C. § 1252(g)). While there are other "decisions or actions that may be part of the deportation process," they do not fall within 1252(g)'s

limited scope because they do not interfere with the Attorney General's prosecutorial discretion—the "particular evil" that section 1252(g) was directed against. *Id.* at 482, 485 n.9; *accord Öztürk*, 136 F.4th at 396-97. Since *AADC*, the Supreme Court has continued to emphasize 1252(g)'s "narrow" ambit. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *Jennings*, 583 U.S. at 294. As the district court concluded, "the plain text of subsection (g) does not support a reading that [Petitioner's] detention and resulting constitutional claims arise from the government's 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" JA445.

The legislative history of section 1252(g), *contra* Br. 34-35, further supports Ms. Öztürk's position. While the REAL ID Act of 2005 added language to 1252(g) that "explicitly applied the statute's jurisdictional limitations to habeas cases," *Kong*, 62 F.4th at 615, Congress expressly stated that the Act "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders." H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.). This statement appeared immediately after an "extensive examination" of precedent describing the types of jurisdiction-stripping provisions that would not violate the right to habeas corpus. *Kong*,

62 F.4th at 614-16 (reviewing legislative history). Congress's careful review of precedent demonstrates its "attentiveness to the constitutional limitations on withdrawing habeas relief from those seeking release from unlawful detention," *id.* at 615, and does not evince "a clear statement of congressional intent to repeal habeas jurisdiction" over all detention claims. *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). In line with this legislative history, courts have consistently held that section 1252(g) "does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention," *Kong*, 62 F.4th at 609, because such claims "may be resolved without affecting pending removal proceedings." *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999); *see also Öztürk*, 136 F.4th at 398; *Madu v. U.S. Att'y Gen.,* 470 F.3d 1362, 1368 (11th Cir. 2006) (1252(g) did not apply to petitioner's "constitutional challenge to his detention"); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021) (1252(g) did not bar First Amendment detention challenge); *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) (REAL ID act did not strip jurisdiction over challenges to "constitutionality of [petitioners'] arrest and detention").

Nor does section 1252(g) reach challenges to the "very *authority*" of the executive's actions. *Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724, 729 (3d Cir.

2009); *see Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (1252(g) inapplicable where petitioner alleges they were "placed in removal proceedings unlawfully or for reasons that would offend the Constitution"); *Madu*, 470 F.3d at 1368 (1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions"); *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) (similar); *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) ("The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority . . .").

Contrary to Respondents' claim, Ms. Öztürk does not challenge a "discretionary" decision to detain her pending removal. Br. 31. Rather, she alleges that Respondents did something they had no power at all to do: unconstitutionally detain her to retaliate against and punish her for her speech in support of Palestinian human rights. JA30-32. And the district court found that she has raised "substantial claims, which have been largely unrebutted by the government, [] that her detention is in retaliation for her op-ed in a school newspaper and that her detention is punitive, in part to serve as a message to others contemplating similar speech." JA525. Far from challenging the government's routine exercise of discretion to detain someone

pending removal, *see* 8 U.S.C. § 1226(a), she "challenges [her] detention on the grounds that it violates [her] rights under the Constitution." *Mahdawi*, 136 F.4th at 450.[18] As such, her challenge does "not implicate[]" 1252(g). *Garcia*, 553 F.3d at 729.

Respondents argue that 1252(g) bars review here because "the decision to detain is inextricably linked with the Executive's discretionary decision to commence removal proceedings." Br. 33. But this "dramatically overstates the reach of" the statute. *Öztürk*, 136 F.4th at 396. The phrase "arising from" in section 1252(g) is not "infinitely elastic" and "does not reach claims that are independent of, or wholly collateral to, the removal process." *Id.* at 397 (cleaned up) (collecting cases). Ms. Öztürk's detention claim is "collateral[] to the removal process" because it can be resolved without impacting those

---

[18] The contention that "detention and removal proceedings go hand-in-hand," Br. 32, is incorrect. The government routinely initiates removal proceedings against individuals without detaining them. *See, e.g.,* Br. for Pet'rs, *United States v. Texas*, 2022 WL 4278395, at *8-9 (Sep. 12, 2022) (noting that "perennial constraints on detention capacity" prevent executive from detaining everyone subject to removal). Moreover, the Supreme Court has reviewed unlawful detention claims regardless of whether detention is mandated by statute. *See, e.g., Zadvydas*, 533 U.S. 678 (reviewing unlawful detention claims by noncitizens subject to mandatory detention under 8 U.S.C. § 1231(a)(2)); *Demore v. Kim*, 538 U.S. 510 (2003) (same as to 8 U.S.C. § 1226(c)); *Jennings*, 583 U.S. 281 (same as to 8 U.S.C. § 1225(b)).

proceedings. *Id*. Indeed, even though she has been released on bail, her removal case continues in immigration court.[19] Accepting Respondents' argument would require this Court to adopt a broad reading of section 1252(g) to "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General," *Jennings*, 583 U.S. at 294—a position the Supreme Court has already rejected as "implausible," *Regents*, 591 U.S. at 19. Ms. Öztürk's unlawful detention claims are not covered by 1252(g) because they "do not arise from the three discrete exercises of prosecutorial discretion that are shielded by" that provision, *Öztürk*, 136 F.4th at 398 (collecting cases). Adopting Respondents' sweeping position would shield virtually all unlawful detention claims from review, allowing the government to "detain noncitizens indefinitely without needing to provide a justification to anyone." *Kong*, 62 F. 4th at 616. This is not the result Congress intended.

None of the cases that Respondents cite even remotely suggest that a First Amendment retaliation challenge to unlawful detention would be barred

---

[19] *See* Exec. Off. for Immigr. Rev., *EOIR Automated Case Information*, https://acis.eoir.justice.gov/en (where entering Ms. Öztürk's "A#" reveals that her upcoming master hearing is currently scheduled for October 21, 2025 at 8:30 a.m.).

by section 1252(g). *Ragbir v. Homan*, 923 F.3d 53, 63 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020), involved a noncitizen who "sought to prevent the Government from executing [a] final order of removal against him" on the basis of his protected speech. *Id.* at 61. It was not "a habeas challenge to discretionary detention." JA448-49; *accord Öztürk*, 136 F.4th at 398 n.7. *Tazu v. Attorney General of the United States*, 975 F.3d 292 (3d Cir. 2020), was a challenge to the execution of a removal order and the "brief door-to-plane detention" required to execute that order, *id.* at 298, and its reasoning has no applicability here. And *Alvarez v. ICE*, 818 F.3d 1194 (11th Cir. 2016), which was an after-the-fact *Bivens* challenge—not an effort to seek release—held that 1252(g) did *not* strip jurisdiction to review a claim by a post-final order plaintiff that ICE had no legal authority to detain him past the initial 90-day removal period. *Id.* at 1204-05; *see also id.* at 1203 (no jurisdiction to review challenge to "ICE's decision to lodge a detainer against" petitioner); *Elgharib v. Napolitano,* 600 F.3d 597, 599-606 (6th Cir. 2010) (constitutional challenge to the execution of a final removal order); *Zundel v. Gonzales*, 230 F. App'x 468, 474 (6th Cir. 2007) (considering "decision to issue an order of removal"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (barring

50

challenge to "decision to place [petitioner] in exclusion proceedings" but allowing challenge to unconstitutional detention conditions to proceed); *Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 907 (6th Cir. 2020) (no jurisdiction to review claim by child seeking to enjoin father's removal).[20] Finally, *AADC* also involved a challenge to the "initiation of deportation proceedings," "did not sound in unlawful *detention* at all, and is therefore of no help to the government." *Öztürk*, 136 F.4th at 398 (cleaned up).

### C. 8 U.S.C. §§ 1252(a)(5), (b)(9), and 1201(i) do not bar review of Ms. Öztürk's unconstitutional detention claims.

Respondents additionally contend that, pursuant to 8 U.S.C. §§ 1252(a)(5), (b)(9), and 1201(i), review of Ms. Öztürk's claim of retaliatory detention claim must be channeled through the PFR process. Br. 40-45. Not so.

To start, neither section 1252(a)(5) nor (b)(9) bar review of Ms. Öztürk's claims. Section 1252(a)(5) "can be dispensed of quickly, as no removal order has been issued here and Ms. Öztürk does not challenge one."

---

[20] Respondents cite two unpublished district court cases that do not help them, either. *Vargas v. DHS*, 2017 WL 962420, at *2 (W.D. La. Mar. 10, 2017), holding that the court had "jurisdiction to consider [petitioner's] pre-removal detention," *supports* Ms. Öztürk's position. *Kumar v. Holder*, 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013), involved a "challenge to the commencement of removal proceedings," not unlawful detention.

JA445; *see St. Cyr*, 533 U.S. at 311, 313; *Öztürk*, 136 F.4th at 401. The same is true of section 1252(b)(9). While that provision requires that claims "arising from any action taken or proceeding brought to remove an alien . . ." be raised "only in judicial review of a final order," 8 U.S.C. § 1252(b)(9), "the very text of § 1252(b) sets out requirements only '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Öztürk*, 136 F.4th at 399 (quoting 8 U.S.C. § 1252(b)). Again, "[n]o [final] order of removal is at issue here." *Id.*

Even if 1252(b)(9) applied to pre-final-order cases, it would pose no obstacle to review here. Respondents' contention that it precludes "decisions to detain for the purposes of removal," Br. 40-41, relies on a minority position and flatly contradicts established Supreme Court precedent. *Jennings* explained that "the applicability of 1252(b)(9) turns on whether the legal questions that we must decide 'aris[e] from' the actions taken to remove" noncitizens, and construed that phrase narrowly to avoid "extreme" results that would render claims of "excessive detention" "effectively unreviewable." 583 U.S. at 293; *see also Preap*, 586 U.S. at 402 (finding 1252(b)(9) did not preclude review of detention challenge); *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021) (same); *Regents*, 591 U.S. at 19. "In fact, *Jennings*

52

explicitly rejected the formulation . . . the government seeks here"—namely, that "detention *is* an action taken . . . to remove an alien," JA447 (cleaned up), and therefore "inextricably linked to removal proceedings," Br. 44.[21]

Against this backdrop, lower courts have consistently applied section 1252(b)(9) narrowly to permit review of unlawful detention claims. *See, e.g., Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (court would have habeas jurisdiction over constitutional challenges to "arrest and detention"); *Gonzalez v. ICE,* 975 F.3d 788, 810 (9th Cir. 2020) ("claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process" and not barred by 1252(b)(9)); *Aguilar*, 510 F.3d at 11 (similar) (citing H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.)); *Kellici*, 472 F.3d at 420 (similar).

Here, Ms. Öztürk "seeks release from detention," so this claim does not "arise from" removal proceedings. *Öztürk*, 136 F.4th at 398, 400. Nor does

---

[21] Since *Jennings*, the Supreme Court has continued to review challenges to detention, notably rejecting the views of the Justices (cited by Respondents, Br. 43-44) who would have held detention claims to be jurisdictionally barred by section 1252(b)(9). *See Preap*, 586 U.S. at 402; *id.* at 422 (Thomas, J., concurring in part); *Guzman Chavez*, 594 U.S. at 533 n.4; *id.* at 547-48 (Thomas, J., concurring in part); *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (deciding merits of detention challenge without even reiterating that § 1252(b)(9) does not apply); *see id.* at 584 (Thomas, J., concurring).

"overlap, even substantial substantive overlap . . . make one claim arise out of the other." *Id*; *contra* Br. 43-44. Such a broad reading would lead to "staggering results" because, as the motions panel suggested, an individual bringing a First Amendment challenge to their removal would be barred from raising the same claim as to their conditions of confinement, or prolonged detention "merely because there is substantive overlap between claims." *Öztürk*, 136 F.4th at 400 (citing *Jennings*, 583 U.S. at 293). None of the cases Respondents cite countenance such an "absurd" outcome. *Id.* at 401 (citing *Jennings*, 583 U.S. at 293); *contra* Br. 40, 42, 43 (citing *Delgado*, 643 F.3d at 55 (relief sought was "inextricably linked" to the reinstatement of removal order and, if granted, would "render the [removal] order invalid"); *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) (1252(a)(5) barred challenge to detention where it was "based on the alleged invalidity of his order of removal"); *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (affirming jurisdiction over I-130 denial claim "unrelated to any removal action or proceeding"); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029 (9th Cir. 2016) (involving non-detention claims); *Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (same)).

Indeed, under Respondents' position, someone challenging their removal on the ground of mistaken identity could not challenge their detention on that same ground simply because of the overlap in claims—a position contradicted by *Jennings*, as such detention would then be effectively unreviewable. From *Jennings*, the Third Circuit derived a simple "now-or-never" principle: "When a detained alien seeks relief that a court of appeals cannot meaningfully provide on [PFR] of a final order of removal, § 1252(b)(9) does not bar consideration by a district court." *E.O.H.C.*, 950 F.3d at 180, 184; *see Aguilar*, 510 F.3d at 11 (explaining that reading 1252(b)(9) to cover claims that "cannot be raised efficaciously" on a petition for review would effectively bar "any meaningful judicial review"); *see also Delgado*, 643 F.3d at 55 ("whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking").

Here, Ms. Öztürk's "core argument is that her free speech and due process rights are being violated, *now*." *Öztürk*, 136 F.4th at 401. By subjecting her to retaliatory detention, Respondents seek to censor her speech and that of others who similarly would speak out in support of Palestinian rights. Unlawfully depriving her of her physical liberty effectively deters her and others from speaking, and effectuates the unconstitutional objective of

55

censoring "timel[y]" political speech when it could still influence public debate. *Elrod v. Burns*, 427 U.S. 347, 374 n.29 (1976). If Ms. Öztürk were forced to wait until the end of a lengthy PFR process to raise her claims, "relief [would] come too late to redress these conditions of confinement," *E.O.H.C.*, 950 F.3d at 186, and First Amendment injuries, rendering her constitutional claims "effectively unreviewable" and accomplishing the unlawful object of her detention, *Jennings*, 583 U.S. at 293. The censorship of speech that would have influenced public debate at a particular point in time can never be remedied—a quintessential "now-or-never" claim.[22]

Moreover, constitutional challenges to detention cannot even be heard on a PFR of a removal order. *Öztürk*, 136 F.4th at 400. And even if they could, "[t]here are serious questions about whether that process would be an adequate substitute for the writ of habeas corpus in district court, given the limited scope of administrative review." JA449; *see Khalil v. Joyce*, 2025 WL 1232369, at *29-57 (D.N.J. Apr. 29, 2025). The Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") do not have jurisdiction to decide

---

[22] Moreover, reading section 1252(b)(9) to bar Ms. Öztürk's detention challenge would raise serious questions under the Suspension Clause, U.S. Const. art. I, § 9, cl. 2. *Cf. Boumediene*, 553 U.S. at 792.

constitutional issues, nor can they develop a sufficient factual record on such issues for expeditious review by the court of appeals. *See Öztürk*, 136 F.4th at 400-01. That is not meaningful review.

Finally, Respondents suggests that, because 8 U.S.C. § 1201(i) channels review of certain *visa revocation* claims to immigration court, that it must bar review of Ms. Öztürk's *detention* claim. Br. 44-45. But Ms. Öztürk does not challenge the revocation of her visa at this stage; thus, "the merits of a visa revocation are not before the Court." JA442. And in any case, the decision to detain Ms. Öztürk is "independent" of the decision to revoke her visa and place her in removal proceedings. *Öztürk*, 136 F.4th at 397.[23] Thus, sections 1252(a)(5), (b)(9), and 1201(i) do not strip the district court of jurisdiction to review her unlawful detention claims.

### D. 8 U.S.C. § 1226(e) does not bar review of Ms. Öztürk's unconstitutional detention claims.

---

[23] Respondents obliquely suggest that the Supreme Court's decision in *DHS v. Thuraissigiam,* 591 U.S. 103 (2020), restricted the scope of habeas to bar Ms. Öztürk's challenge to unlawful detention. Br. 45. But *Thuraissigiam*—which addressed the historical common-law understandings of habeas, and not the habeas statute—affirmed that "the writ could be invoked by aliens," like Ms. Öztürk, "already in the country who were held in custody pending deportation." *Thuraissigiam*, 591 U.S. at 137-38; *see also Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025) (holding that "claims for relief [that] necessarily imply the invalidity of [petitioners'] confinement and removal . . . fall within the core of the writ of habeas corpus" (cleaned up)).

Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of [8 U.S.C. § 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien . . ." 8 U.S.C. § 1226(e). Respondents contend that this provision bars review of "a constitutional challenge to initial detention." Br. 47. But "[b]inding precedent in this Circuit" rejects that argument. JA439. "[B]ecause § 1226(e) 'contains no explicit provision barring habeas review,' the Supreme Court has held that its 'clear text' does not bar jurisdiction over a constitutional challenge to detention under § 1226." *Öztürk* 136 F.4th at 401 (citing *Demore*, 538 U.S. at 517); *see Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008); *Najera v. United States*, 926 F.3d 140, 141 (5th Cir. 2019). That Ms. Öztürk challenges the constitutionality of the initial decision to detain her does not, as the government contends, Br. 46-47, undermine the binding and persuasive force of this precedent. Nor do the cases that Respondents cite. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (1226(e) does not preclude challenges to the extent of the government's authority); *Mayorga v. Meade*, 2024 WL 4298815, at *6

(S.D. Fla. Sept. 26, 2024) (seeking review of "discretionary decision by []
immigration judge to deny [p]etitioner bond"); *Saadulloev v. Garland*, 2024
WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) (involving petitioner subject to
mandatory detention under 8 U.S.C. § 1225(b)(2)); *Saloum v. USCIS*, 437
F.3d 238, 243 (2d Cir. 2006) (courts retain jurisdiction to review "colorable
constitutional violations"); *Xiaobin Liu v. Holder*, 415 F. App'x 298, 300 (2d
Cir. 2011) (no jurisdiction where petitioner "failed to present any
constitutional claim or question of law regarding the agency's finding that her
[asylum] application was untimely"). Because Ms. Öztürk "has appropriately
raised constitutional claims for this Court to consider in habeas, the nature of
those claims defeats any jurisdictional bar set forth in § 1226(e)." JA440.

## CONCLUSION

The Court should dismiss the appeal, and if not, affirm the district
court's transfer order.


Dated: August 18, 2025              */s/  Brett Max Kaufman*

Noor Zafar                          Lia Ernst
Sidra Mahfooz                       Monica H. Allard
Michael K.T. Tan                    ACLU FOUNDATION OF VERMONT
Brian Hauss                         PO Box 277
Esha Bhandari                       Montpelier, VT 05601
Brett Max Kaufman                   (802) 223-6304

AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
nzafar@aclu.org
smahfooz@aclu.org
m.tan@aclu.org
bhauss@aclu.org
ebhandari@aclu.org
bkaufman@aclu.org

Jessie J. Rossman
Adriana Lafaille
Rachel E. Davidson
Julian Bava
ACLU FOUNDATION OF
  MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org
rdavidson@aclum.org
jbava@aclum.org

lernst@acluvt.org
mallard@acluvt.org

Ramzi Kassem
Naz Ahmad
Mudassar Toppa
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY  11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu

Matthew D. Brinckerhoff
Katherine Rosenfeld
Vasudha Talla
Sonya Levitova
EMERY CELLI BRINCKERHOFF ABADY
  WARD & MAAZEL LLP
One Rockefeller Plaza, 8th Floor
New York, NY 10020
(212) 763-5000
mbrinckerhoff@ecbawm.com
krosenfeld@ecbawm.com
vtalla@ecbawm.com
slevitova@ecbawm.com

*Counsel for Petitioner–
Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Second Circuit by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Brett Max Kaufman
Brett Max Kaufman
*Counsel for Petitioner–Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 12,982 words and complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Charter typeface.

/s/ Brett Max Kaufman

Brett Max Kaufman
*Counsel for Petitioner–Appellee*