# No. 25-1019

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

### RUMEYSA OZTURK,
**Petitioner-Appellee,**

#### v.

**PATRICIA HYDE, in her official capacity as the New England Field Director for U.S. Immigration and Customs Enforcement; MICHAEL KROL, in his capacity as HSI New England Special Agent in Charge, U.S. Immigration and Customs Enforcement; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO A. RUBIO, in his official capacity as Secretary of State; DONALD J. TRUMP, in his official capacity as President of the United States, Respondents-Appellants.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT
District Court Case No. 2:25-cv-374**

---

**RESPONDENTS-APPELLANTS' REPLY
IN SUPPORT OF THE OPENING BRIEF**

---

**BRETT A. SHUMATE**
**Assistant Attorney General**
**Civil Division**

**DREW C. ENSIGN**
**Deputy Assistant Attorney**
**General**
**Office of Immigration Litigation**

**MICHAEL P. DRESCHER**
**Acting United States Attorney**
**District of Vermont**

**DRUMAN Y. SAMPAT**
**ALANNA T. DUONG**
**Senior Litigation Counsel**
**Office of Immigration Litigation**
**Civil Division**
**U.S. Department of Justice**
**P.O. Box 878**
**Ben Franklin Station**
**Washington, DC 20044**
**Tel: (202) 305-7040**

**Attorneys for Respondents-Appellants**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................1

ARGUMENT ...............................................................................3

    I.    This Court Has Jurisdiction Over this Appeal ......................3

        A.    The District Court's Order Is Appealable .....................3

        B.    The Appeal Is Not Moot ................................................5

    II.    The District Court Lacks Jurisdiction ................................10

        A.    The District Court Lacks Jurisdiction Over Transfer Decisions ......................................................................10

        B.    The District Court Lacks Habeas Jurisdiction ............15

        C.    The District Court Lacks Jurisdiction Over This Case ......................................................................................22

CONCLUSION ..........................................................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez,*
    585 U.S. 579 (2018) .................................................................. 4

*Adejola v. Barr,*
    408 F. Supp. 3d 284 (W.D.N.Y. 2019) .................................. 10

*Adorers of the Blood of Christ v. FERC,*
    897 F.3d 187 (3d Cir. 2018) .................................................. 30

*Almeida-Amaral v. Gonzales,*
    461 F.3d 231 (2d Cir. 2006) .................................................. 31

*Alvarez v. ICE,*
    818 F.3d 1194 (11th Cir. 2016) ............................................. 24

*Aslam v. Mukasey,*
    537 F.3d 110 (2d Cir. 2008) .................................................. 31

*Axon Enterprise Inc. v. FTC,*
    598 U.S. 175 (2023) ............................................................... 30

*Biden v. Texas,*
    597 U.S. 785 (2022) ............................................................... 13

*Bonhometre v. Gonzales,*
    414 F.3d 442 (3d Cir. 2005) .................................................. 26

*Burger v. Gonzales,*
    498 F.3d 131 (2d Cir. 2007) .................................................. 31

*Calderon v. Moore,*
    518 U.S. 149 (1996) ................................................................. 5

*Carafas v. LaVallee,*
    391 U.S. 234 (1968) ................................................................. 6

*Church of Scientology of Cal. v. United States,*
    506 U.S. 9 (1992) ................................................................. 5, 8

*Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson,*
236 F.3d 1174 (10th Cir. 2000) ............................................................. 8

*Comm. on Judiciary of U.S. House of Reps. v. Miers,*
542 F.3d 909 (D.C. Cir. 2008) ............................................................... 5

*Delgado v. Quarantillo,*
643 F.3d 52 (2d Cir. 2011) ........................................................... 26, 29

*Demjanjuk v. Meese,*
784 F.2d 1114 (D.C. Cir. 1986) ........................................................... 20

*Dep't of Educ. v. California,*
145 S. Ct. 966 (2025) .............................................................................. 4

*Ex Parte Endo,*
323 U.S. 283 (1944) ........................................................................ 1, 19

*Gomez v. Whitaker,*
No. 6:18-CV-06900-MAT, 2019 WL 4941865 (W.D.N.Y. Oct. 8, 2019)
.............................................................................................................. 10

*Harris v. Nelson,*
394 U.S. 286 (1969) .............................................................................. 18

*Humphries v. Various Fed. INS Emps.,*
164 F.3d 936 (5th Cir. 1999) ............................................................... 25

*Ibarra-Perez v. United States,*
--- F.4th ---, 2025 WL 2461663 (9th Cir. Aug. 27, 2025) ...................... 25

*Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.,*
955 F.3d 314 (2d Cir. 2020) ................................................................... 6

*Jennings v. Rodriguez,*
583 U.S. 281 (2018) ........................................................................ 28, 29

*Johnson v. Arteaga-Martinez,*
596 U.S. 573 (2022) ........................................................................ 14, 30

*Johnson v. Guzman Chavez,*
594 U.S. 523 (2021) .............................................................................. 29

iii

*Khalil v. Joyce, et al.*,
  771 F.Supp.3d 268 (S.D.N.Y. 2025) .......................................... 9

*Knox v. Serv. Emps. Int'l Union, Local,*
  *1000*, 567 U.S. 298 (2012) .................................................... 5

*Kucana v. Holder*,
  558 U.S. 233 (2010) ................................................ 11, 12, 13

*Levine v. Apker*,
  455 F.3d 71 (2d Cir. 2006) ................................................. 7

*Limpin v. United States*,
  828 F. App'x 429 (9th Cir. 2020) ....................................... 24

*Mahdawi v. Trump, et al.*,
  782 F.Supp.3d  (D. Vt. 2025) ............................................. 9

*Mathurin v. Barr*,
  No. 6:19-CV-06885-FPG, 2020 WL 9257062 (W.D.N.Y. Apr. 15, 2020)
  .......................................................................... 10

*Matter of Barcenas*,
  19 I. & N. Dec. 609 (BIA 1988) ........................................ 31

*Matter of Herrera Del Orden*,
  25 I. & N. Dec. 589 (BIA 2011) ........................................ 31

*Matter of M-P-*,
  20 I. & N. Dec. 786 (BIA 1994) ........................................ 31

*Matter of S-H-*,
  23 I. & N. Dec. 462 (BIA 2002) ........................................ 32

*Matter of Toro*,
  17 I. & N. Dec. 340 (BIA 1980) ........................................ 31

*Mills v. Green*,
  159 U.S. 651 (1895) ........................................................ 5

*Murphy v. Hunt*,
  455 U.S. 478 (1982) ........................................................ 9

*Nethagani v. Mukasey,*
    532 F.3d 150 (2d Cir. 2008) ..................................................... 11, 12, 13

*Nielsen v. Preap,*
    586 U.S. 392 (2019) ............................................................................ 29

*Ozturk v. Hyde,*
    136 F.4th 382 (2d Cir. 2025) .................................................. 3, passim

*Ozturk v. Trump,*
    779 F. Supp. 3d 462 (D. Vt.) ............................................................ 4, 7

*P.M. v. Joyce,*
    No. 22-CV-6321 (VEC), 2023 WL 2401458 (S.D.N.Y. Mar. 8, 2023)
    .................................................................................................... 10

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
    525 U.S. 471 (1999) .................................................................. 23, 26, 32

*Ruiz v. Mukasey,*
    552 F.3d 269 (2d Cir. 2009) .............................................................. 29

*Rumsfeld v. Padilla,*
    542 U.S. 426 (2004) ............................................................... 1, passim

*Schlanger v. Seamans,*
    401 U.S. 487 (1971) ...................................................................... 18, 19

*Shoop v. Twyford,*
    596 U.S. 811 (2022) ............................................................................. 3

*Stafford v. Briggs,*
    444 U.S. 527 (1980) ........................................................................... 19

*Suri v. Trump,*
    --- F.Supp.3d ---, 2025 WL 1310745 (E.D. Va. May 6, 2025) ............... 9

*Tazu v. Att'y Gen.,*
    975 F.3d 292 (3d Cir. 2020) .............................................................. 27

*Toure v. Att'y Gen.,*
    443 F.3d 310 (3d Cir. 2006) .............................................................. 31

*Van Dinh v. Reno,*
  197 F.3d 427 (10th Cir. 1999)............................................................11

*Vasquez-Ramos v. Barr,*
  No. 20-CV-6206-FPG, 2020 WL 13554810 (W.D.N.Y. June 26, 2020)
  ..............................................................................................................10

*Velas Lopez v. Decker,*
  978 F.3d 842 (2d Cir. 2020) ................................................................32

*Weinstein v. Bradford,*
  423 U.S. 147 (1975)................................................................................9

*Wilkinson v. Garland,*
  601 U.S. 209 (2024)..............................................................................13

*Wood v. U.S.,*
  175 F. App'x 419 (2d Cir. 2006) ..........................................................15

*Zheng v. Decker,*
  No. 14-cv-4663 (MHD), 2014 WL 7190993 (S.D.N.Y. Dec. 12, 2014)
  ..............................................................................................................10

## <u>Statutes</u>

8 U.S.C. § 1158(a) ......................................................................................12

8 U.S.C. § 1158(b)(2)(A)............................................................................13

8 U.S.C. § 1225(b)(2)(C)............................................................................13

8 U.S.C. § 1226 ..........................................................................................11

8 U.S.C. § 1226(a) ................................................................10, 11, 13, 14

8 U.S.C. § 1226(a)(1)............................................................................11, 14

8 U.S.C. § 1226(a)(2)..................................................................................14

8 U.S.C. § 1226(e) ........................................................................2, passim

8 U.S.C. § 1229a(b)(1)................................................................................31

vi

8 U.S.C. § 1252(a)(2)(B) ..................................................................... 11, 12

8 U.S.C. § 1252(a)(2)(B)(i) ............................................................... 11, 12

8 U.S.C. § 1252(a)(2)(B)(ii) ....................................................... 11, 12, 12

8 U.S.C. § 1252(a)(5) ................................................................. 2, passim

8 U.S.C. § 1252(b)(9) ................................................................ 2, passim

8 U.S.C. § 1252(g) .................................................................... 2, passim

28 U.S.C. § 1391(e) .............................................................................. 18

28 U.S.C. § 1631 ..................................................................... 1, 16, 17

28 U.S.C. § 1651 .................................................................................. 3

28 U.S.C. § 2347(b)(3) ........................................................................ 32

28 U.S.C. § 1292(a)(1) ..................................................................... 1, 4

## Rules

Fed. R. Civ. P. 81(a)(4) ....................................................................... 18

Fed. R. Civ. P. 81(a)(4)(B) .................................................................. 18

## Regulations

8 C.F.R. § 1003.19(b) ......................................................................... 31

8 C.F.R. § 1240.1(b) ........................................................................... 31

8 C.F.R. § 1240.10(a)(4) ..................................................................... 31

8 C.F.R. § 1240.11(c)(3)(ii) ................................................................ 31

## Other Authority

Exec. Off. for Immigr. Review, *Consideration of Constitutional
   Arguments in Agency Adjudications* (PM 25-45, Sept. 5, 2025) ......... 31

vii

# **INTRODUCTION**

None of the arguments in Ozturk's answering brief undermines the government's reasons for why reversal is warranted. Ozturk attempts to attack this Court's appellate jurisdiction, yet the stay panel already found jurisdiction and the order is independently appealable under 28 U.S.C. § 1292(a)(1), as the district court recognized. Her mootness argument is similarly unavailing, as this Court may provide effective relief by reversing the transfer order. And in any event, the transfer issue is capable of repetition yet evading review. Indeed, multiple district courts have recently interfered with the Executive's routine movement of detainees pending their removal proceedings.

Ozturk's attempts to justify the district court's habeas jurisdiction under 28 U.S.C. § 1631 fail because she never filed a petition in her district of confinement, nor named her immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004). Her petition was thus not "properly file[d]" in Vermont. *See Ex Parte Endo*, 323 U.S. 283 (1944). Although Ozturk invokes the "unknown custodian" exception, that exception is extremely narrow and applies only when the detainee's location is being deliberately concealed for a lengthy period. Nothing like

that was remotely true here. Ozturk was en route to her ultimate destination of Louisiana when her petition was filed in the District of Massachusetts. The Court should not reward that impatience.

Finally, Ozturk makes unpersuasive efforts to explain the district court's circumvention of the multiple jurisdictional bars in the Immigration and Nationality Act. The crux of Ozturk's challenge, as provided in her own complaint and prayer for relief, is to her detention and removal proceedings. But 8 U.S.C. § 1252(g) bars such challenges in federal court. Moreover, by enacting 8 U.S.C. §§ 1252(a)(5) and (b)(9), Congress intended for Ozturk's challenges—even constitutional ones—to be brought through the petition-for-review process. And if those jurisdictional bars were not enough, 8 U.S.C. § 1226(e) divests the district court of jurisdiction to review DHS's decision to detain Ozturk.

Right now, two forums are reviewing in parallel whether Ozturk is removable from the United States. That concurrent litigation is *precisely* what Congress intended to forbid—and did so with the *multiple*, independent jurisdictional bars here. This Court should thus reverse the transfer order.

## ARGUMENT

## I.   This Court Has Jurisdiction Over this Appeal

### A.   The District Court's Order Is Appealable

Pursuant to the collateral order doctrine, federal courts of appeal have appellate jurisdiction to review a transportation order under the All Writs Act, 28 U.S.C. § 1651.  *Id.*  The stay panel correctly determined that the district court's transfer order is appealable under that doctrine, pursuant to *Shoop v. Twyford*, 596 U.S. 811, 817 n.1 (2022).  *See Ozturk v. Hyde*, 136 F.4th 382, 389-90 (2d Cir. 2025).  In *Shoop*, the Supreme Court held that an order to temporarily transfer a prisoner to a hospital (in aid of a habeas claim) was a reviewable collateral order.  596 U.S. at 817 n.1.  The transfer order here is no different:  It "conclusively requires transportation"; it implicates an "important" feature of federal "sovereignty"; and it involves costs and actions that are effectively "unreviewable by the time the case has gone to final judgment."  *Id.* Ozturk says the transfer order does not present the kind of important issue for which the collateral-doctrine is reserved or implicate similar questions of federalism or immunity.  AB.22-23.  But Ozturk herself has cited no less than "six courts" that have been faced with these or similar

3

issues in recent days, demonstrating the importance of the issues at hand and the courts' repeated infringement on the prerogatives of both Congress and the Executive here. *See* AB.24.

Moreover, the transfer order is independently appealable under 28 U.S.C. § 1292(a)(1), as the district court recognized. *See Ozturk v. Trump*, 779 F. Supp. 3d 462, 498 (D. Vt.), *amended sub nom. Ozturk*, 136 F.4th at 382. Section 1292(a)(1) provides that the courts of appeals "shall have jurisdiction of appeals from interlocutory orders granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1) (cleaned up). The order directed ICE to transfer Ozturk from a facility in Louisiana to a facility in Vermont; indeed, Ozturk admits that the order had the practical effect of an injunction (*see* AB.21). And the Supreme Court "has made clear that where an order has the 'practical effect' of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." *Abbott v. Perez*, 585 U.S. 579, 595 (2018) (citation omitted). The district court's order is thus an appealable injunction. *See, e.g., Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (order that "enjoin[ed] the Government from terminating various education-related

4

grants" and "require[d] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue"); *Comm. on Judiciary of U.S. House of Reps. v. Miers*, 542 F.3d 909, 910-11 (D.C. Cir. 2008) (order "framed as a declaratory judgment" was "the functional equivalent" to an injunction when it would compel officials "to take certain actions").

## B.   The Appeal Is Not Moot

The district court's May 9 order directing that Ozturk be released from detention does not moot this appeal. *See* AB.19-20. Federal courts may not "give opinions upon moot questions or abstract propositions," and an appeal should thus be dismissed as moot when, by virtue of an intervening event, a court cannot grant "any effectual relief whatever" in favor of the appellant. *Calderon v. Moore*, 518 U.S. 149, 150-51 (1996) (citing *Mills v. Green*, 159 U.S. 651, 653 (1895)). But the available remedy does not need to be "fully satisfactory" to avoid mootness. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992). Even the availability of a "partial remedy" is "sufficient to prevent [a] case from being moot." *Id.* Thus, a case is "moot only when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party." *Knox*

*v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (citation and quotation marks omitted) (emphasis added).

That standard is not met here. If the Court reverses the transfer order, including on jurisdictional grounds, that will likewise enable the government to obtain relief from the Court's order of release. That the government did not appeal the release order is of no significance (AB.19-20), as the district court applied the same reasoning in that order to find jurisdiction under the habeas statute and the INA as it did in the order directing transfer. Moreover, if a petitioner's appeal would not render moot her claims in district court if she were released from custody, the corollary is that the government's appeal of its arguments in response to her claims should also not be rendered moot—especially when it challenges the threshold issue of whether the district court had authority to act in the first place. *See, e.g.*, *Carafas v. LaVallee,* 391 U.S. 234, 237-38 (1968) (holding that the defendant's inability to engage in certain businesses, serve as an official of a labor union, vote in an election, and serve as a juror due to his conviction defeated the mootness challenge to his appeal); *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020) ("A habeas petition is generally not moot so long

6

as the petitioner continues to be held in the custody that he alleges is unlawful. That is so whether the petitioner is experiencing direct physical custody (e.g., incarceration), or is subject to restraints on his liberty, such as parole.") (citation omitted).

At a minimum, this Court can grant effectual relief by reversing the transfer order, which would still provide the government some relief. Ozturk says the transfer order is obsolete now that she has been released from detention (AB.19-20), but there was more to the transfer order. Before being able to direct Ozturk's transfer, the district court had to find (a) that it had authority to order the transfer notwithstanding 8 U.S.C. § 1226(e), (b) that it had to find habeas jurisdiction, and (c) that the INA did not preclude judicial review. *See Ozturk*, 779 F. Supp. 3d at 474-86. While this Court may not be able to return the parties to the *status quo ante*, this Court can reverse the transfer order. In the event Ozturk violates the conditions of her release, she would be returned to ICE custody and ICE would detain her in a location appropriately based on its operational considerations. That potential remedy is sufficient to prevent the case from being moot. *See, e.g.*, *Levine v. Apker*, 455 F.3d 71, 77 (2d Cir. 2006) ("If Levine prevails on this appeal and we remand to the

7

district court for further proceedings, the fact that the district court might, because of our ruling, modify the length of Levine's supervised release would constitute 'effectual relief.'"); *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1181-82 (10th Cir. 2000) ("The crucial question is whether granting a present determination of the issues offered will have some effect in the real world.") (cleaned up).

That was the case in *Church of Scientology*, where the Supreme Court concluded that the availability of a "possible remedy [was] sufficient to prevent the case from being moot." 506 U.S. at 13. There, the Church delivered copies of the tapes in question to the IRS in compliance with a district court order. *Id.* at 12. On appeal, the government argued that the case was moot because it was impossible for the court of appeals to grant the Church any effectual relief. *Id.* But the Supreme Court disagreed: While the court of appeals "may not be able to return the parties to the *status quo ante*—there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the tapes—a court can fashion *some* form of meaningful relief in circumstances such as these." *Id.* at 12-13. For example, the court could order that the government destroy or return any

copy it may have in its possession. *Id*. at 13. The availability of this possible remedy was sufficient to overcome mootness. *Id*. So too here.

Finally, contrary to Ozturk's invocation (*see* AB.20 n.6), this appeal is not moot because the issue is "capable of repetition yet evading review." That doctrine applies to situations where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 481-83 (1982) (citation omitted). Here, the duration was short because the transfer action was issued on April 18, *Ozturk*, 779 F.Supp.3d at 462, and the government had to comply by May 14, *Ozturk*, 136 F.4th at 403-04. Further, there is a "demonstrated probability" that the same controversy will recur because, indeed, it has occurred, *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (*per curiam*)— multiple district courts have recently interfered with the Executive's routine movement of detainees pending their removal proceedings. *See, e.g.*, *Khalil v. Joyce et al.*, 771 F.Supp.3d 268 (S.D.N.Y. 2025); *Mahdawi v. Trump et al.*, 782 F.Supp.3d 214 (D. Vt. 2025); *Suri*

*v. Trump*, --- F.Supp.3d ---, 2025 WL 1310745 (E.D. Va. May 6, 2025).

Accordingly, this appeal is not moot.

## II.   The District Court Lacks Jurisdiction

### A.   The District Court Lacks Jurisdiction Over Transfer Decisions

The district court had no power to transfer Ozturk.  Courts in this Circuit have repeatedly held that they lack the authority to dictate to the Executive Branch where it must detain an alien during removal proceedings.[1]  *See* OB.16-19.  That rule follows from a straightforward application of the INA:  Section 1226(a) gives DHS broad discretion over whether to detain an alien during removal proceedings; Section 1231(g) gives the Secretary authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal";

---

[1]   *See, e.g.*, *Zheng v. Decker*, No. 14-cv-4663 (MHD), 2014 WL 7190993, at *15-16 (S.D.N.Y. Dec. 12, 2014); *Salazar v. Dubois*, No. 17-cv-2186 (RLE), 2017 WL4045304, at *1 (S.D.N.Y. Sept. 11, 2017); *Mathurin v. Barr*, No. 6:19-CV-06885-FPG, 2020 WL 9257062, at *11 (W.D.N.Y. Apr. 15, 2020); *P.M. v. Joyce*, No. 22-CV-6321 (VEC), 2023 WL 2401458, at *5 (S.D.N.Y. Mar. 8, 2023); *Vasquez-Ramos v. Barr*, No. 20-CV-6206-FPG, 2020 WL 13554810, at *6 (W.D.N.Y. June 26, 2020); *Adejola v. Barr*, 408 F. Supp. 3d 284, 287 (W.D.N.Y. 2019); *Gomez v. Whitaker*, No. 6:18-CV-06900-MAT, 2019 WL 4941865, at *6 (W.D.N.Y. Oct. 8, 2019).

and Section 1252(a)(2)(B)(ii) bars district courts from reviewing those discretionary determinations. *See, e.g.*, *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999). Therefore, although the INA does not use the word "discretion," the language and structure of § 1226 clearly confers discretion on the Attorney General. That is why § 1226(e) describes the prior provisions, including § 1226(a), as involving the Attorney General's "discretionary judgment." *See* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.").

Relying on *Kucana v. Holder*, 558 U.S. 233, 247 (2010), and *Nethagani v. Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008), Ozturk's primary response is that none of these provisions "explicitly characterize[]" detention or transfer decisions as committed to the Attorney General's discretion. AB.42-43. *Kucana* and *Nethagani* impose no such requirement. In *Kucana*, the Supreme Court held that 8 U.S.C. § 1252(a)(2)(B)[2] applied to Attorney General determinations made

_____

[2] Section 1252(a)(2)(B) states:

Notwithstanding any other provision of law (statutory or nonstatutory), ... and regardless of whether the judgment, decision,

discretionary *by statute*, not to determinations declared discretionary by the Attorney General *through regulations*, because the key words "specified under this subchapter" referred to statutory, but not to regulatory, specifications. 558 U.S. at 233. The Court found persuasive that each of the statutory provisions referenced in subsection 1252(a)(2)(B)(i) addressed different forms of discretionary relief, that each provision contained language indicating that the decision was entrusted to the Attorney General's discretion, and that subsection (i) did not refer to any regulatory provisions. *Id.* at 246. Read harmoniously with subsection 1242(a)(2)(B)(ii), "both clauses convey[ed] that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute," and this excludes regulatory provisions. *Id.* at 247. Similarly reviewing subsection 1252(a)(2)(B)(ii) in *Nethagani*, this Court held that, "when a

———————————————

or action is made in removal proceedings, no court shall have jurisdiction to review—

(i)      any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii)     any other decision or action of the Attorney General ... the authority for which is specified under this subchapter to be in the discretion of the Attorney General ..., other than the granting of relief under section 1158(a) of this title.

statute authorizes the Attorney General to make a determination, but lacks additional language specifically rendering that determination to be within his discretion … the decision is not one that is specified ... to be in the discretion of the Attorney General." 532 F.3d at 154-55. Because 8 U.S.C. §§ 1158(b)(2)(A) and 1231(b)(3)(B) do not expressly place the determination within the Attorney General's discretion, this Court concluded that neither provision specified that the decision was within the Attorney General's discretion. *Id.* at 155.

The statutory provisions relevant here (that is, §§ 1226(a) and 1231(g)) do not include language such as, "in the discretion of the Attorney General," or "to the satisfaction of the Attorney General," as highlighted in *Kucana*, 558 U.S. at 246-47, and *Nethagani*, 532 F.3d at 154-55. Yet neither *Kucana*, *Nethagani*, nor the Supreme Court recently in *Wilkinson v. Garland*, has limited discretionary provisions in the INA to include provisions that only include those magic words. *See* 601 U.S. 209, 224 (2024) (listing discretionary forms of relief and the relevant language denoting discretion). Indeed, in *Biden v. Texas*, the Supreme Court ruled that the contiguous-territory return authority in 8 U.S.C. § 1225(b)(2)(C) was discretionary because "may" meant "may." 597 U.S.

785, 807 (2022). And it is undisputed that § 1226(a) provides that the Attorney General "may" detain aliens pending their removal proceedings and "may release" such individuals on "bond ... or conditional parole." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022) (citing 8 U.S.C. §§ 1226(a)(1), (2)). Although Ozturk attempts to attack only § 1231(g) (*see* AB.41-42), §§ 1226(a) and 1231(g) must be read harmoniously: § 1231(g), with its use of "shall," requires the government find a place to detain aliens, and § 1226(a), with its use of "may," makes discretionary the decision on where to detain the individuals.

In short, the INA commits to DHS's discretion *whether* and *where* to detain an alien in removal proceedings; a *transfer* order, by definition, interferes with that judgment call, and injects the courts into an area that Congress assigned exclusively to the Executive. *See* 8 U.S.C. §§ 1226(a) (providing that an alien "may be arrested and detained pending a decision on whether the alien is to be removed from the United States"); (e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of

bond or parole."). That remains true, regardless of the intent of the transfer order. *Cf.* AB.43.

Ozturk asserts that challenges to the extent of the government's authority under the Constitution are not a matter of discretion. *See* AB.44. But Ozturk is not challenging, for example, the "extent of the Attorney General's authority under the post-removal-period detention statute," *id.*, or any other extent of the Attorney General or Secretary's discretion. Instead, she is challenging the fact that she is detained on an allegedly improper removal ground. *See* JA-31-34, ¶¶ 69, 73-75, 78, 85-86. At bottom, "statutory discretion" can come in many forms, including where the Secretary is given the power to do something, without being simultaneously "required" to do so in any "particular" way. *Wood v. U.S.*, 175 F. App'x 419, 420 (2d Cir. 2006). So much so here: The Secretary has discretion over whether and where to detain Ozturk; that sort of "discretionary judgment" is unreviewable. *See also* 8 U.S.C. § 1226(e).

## B. The District Court Lacks Habeas Jurisdiction

The district court lacked authority to transfer Ozturk for another fundamental reason: It lacked jurisdiction over Ozturk's habeas petition.

15

OB.19-30. Ozturk argues that, under *Padilla*, the habeas statute does not contain "preconditions or specific statutory perquisites" for habeas jurisdiction, but instead contains "default rules, to which various exceptions apply." AB.25 (cleaned up). But that is the opposite of *Padilla*'s holding. *Padilla* was a statutory interpretation case about what it meant to be "within" the "jurisdiction" of a federal habeas court. *See* 542 U.S. at 435-38, 442-47. To be sure, the Supreme Court read that statute considering the history that came before it. But the point remains: To issue habeas relief, a district court must satisfy § 2241's terms; and where a district court fails to do so, nothing in § 1631 gives it the authority to issue relief anyway.

That venerable principle is dispositive here. Ozturk never filed a proper habeas petition in the District of Vermont; the District of Vermont is not her district of confinement; and the District of Vermont does not have personal jurisdiction over Ozturk's immediate custodian. The district court thus lacks habeas jurisdiction.

***Section 1631.*** Ozturk's arguments show that she continues to misunderstand the government's position on § 1631: Contrary to Ozturk's claim (AB.27), the case would not have properly been before the

District of Vermont had the petition been filed there at 10:01pm on March 25. That is because she still only named supervisory officials and not her immediate custodian. *See Padilla*, 542 U.S. at 439 ("In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent."). Section 1631 works to cure technical or procedural defects that would otherwise prevent a court from exercising its existing authority over a case (such as a statute of limitations). It does not— and cannot—vest district courts with authority they otherwise lack over a dispute. Under Ozturk's (and the stay panel's) theory, when the government transports an alien to their ultimate detention destination (a decision made prior to the alien's arrest), *any state* that the alien travels to on her route to her ultimate destination could be a "district of confinement," and thus, a proper jurisdiction for her to bring a habeas claim. But that cannot be the case. Section 1631 does not allow a district court to acquire substantive authority over a case or its litigants, based on the fiction that the case was filed before, at a time when it could have properly acted. If the district court lacks the power to issue a given remedy (like habeas) or command a given person (like a custodian outside

17

its jurisdiction), then it cannot rely on the general transfer statute to acquire that otherwise absent authority.

Despite Ozturk's assertion to the contrary (*see* AB.28-29), labeling habeas proceedings as "civil actions" "is gross and inexact," because habeas actions are "unique." *Harris v. Nelson*, 394 U.S. 286, 293-94 (1969). The issues presented in habeas proceedings "are materially different from those dealt within the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure," which is why rules promulgated for civil cases are not applied wholesale to habeas petitions." *Id.* at 296, 300 n.7; *see* Fed. R. Civ. P. 81(a)(4) and (a)(4)(B) (providing that civil rules apply in habeas proceedings only "to the extent that the practice in those proceedings … has previously conformed to the practice in civil actions"). Indeed, the Supreme Court has repeatedly refused to construe the phrase "civil action" to encompass habeas proceedings. For example, in *Schlanger v. Seamans*, the Court considered the scope of 28 U.S.C. §1391(e), which "provided for nationwide service of process in a 'civil action in which each defendant is an officer or employee of the United States.'" 401 U.S. 487, 490 (1971) (quoting 28 U.S.C. §1391(e) (1964 ed., Supp. V.)). The Court noted that, "[t]hough habeas corpus is

18

technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions." *Id.* *Schlanger* thus rejected an "overbroad interpretation" of "the phrase 'civil action'" that would have encompassed habeas proceedings. *Stafford v. Briggs*, 444 U.S. 527, 542-43 (1980).

**Ex Parte Endo.** Ozturk objects to reading *Ex Parte Endo* as being limited to situations where a petition has been first "properly filed." AB.30. But that is literally how the *Padilla* Court described the case: "Thus, *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she *properly files* a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." 542 U.S. at 441. Ozturk never *properly* filed a petition naming her immediate custodian in the District of Vermont; thus, *Endo* could not save the District of Vermont's jurisdiction when Ozturk continued en route to her ultimate destination of Louisiana.

Likewise, Ozturk insists that this Court excuse her failure to name her immediate custodian, because she named Director Hyde, the director of ICE's Boston Field Office in whose jurisdiction she was arrested and

19

the person whom she claimed had the power to produce her at the time the petition was filed.  AB.30-31.  But *Padilla* "reaffirm[ed] that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent."  542 U.S. at 435.  Just as naming Secretary Rumsfeld was insufficient, so too is naming Director Hyde.

*The Unknown-Custodian Exception*.  Contrary to Ozturk's claim (*see* AB.32-34), the "unknown custodian" exception applies when the custodian is actually *unknowable* for some deliberate and permanent reason. *Demjanjuk v. Meese*, 784 F.2d 1114, 1115-16 (D.C. Cir. 1986).  As Judge Bork emphasized, those are "limited and special circumstances." *Id.* at 1116.  Demjanjuk had been certified as extraditable to the State of Israel and was in the custody of the U.S. Marshals *in a confidential location*.  *Id.* at 1115-16.  "[I]t [was] impossible to apply the immediate custodian and district of confinement rules" there, because he was "held in an undisclosed location by an unknown custodian." *Padilla*, 542 U.S. at 450 n.18.

But in stark contrast, Ozturk was not held at any particular location at the time of filing; rather, she was en route to Louisiana, and her location was unknown to counsel for less than a day (*see* JA.75-76).

20

Ozturk (and the stay panel) characterizes the government's action in failing to disclose Ozturk's immediate location as "intentional." AB.33 (citing *Ozturk*, 136 F.4th at 392). But this ignores the reality of the situation: Ozturk's inability to contact her counsel during her transit is consistent with standard operational and security practices, as many detainees are desperate to avoid the prospect of removal from the United States. Permitting them to communicate about their location en route raises serious security concerns for the detainees and the federal agents.

In short, applying the unknown-custodian rule to any alien in transit to their ultimate detention location would be unprecedented and would enable the exception to swallow the rule. This exception is intended only for special circumstances where the government tries to escape review. Ozturk cites no cases (nor could she) where the exception was applied when counsel learned where she could file a petition within twenty-four hours of an alien's initial detention. None of this prevents aliens in detention from being able to file habeas petitions, as Ozturk claims (AB.35-36); it merely requires that they do so upon their ultimate detention destination, where the immediate custodian is located.

21

*Amended Petition.* Even if the district court had habeas jurisdiction over Ozturk's initial habeas petition, it certainly did not have habeas jurisdiction over her amended petition, which was filed when she was in Louisiana. *See* OB.28-30. Ozturk says that the government's argument regarding the relation-back provision is "confusing" (AB.37-38), yet she fails to contest that she was indeed already in Louisiana when she filed her amended petition *again* in Massachusetts and that she *again* only named supervisory officials. *See* JA-17, 76. Thus, regardless of the district court's effort to cure its lacking jurisdiction, whether relating to the immediate-custodian or district-of-confinement rule, there is no basis for it to claim jurisdiction over the amended petition. OB.28-30.

## C. The District Court Lacks Jurisdiction Over This Case

Ozturk seeks to circumvent the INA by styling this suit as purely a challenge to her detention, without more. AB.39. That workaround fails. OB.30-47.

*Section 1252(g).* Ozturk's habeas claims are first barred by 8 U.S.C. § 1252(g), which prevents challenges to a "decision or action by the Attorney General to commence proceedings … against an alien." *See*

22

OB.30-39. When an alien challenges her detention on the ground that she should not be removed in the first place, it is in substance a challenge to her removal. And when an alien challenges being detained in the process of being removed, that suit is one that "aris[es] from the decision … to commence [removal] proceedings." 8 U.S.C. § 1252(g). Although Ozturk attempts to minimize *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 482 (1999) (*see* AB.44-45), that decision remains binding precedent and is squarely controlling. There, as here, aliens alleged that the "INS was selectively enforcing the immigration laws against them in violation of their First and Fifth Amendment rights;" indeed, the government admitted "that the alleged First Amendment activity was the basis for selecting the individuals for adverse action." 525 U.S. at 473-74, 488 n.10. Nonetheless, the Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)." *Id.* at 487. The same result must obtain here.

Ozturk asserts that she is not challenging a discretionary decision to detain her pending removal and that her detention claim is collateral to the removal process, because it can be resolved without impacting

those proceedings. *See* AB.47-48. But as her habeas petition makes clear, Ozturk is not challenging some discrete aspect of her detention; she is challenging the fact that she is detained on a ground for which she cannot properly be removed to begin with. *See, e.g.*, JA-35 (Prayer for Relief: "Vacate and set aside Respondents' unlawful Policy of targeting noncitizens for arrest, detention and removal based on First Amendment-protected speech advocating for Palestinian rights"; and "Enjoin Respondents from taking any enforcement action against Petitioner arising directly or indirectly from an investigation into the applicability of the Foreign Policy Ground."); *see also* JA-31-34, ¶¶ 69, 73-75, 78, 85-86. Her challenges in the federal district court would eliminate her removal proceedings full stop, which means this suit falls within the heartland of § 1252(g). *See, e.g.*, *Limpin v. United States*, 828 F. App'x 429, 429 (9th Cir. 2020) ("[C]laims stemming from the decision to arrest and detain an alien at the commencement of removal proceedings are not within any court's jurisdiction."); *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("[§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and reviewing "ICE's decision to take him into custody and to detain him during removal

24

proceedings."); *Humphries v. Various Fed. INS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (similar). Section 1252(g) means what it says. "'[A]ny cause or claim,' legal or otherwise, challenging the execution of removal orders is barred. At the very least, the statute must mean *something*. And under [Ozturk's interpretation], it means nothing." *Ibarra-Perez v. United States*, --- F.4th ---, No. 24-631, 2025 WL 2461663, at *15 (9th Cir. Aug. 27, 2025) (Nelson, J., dissenting).

Despite Ozturk's insistence, applying § 1252(g) to her claims would not "shield virtually all unlawful detention claims from review." AB.49. First, her claims are reviewable through the petition-for-review process. *See Ibarra-Perez*, 2025 WL 2461663, at *11 (Nelson, J, dissenting) ("[The INA] allows courts of appeals to review removal proceedings through the petition-for-review process. That's it. The petition for review is the 'sole and exclusive' means for judicial review of any questions—factual, legal, or constitutional—that arise from removal proceedings.") (cleaned up). Second, no matter how Ozturk pled her claims, they are, at bottom, challenges to her detention and removal. *See id.* *12-13. Under these circumstances, § 1252(g) applies because her claims "arise from" her removal proceedings. Anything less would vitiate the very purpose of

25

§ 1252(g): It would allow every alien to attack the merits of her removal, through a habeas suit nominally challenging her detention; and in turn, the government would be subject to the sort of burdensome, parallel litigation the INA endeavored to stop. *AADC*, 525 U.S. at 482-86. Instead, what matters is the "substance" of the challenge. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). And where, as here, a challenge to detention is in substance a collateral attack on the decision to commence removal proceedings, it is barred by § 1252(g).

By interfering with the Executive's decision to commence proceedings against Ozturk, the district court's order squarely runs afoul of the particular evil the Supreme Court warned against. *See AADC*, 525 U.S. at 485 n.9.

**Sections 1252(a)(5) and (b)(9).** The INA's exclusive review and zipper provisions independently bar Ozturk's suit. *See* OB.40-45. Read together, §§ 1252(a)(5) and (b)(9) express Congress's intent to channel judicial review of every aspect of removal proceedings into the petition-for-review process in the courts of appeals. *See Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (highlighting Congress's "clear intent to have all challenges to removal orders heard in a single forum (the courts

26

of appeals)"). And, though Ozturk is not challenging her visa revocation (AB.57), § 1201(i) nonetheless bolsters the government's position that the only avenue for judicial review of Ozturk's detention- and removal-related challenges (and any visa revocation) is channeled through the petition-for-review process. *See* OB.44-45.

Contrary to Ozturk's claim (*see* AB.51-52), § 1252(b)(9)'s channeling function does not apply only after there is a final order of removal. Section 1252(b)(9) channels "[j]udicial review of all questions of law and fact" arising from a removal proceeding to "judicial review of a final order," and § 1252(a)(5) mandates that judicial review occur in the court of appeals through the petition-for-review process. Nothing in that language suggests that district courts may nonetheless adjudicate issues "arising from any action taken or proceeding brought to remove an alien" while removal proceedings are ongoing and up until a final order of removal is entered. That rule would make no sense: It would mean a district court could lose jurisdiction midway through a case once the parallel immigration proceedings produced a final order. Such chaos is precisely what Congress intended to prevent. *See Tazu v. Att'y Gen.*, 975 F.3d 292, 296 (3d Cir. 2020) (emphasizing that the additions of

§§ 1252(b)(9) and (g) were meant to "prevent removal proceedings from becoming fragmented, and hence prolonged") (cleaned up).

Moreover, a majority of the Justices in *Jennings v. Rodriguez*, recognized that § 1252(b)(9) applies before a final order is issued and unequivocally bars review of the decision to detain an alien in the first place. Justice Alito, joined by Chief Justice Roberts and Justice Kennedy, concluded that § 1252(b)(9) did not apply to aliens challenging their prolonged detention because they were "not challenging the decision to detain them in the first place" or "challenging any part of the process by which their removability will be determined"—steps that precede a final order. *See* 583 U.S. 281, 294-95 (2018) (plurality opinion). Meanwhile, Justice Thomas and Justice Gorsuch thought that § 1252(b)(9) should apply to a challenge to prolonged pre-final-order detention. *Id.* at 314-23 (Thomas, J., concurring). Thus, while the Justices did not necessarily agree on the precise scope of § 1252(b)(9), five Justices understood that § 1252(b)(9) is operational during the removal proceedings—not just at the end—and covers the first decision resulting in an alien's detention.

In any event, Ozturk's reliance on *Jennings* for the proposition that challenges to detention are outside these bars falls flat. *See* AB.52-55.

*Jennings* provided that, whatever § 1252(b)(9)'s reach, it covers the "decision *to detain [an] alien in the first place* or to seek removal [of him]." 583 U.S. at 294 (emphasis added); *see Nielsen v. Preap*, 586 U.S. 392, 402 (2019) ("As in *Jennings*, respondents here are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, we held in *Jennings*, § 1252(b)(9) does not present a jurisdictional bar."). Or, as this Court put it, and contrary to the stay panel's ruling (*see* AB.53-54; *Ozturk*, 136 F.4th at 400), only when the action is "unrelated to any removal action or proceeding" is it within a district court's jurisdiction. *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009). "[T]he substance of the relief that a plaintiff is seeking" will dictate. *Delgado*, 643 F.3d at 55. If the substance of a suit is an *indirect* challenge to a removal order, it is barred by the INA all the same. *Id.* Stated differently, it is not that an alien cannot challenge her detention (*see* AB.52-54)—the Supreme Court has made clear that she can, *see, e.g.*, *Preap*, 586 U.S. at 392, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021),

*Arteaga-Martinez*, 596 U.S. at 573. What she cannot do is disguise her challenges to her arrest, detention, and removal under the garb of a challenge to civil detention to avoid the INA's jurisdictional bars.

Ozturk makes other complaints that are similarly unavailing: She complains that her free speech and due process rights are being violated now, that constitutional challenges to detention cannot be heard through the petition-for-review process, that forcing her to wait until the end of that process presents a redressability issue, and that there are serious questions about whether the process would be adequate. *See* AB.55-56. But Ozturk's claims are inextricably "intertwined with or embedded in matters on which" the immigration officials are expert; she should thus pursue her challenges through the scheme Congress created. *See Axon Enterprise Inc. v. FTC*, 598 U.S. 175, 195 (2023). Moreover, despite Ozturk's insistence on keeping her claims outside the administrative system (*see* AB.56), the availability of review of constitutional questions in the court of appeals is all that is needed to require an alien to follow the administrative process. *See Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 195-96 (3d Cir. 2018) ("Finally, although the constitutional claims may be outside of FERC's expertise, this is tempered by the court

30

of appeals' review, which regularly resolves constitutional issues.") (citation omitted).

Further, though the Immigration Court and the Board of Immigration Appeals generally cannot decide certain constitutional issues (*see* AB.56; *Ozturk*, 136 F.4th at 400),[3] the Immigration Court *is* empowered to develop a record to aid in review of the issues by the court of appeals. *See* 8 U.S.C. § 1229a(b)(1); 8 C.F.R. §§ 1003.19(b), 1240.1(b), 1240.10(a)(4), 1240.11(c)(3)(ii). Indeed, it has a duty to do so. *See, e.g.*, *Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006); *Matter of Herrera Del Orden*, 25 I. & N. Dec. 589, 591 (BIA 2011). While Immigration Judges may not adjudicate constitutional challenges to statutory authority, they must still develop the record for such challenges to be

---

[3] Unless, of course, the constitutional claims are intertwined with removal proceedings, including, for example, where an alien alleges that evidence should be excluded based on the Fourth Amendment, *see, e.g.*, *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 234 (2d Cir. 2006); *Matter of Barcenas*, 19 I. & N. Dec. 609, 611 (BIA 1988); *Matter of Toro*, 17 I. & N. Dec. 340, 343 (BIA 1980), or where an alien alleges that she is entitled to due process rights under the Fifth Amendment, *see, e.g.*, *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007); *Aslam v. Mukasey*, 537 F.3d 110, 114 (2d Cir. 2008). *See also* Exec. Off. for Immigr. Review, *Consideration of Constitutional Arguments in Agency Adjudications* (PM 25-45, Sept. 5, 2025).

heard by the court of appeals. *See, e.g.*, *Matter of M-P-*, 20 I. & N. Dec. 786, 787-88 (BIA 1994)*; Matter of S-H-*, 23 I. & N. Dec. 462, 465 (BIA 2002). Regarding Ozturk's claim about meaningful review (AB.56): If this case turns out to be one of those incredibly rare cases in which there is an insufficient record, the court of appeals could "transfer the proceedings to a district court" for limited fact finding if a petitioner can establish that a hearing is required on that issue. *See* 28 U.S.C. § 2347(b)(3); *AADC*, 525 U.S. at 496-97 & n. 3 (Ginsburg, J., concurring).

**Section 1226(e).** Ozturk is challenging her initial detention, regardless of how she styles it in constitutional garb (*see* AB.57-59); thus, this suit falls within the ambit of § 1226(e) barring district court review of DHS's decision to detain her. As this Court recognized in *Velas Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020), an alien's claim that he did not receive the due process to which he was entitled is not a matter of discretion, and thus subject to judicial review, when his challenge "was not to his initial detention but to the procedures that resulted in his prolonged incarceration without a determination that he pose[d] a heightened bail risk." Simply put, if the alien's due process challenge was related to his initial detention, § 1226(e) applies. Here, Ozturk's

challenges are to her initial detention and removal proceedings as established in her amended complaint. *See, e.g.*, JA-35 (Prayer for Relief: "Vacate and set aside Respondents' unlawful Policy of targeting noncitizens for arrest, detention and removal based on First Amendment-protected speech advocating for Palestinian rights"); JA-31-34, ¶¶ 69, 73-75, 78, 85-86.

## CONCLUSION

The Court should reverse the district court's transfer order.

Respectfully submitted,

/s/ Alanna T. Duong

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney
General

MICHAEL P. DESCHER
Acting United States Attorney
District of Vermont

DHRUMAN Y. SAMPAT
Senior Litigation Counsel

ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7040
alanna.duong@usdoj.gov

September 12, 2025

Attorneys for Respondents-Appellants

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and (C), and Second Circuit Rule 32(a)(2), I certify that Microsoft Word 365 was used to prepare this brief and that the brief complies with the type-volume limitation because it uses proportionately spaced, 14-point Century Schoolbook typeface, and contains 6,704 words, excluding the exempted parts.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

September 12, 2025                     Attorney for Respondents-Appellants

## **CERTIFICATE OF SERVICE**

I certify that on September 12, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate ACMS system. I further certify that all participants in the case are registered ACMS users and that service will be accomplished through that system.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice