IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

# No. 25-1019

RÜMEYSA ÖZTÜRK,

*Petitioner-Appellee,*

v.

PATRICIA HYDE, in her official capacity as the New England Field Director for U.S. Immigration and Customs Enforcement; MICHAEL KROL, in his official, capacity as HSI New England Special Agent in Charge, U.S. Immigration and Customs Enforcement; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in his official capacity as Secretary of State; and DONALD J. TRUMP, in his official capacity as President of the United States,

*Respondents-Appellants.*

———————————————————

On Appeal from the United States District Court
for the District of Vermont (William K. Sessions III, J.)

———————————————————

**Brief Amici Curiae of Habeas Corpus Scholars Marc D. Falkoff, Eric M. Freedman, Paul Halliday, Randy A. Hertz, Aziz Z. Huq, Lee Kovarsky, Joseph Margulies, Nancy Morawetz, Jessica Rofé, Stephen I. Vladeck, and Larry Yackle in Support of Petitioner-Appellee**

———————————————————

Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102
(973) 642-8700
*Counsel for Amici Curiae*
    Jon Romberg, Esq.
    Jonathan Hafetz, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................i

INTEREST OF AMICI CURIAE ............................................................ 1

    LIST OF AMICI CURIAE HABEAS CORPUS SCHOLARS .......... 2

PRELIMINARY STATEMENT..................................................... 3

LEGAL ARGUMENT ........................................................... 6

I.     The History of Habeas Corpus Demonstrates the Writ Cannot Be Made Unavailable by the Executive Branch's Decision not to Disclose the District of Confinement or Immediate Custodian, Whether that Effective Suspension of the Writ's Availability Is Permanent, Prolonged, or Otherwise ............................................... 6

II.    The District of Vermont Was the Present District of Confinement when Öztürk's Habeas Petition Was Filed, and the Government's Intent to Later Move Öztürk to Louisiana Did Not Make Louisiana the District of Confinement ................................ 15

III.   Öztürk's Habeas Claim Is Not Barred for Failing to Name Her Custodian, Either Because the Unknown Custodian Exception Supplies an Excuse or Because She did Name Her Custodian..... 19

IV.   Öztürk's Habeas Petition Was Properly Transferred to Vermont Under 28 U.S.C. § 1631, Which Permits Transfer of an Action to a District Where Jurisdiction Would Have Been Proper When the Action Was Filed ....................................................... 24

    A.    Section 1631 Authorizes Transfer of Habeas Actions .......... 25

    B.    Any Deficiency in Öztürk's Habeas Petition Arising from Her Failure to Name Her Unknown Custodian Was Technical, not Substantive, thus Does Not Preclude Transfer Under § 1631......................................................... 26

i

C.   Vermont Is a Proper Transferee District Under § 1631, Thus the Government's Argument that *Ex Parte Endo* Does Not Confer Jurisdiction on Vermont Is True But Irrelevant ................................................................ 28

V.   Öztürk's Filing an Amendment to Her Habeas Petition After She Was Transferred to Louisiana Does Not Divest Vermont of Jurisdiction, as *Endo* Recognizes ................................................... 30

CONCLUSION ......................................................... 34

CERTIFICATION OF COMPLIANCE WITH RULE 32(a)(7)(B) .......... 35

# TABLE OF AUTHORITIES

## Cases

*Boumediene v. Bush*, 553 U.S. 723 (2008) .......................................... 7, 8, 9

*Braden v. 30th Judicial Circuit Court*, 410 U.S. 484 (1973) ............ 16-18

*Cruz v. Ridge*, 383 F.3d 62 (2d Cir. 2004) ......................................... 25

*De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615 (2d Cir. 2007) .......................................................................................................... 27

*Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986) ......................... 20-21

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council*, 485 U.S. 568 (1988) ......................... 15

*Ex parte Bollman*, 8 U.S. (4 Cranch) 75 (1807) ................................ 7

*Ex parte Endo*, 323 U.S. 283 (1944) .................................................. 19, 28-33

*Ex parte Watkins*, 28 U.S. (3 Pet.) 193 (1830) ................................. 9

*Hassoun v. Searls*, 976 F.3d 121 (2d Cir. 2020) ............................... 5

*Holland v. Florida*, 560 U.S. 631 (2010) ........................................... 24

*INS v. St. Cyr*, 533 U.S. 289 (2001) .................................................. 10

*Jones v. Cunningham*, 371 U.S. 236 (1963) ...................................... 7

*Khalil v. Joyce*, 777 F. Supp. 3d 369 (D.N.J. 2025) .......................... 5, 22

*Liriano v. United States*, 95 F.3d 119 (2d Cir. 1996) ....................... 25

*Murphy v. Reid*, 332 F.3d 82 (2d Cir. 2003) ..................................... 25

iii

*Öztürk v. Hyde*, 136 F.4th 382 (2d Cir. 2025) ....................................... 4, 27

*Öztürk v. Trump*, 777 F. Supp. 3d 26 (D. Mass. 2025) ............................. 5

*Öztürk v. Trump*, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) ..................... 5

*Peyton v. Rowe*, 381 U.S. 54 (1968) ....................................................... 17

*Rasul v. Bush*, 542 U.S. 466 (2004) ...................................................... 8,9

*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025)................ 30

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004)........................4, 5, 18-24, 29-33

*Secretary of State for Home Affairs v. O'Brien* [1923] A. C. 603 .............. 9

*Skaftouros v. United States*, 667 F.3d 144 (2d Cir. 2011)........................ 4

*Suri v. Trump*, 2025 WL 1310745 (E.D. Va. May 6, 2025)...................... 5

*Suri v. Trump*, 2025 WL 1806692 (4th Cir. July 1, 2025) .................. 5, 24

*Williams v. Kaiser*, 323 U.S. 471 (1945) .............................................. 9

## **Statutes and Rules**

16 Car. I, c.10, § 8 ................................................................................. 10

28 U.S.C. § 1631......................................................................... *passim*

28 U.S.C. § 2242......................................................................... *passim*

31 Cha. 2. c. 2 (Habeas Corpus Act of 1679) ......................................... 12

Fed. R. Civ. P. 15(c)(1)(C).................................................................30-31

Judiciary Act of 1789............................................................................ 10

iv

## **Constitutional Provisions**

U.S. Const. art. I, § 9, cl. 2 (Suspension Clause)............................7, 13-14

## **Other Authorities**

3 W. Blackstone, Commentaries .........................................................8, 10

Jordan Steiker, *Innocence and Federal Habeas*, 41 UCLA L. Rev.
    303 (1993) .................................................................................. 24

Lee Kovarsky, *Citizenship, National Security Detention and the Habeas
    Remedy*, 107 Calif. L. Rev. 867 (2019)...........................................12

Paul D. Halliday, *Habeas Corpus: From England
    to Empire* (2010) ................................................................7, 12-13

## <u>INTEREST OF AMICI CURIAE HABEAS SCHOLARS</u>[1]

Amici curiae are professors of law and related disciplines who have expertise in the history and law of habeas corpus. We have a professional interest in ensuring the fair and lawful application of the habeas writ consistent with historical practice and statutory and constitutional mandate. We write to share with the Court our understanding that—unless lawfully suspended—the Great Writ is always available to challenge assertedly unlawful detention such as that alleged by Petitioner-Appellee Rümeysa Öztürk.

The government's arguments, if accepted, would effectively suspend the writ while the executive branch keeps the detainee's district of confinement and immediate custodian secret, a result the government argues is permissible so long as that suspension is not "deliberate and permanent," or perhaps not "prolonged." Petitioner-Appellants' Brief (2d Cir. Dkt. 102) ("Appellants' Br.") at 27. That is not and has never been the law of habeas.

---

[1] Counsel for amici certify that no person other than amici and their counsel helped draft this brief or contributed any funds to its preparation or submission. Petitioner-Appellee and Respondents-Appellants have consented to its filing.

The District of Vermont has jurisdiction to address Öztürk's habeas petition in this case. We take no position on the merits of Öztürk's habeas petition or the mootness or propriety of the district court's order directing that she be transported to Vermont in aid of that petition.

We write, instead, to document the impropriety of the government's argument that Vermont, the district of confinement when the petition was filed, does not have habeas jurisdiction because the executive branch kept Öztürk's district of confinement and immediate custodian secret. The government's arguments are not supported by the common law history of the writ or its statutory implementation.

### List of Amici Curiae Habeas Scholars[2]

Marc D. Falkoff
Professor of Law
Northern Illinois University College of Law

Eric M. Freedman
Siggi B. Wilzig Distinguished Professor of Constitutional Rights
Maurice A. Deane School of Law at Hofstra University

Paul Halliday
Julian Bishko Professor of History and Professor of Law
University of Virginia

---

[2] Institutional affiliations are listed for identification purposes only. Signatories are participating and expressing views in their individual capacity, not on behalf of their institutions.

Randy A. Hertz
Fiorello LaGuardia Professor of Law
NYU School of Law

Aziz Z. Huq
Frank and Bernice J. Greenberg Professor of Law
University of Chicago Law School

Lee Kovarsky
Bryant Smith Chair in Law
Co-Director, Capital Punishment Center
University of Texas School of Law

Joseph Margulies
Professor of the Practice of Government
Cornell University

Nancy Morawetz
Professor of Law
NYU School of Law

Jessica Rofé
Director of the Constitutional Rights Clinic
Assistant Professor of Law
Rutgers Law School - Newark

Stephen I. Vladeck
Agnes Williams Sesquicentennial Professor of Federal Courts
Georgetown University Law Center

Larry Yackle
Professor of Law Emeritus
Basil Yanakakis Faculty Research Scholar
Boston University School of Law

## PRELIMINARY STATEMENT

As detailed in Points I–V, below, the District of Vermont has habeas jurisdiction over Öztürk's petition. As a threshold matter of overarching importance, the history of the writ demonstrates that the executive branch is not empowered to suspend the availability of the writ—for a prolonged period or otherwise—by keeping secret the district of confinement and the name of the petitioner's immediate custodian. *See* Point I.

Moreover, as a matter of precedent and statutory construction, Öztürk was not able—and was thus not obligated—to comply with the "two traditional requirements" of habeas jurisdiction,[3] that she file her petition in the "district of confinement" and that she name her "immediate custodian." *Öztürk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025)

---

[3] Though the immediate custodian rule is often described as "jurisdictional," this Court has looked to Justice Kennedy's concurrence in *Padilla* to hold that "this rule is 'not jurisdictional in the sense of a limitation on subject-matter jurisdiction.'" *Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011) (quoting *Rumsfeld v. Padilla*, 452 U.S. 426, 451 (2004) (Kennedy, J., concurring)). Indeed, as Justice Kennedy's *Padilla* concurrence explains, "the question of the proper location for a habeas petition is best understood as a question of personal-jurisdiction or venue." *Padilla*, 452 U.S. at 451 (Kennedy, J., concurring).

4

(citing *Padilla*, 542 U.S. at 438, 447).[4] The "unknown custodian" exception to these two "[g]enerally" applicable requirements, *id.*, is both overt in the statutory language of 28 U.S.C. § 2242[5] and has been recognized by the unanimous Supreme Court, *Padilla*, 542 U.S. at 450 n.18.

Under the unknown custodian exception, the District of Vermont has jurisdiction over Öztürk's petition: The petition need not be *filed* in, but is properly *considered* in, the actual district of confinement at the time the petition was filed—here, Vermont. *See* Point II. And that petition need not name the unknown, immediate custodian. *See* Point III.

---

[4] The motion panel's holding that Vermont has habeas jurisdiction is "persuasive but not binding," *Hassoun v. Searls*, 976 F.3d 121, 134 (2d Cir. 2020), but the persuasiveness is particularly powerful here because the opinion was thoroughly considered (unlike some motions panel determinations, which are by necessity relatively cursory), was published, and its reasoning is compelling, directly tracking that of all other courts to have considered these issues. *See Suri v. Trump*, 2025 WL 1806692 at *4-6 (4th Cir. July 1, 2025); *Suri v. Trump*, 2025 WL 1310745 at *7–14 (E.D. Va. May 6, 2025); *Öztürk v. Trump*, 2025 WL 1145250 at *5–10 (D. Vt. Apr. 18, 2025); *Öztürk v. Trump*, 777 F. Supp. 3d 26, 33–44 (D. Mass. 2025); *Khalil v. Joyce*, 777 F. Supp. 3d 369, 391–410 (D.N.J. 2025).

[5] "Application for a writ of habeas corpus shall . . . allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, *if known*." 28 U.S.C. § 2242 (emphasis added).

Moreover, Öztürk's petition was properly transferred pursuant to 28 U.S.C. § 1631 by the District of Massachusetts, where Öztürk was seized and where the petition was filed, to the District of Vermont, which would have had jurisdiction had the petition been filed there. *See* Point IV. Finally, Öztürk's amendment of her petition, after the government had moved her from Vermont, did not divest the District of Vermont of jurisdiction. *See* Point V. Each of the government's arguments otherwise is unavailing, as detailed below.

## LEGAL ARGUMENT

I.    THE HISTORY OF HABEAS CORPUS DEMONSTRATES THE WRIT CANNOT BE MADE UNAVAILABLE BY THE EXECUTIVE BRANCH'S DECISION NOT TO DISCLOSE THE DISTRICT OF CONFINEMENT OR IMMEDIATE CUSTODIAN, WHETHER THAT EFFECTIVE SUSPENSION OF THE WRIT'S AVAILABILITY IS PERMANENT, PROLONGED, OR OTHERWISE.

The government argues that habeas jurisdiction is unavailable in the district of confinement—or in any other district—while the government keeps secret a detainee's district of confinement and immediate custodian, so long as that period is not "permanent" (or, perhaps, "prolonged"). Appellants' Br. 27. This proposition is fundamentally at odds with the writ's common law history and its development in the United States.

6

Over the course of centuries in England and the colonies, habeas developed, crystallizing into a fundamental guarantee that detention must be lawful, ensuring both the legality of the government's conduct and the liberty of the individual. *See Boumediene v. Bush*, 553 U.S. 723, 739 (2008) ("The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom."). The common law writ's baseline protections are enshrined in the Constitution's Suspension Clause, *id.* at 746 ("at the absolute minimum the Clause protects the writ as it existed when the Constitution was drafted and ratified"), and inform the writ's meaning and usage under statute, *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 93 (1807) (Marshall, C.J.).

Time and again, courts have underscored that the writ must be exercised with the flexibility necessary to achieve its underlying purpose to ensure that confinement is lawful. *See, e.g.*, *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (habeas is not "a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose"); Paul D. Halliday, *Habeas Corpus: From England to Empire* 102 (2010) ("Habeas corpus was an equitable device in all but name, enabling action in response to

7

the particulars of a given circumstance rather than imposing obedience to a set of rules inscribed in precedents."); *id.* at 59–60 (describing "the equitable flexibility" that common law judges employed in habeas cases). "[C]ommon-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances." *Boumediene*, 553 U.S. at 779–80; *id.* at 780 (observing that Blackstone described "habeas as 'the great and efficacious writ, in all manner of illegal confinement'") (quoting 3 W. Blackstone, Commentaries *131).

The writ's protections are at their zenith, as here, when a petition challenges executive detention rather than incarceration duly following criminal conviction. "Where a person is detained by executive order . . . the need for collateral review is most pressing. [A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474 (2004) (cleaned up).

The writ is available—unless properly suspended—whenever a petition has been filed and detention is challenged as unlawful. The traditional district of confinement and immediate custodian rules must

be satisfied or excused, but those rules provide no basis for the writ to be made unavailable. While ultimate judicial resolution of the merits of the petition is by necessity not immediate, the right of a detained individual to file a petition, and the power of the court to consider that petition, has never been questioned.

"The writ of habeas corpus is a high prerogative writ, known to the common law, the great object of which is the liberation of those who may be imprisoned without sufficient cause." *Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 202 (1830) (Marshall, C.J.). "[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained . . . ." *Boumediene*, 553 U.S. at 779.

Delay in availability of the writ was historically impermissible. "Habeas corpus is . . . 'a writ antecedent to statute, . . . throwing its root deep into the genius of our common law.'" *Rasul*, 542 U.S. at 473 (quoting *Williams v. Kaiser*, 323 U.S. 471, 484 n.2 (1945) (Frankfurter, J., dissenting)). Habeas "is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Williams*, 323 U.S. at 484 n.2 (quoting *Secretary of State for Home Affairs v. O'Brien*

9

[1923] A. C. 603, 609); 3 W. Blackstone, Commentaries *131 ("[T]he sovereign is *at all times* entitled to have an account, why the liberty of any of her subjects is restrained," "not only in term-time, but also during the vacation") (emphasis added); *id.* at *135 (describing the English habeas statute, 16 Car. I, c.10, § 8, "whereby it is enacted, that if any person be committed by the king himself [or members of his privy council] he shall have granted unto him, *without any delay upon any pretence whatsoever*, a writ of *habeas corpus*, upon demand or motion made to the court") (emphasis added); *id.* at *137 ("[E]ven upon writs at the common law it is now expected by the court, agreeable to ancient precedents and the spirit of the act of parliament, that the writ should be *immediately obeyed, without waiting . . . .*") (emphasis added).

Federal courts have been authorized to issue writs of habeas corpus since the enactment of the Judiciary Act of 1789, and 28 U.S.C. § 2241 provides that federal judges may grant the writ on the application of a prisoner who is "*in custody* in violation of the Constitution or laws or treaties of the United States." *INS v. St. Cyr*, 533 U.S. 289, 305 (2001) (quoting 28 U.S.C. § 2241) (emphasis added). The executive branch has no power to circumvent the right of a district court judge to consider the

10

writ filed by a person who was in custody in that district when the writ was filed.

The history of the writ is directly at odds with the government's position here that it can make the writ unavailable in the district of confinement—indeed, in any district[6]—so long as it does not "deliberately and permanently" do so, or perhaps does not do so for an undefined "prolonged" period. Appellants' Br. 27. The government does not acknowledge that this period remains entirely within its control when, as here, the government does not reveal the actual district of confinement and refuses (or is unable), even now, to name a custodian who had the power to produce the confined person's body when the petition was filed.

In contrast, the writ's history demonstrates a deeply rooted commitment to preventing loopholes, inconveniences, and other obstacles that could frustrate or delay its *immediate* availability to enable judicial determination whether detention complies with law. For example, English judges employed devices to issue habeas writs during vacation

---

[6] *Cf.* Point II.A (explaining the flaws in the government's argument that, although Öztürk was confined in Vermont when her petition was filed, her district of confinement was not then Vermont but Louisiana, where the government intended later to confine her).

11

time (when the King's Bench was not in session) to avoid gaps in coverage, *see* Halliday, *Habeas Corpus: From England to Empire* at 239–40. Judges also increasingly demanded "'sufficiency' and 'certainty' in the statement of wrongs" in a jailer's return to a habeas petition so the court could resist vague returns and thus enable the court to determine whether the prisoner's detention was lawful. *Id.* at 102–03.

These protections against gaps in the availability and efficacy of the writ were later strengthened in the celebrated Habeas Corpus Act of 1679. *See* 31 Cha. 2. c. 2 (Eng.) (1679 Act); Lee Kovarsky, *Citizenship, National Security Detention and the Habeas Remedy*, 107 Calif. L. Rev. 867, 878 (2019). Fundamental to the history of the common law writ, and to its statutory counterparts, was the understanding that—unless properly suspended—the writ was always available to the detainee, and always appropriately addressed by the court, whether convenient to the jailer or otherwise.

Judges sent the common law writ to jailers even if a prisoner was detained in a location that was not only distant, but possessed special territorial status, such as the palatinates, Wales, Berwick, and the Channel Isles. *See* Halliday, *Habeas Corpus: From England to Empire* at

12

240–41. Though there may have been delays in *enforcing* the common law writ, delays the 1679 Act protected against by strengthening sanctions on custodians for noncompliance with or evasion of the writ, 1679 Act, 31 Cha. 2, c. 2, § 12, those enforcement delays did not undermine the *availability* of the writ. Moreover, delays in judicial enforcement of the writ resulted from practical obstacles rooted in communication and travel limitations of centuries ago that do not exist today, and those impediments did not and do not raise any suggestion that there is any period in which a petition for habeas corpus could not immediately be filed.

Indeed, *amici* are unaware of any instance in which a common law court accepted the proposition that there could be some period of time in which a prisoner was unable to file a habeas petition—absent a proper suspension of the writ (in the United States, under the Suspension Clause, a power reserved to Congress, and only "when in Cases of Rebellion or Invasion the public Safety may require it," U.S. Const. art. I, § 9, cl. 2). The government's suggestion that it may make the writ unavailable in the district of confinement, or indeed in any district, because the executive branch is secretly moving the prisoner between

13

undisclosed locations, under the custody of undisclosed custodians, is fundamentally at odds with the writ's common law history.

Whatever security justification might conceivably exist for refusing to name a district and *some* responsible custodian while a detainee is being transported cannot possibly justify denying the writ's immediate availability. If a writ is filed in what turns out to have been the district of confinement, even if the district and custodian were unknown, jurisdiction is plain. History does not demonstrate—and the government has not cited to—any instance in which a habeas petition could not be filed because the confined person's custodian intended to move him to some other district before a prolonged period had passed.

Moreover, the government's argument that the writ is unavailable for the period before the government discloses the detainee's district of confinement and custodian is tantamount to suspension of the writ for that period, in violation of the Suspension Clause. At the very least, the government's argument—that a suspension is not a suspension if not permanent or prolonged—raises a serious constitutional question about its compliance with the Suspension Clause. This Court should avoid this serious constitutional question by interpreting §§ 2242 and 1631 to

14

recognize that Vermont has jurisdiction over Öztürk's habeas petition. *See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

In short, to the extent there is any doubt regarding interpretation of the unknown custodian exception to habeas jurisdiction under § 2242, and of the scope of the federal transfer statute, § 1631, as it pertains to habeas, under the principles argued below, the writ's common law history provides further compelling reason to conclude that habeas jurisdiction was proper in the District of Vermont. And the serious constitutional question that would arise from holding otherwise further counsels so construing those statutes.

II.    THE DISTRICT OF VERMONT WAS THE PRESENT DISTRICT OF CONFINEMENT WHEN ÖZTÜRK'S HABEAS PETITION WAS FILED, AND THE GOVERNMENT'S INTENT TO LATER MOVE ÖZTÜRK TO LOUISIANA DID NOT MAKE LOUISIANA THE DISTRICT OF CONFINEMENT.

The government first argues that Vermont lacks habeas jurisdiction because, when Öztürk's habeas petition was filed, Vermont—

15

the district where she was then confined—was not the district of confinement. Instead, it argues, the district of confinement was Louisiana, the government's intended "ultimate destination" where it later planned to confine her. Moreover, her immediate custodian was not anyone then with control of her body in Vermont but was instead some (unidentified) Louisiana warden whom the government later expected to exert control over Öztürk and be able to produce her to the habeas court. Appellants' Br. 21–22. These remarkable propositions have no support in the law.

The government cites *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 485 (1973), in support of its argument that, while Öztürk was detained in Vermont, Louisiana was nonetheless the district of confinement (and some anticipated Louisiana warden her immediate custodian). In *Braden*, the Court recognized that the District of Kentucky had jurisdiction over a habeas petition filed by an inmate then incarcerated in Alabama who was "attack[ing] the validity of the Kentucky indictment which underlies the detainer lodged against him by [Kentucky] officials," challenging Kentucky's denial of a speedy trial on a "then three-year-old Kentucky indictment." *Id.* at 486–87. *Braden*

16

explained that the Court's recent decision in *Peyton v. Rowe*, 381 U.S. 54 (1968), had "discarded the prematurity doctrine," thereby "permit[ing] a prisoner to attack on habeas corpus . . . confinement that would be imposed in the future, . . . open[ing] the door to this action." *Id.* at 488–89.

The government suggests that *Braden* stands for the proposition that, just as Braden's dispute was with Kentucky officials who would later confine him, "[s]imilarly, Öztürk's dispute was with the warden of the Louisiana facility" where she would later be confined. Appellants' Br. 22. But this does not follow.

In *Braden*, the petitioner's habeas petition did not challenge the lawfulness of his *present* confinement in Alabama; instead, it substantively attacked the lawfulness of the *future* confinement that would arise in Kentucky from Kentucky officials' detainer. *Braden*, 410 U.S. at 486–87. Because Braden was entitled to "attack on habeas corpus . . . confinement that would be imposed in the future," *id.* at 488–89, the Court held that the District of Kentucky had habeas jurisdiction over Braden's challenge to that *future* confinement in Kentucky despite her present confinement in Alabama.

17

In contrast, Öztürk's habeas petition challenged the lawfulness of her *present* confinement in Vermont.[7] *Braden* recognized a narrow exception to the general rule that habeas petitions are to be filed in the then-current district of confinement, an exception only applicable when the current confinement differs from the future confinement that is challenged as unlawful in the habeas petition. That exception is not applicable here.

In *Padilla*, 542 U.S. at 438, the Court recognized "the simple proposition that the immediate physical custodian rule, by its terms, does not apply when a habeas petitioner challenges something other than his present physical confinement," as "[i]n *Braden*, for example," in which the "petitioner sought to challenge a 'confinement that would be imposed in the future'" in Kentucky. "[N]othing in *Braden* supports departing from the immediate custodian rule in the traditional context of challenges to present physical confinement." *Id.*

---

[7] Moreover, even assuming *Braden* were somehow applicable, it might support habeas jurisdiction in Louisiana but would not in any way preclude jurisdiction in Vermont, the district of confinement. *See id.* at 499 n.15 ("Nothing in this opinion should be taken to preclude the exercise of concurrent habeas corpus jurisdiction over the petitioner's claim by a federal district court in the district of confinement.")

18

Here, Öztürk's habeas petition challenged her present physical confinement in Vermont, not some future confinement. And the government's intent to move her to Louisiana cannot require habeas jurisdiction in Louisiana rather than Vermont, the district where she was presently physically confined when her petition challenging that present confinement was filed.[8]

### III. ÖZTÜRK'S HABEAS CLAIM IS NOT BARRED FOR FAILING TO NAME HER CUSTODIAN, EITHER BECAUSE THE UNKNOWN CUSTODIAN EXCEPTION SUPPLIES AN EXCUSE OR BECAUSE SHE DID NAME HER CUSTODIAN.

The government further argues that Vermont lacks habeas jurisdiction because Öztürk did not satisfy the "two traditional requirements" of habeas jurisdiction: She not only failed to file her petition in the district of confinement (whether "Louisiana *or* Vermont"), she also failed to name her immediate custodian. Appellants' Br. 26–28; *see also Öztürk*, 136 F.4th at 390 (describing these general rules and the unknown custodian exception excusing noncompliance) (citing *Padilla*,

---

[8] The force of the principle that the government's intent to move a habeas petitioner at some later time cannot preclude jurisdiction in the present district of confinement is made all the more evident by the possibility that the intended move may not come about. Moreover, because an *actual* move to a different district cannot defeat habeas jurisdiction, *see* Point IV.C, discussing *Ex parte Endo*, 323 U.S. 283 (1944), an *intended* move plainly cannot do so.

542 U.S. at 438, 447). Moreover, the government asserts that these failures cannot be excused by the "unknown custodian exception," which it describes as "judge-made." Appellants' Br. 26–28.

The unknown custodian exception, however, excuses the failure to satisfy the generally applicable district of confinement and immediate custodian requirements, a viable excuse recognized by every member of the Supreme Court. *Padilla*, 542 U.S. at 450 n.18. Furthermore, the obligation to name the detainee's custodian is better understood as inapplicable, rather than excused, when the custodian is unknown, per the overt language of the habeas statute, which only requires "alleg[ing] the name of the person who has custody . . . *if known*." 28 U.S.C. § 2242 (emphasis added).

The government attempts to evade applicability of the unknown custodian exception by arguing that the "exception only applies . . . where the custodian is actually *unknowable* for some *deliberate and permanent* reason," "where the government is refusing to disclose the location of the habeas petitioner (and, therefore, the identity of the custodian) for a *prolonged* period." Appellants' Br. 27 (emphases added). For this proposition, the government cites to *Demjanjuk v. Meese*, 784 F.2d 1114,

20

1115–16 (D.C. Cir. 1986), in which Judge Bork recognized that the unknown custodian exception applied to what was a lengthy governmental refusal to disclose the district or custodian. But neither the language nor the reasoning of *Demjanjuk* (or *Padilla*) suggests, let alone dictates, that a permanent or prolonged period is *necessary* for the unknown custodian exception to apply.

As explained above, if at the time the habeas petition is filed the custodian is not (and cannot reasonably be) known, under the common law, and under statutory versions of the writ, including § 2242, the court nonetheless has jurisdiction—without delay. To hold otherwise would enable the executive to preclude habeas by keeping secret the identity of the petitioner's custodian. Even if security interests might in some circumstances warrant keeping that identity secret, those interests never justify suspending the availability of the writ; instead, in those circumstances, the obligation to name the unknown custodian does not apply or is excused, by statute and tradition. *See Padilla*, 542 U.S. at 447 n.16 (describing "a corollary to the previously referenced exception to the immediate custodian rule" that "relax[es] the district of confinement rule when [the petitioner is] outside the territory of any district court," "[i]n

21

such cases . . . allow[ing] the petitioner to name as respondent a supervisory official and file the petition in the district where the respondent resides.").

If the unknown custodian exception were construed less flexibly, habeas jurisdiction would be unavailable in *any* district unless and until the government disclosed a detainee's custodian. "The implication of not applying the unknown custodian exception" in such circumstances is that "the Petitioner, detained in the United States, would not have been able to call on any habeas court" to take jurisdiction. *Khalil v. Joyce*, 777 F. Supp. 3d 369, 410 (D.N.J. 2025). But this is impermissible: "Our tradition is that there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it." *Id.* (citations omitted). Such a gap in habeas would suspend the writ's availability, in violation of not only tradition, but of the Suspension Clause. At the least, it would raise serious constitutional concerns, strongly counseling this Court to construe the relevant statutes, § 2242 and § 1631, to avoid that constitutional question.

22

Moreover, even if for some reason the unknown custodian exception did not excuse Öztürk's purported failure to name her immediate custodian, good reason exists to believe that she actually did so.[9] And if her immediate custodian existed but was unknown because the

---

[9] Öztürk's counsel made repeated, diligent efforts to determine her district of confinement and custodian. JA20. Unable to do so, her petition named numerous supervisory officials, including Patricia Hyde, ICE's New England Field Office Director, who appears to have been her immediate custodian—if any custodian existed—when the petition was filed; at that time, Öztürk was in a car being driven to a Vermont ICE facility but had not yet arrived, so the warden of that facility was not her custodian.

If her custodian was not Hyde when the petition was filed, as the supervisor with immediate authority over detainees in that region (and if it was not Secretary Noem or Secretary Rubio, also named defendants), perhaps it was the driver of the car—a person the government has understandably never named. The government has not been able to name Öztürk's custodian at the moment her petition was filed; Öztürk cannot be faulted—and cannot be denied habeas jurisdiction—for failing to do so.

23

government withheld that information, good reason exists to believe that supervisory officials were properly named.[10]

IV. ÖZTÜRK'S HABEAS PETITION WAS PROPERLY TRANSFERRED TO VERMONT UNDER 28 U.S.C. § 1631, WHICH PERMITS TRANSFER OF AN ACTION TO A DISTRICT WHERE JURISDICTION WOULD HAVE BEEN PROPER WHEN THE ACTION WAS FILED.

The Massachusetts district court, where Öztürk's petition was filed, transferred that petition to the District of Vermont under the power of 28 U.S.C. § 1631. Section 1631 authorizes, if "in the interest of justice," the transfer of a "civil action" where "there is a want of jurisdiction" to

---

[10] *See Padilla*, 542 U.S. at 454 (Kennedy, J., concurring, joined by O'Connor, J.) (necessary for the fourth and fifth votes for the majority) ("I would acknowledge an exception [to the district of confinement and immediate custodian rules] if there is an indication that . . . the Government was not forthcoming with respect to the identity of the custodian and the place of detention. In cases of that sort, habeas jurisdiction would be in the district court from whose territory the petitioner had been removed.").

This provides strong reason to believe jurisdiction would have been appropriate in Massachusetts on a petition naming supervisory custodians. *See Suri v. Trump*, No. 25-1560, 2025 WL 1806692 at *6 (4th Cir. July 1, 2025). Thus transfer of such a petition from Massachusetts to Vermont, the district of confinement, would plainly be permissible.

Such a result would, moreover, accord with the equitable principles that have historically governed exercise of the writ. *See, e.g.*, *Holland v. Florida*, 560 U.S. 631, 646 (2010); Jordan Steiker, *Innocence and Federal Habeas*, 41 UCLA L. Rev. 303, 309 (1993) ("[T]he scope of federal habeas has always been fashioned as a matter of federal common-law and court-identified equitable principles.").

"any other . . . court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. The government argues that this transfer was impermissible. Its arguments are unavailing, as explained below.

A.    Section 1631 Authorizes Transfer of Habeas Actions.

As a threshold matter, the government observes that § 1631 applies to civil actions, arguing (for the first time on appeal) that habeas actions are not civil actions within the meaning of § 1631 because habeas actions are not always thought to be civil actions in other contexts—none of which is even argued to be analogous to habeas. Appellants' Br. 24–25.

But this Court (in line with numerous other courts of appeals) has recognized otherwise, discussing without concern "an order transferring a habeas corpus petition under section 1631," *Cruz v. Ridge*, 383 F.3d 62, 64 (2d Cir. 2004), and an order "transferring the [habeas] petition to another district court pursuant to § 1631," *Murphy v. Reid*, 332 F.3d 82, 84–85 (2d Cir. 2003); *accord Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996) (directing that in particular circumstances "the district

25

court should transfer the [habeas] petition [to the court of appeals] in the interest of justice pursuant to § 1631").

B.   Any Deficiency in Öztürk's Habeas Petition Arising from Her Failure to Name Her Unknown Custodian Was Technical, not Substantive, thus Does Not Preclude Transfer Under § 1631.

The government contends that § 1631 "cannot override the specific statutory p[r]er[e]quisites for the exercise of habeas jurisdiction." Appellants' Br. 22. But the statutory prerequisites stated in § 2242 expressly require naming the petitioner's custodian only "if known." 28 U.S.C. § 2242. And it is not § 1631 that overrides the traditional requirements for habeas jurisdiction—i.e., that the petition be filed in the district of confinement and name the custodian—it is the unknown custodian exception that does so.

Section 1631 is simply the mechanism by which the petition, if filed in a district that lacks jurisdiction, is empowered (in the interest of justice) to transfer the action to a district that would have had jurisdiction if the action had been filed in that district. And Vermont, the district of confinement, was such a jurisdiction.[11] Thus, rather than

---

[11] In seeking a stay before this Court, "[t]he government concede[d] that had the petition been filed in Vermont at that time, habeas jurisdiction

contradicting the principles of habeas jurisdiction, the transfer statute fulfills it, in conjunction with the unknown custodian exception, by effectively ensuring the writ's immediate availability.

The gravamen of the government's argument, though not stated directly, is that the failure to name an appropriate custodian—even though that custodian was unknown—is a substantive failure that cannot be "cured" by transfer under § 1631 when the petition was not filed in the district of confinement.[12] The government is attempting to stack two hurdles to habeas jurisdiction—the pair of default, general rules concerning the district of confinement and the immediate custodian—to argue that even if each individually is surmountable, when both are present they collectively preclude habeas jurisdiction. No court has ever so suggested, and this makes no logical sense.

---

would be proper there." *Öztürk*, 136 F.4th at 392. And the government does not seriously argue otherwise in this appeal, other than through its insubstantial assertion that Louisiana has always been the district of confinement, *see* Point II.

[12] *Compare* the correctable divergence from the traditional rules here to the fatal shortcoming in *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 617–18 (2d Cir. 2007) (rejecting transfer under § 1631 because the habeas petition was not only filed in the wrong district, but also was untimely, so the transferee district would not have had jurisdiction if the action had been filed there).

27

The unknown custodian exception applies, paradigmatically, when petitioner's counsel is unable to determine where, and by whom, she is detained, thus is unable to name the unknown custodian, and files the petition in the last known district of confinement or the district in which the petitioner resides. The unknown custodian exception—not § 1631— excuses the failure to name the custodian and to file in the district of confinement. And jurisdiction would plainly have been proper if the petition had been filed in the district of confinement and the custodian unknown. Section 1631 thus authorizes transfer to the district of confinement, here, Vermont. To construe § 1631 otherwise would eviscerate the unknown custodian exception. Congress did not intend— and the Constitution's guarantee of habeas corpus would not allow—a result so at odds with the writ's history and purpose.

C.   Vermont Is a Proper Transferee District Under § 1631, Thus the Government's Argument that *Ex Parte Endo* Does Not Confer Jurisdiction on Vermont Is True But Irrelevant.

Next, as part of its argument that Vermont never had habeas jurisdiction, the government argues that *Ex Parte Endo*, 323 U.S. 283

28

(1944) does not confer jurisdiction on Vermont. Appellants' Br. 25–26. This is true but irrelevant.

*Endo* does not *confer* habeas jurisdiction; it holds that a district that had jurisdiction does not *lose* that jurisdiction when the government moves the detainee from that district. "Th[e] objective [of habeas relief] may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court." *Padilla*, 542 U.S. at 441 (quoting *Endo*, 323 U.S. at 307). As *Padilla* explained, "*Endo*'s holding does not help respondents here. Padilla was moved from New York to South Carolina before his lawyer filed a habeas petition on his behalf," thus New York never acquired jurisdiction in the first place. *Id.* Here, like *Endo* and unlike *Padilla*, Öztürk's habeas petition was filed while she was still confined in the district where habeas jurisdiction is at issue, Vermont.

Vermont does not have habeas jurisdiction because of *Endo*, it has habeas jurisdiction for the reasons set forth above: Vermont was the district of confinement when Öztürk's petition was filed; her failure to file in Vermont (and to name her custodian) is excused by the unknown custodian exception; jurisdiction would have been proper in the District

of Vermont if the petition had been filed there. Transfer of the action to Vermont was thus proper under § 1631.

V. ÖZTÜRK'S FILING AN AMENDMENT TO HER HABEAS PETITION AFTER SHE WAS TRANSFERRED TO LOUISIANA DOES NOT DIVEST VERMONT OF JURISDICTION, AS *ENDO* RECOGNIZES.

Finally, the government argues, in the alternative, that Öztürk's filing of an amended habeas petition while she was detained in Louisiana stripped Vermont of whatever habeas jurisdiction it had because she was confined in Louisiana when she amended her petition. Appellants' Br. 28–30. To support this novel proposition, the government cites *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), which recognizes that plaintiffs are entitled to amend their complaint to remove federal claims, holding that, when plaintiffs do so, federal court subject matter jurisdiction turns on the existence of claims raising federal questions in the amended rather than original complaint. But *Royal Canin* is irrelevant: Öztürk's amendment did not add claims that had any effect on jurisdiction. Nor is relation back of the amended petition under Fed. R. Civ. P. 15(c)(1)(C) necessary or relevant to Vermont's continued jurisdiction.

30

Instead, the effect of Öztürk's amending her habeas petition while in Louisiana is controlled by *Endo*, which the government does not even attempt to distinguish. *Endo* controls, not because it confers habeas jurisdiction on Vermont, but because it preserves Vermont's jurisdiction despite the government's having moved Öztürk to Louisiana. *Endo* holds that once a district has habeas jurisdiction, as Vermont did here, the government's act of moving the petitioner to a different district does not defeat jurisdiction in that first district. *Endo*, 323 U.S. at 307. As *Padilla* explained, *Endo*'s "holding [was] that the District Court could effectively grant habeas relief despite the Government-procured absence of petitioner from [that] District." *Padilla*, 542 U.S. at 441.

Indeed, in *Padilla*, the petitioner was moved from New York to South Carolina on June 9, filed his original habeas petition in South Carolina on June 11, *id.* at 431–32, then, as here, later amended his habeas petition while in South Carolina, *id.* at 432, 457–58. But that amendment was irrelevant: In *Padilla* the government did not argue, and the Court did not hold or consider, the fact that Padilla had amended his habeas petition while in South Carolina. What mattered was that "Padilla was moved from New York to South Carolina before his lawyer

31

filed a habeas petition on his behalf," and that was the reason New York was not the jurisdiction of confinement when the petition was filed and thus never acquired jurisdiction in the first place. *Id.* at 441.

Öztürk's amendment of her petition while in Louisiana is irrelevant under *Endo* because "the Government-procured absence of petitioner" from Vermont does not and cannot defeat "the District Court['s power to] grant habeas relief." *Id.* It would make no sense for *Endo* to preclude the government from defeating habeas jurisdiction by moving a petitioner out of a district that has jurisdiction, but for the government to be thereby entitled to lock the petitioner into the petition as originally filed. The government-procured move from Vermont cannot put Öztürk to the choice of either accepting the government's preferred forum or amending her petition.

Ironically, the government invokes *Endo*, a case that secures the continued availability of habeas jurisdiction in a district in which such jurisdiction was proper, despite the government's decision to move the petitioner from that district.[13] The government's argument is

---

[13] *See Padilla*, 542 U.S. at 441 ("*Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner

32

misdirected, misconstruing Supreme Court precedent and the history of the Great Writ in two respects: First, it points to *Endo*, arguing that *Endo* cannot confer habeas jurisdiction on Vermont, when Vermont's jurisdiction actually exists for the other reasons explained above; and, second, in asserting that Öztürk's amendment of her petition ousts Vermont of jurisdiction, the government ignores *Endo* when it precludes the government's argument.

The government's arguments are barred by the constitutional prohibition against executive suspension of the writ, prolonged or otherwise, and by the writ's common law history, the statutory language of §§ 2242 and 1631, and precedent. The District of Vermont has habeas jurisdiction to address the merits of Öztürk's habeas petition.

---

after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").

33

## **CONCLUSION**

For the foregoing reasons, this Court should recognize that Vermont has jurisdiction over Öztürk's habeas petition.

Respectfully submitted,


/s/ Jon Romberg

_____

Jon Romberg, Esq.
Jonathan Hafetz, Esq.
Seton Hall University Law School
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102
(973) 642-8700
*Counsel for Amici Curiae*
    *Habeas Corpus Scholars*


Dated: August 25, 2025

## <u>CERTIFICATION OF COMPLIANCE WITH RULE 32(a)(7)(B)</u>

I hereby certify that this brief complies with the type-volume limitations stated in Fed. R. App. P. 32(a)(7)(B). Using the word count feature of Microsoft Word, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 6,767 words.

_____

Jon Romberg, Esq.

Dated: August 25, 2025