25-1019; 25-1113
*Öztürk v. Hyde*; *Mahdawi v. Trump*

NATHAN, *Circuit Judge*, joined by LEE, ROBINSON, PÉREZ, MERRIAM, and KAHN, *Circuit Judges*, concurring in the denial of rehearing *en banc*:

These cases concern the allegedly retaliatory detentions of two students—Rümeysa Öztürk and Mohsen Mahdawi—as part of a wave of arrests and immigration status revocations of lawfully admitted students in the early months of 2025.

At the time of her arrest, Rümeysa Öztürk was a graduate student at Tufts University who had been living lawfully in Massachusetts on a student visa. *Öztürk v. Hyde*, 136 F.4th 382, 388 (2d Cir. 2025). In March 2025, masked and heavily armed plainclothes officers arrested and detained her without warning and drove her away from her home in an unmarked vehicle, through New Hampshire, to Vermont. *Id.* at 389. A day later, she was locked in a correctional facility over fifteen hundred miles away in Louisiana. *Id.* Öztürk brought a habeas petition seeking release, alleging that she had been arrested solely due to an op-ed article she had written a year earlier in support of Palestinian rights in her school newspaper—a violation of her First Amendment rights. *Id.* at 387–89.

When he was detained, Mohsen Mahdawi was an undergraduate student at Columbia University and a lawful permanent resident. *Mahdawi v. Trump*, 136 F.4th 443, 446 (2d Cir. 2025). After living in the United States for over a decade, he appeared for a naturalization interview in April 2025, in Vermont, his state of residence. *Id.* Mahdawi passed his citizenship test—but he did not become a citizen. *Id.* Instead, at the interview's conclusion, armed and masked officers arrested Mahdawi and attempted to transport

him to Louisiana. *Id.* at 446–47. Due to a missed flight, he was placed in a detention center in Vermont. *Id.* at 446. He brought a habeas petition there to challenge his detention, alleging that he had been arrested solely in retaliation for his peaceful antiwar advocacy work—a violation of his First Amendment rights. *Id.*

In both cases, the district court concluded that it had jurisdiction to hear the habeas petitions and then issued the orders at the heart of these appeals. In *Öztürk*, Judge William K. Sessions III of the District of Vermont ordered that Öztürk be physically transferred from Louisiana to Vermont for a bail hearing. *Öztürk v. Trump*, 779 F. Supp. 3d 462, 497–98 (D. Vt. 2025). In *Mahdawi*, Judge Geoffrey W. Crawford of the District of Vermont ordered Mahdawi released on bail pending further proceedings. *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 235 (D. Vt. 2025). The government appealed in both cases and filed emergency stay motions. It argued that the district courts lacked jurisdiction to order Öztürk transferred from Louisiana to Vermont and to release Mahdawi on bail. A motions panel rejected the government's arguments and denied its stay motions, holding that the government was unlikely to succeed in its argument that Congress had deprived the federal courts of jurisdiction to consider the students' habeas petitions, that it had failed to show irreparable harm, and that the balance of the equities favored the students.[1]

The government now petitions for the stay motions to be reheard *en banc*. As we explain below, we concur in the denial of

---

[1] The district court subsequently released Öztürk on bail. *Öztürk v. Trump*, No. 2:25-CV-374, 2025 WL 1355667, at *1 (D. Vt. May 9, 2025). The government neither sought a stay nor appealed the release order.

rehearing *en banc*. Procedurally, the posture of these cases heavily disfavors *en banc* review. Substantively, posture notwithstanding, the stay-motion panel opinions are correct. We also write to express our view that the rest of the issues Judge Menashi's concurrence comments on are better left to a merits panel.

## I

*En banc* review is not particularly common in our circuit. That is often said to be a testament to our traditionally collegial temperament. Jon O. Newman, *Foreword: In Banc Practice in the Second Circuit, 1989–93*, 60 Brook. L. Rev. 491, 503 (1994). It is also a manifestation of the fact that we must primarily carry out our work in three-judge panels, as has been the case since the Judiciary Act of 1891 (also called the Evarts Act), ch. 517, § 2, 26 Stat. 826 (establishing "in each circuit a circuit court of appeals, which shall consist of three judges, of whom two shall constitute a quorum"). Although any member of our Court might have something they deem worthy of saying about a matter on which they are not on the panel, doing so while bypassing the process and ignoring the high standard for rehearing *en banc* is profoundly disruptive to our work. Once one non-panel member weighs in, others may feel compelled to respond. Pretty soon, a matter that no member of our Court deems worthy of *en banc* review has demanded the same amount of the full Court's attention and resources as a real *en banc* proceeding.

The decisions on these stay motions are not worthy of *en banc* review. As far as we are aware, this Court has never reviewed *en banc* a motions panel decision on a stay pending appeal. At the government's request, the underlying appeals will be heard by a

merits panel on an expedited basis, with briefing already concluded and oral argument weeks away. The government's decision to seek expedited consideration of the merits of its interlocutory appeals while simultaneously seeking *en banc* review of the stay opinions (without any request for expedition) is—at a minimum—odd. This posture is reason enough to deny rehearing *en banc*. Indeed, the government's petition for rehearing *en banc* in this posture borders on frivolous, as is cogently demonstrated by the fact that no member of the Court dissents from its denial.

## II

Since the entire Court agrees that rehearing *en banc* is inappropriate, the matter should have ended there. However, Judge Menashi has made the unusual decision to weigh in now on how the merits-panel-to-be should resolve the jurisdictional questions posed by this case, offering several arguments as to why he thinks the stay opinions are incorrectly reasoned. Because of this disruption and because he is wrong in several ways, a response is required.

Most importantly, Judge Menashi is wrong on the merits of the jurisdictional questions implicated in these cases. In a sentence, the district courts have habeas jurisdiction because petitioners challenge the legality of their detention, not a removal order. The Fourth Circuit has reached the same conclusion. *See Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *7–9 (4th Cir. July 1, 2025). And we are unaware of any court, when considering a challenge to allegedly retaliatory detention pending removal, to have disagreed with us.[2] As the stay-

---

[2] That is why Judge Menashi's cited cases, particularly concerning 8 U.S.C. § 1252(g), do not form a circuit split with the stay opinions.

4

motion panel opinions demonstrate, each of the government's jurisdiction-stripping arguments ignores relevant Supreme Court and Second Circuit authority and misses the mark, especially because we must "take account . . . of the presumption favoring interpretations of statutes [to] allow judicial review . . . absent clear statement." *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (quotation marks omitted). That command from the Supreme Court, which helps avoid Suspension Clause issues that may stem from overly broad readings of the INA's jurisdiction-stripping provisions, *see Luna v. Holder*, 637 F.3d 85, 93 (2d Cir. 2011), is nowhere discussed in the government's petition for rehearing or Judge Menashi's concurrence. But under existing law, the government needed to show that the courts below lacked jurisdiction over each and every challenge in the students' petitions, and it failed. *See Öztürk*, 136 F.4th at 397 n.6; *Mahdawi*, 136 F.4th at 450 n.3.

We start with 8 U.S.C. § 1252(g). That section prohibits the use of any habeas provision to challenge "three discrete [government] actions[.]" *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482 (1999). The one purportedly at issue here is the government's decision to "commence proceedings" against a noncitizen. 8 U.S.C. § 1252(g). However, Supreme Court precedent makes clear that this bar is only "narrow[ly]" applied to the *discrete* action barred. *AADC*, 525 U.S. at 482. As the First Circuit has said, § 1252(g) "does not preclude jurisdiction over . . . challenges to the legality of [a noncitizen's] detention." *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023). The reason is simple—detention is but one of "many . . . decisions or actions that may be part of the deportation

5

process," but it is outside the "three discrete actions" § 1252(g) cordons off. *AADC*, 525 U.S. at 482. It is therefore irrelevant that "§ 1252(g) does not distinguish between different grounds for such a [detention] claim," *ante* at 5, because it does not speak to detention *at all*.

Under Judge Menashi's and the government's theory, Congress used three specific words—"commence," "adjudicate," and "execute"—to accomplish something extraordinarily general: eviscerate habeas corpus for noncitizens whenever the government detains them and also seeks to remove them. Supreme Court precedent and the text of § 1252(g) do not allow this, and it is also clear that it is not what Congress intended. H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.), *as reprinted in* 2005 U.S.C.C.A.N. 240, 300 (explaining that jurisdiction-stripping provisions "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders"). Congress was concerned with curbing the "frequent[]" use of "habeas corpus petitions to seek review of removal decisions," but did not "withdraw[] habeas relief from those seeking release from unlawful detention." *Kong*, 62 F.4th at 615. And if there is any doubt, we read statutes with the *presumption* of judicial review, not of jurisdiction stripping. *Kucana*, 558 U.S. at 237. The government's elephant simply does not fit in this mousehole. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

It is equally erroneous to argue that the district courts lacked jurisdiction over these students' petitions because of 8 U.S.C. § 1252(a)(2)(B)(ii). That section bars jurisdiction where Congress has

expressly "set out the Attorney General's discretionary authority in the statute." *Kucana*, 558 U.S. at 247. But when arguing that this section deprived the district courts of jurisdiction by virtue of 8 U.S.C. §§ 1226(a) and 1231(g), the government ignores our precedent holding that § 1252(a)(2)(B)(ii) is inapplicable in the absence of "additional language specifically rendering [a] determination to be within [the Attorney General's] discretion (*e.g.*, 'in the discretion of the Attorney General,' 'to the satisfaction of the Attorney General,' etc.)." *Nethagani v. Mukasey*, 532 F.3d 150, 154–55 (2d Cir. 2008). You will find no mention of that principle or of any contrary binding authority on this point in the petition for rehearing. Perhaps that is because the statutory provisions in issue, 8 U.S.C. §§ 1226(a) and 1231(g), are bereft of the necessary specific language and thus do not prevent the district courts from entertaining the habeas petitions here. And though Judge Menashi takes up the task on the government's behalf, *ante* at 12–14, his attempt at distinguishing *Nethagani*, as well as accusing it of creating a circuit split, falls flat.

First and most importantly, *Nethagani* is our law, and it squarely controls our interpretation of the INA's jurisdictional provisions in this context. Judge Menashi's attempt at distinguishing cannot explain (and thus he does not attempt to explain) at all how his preferred reading of § 1231(g) satisfies the "additional language" test. And though Judge Menashi points to § 1226(a)'s use of "may," that term still falls far short of the specific language referring to the Attorney General's discretion that is required by *Nethagani.*

No more troubling is Judge Menashi's drive-by reference to a circuit split. He cites no cases holding that § 1252(a)(2)(B)(ii) outright

strips federal courts of habeas jurisdiction to order the transfer or bond hearing of an immigrant whose place of detention was arranged pursuant to § 1231(g) or authorized pursuant to § 1226(a). Whatever tension exists between *Nethagani* and other circuits' decisions more generally is simply not at issue in these cases. At base, if Judge Menashi were arguing for this issue to be heard *en banc*, these would be relevant, yet flimsy, arguments. But since he is not, they simply do nothing to undermine the correctness of the stay panel's opinions with respect to § 1252(a)(2)(B)(ii).

With respect to 8 U.S.C. § 1252(b)(9), the government fares little better. The umbrella provision of § 1252(b) begins: "With respect to review of an order of removal under subsection (a)(1), the following requirements apply: . . . ." 8 U.S.C. § 1252(b). As this text makes clear, § 1252(b) sets out requirements only with respect to review of an order of removal. Since there are no orders of removal for these petitioners, § 1252(b)(9) does not apply. But even if there were, § 1252(b)(9) bars district court review only of claims "arising from . . . action[s] taken or proceeding[s] brought to remove an alien[.]" 8 U.S.C. § 1252(b)(9). The Supreme Court has held that this section "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision . . . to seek removal, or the process by which . . . removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quotation marks omitted). Glaringly ignoring the statutory text and the Supreme Court's explanation in *Regents*, Judge Menashi and the government instead rely on dicta in the opinion of three Justices in *Jennings v. Rodriguez*, 583 U.S. 281

8

(2018).[3] But that portion of *Jennings* merely "note[d]" that the jurisdictional question before the Court might have been more difficult if petitioners were challenging "an order of removal; . . . the decision to detain them in the first place[;] . . . [or] the process by which their removability [would] be determined." *Jennings*, 583 U.S. at 294. Judge Menashi and the government overread this language to suggest that *Jennings* supports the inverse proposition—that § 1252(b)(9) bars jurisdiction over habeas challenges to "the decision to detain." Reliance on this dicta is especially unwarranted when *Regents*, which was decided after *Jennings*, does not include the "decision to detain" language in its quote of *Jennings*. *See* 591 U.S. at 19. *Regents* then proceeds to favorably cite a portion of Justice Breyer's dissent in *Jennings* that holds jurisdiction to be "unaffected" when petitioners challenge "their detention without bail" and "not an order of removal." *Jennings*, 583 U.S. at 355 (Breyer, J., dissenting); *see also Regents*, 591 U.S. at 19.

In short, petitioners do not challenge orders of removal—no such orders even yet *exist*—and so § 1252(b)(9) poses no barrier. Nonetheless, the government insists that the petitions impermissibly intrude on the students' removal proceedings because their constitutional challenges to their detention could substantively overlap with a potential challenge to a final removal order. But substantive overlap alone does not transform two independent claims

---

[3] *Cf. United States v. Johnson*, 143 F.4th 184, 189 (2d Cir. 2025) (Menashi, J., concurring in the denial of rehearing *en banc*) (describing dicta as "a comment on how the court would decide some other, different case" (quotation marks omitted)).

into one.  Instead, our analysis must turn "on the substance of the relief that a plaintiff is seeking."  *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).  The students here seek release from their unconstitutional detention, which has been at the remedial heart of the Great Writ throughout our constitutional history.  *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973) (describing "immediate release or a speedier release from . . . confinement" as "the heart of habeas corpus"); Paul D. Halliday, Habeas Corpus: From England to Empire 246 (2d ed. 2012) ("[T]he Writ of *Habeas Corpus* ordained by the Common Law of the Land, as a remedy for such as were unjustly imprisoned, to procure their Liberty; and it is a mistaken notion that this Writ is of a modern date." (quoting Giles Jacob, A New Law-Dictionary 348 (1729))).

In any event, rehearing *en banc* is even less warranted because the panel decided the issues in the posture of motions for stays pending appeal.  The government does not so much as *mention* irreparable injury—one of the two "most critical" factors in the stay analysis.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  And for good reason.  Before the motions panel, the government contended only that the district courts' exercise of jurisdiction prevented it from "effectuating statutes" and thus caused it irreparable injury.  This argument is frivolous.  Neither Öztürk's nor Mahdawi's constitutional challenge to their detention disrupts—and nothing prevents the government from continuing with—the removal proceedings it has commenced.  The Third Circuit recently concluded the same in a comparable context.  *See* Order at 2, *Khalil v. Trump*, No. 25-2357 (3d Cir. July 30, 2025) (Hardiman, Bibas, Freeman, JJ.) (per

curiam) ("Appellants' motion to stay pending appeal the district court's . . . order that Appellee shall be released from immigration custody is denied.  Appellants have not demonstrated irreparable harm." (capitalization altered)).

Judge Menashi contends the opposite, citing a few single-Justice statements as well as a footnote in *Abbott v. Perez* for the proposition that "the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State."  585 U.S. 579, 602 n.17 (2018). But that quote is wrenched from its context, in which the Supreme Court quite unsurprisingly concluded that a state's inability to conduct an election under its laws constituted irreparable harm.  *Id.* at 602–03.  And the Supreme Court contrasted that situation with one in which a state's election law is invalidated "long before the next scheduled election," which would obviate the need for a stay because the pendency of the litigation—like here—would not interfere with the state's ultimate enforcement of the law.  *Id.* at 602.

Judge Menashi is also wrong to imply that detention is an essential aspect of conducting removal proceedings, because the government has already conceded that petitioners' detention in this case is not mandatory.  *See Öztürk*, 136 F.4th at 398; *Mahdawi*, 136 F.4th at 451.  More importantly, the government did not argue in seeking a stay that the transfer or release of these petitioners would prevent the government from ultimately removing them.

The final factor, the balance of the equities, goes similarly undiscussed by the government and Judge Menashi.  Before the motions panels, the government made the feeble argument that potential logistical difficulties and concerns about judicial

11

micromanagement outweighed Öztürk's interest in attending her habeas corpus proceedings in person and Mahdawi's interest in his freedom. We had little difficulty concluding that the balance of the equities tipped in the students' favor then, and we have little difficulty reaching the same unchallenged position now.

In the stay context, it was the *government's* burden to show that it was likely to succeed on the merits; that it would suffer irreparable injury; and that the equities favored a stay. As explained above, the government's arguments, which Judge Menashi's opinion echoes, show none of these.

In short, rehearing a motion for a stay pending appeal *en banc* is particularly inappropriate where the motions panel got it right and the movant fails even to mention other critical factors relevant to its entitlement to a stay.

### III

Judge Menashi's unusual concurrence does not merely wade into this case by expressing a view on the merits. It also dives headfirst into two issues that were unbriefed by any party and unaddressed by either stay opinion, and which are certainly better left to future merits panels: whether a published opinion on a stay motion becomes law of the case and whether such an opinion carries precedential weight. His concurrence attempts to paint a clear picture in which such opinions have no bearing at all on any future panels. Whatever one thinks about law of the case and precedential weight, the waters are far murkier than Judge Menashi would have one believe.

It is thus helpful to begin by setting the terminological stage.

Relevant to this discussion are the distinctions among the concepts of "law of the case," "preclusion," and "precedent."

Under our law of the case doctrine, "when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) (quotation marks omitted and alteration adopted). That is a discretionary doctrine "of sound, albeit not inexorable, practice," permitting adjustment of prior rulings for "'cogent' or 'compelling' reasons." *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983).

Preclusion doctrine, by contrast, prevents the relitigation of certain claims (called "claim preclusion") and issues (called "issue preclusion") by the same parties in new litigation following a final judgment on the merits. *See Rezzonico*, 182 F.3d at 148. This doctrine, too, is the subject of a host of qualifications and exceptions. *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008) (noting "the rule against nonparty preclusion" as well as "six established categories" of exceptions).

And finally, the concept of precedent measures the binding effect of one case's legal holdings in other cases involving different parties. Precedent can be *vertical* (as in how the Supreme Court's decisions bind us, or how our published decisions bind the in-circuit district courts) or *horizontal* (by virtue of our rule prohibiting subsequent panels from overturning prior panel decisions absent either a change in governing law or *en banc* review).

With that, let's start with areas of agreement. First, the stay opinions currently constitute vertical precedent and are binding on

the district courts in this Circuit.[4]  Judge Menashi does not suggest otherwise.  Second, the merits panel that will hear these cases is not bound by the stay panel opinions.  We do not suggest otherwise.

In our view, that is where the easy answers end.  But Judge Menashi presses forward, suggesting that because the stay opinions' holdings may be revised pursuant to our law of the case doctrine (again, we agree), those opinions "will not constrain a subsequent merits panel."  *Ante* at 17.  Here is where the murkiness begins.  After all, "a merits panel will not ordinarily revisit a ruling by a motions panel absent cogent or compelling reasons."  *N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 83 n.3 (2d Cir. 2017) (deferring when the motions panel had "the complete record before it and full briefing on the issue"); *see also United States v. Apple*, 787 F.3d 131, 137 (2d Cir. 2015) (applying law of the case from a ruling on a stay motion); *Shomo v. City of New York*, 579 F.3d 176, 186 (2d Cir. 2009) (applying law of the case from a motion panel's order dismissing the appeal); *Ollman v. Special Bd. of Adjustment No. 1063*, 527 F.3d 239, 251 (2d Cir. 2008) (similar).  Complicating things further, these doctrines *may* work differently for preliminary jurisdictional holdings.  *See, e.g.*, *Lora v. O'Heaney*, 602 F.3d 106, 109 (2d Cir. 2010) (revisiting an "implied" jurisdictional holding reached by a motion panel "based on an

---

[4] Likewise, when the Supreme Court issues a preliminary legal holding in an interim order, lower courts are bound by that holding as a matter of vertical precedent.  *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2664 (2025) (Gorsuch, J., concurring in part and dissenting in part) ("[E]ven probabilistic holdings[,] such as [a] top-line conclusion that the Government is likely to succeed in showing the District Court lacked jurisdiction[,] . . . must inform how a lower court proceeds in like cases." (cleaned up)).

14

abbreviated record . . . without the benefit of full briefing" (quotation marks omitted)).  Or they may not.  *See N.Y. Pet Welfare*, 850 F.3d at 83 n.3 (holding no cogent or compelling reason required revisiting motion panel's finding of jurisdiction).  Ultimately, whether the stay opinions' jurisdictional holdings constitute law of the case is for the future merits panel to decide, hopefully with the benefit of adversarial briefing and argument.

But that is not the only difficult question for which Judge Menashi volunteers an oversimplified answer.  He also argues that the stay opinions are neither law of the case *nor precedential* for other cases.[5]  He makes that argument about precedent mostly by extrapolating from the law of the case context, despite the fact that those doctrines are meaningfully distinct and interact in some

---

[5] Judge Menashi is incorrect to suggest that the Supreme Court's recent practice answers these difficult questions.  To that end, he strikingly modifies the Supreme Court's discussion of its own precedents in *Trump v. Boyle*, injecting the word "only" into the sentence:  "Although our interim orders are not conclusive as to the merits, [here, Judge Menashi breaks up the quote to replace "they" with "but only"] inform how a court should exercise its equitable discretion in like cases." 145 S. Ct. 2653, 2654 (2025); *ante* at 20.  Sure enough, add some words, and the meaning will change.  And that's ignoring that *Boyle* resulted in the application of precedent created in a prior interim order, rather than the rejection of it.  *See* 145 S. Ct. at 2654 (applying the rule from *Trump v. Wilcox*, 145 S. Ct. 1415 (2025)).  If anything, the result in *Boyle* demonstrates the precedential value of interim opinions, such as the Supreme Court's recent opinion concerning the propriety of nationwide injunctions, which was likewise decided on a briefed-and-argued stay motion.  *See Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) ("The Government is likely to succeed on the merits of its argument regarding the scope of relief.").  But it is difficult to understand how, under Judge Menashi's view, *CASA*'s legal holdings would be precedent for the Supreme Court in a subsequent case raising the same issues.

15

counterintuitive ways.  And Judge Menashi does so by mustering bits and pieces of law from other circuits but dismissing our own, including one from the year 2020, as "a couple of older cases."  *Ante* at 27.  Although we think the issue difficult and best left for a future panel to resolve, we note that two binding Second Circuit precedents cut against Judge Menashi's assertion.

In *Khan v. Ashcroft*, 352 F.3d 521 (2d Cir. 2003), a merits panel of this Court faced the question whether a published opinion by a stay-motion panel in an unrelated case created dispositive precedent.  We held that it did.  *Id.* at 524–25.  In particular, the question was whether the Court was bound by a stay-motion panel's holding that a different case, *Domond v. INS*, 244 F.3d 81 (2d Cir. 2001), was still good law.  The stay-motion panel held that it was.  *See Khan*, 352 F.3d at 524.  And because the "question of *Domond*'s continued validity was essential to an evaluation of [a party's] entitlement to a stay," this Court "reject[ed] the contention that" the stay-motion panel's "view . . . was somehow intended to be less than precedential."  *Id.*  Indeed, even in the face of standard cabining language in stay opinions ("at least for purposes of considering the pending motion to lift the stay . . ."), *Khan* found that the stay-motion panel's holding was "equally applicable in the instant case" and cited other cases in which that motions panel's opinion was "relied on by this Court in addressing the merits of petitions for habeas corpus."  *Id.* at 524–25 (citing as an example *Rankine v. Reno*, 319 F.3d 93, 100–01 (2d Cir. 2003)).  Judge Menashi's attempt to distinguish *Khan* away—suggesting that the Court spent several paragraphs musing about the nature of precedent without

16

relying on it—strains credulity.[6]

The other "older case[]" Judge Menashi attempts to distinguish away is his own, *Hassoun v. Searls* (*Hassoun II*), 976 F.3d 121 (2d Cir. 2020). But *Hassoun II*, in denying a motion to vacate a published stay opinion pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), is right in line with *Khan*. In the first instance, a panel of this Court granted the government's motion for a stay of Adham Amin Hassoun's release from immigration detention. *Hassoun v. Searls* (*Hassoun I*), 968 F.3d 190, 193 (2d Cir. 2020). Thereafter, Hassoun was removed from the United States, which mooted his claim for release, and he sought vacatur of the stay opinion. *Hassoun II*, 976 F.3d at 125. We declined to vacate *Hassoun I*, explaining about the stay-motion panel's opinion: "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* at 134–35 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'Ship*, 513 U.S. 18, 26 (1994)).[7]   We noted that "[v]acatur pursuant to

---

[6] Judge Menashi tucks into a footnote his belief that *Khan*'s discussion of precedent is mere dicta because the *Khan* Court also independently arrived at the same conclusion as the *Mohammed* panel. *Ante* at 27 n.25. But even if that is true, "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949); *see also Pyett v. Pa. Bldg. Co.*, 498 F.3d 88, 93 (2d Cir. 2007) ("An alternative conclusion in an earlier case that is directly relevant to a later case is not *dicta*; it is an entirely appropriate basis for a holding in the later case."), *rev'd on other grounds sub nom.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009).

[7] Faced with the inconvenience of *Bancorp*, Judge Menashi now locates the origin of the "presumptively correct and valuable" phrase in Justice Stevens's dissenting

17

*Munsingwear* is an exception to the regular procedure for establishing and revising *precedents*." *Id.* at 135 (emphasis added). But we held *Munsingwear* did not apply, because we saw "no realistic probability" that the stay-motion panel's decision would "spawn legal consequences" for the parties. *Id.* at 134. We explained that, in such circumstances, "a decision poses little risk of prejudice to the parties, [and] the heavy weight of *precedent* and regular procedure greatly exceeds the light, if existent, danger of unfair *preclusive effect*." *Id.* at 135 (emphasis added and quotation marks omitted). In other words, the stay-motion panel's opinion was precedential but not preclusive, and therefore vacatur was inappropriate. *Hassoun II* decided that the precedent of *Hassoun I* would stand.

Judge Menashi, who authored both *Hassoun I* and *II*, now takes a precedent-for-me-but-not-for-thee approach. He does so by ignoring the actual discussion of precedent in *Hassoun II* as well as the outcome, which was a decision to leave the *Hassoun I* motion panel opinion standing as precedent rather than vacate it. He instead focuses on three words in *Hassoun II* that he takes out of context: "Because there are no legal consequences of the court's opinion for the parties, in terms of preclusion *or even precedent*, vacatur is inappropriate." 976 F.3d at 134 (emphasis added). But read *in* context, that sentence refers to the precedential effect on *parties*—*i.e.*,

---

opinion in *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 41 (1993) (Stevens, J., dissenting), which considered the propriety of vacating trial court orders. *Ante* at 28–29. Fair enough. But *Bancorp*—the decision *Hassoun II* quotes at length—concerned whether to vacate a published Court of Appeals decision. *See* 513 U.S. at 20. And *Hassoun II* invoked *Bancorp* on a motion to vacate a *published stay opinion of our Court*, just like this case.

18

by operation of law of the case—rather than precedential effect in *future cases*. To interpret one imprecise phrase in *Hassoun II* as Judge Menashi does now would also read it to contradict the rest of the same paragraph, which referred to the stay opinion as "precedent" *three* times. *Id.* at 134–35. (Why else, for example, would we have proclaimed that "precedents are presumptively correct and valuable to the legal community as a whole," *id.* at 134, if we were talking about something that was not precedential?) Moreover, it would require sticking one's head in the sand about the conclusion in *Hassoun II*, which was *not* to vacate the stay opinion precedent. Worse, it would contravene the *Munsingwear* doctrine itself, which instructs courts to balance the public benefits of *precedents* against the individual burdens created by *preclusion*. *See Bancorp*, 513 U.S. at 26–27; *see also Munsingwear*, 340 U.S. at 39–40.[8] And finally, it would render *Hassoun II* itself non-precedential, as an opinion decided on a motion to vacate.

---

[8] Judge Menashi, citing *Hassoun II*, *Munsingwear*, and *Azar v. Garza*, 584 U.S. 726 (2018), further speculates that "either the opinion of a motions panel will not bind future panels as law of the circuit or a party affected by the precedential effect of such an opinion would be entitled to vacatur should the case become moot before the merits are decided." *Ante* at 31. That entirely hypothetical scenario is best left to a future panel that actually confronts it. Nevertheless, of *Hassoun II*, *Munsingwear*, and *Garza*, only *Garza* resulted in vacatur—there, because the case became moot due to "the unilateral action of the party who prevailed in the lower court." 584 U.S. at 729 (quotation marks omitted); *see also Hassoun II*, 976 F.3d at 135 n.9 (Menashi, J.) (distinguishing *Garza* from *Hassoun* on the ground that *Hassoun* "did not become moot through the voluntary, unilateral action of the prevailing party"). That only reinforces that vacatur is an equitable remedy dependent on the behavior of the parties, especially since "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole . . . and should stand unless a court concludes that the public interest would be served by vacatur." *Bancorp*, 513 U.S. at 26 (quotation marks omitted).

*Cf. Srour v. New York City*, 117 F.4th 72, 86 (2d Cir. 2024) (relying on *Hassoun II*'s vacatur holding); *see also Chen v. Garland*, 43 F.4th 244, 250 (2d Cir. 2022) (Menashi, J.) (citing *Hassoun I*, 968 F.3d at 195).

In our view, it is difficult to predict with perfect clarity the future effects of the stay opinions as law of the case or as precedent. The relevant authorities on these issues can be tested if the stay opinions' holdings are invoked as law of the case before the merits panel or as horizontal precedent in another matter—hopefully with the benefit of adversarial briefing and argument on this issue that we lack on consideration of this *en banc* petition. And after that, with the further benefit of the merits panel's decisions, the full Court may consider whether these cases satisfy our criteria for *en banc* review.[9]

In the meantime, Judge Menashi suggests that if "the stay opinions in these cases created dispositive precedent, that would plainly make the cases worthy of *en banc* review." *Ante* at 26 (quotation marks and citation omitted). Again, we think these questions are far more complicated than that ultimatum lets on. If the stay opinions are indeed precedential, that is most likely so only in the interim between now and when the merits panel resolves the appeal, taking into account whatever law of the case deference it deems appropriate.[10] That is why *en banc* review at this stage is

---

[9] Thus, contrary to Judge Menashi's suggestion, nothing about these cases "prevent[s]" *en banc* review such that "the rule of interpanel accord [is] unwarranted." *Cf. ante* at 26 n.24 (parenthetically quoting *N.C. Utils. Comm'n v. FCC*, 552 F.2d 1036, 1045 (4th Cir. 1977)).

[10] True, not all stay panel decisions end up before a merits panel. A case may become moot in the interim. In those circumstances, *Hassoun II* instructs courts to balance the burdens of preclusive-but-unreviewed judgments against the public

improper—not because the stay opinions are categorically nonprecedential, but because it is simply unnecessary and premature to involve the entire Circuit before the merits panel hears the cases.

And yet, here we are. It is unfortunate that Judge Menashi has seized upon the short period between consideration of the stay motion and merits in these cases to publish his thoughts and force discussion of such complicated issues with little briefing and no argument. If any of our procedures could be described as a "shadow docket," *ante* at 20, it would be this anomalous one at his instigation.

Our response, including on the merits, is motivated not by any desire to further litigate the active and ongoing issues in these cases, but out of necessity in order to present an even-handed account in this unusual procedural context. Any further exploration of these questions is best left for the merits panel and any future case that requires it. For now, these cases are procedurally, substantively, and prudentially ill-suited for *en banc* review, and so we concur in the denial of rehearing *en banc*.

---

benefits that flow from published precedents. We see no reason that the same would not be true in these cases.