# No. 25-1019

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

RÜMEYSA ÖZTÜRK,

*Petitioner-Appellee*

v.

PATRICIA HYDE, in her official capacity as the New England Field Director for U.S. Immigration and Customs Enforcement; MICHAEL KROL, in his capacity as HSI New England Special Agent in Charge, U.S. Immigration and Customs Enforcement; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO A. RUBIO, in his official capacity as Secretary of State; DONALD J. TRUMP, in his official capacity as President of the United States,

*Respondents-Appellants*

---

**On Appeal from the U.S. District Court for the District of Vermont, District Court Case No. 2:25-cv-374**

---

**BRIEF OF IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS AS *AMICI CURIAE* IN SUPPORT OF PETITIONER-APPELLEE**

---

(*Counsel listed on next page*)

Fatma Marouf
Professor of Law
Texas A&M School of Law
307 W. 7th St. Suite LL50
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Elora Mukherjee
Jerome L. Greene Clinical Professor  of Law
Columbia Law School
Morningside Heights Legal
  Services, Inc.
435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF AMICI ................................................. 1

ARGUMENT ........................................................................................................ 2

I.    8 U.S.C. § 1252(g) DOES NOT BAR JUDICIAL REVIEW OF MS. ÖZTÜRK'S CLAIMS ........................................................................... 3

II.   8 U.S.C. § 1252(b)(9) DOES NOT BAR JUDICIAL REVIEW OF MS. ÖZTÜRK'S CLAIMS ........................................................................... 7

    A. The Plain Language of 1252(b) Limits this Entire Section to Review of an Order of Removal. ...................................................... 8

    B. Even if 1252(b) Is Not Limited to Review of an Order of Removal, Detention Does Not "Arise From" An Action or Proceeding to Remove a Noncitizen from the United States ..................................... 17

    C. The Government's Interpretation Requiring Ms. Öztürk to Bring Her Claims in a Petition for Review Would Render Them Effectively Unreviewable ........................................................................ 20

CONCLUSION ................................................................................................... 23

ADDENDUM - LIST OF AMICI CURIAE ....................................................... 25

CERTIFICATE OF COMPLIANCE .................................................................. 32

CERTIFICATE OF SERVICE ........................................................................... 33

# TABLE OF AUTHORITIES

## Federal Cases

Aguilar v. ICE, 510 F.3d 1 (1st Cir. 2007).................................................. 19, 20-22

Ajlani v. Chertoff, 545 F.3d 229, 235 (2d Cir. 2008) .............................................13

Ali v. Mukasey, 524 F.3d 145 (2d Cir. 2008) ..........................................................6

Alvarez v. ICE, 818 F.3d 1194 (11th Cir. 2016).....................................................6

Arce v. United States, 899 F.3d 796 (9th Cir. 2018)...............................................5

Black v. Decker, 103 F.4th 133 (2d Cir. 2024) ......................................................4

Chehazeh v. Att'y Gen. of United States, 666 F.3d 118 (3d Cir. 2012) .................22

Crowell v. Benson, 285 U.S. 22 (1932) .................................................................23

Delgado v. Quarantillo, 643 F.3d 52 (2d Cir. 2011) ............................................18

DHS v. Regents of the Univ. of California, 591 U.S. 1 (2020) .........................6, 17

E.O.H.C. v. Secretary of DHS, 950 F.3d 177 (3d Cir. 2020)............................11, 19

Garcia v. Att'y Gen., 553 F.3d 724 (3d Cir. 2009) ..................................................5

Gonzalez-Alarcon v. Macias, 884 F.3d 1266 (10th Cir. 2018) .............................13

Gonzalez v. ICE, 975 F.3d 788 (9th Cir. 2020) .....................................................19

Hamdi ex rel. Hamdi v. Napolitano, 620 F.3d 615 (6th Cir. 2010) .......................20

Hernández v. Gonzales, 424 F.3d 42 (1st Cir. 2005) .............................................19

Humphries v. Various Fed. USINS Employees, 164 F. 3d 936 (5th Cir. 1999).......6

I.N.S. v. St. Cyr, 533 U.S. 289 (2001) ............................................................passim

Jennings v. Rodriguez, 583 U.S. 281 (2018) ....................................passim

Kong v. United States, 62 F.4th 608 (1st Cir. 2023)...........................5, 21

Madu v. Att'y Gen., 470 F.3d 1362 (11th Cir. 2006) ...............................5

Martinez v. Napolitano, 704 F.3d 620 (9th Cir. 2012)...........................18

McNary v. Haitian Refugee Ctr, Inc., 498 U.S. 479 (1991)....................12

Meza v. Renaud, 9 F.4th 930 (D.C. Cir. 2021) ................................ 12-13

Michalski v. Decker, 279 F. Supp. 3d 487 (S.D.N.Y. 2018) ..................18

Monsalvo Velasquez v. Bondi, 145 S. Ct. 1232 (2024)..........................14

Nadarajah v. Gonzales, 443 F.3d 1068 (9th Cir. 2006)...........................9

Nielsen v. Preap, 586 U.S. 392 (2019)...................................................17

Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999)....................................5

Ragbir v. Homan, 923 F.3d 53 (2d Cir. 2019) .................................... 6-7

Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471 (1999)...........passim

Ruiz v. Mukasey, 552 F.3d 269 (2d Cir. 2009).....................................13

Singh v. Gonzalez, 499 F.3d 969 (9th Cir. 2007) ................................... 9

Trump v. J.G.G, 145 S. Ct. 1003 (2025) ................................................4

Zadvydas v. Davis, 533 U.S. 678 (2001) .......................................3, 4, 22

## Title 8 of the U.S. Code

8 U.S.C. § 1252(a)(1) .............................................................................8

8 U.S.C. § 1252(a)(5) .....................................................................passim

8 U.S.C. § 1252(b)................................................................passim

8 U.S.C. § 1252(b)(9)...........................................................passim

8 U.S.C. § 1252(g)................................................................passim

**Other Statutes**

REAL ID Act of 2005, Pub. L. No. 109–13, 119 Stat. 302 ........................... 4-5, 21

**Federal Regulations**

8 C.F.R. § 1003.19(d)................................................................14

8 C.F.R. § 1239.1 ...................................................................4

**Federal Rules**

 Fed. R. App. P. 29(a)(4)(E) ........................................................1

**Legislative History**

H.R. Rep. 109-72 (2005) (Conf. Rep)............................................5, 21

**Miscellaneous**

Black's Law Dictionary (7th ed. 1999)..............................................13

## INTRODUCTION AND STATEMENT OF AMICI[1]

*Amici curiae* are more than one hundred leading lawyers, law professors, and scholars who practice, write about, research, and teach immigration law.[2] *Amici* collectively have many centuries of experience representing individuals at all stages of their immigration proceedings and in federal court.  Regardless of their differing views on recent campus protests and the war in the Middle East, *amici* are united in finding that the government's detention of Rümeysa Öztürk is unlawful, and that the federal courts have power to order her release from unlawful imprisonment. *Amici* have a strong interest in the outcome of this case. It is crucial that federal courts retain their longstanding authority to prevent unlawful imprisonment by Executive Branch officials. That is particularly so in this case, as allowing the federal government to jail immigrants based on peaceful political speech, such as writing an op-ed, will have devastating effects on immigrants, upend the practice of immigration law, and chill protected First Amendment speech not just on campuses but in communities nationwide.

---

[1] Petitioner and Respondents have consented to the filing of this brief. No party or its counsel had any role in authoring this brief. No person or entity—other than *amici* and their counsel—contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

[2] A list of *amici* is set forth in Appendix I. The positions taken in this brief are those of *amici* alone and should not be attributed to any institution with which *amici* are or have been affiliated.

## ARGUMENT

Respondents take the remarkable view that the federal courts have no power to determine whether the government has illegally imprisoned Ms. Öztürk, asserting that Congress foreclosed challenges to detention incident to removal proceedings in 8 U.S.C. § 1252(g), even though the Supreme Court and this Court have repeatedly considered such challenges on their merits in the years since Section 1252(g)'s passage.

Alternatively, Respondents take the even stranger position that if the federal courts have power to resolve Ms. Öztürk's claims, they must wait until her entire removal proceedings are over—a process that could take years—before she can challenge the legality of her detention *during* those same proceedings, under 8 U.S.C. §§ 1252(a)(5) and (b)(9).

The government's positions are meritless. Ms. Öztürk's habeas petition challenges her detention as imposed punitively and in retaliation for engaging in constitutionally protected speech. Those claims are not barred by 1252(g) because none of them challenge the decision to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). And she is not required to languish in prison for years before raising a challenge to her detention under 1252(a)(5) and (b)(9) because her claims are conceptually distinct from her challenge to her removal.

## I.    1252(g) DOES NOT BAR JUDICIAL REVIEW OF MS. ÖZTÜRK'S CLAIMS

The government's contention that 1252(g) bars all review of Ms. Öztürk's challenges to her detention is plainly foreclosed by binding precedent construing that provision narrowly. Moreover, construing the "arising from" language of 1252(g) to bar all detention-related claims would raise serious constitutional concerns under the Suspension Clause.

As the Supreme Court held in *Reno v. American-Arab Anti-Discrimination Committee (AADC)*, Section 1252(g) bars review only over claims challenging the three discrete exercises of "prosecutorial discretion" covered by 1252(g): "the decision or action . . . to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." 525 U.S. 471, 482 (1999) (emphasis in original). There are "many other decisions or actions that may be part of the deportation process," but challenges to them are not barred. *Id.*; *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding 1252(g) did not bar detention claim challenging "the extent of the Attorney General's authority" rather than the "exercise of discretion").

Here, Ms. Öztürk's habeas petition challenges her detention. It does not challenge the decision to *commence* removal proceedings against her, let alone the decision to *adjudicate* her case, or *execute* any removal order. That her detention claims are not barred by Section 1252(g) follows from the fact that the decision to

3

detain is legally separate from the decision to remove. Removal proceedings are commenced by the filing of a Notice to Appear (NTA) with the immigration court. 8 C.F.R. § 1239.1. A decision to detain may occur before or after that filing. In Ms. Öztürk's case, she was detained by ICE before an NTA was filed with the immigration court. Removal cases are regularly adjudicated without the non-citizen being detained, and the government does not contend it is legally required to detain her to adjudicate her case.

Respondents nonetheless contend her detention claim falls within Section 1252(g), arguing "Ozturk was detained *because* the government had decided to initiate removal proceedings against her." Resp. Br. at 33. But her removal proceedings are just one of many but-for causes of her detention, and if that were sufficient, then Section 1252(g) would bar all detention claims. *But see, e.g.*, *Zadvydas*, 533 U.S. at 688; *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) (addressing detention claims on the merits).

Respondents also argue the reference to habeas claims in Section 1252(g) shows it is meant to cover detention claims, Resp. Br. at 34-36, but, as Respondents also acknowledge, that reference was added in the REAL ID Act of 2005, where Congress responded to *INS v. St. Cyr*, 533 U.S. 289 (2001). *St. Cyr* concerned the longstanding use of habeas to challenge *removal* orders, not detention claims. *Id.* at 299; *see also Trump v. J.G.G*, 145 S. Ct. 1003 (2025)

(habeas petition challenging removal). Nothing in the REAL ID Act remotely suggests Congress intended to bar detention claims, particularly given the obvious Suspension Clause problems such a scheme would raise. Indeed, the REAL ID Act's legislative history shows the opposite, as the Conference Report stated the statute preserved "habeas review over challenges to detention that are independent of challenges to removal orders." H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.).[3]

Other circuits have recognized that 1252(g) does not bar jurisdiction over habeas challenges to detention. *See Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (holding petitioner's illegal arrest and detention claims based on lack of warrant and regulatory violations were "plainly collateral to ICE's prosecutorial decision to execute Kong's removal"); *Arce v. United States*, 899 F.3d 796, 799–800 (9th Cir. 2018) (FTCA claim for false arrest and imprisonment based on government's violation of stay of removal not barred by 1252(g)); *Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (challenge to legality of detention not barred by 1252(g) because distinct from decision to execute removal order); *Parra*

---

[3] Even as to removal proceedings, courts have consistently exercised judicial review over challenges to the government's *authority* to commence proceedings, distinguishing this from the discretionary *decision* to commence proceedings. *Garcia v. Att'y Gen.,* 553 F.3d 724, 729 (3d Cir. 2009) (finding jurisdiction because ("Garcia is not challenging the discretionary *decision* to commence proceedings, but is challenging the government's very *authority* to commence those proceedings after the limitation period has expired") (emphases in original).

*v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (1252(g) did not bar detention challenges because claims "concern[ing] detention . . . may be resolved without affecting pending [removal] proceedings.").

The government ignores all this adverse authority, citing instead *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016), but that case *reverses* the district court's decision finding no jurisdiction over a *Bivens* action raising certain detention claims. The narrow detention-related claim it found barred challenged only the "decision to lodge a detainer against" the immigrant before any removal proceedings commenced.[4]

Finally, Ms. Öztürk's challenge to her detention as unconstitutional retaliation for protected speech is not barred by 1252(g). A challenge to the lawfulness or constitutionality of an action does not arise from a decision to commence removal proceedings, adjudicate cases, or execute a removal order. *See*, *e.g.*, *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (describing 1252(g) as "narrow" and finding that it did not bar constitutional and APA challenges to the rescission of DACA); *cf. Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (suggesting claim would not be barred if petitioner alleged being placed in removal proceedings "unlawfully or for reasons that would offend the

---

[4] The claim found barred in *Humphries v. Various Fed. USINS Employee*s, 164 F. 3d 936, 945 (5th Cir. 1999), which pre-dates *AADC*, challenged only exclusion, not detention.

Constitution"). In this respect, this case also differs from *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019) and *AADC* itself, where petitioners sought to enjoin the execution of otherwise valid final removal orders on First Amendment grounds. Here, in contrast, Ms. Öztürk's habeas petition does not challenge her removal order; she is litigating against removal in immigration court, just as the immigration laws require.

## II.  8 U.S.C. § 1252(b)(9) DOES NOT BAR JUDICIAL REVIEW OF MS. ÖZTÜRK'S CLAIMS.

Respondents' argument that, under 1252(a)(5) and (b)(9), Ms. Öztürk's challenges cannot be heard unless and until she is ordered removed and she seeks judicial review of that removal order, is equally meritless, for two reasons. First, consistent with its plain text, and as Justice Breyer's opinion in *Jennings v. Rodriguez* states, 1252(b) only concerns claims arising in the context of the review of removal orders. 583 U.S. 281, 355 (2018) (Breyer, J., dissenting on other grounds). Second, even if 1252(b)(9) is not so limited, it does not bar review of claims challenging unlawful detention, as detention does not "arise from" removal proceedings, and construing the statute to cover such claims would render her detention challenge "effectively unreviewable," and thereby present serious constitutional problems. *See id*. at 293 (Alito, J.) (plurality).

7

### A. The Plain Language of 1252(b) is Limited to Claims Arising from Review of Removal Orders.

The opening text of 8 U.S.C. § 1252(b) limits application of all its provisions to claims arising from review of removal orders under 1252(a)(1). It states:

> (b) *Requirements for review of orders of removal*
>
> *With respect to review of an order of removal* under subsection (a)(1), the following requirements apply
> . . .

8 U.S.C. § 1252(b) (emphasis added) Section 1252(b)(9), like the other provisions of subsection 1252(b), follows this language. Therefore, its requirements apply only "with respect to review of" removal orders. Because Ms. Öztürk is not seeking review of a removal order—she has not been ordered removed and may well never be—the provisions of Section 1252(b) simply do not apply to her.

Amici's plain-language interpretation of Section 1252(b)(9) was embraced by Justice Breyer in *Rodriguez*, who relied on the language emphasized above to conclude the Court had jurisdiction over the detention claims at issue there. *Rodriguez*, 583 U.S. at 355 (Breyer, J., dissenting on other grounds) ("Jurisdiction [] is unaffected by 8 U.S.C. § 1252(b)(9), which by its terms applies only '[w]ith respect to review of an order of removal under [§ 1252(a)(1)].' . . . The respondents challenge their detention without bail, not an order of removal.").

8

The Ninth Circuit has also adopted that interpretation, explaining that a claim challenging the detention of a non-citizen whose removal case remained pending was not subject to 1252(b)(9)'s requirements because "[1252(b)(9)] only applies to federal habeas corpus jurisdiction over 'final orders of removal.' [] By its terms, [it] does not apply to federal habeas corpus petitions that do not involve final orders of removal. Here, as we have noted, *there is no final order of removal*." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006) (emphasis added). It reaffirmed that conclusion shortly afterward in *Singh v. Gonzalez,* which explained that "[b]y virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) *apply only to those claims seeking judicial review of orders of removal*." 499 F.3d 969, 978 (9th Cir. 2007) (emphasis added). While *Singh* acknowledged that § 1252(b)(9) covers "any action taken or proceeding brought to remove an alien," the court interpreted the phrase "simply [to] mean[ ] that if the alien fails to consolidate his claims as required under § 1252(b)(9), he may not later bring a separate habeas claim to raise 'questions of law or fact' that should have been brought as part of a challenge to his final order of removal." *Id.* at n.11. Here, as in *Nadarajah*, there is no final removal order, and Ms. Öztürk's petition necessarily does not seek review of any such order. Therefore 1252(b)(9) does not apply.

Respondents cite Justice Alito's lead plurality opinion in *Rodriguez*, Resp. Br. at 40, but that opinion strongly supports Petitioner's position here. Justice Alito's opinion held there *was jurisdiction* to review the detention claims in *Rodriguez*, albeit without either endorsing or rejecting Justice Breyer's approach. Instead, the plurality did not "attempt to provide a comprehensive interpretation" of the scope of § 1252(b)(9), 585 U.S. at 294, but rejected a broad reading of the phrase "arising from" that "would [ ] make claims of prolonged detention effectively unreviewable." *Id*. at 293 (plurality opinion). The plurality also noted that a literal interpretation of "arising from" could encompass virtually any removal-related action, because if action to remove a noncitizen "had never been taken, the [noncitizen] would not be in custody at all." *Id.* Rejecting that interpretation, the plurality observed that "cramming judicial review" of questions such as detention-related injuries and conditions claims "into the review of final removal orders would be absurd." *Id.* The plurality further cautioned against "uncritical literalism" when interpreting "capacious phrases like 'arising from'" that would "lead[] to results that no sensible person could have intended." *Id.* at 293–94 (internal quotation marks omitted). Ultimately, the plurality concluded that it had jurisdiction to address at least those claims that did not seek review of an order of removal (the position embraced by Justice Breyer) or challenge any part of

the process by which removability would be determined—including detention claims like those at issue in *Rodriguez* itself. *Id.* at 294.

Thus, Petitioner's claim is plainly cognizable under the *Rodriguez* plurality's logic. Forcing Ms. Öztürk to wait until her removal proceedings have concluded before she can challenge the legality of her detention while those proceedings are pending obviously renders her challenge "effectively unreviewable."[5]

That approach has also been endorsed by the Third Circuit, which relied on the opinions in *Rodriguez* to distill the principle that 1252(b)(9) does not apply where barring review would prevent any meaningful review of the petitioner's claim. To apply that principle, the Third Circuit instructed lower courts to ask, "If not now, when?" in addressing whether judicial review is barred under 1252(b)(9). *E.O.H.C. v. Secretary of DHS,* 950 F.3d 177, 186 (3d Cir. 2020). "If the answer would otherwise be never, then § 1252(b)(9) poses no jurisdictional bar. In other words, it does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *Id.* (holding

---

[5] Only Justice Thomas, joined by Justice Gorsuch, interpreted 1252(b)(9) so broadly that it would confine "challenge[s] to the *fact* of [a noncitizen's] detention" to the petition-for-review process. *Id.* at 319 (Thomas, J., dissenting) (emphasis in original). As Justice Thomas's dissent acknowledges, the plurality "dismisse[d] this 'expansive interpretation' because it would lead to 'staggering results.'" *Id.* at 319 (quoting plurality opinion).

that judicial review of an interim return to Mexico, rather than permanent removal

to Guatemala, was not barred by 1252(b)(9)).

     The Third Circuit illustrated its reasoning with "[s]ome hypotheticals" that

"drive the point home" and are instructive here:

> Consider a detained alien who needs halal or kosher food, or a
> diabetic who alleges that the Government is depriving him of insulin.
> Or take [Rodriguez]'s example of a challenge to prolonged
> detention. . . . Under the Government's reading, these aliens could get
> no judicial review until the Board enters their final orders of removal.
> That cannot be so. For one, the final order of removal may never
> come. Even if it does, review and relief may come too late to redress
> these conditions of confinement.

*Id.* at 186 (citing *Rodriguez*, 583 U.S. at 293, and *McNary v. Haitian Refugee Ctr,*

*Inc.*, 498 U.S. 479, 484 (1991) (construing jurisdiction-stripping provisions to

preserve review where "meaningful judicial review . . . would [otherwise] be

foreclosed")). Similarly, here, Ms. Öztürk could not receive any meaningful review

of her claim challenging her detention pending removal proceedings after those

proceedings are already over.

     Likewise, the D.C. Circuit has held that "1252(b)(9) prevents [a noncitizen]

from *relitigating, outside the context of a petition for review, a question decided*

*against him in the removal proceeding*. In ordinary usage, an issue decided in a

proceeding arises from the proceeding." *Meza v. Renaud*, 9 F.4th 930, 933 (D.C.

Cir. 2021) (emphasis added) (holding that the court could not review Meza's claim

that he was an arriving alien, which he could have made in a petition for review)

(citing *Arise*, *Black's Law Dictionary* (7th ed. 1999)). Ms. Öztürk is not trying to relitigate any issue decided against her in her removal proceeding.

Unsurprisingly, Respondents cite no cases dismissing claims challenging detention pending completion of removal proceedings under 1252(a)(5) and (b)(9). Indeed, the cases from this Court that Respondents cite show why Ms. Öztürk's petition is cognizable. In *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009), Resp. Br. at 40, the Second Circuit found there was district court jurisdiction to review the denial of a petition to adjust the status of a U.S. citizen's spouse. Although adjustment would obviously serve as a defense to removal proceedings, the court nonetheless found the denial "unrelated to any removal action or proceeding." *Id.*; *cf. Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) (claim barred where plaintiff sought order declaring "the then-pending removal proceedings against him were unconstitutional"); *see also Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) (finding claim potentially barred because it was "based on the alleged invalidity of his order of removal," but nonetheless not dismissing because of potential Suspension Clause concerns).

Nonetheless, Respondents now ask this Court to adopt the view of only two Justices in *Rodriguez*. This Court should decline that invitation. In rejecting Justice Breyer's interpretation, Justice Thomas's opinion made four main arguments, none of which is persuasive. First, he contends that limiting 1252(b)(9) to review of final

orders of removal would read the phrase "or such questions of law or fact" out of the statute. *Rodriguez*, 583 U.S. at 320 (Thomas, J., dissenting). But his approach reads the prefatory clause out of the statute, as it renders that clause entirely meaningless—a point he essentially acknowledges in arguing that it does not change the scope of the provision in any way. *Id.* at 320–21 (arguing the prefatory clause does not change the scope of the provision). In any event, adopting Justice Breyer's view does not render the phrase "or such questions of law or fact" in 1252(b)(9) meaningless. At a minimum, it could refer to questions arising in ancillary litigation that arises after a removal order is entered, including in motions to reopen, challenges related to the country designated for deportation, humanitarian claims under withholding of removal or the Convention Against Torture, and other ancillary litigation that arises after a removal order has been entered. *See, e.g.*, *Monsalvo Velasquez v. Bondi*, 145 S. Ct. 1232, 1241 (2024) (finding jurisdiction in petition for review to address question arising from litigation ancillary to final removal order). In contrast, because issues involving detention are not addressed in removal proceedings or by orders of removal, they are outside the purview of 1252(b)(9). This also makes sense of the regulatory structure, as immigration courts have separate custody redetermination proceedings (bond hearings), with a separate record of proceedings, to address detention. 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or

14

request of a respondent regarding custody or bond under this section *shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding*.") (emphasis added).

Second, Justice Thomas contends that Justice Breyer's interpretation renders superfluous 1252(a)(5), which specifies that a petition for review is the sole means of judicial review of an order of removal. *Rodriguez*, 583 U.S. at 305. This is simply incorrect. Section 1252(a)(5) specifies that the proper forum for challenging a final order of removal is the federal courts of appeal, while the "zipper clause" in 1252(b)(9) clarifies that all challenges related to that final order of removal must be brought together in a consolidated manner, rather than piecemeal. As the Supreme Court recognized in *AADC*, even minor differences between bars on judicial review can justify their existence. 525 U.S. 471, 483 (1999) (rejecting the argument "that § 1252(g) is redundant if it channels judicial review of only *some* decisions and actions, since § 1252(b)(9) channels judicial review of *all* of them anyway. . . . since only § 1252(g), and *not* § 1252(b)(9) . . . applies to what § 309(c)(1) calls 'transitional cases,' that is, cases pending on the effective date of IIRIRA," which "alone justifies its existence") (emphasis in original).

Third, Justice Thomas argues that the Supreme Court's precedents in *AADC* and *St. Cyr* did not limit 1252(b)(9) to review of final orders of removal. However, neither of those cases addressed the scope of 1252(b)(9). In *AADC*, the Supreme

Court held that 1252(g) barred jurisdiction over selective prosecution claims where the noncitizens had final orders of removal and challenged the decision to execute those orders. Indeed, the plurality in *Rodriguez* cited *AADC* as *supporting* its narrow interpretation of "arising from" in 1252(b)(9). *Rodriguez*, 583 U.S. at 294 ("We did not interpret this language [in 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.") (citing *AADC,* 525 U.S. at 482–83).

*St. Cyr* also does not support Justice Thomas's unjustifiably broad interpretation of 1252(b)(9). Not only did the Supreme Court reject the government's arguments that 1252(b)(9) barred judicial review in *St. Cyr*, but the Court stressed that the absence of "another judicial forum" where a question of law could be answered, "coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions." *St. Cyr*, 533 U.S. at 314. This language supports the Third Circuit's approach of exercising judicial review where meaningful review would otherwise be foreclosed, including, for example, where lengthy detention would have already taken place by the time a petition for review of a removal order is considered. Justice Thomas offers no

persuasive response to the fact that his approach would eliminate any possibility of meaningful review over an important class of detention claims. *Rodriguez,* 583 U.S. at 321 (Thomas, J., dissenting). As noted above, the plurality was rightly concerned that Justice Thomas's "extreme" interpretation would make claims of prolonged detention effectively unreviewable. 583 U.S. at 293.

The district court's conclusion that it had jurisdiction over Ms. Öztürk's claims receives still more support from the Supreme Court's post-*Rodriguez* immigration cases. In *Nielsen v. Preap*, 586 U.S. 392 (2019), the Justices took the same positions as in *Rodriguez*, with a three-Justice plurality echoing the view that 1252(b)(9) does not bar challenges to detention, while Thomas and Gorsuch restated their view from *Rodriguez.* A year later, the Supreme Court once again confirmed that 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Regents of the Univ. of California*, 591 U.S. at 19 (quoting the plurality opinion in *Rodriguez* while also citing Justice Breyer's dissent in *Rodriguez*).

### B. Detention Does Not "Arise From" An Action or Proceeding to Remove a Noncitizen from the United States.

Even if this Court does not limit 1252(b)(9) to review of final orders of removal, the language still is not broad enough to include challenges to detention. The First and Ninth Circuits have repeatedly held that 1252(b)(9) does not

foreclose challenges to detention, and the Third and Sixth Circuits have exercised jurisdiction over challenges related to removal proceedings. The question here is whether Ms. Öztürk's detention "*aris[es] from* any action taken or proceeding brought to remove a [noncitizen]," and the simple answer is that it does not. 8 U.S.C. § 1252(b)(9) (emphasis added).

While this Court has not addressed the "arising from" language in 1252(b)(9), it has addressed the same phrase in 1252(a)(5), holding that the distinction between an independent claim and an indirect challenge to a removal order "will turn on the substance of the relief that a plaintiff is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). In *Delgado*, the petitioner was indirectly challenging her reinstated order of removal, so the court held that section 1252(a)(5)'s jurisdictional bar applied. Here, Ms. Öztürk challenges the constitutionality of her retaliatory detention, which cannot be addressed in her removal proceedings. *See Michalski v. Decker*, 279 F. Supp. 3d 487, 494 (S.D.N.Y. 2018) (applying the "substance of the relief" test and holding the petitioner's "challenge to the constitutionality of his arrest and detention is not barred by § 1252(b)(9)").

Respondents resist this, relying on the Ninth Circuit's decision in *Martinez v. Napolitano*, but *Martinez* followed this Court's "substance of the relief" test in interpreting 1252(a)(5), explaining that the claim there was barred by 1252(a)(5)

because "the substance of the relief [the plaintiff] is seeking . . . would negate his order of removal." 704 F.3d 620, 623 (9th Cir. 2012). Applying that rule here, judicial review of Ms. Öztürk's detention-related claim clearly is *not* barred, since being released from custody would not negate any order of removal that may ultimately be issued against her. Both detained and non-detained individuals may be removed from the United States, and, here, no final order of removal even exists to negate.

The Ninth and First Circuits have already recognized that challenges to detention do not "arise from" removal-related actions or proceedings. *See Gonzalez v. ICE*, 975 F.3d 788, 810–11 (9th Cir. 2020) (holding that section 1252(b)(9) did not bar jurisdiction "because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process"); *Hernández v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005) (holding that detention claims are independent of removal proceedings and, thus, not barred by section 1252(b)(9)); *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (identifying "challenges to the legality of detention" as squarely outside § 1252(b)(9)'s scope).

Additionally, the Third and Sixth Circuits have exercised jurisdiction over challenges related to removal proceedings but not involving final orders of removal. *See E.O.H.C.*, 950 F.3d at 194 (holding that an interim removal to Mexico and a constitutional right-to-counsel claim did not arise from removal

19

proceedings and could not await later review); *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 626 (6th Cir. 2010) ("We, like the First Circuit in *Aguilar,* cannot endorse an interpretation of the 'arising from' language in § 1252(b)(9) that 'swallow[s] all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien.'") (quoting *Aguilar*, 510 F.3d at 10).

      **C.     The Government's Interpretation Requiring Ms. Öztürk to Bring Her Claims in a Petition for Review Would Render Them Effectively Unreviewable, Thereby Raising Serious Constitutional Problems**

      Under the government's interpretation, Ms. Öztürk could potentially go for months before receiving judicial review of the lawfulness of her detention. First, she would need to wait for months in detention while the Immigration Judge adjudicates her case. If she wins and a removal order is never issued, her detention claim would have proven entirely unreviewable—she would have been subject to pointless unlawful imprisonment, but no court would ever have had the power to address it. If she loses, she would need to wait months more for the Board of Immigration Appeals (BIA) to decide her appeal. If her appeal is granted, she would win her removal case, again without ever having had the opportunity to obtain judicial review of her detention claim. If her BIA appeal is denied, she would need to file a petition for review with the circuit court, and only then could she get judicial review of her detention claim. The government's reading of

1252(b)(9) would permit ICE to arrest and detain Ms. Öztürk, and potentially thousands of others, without any statutory or constitutional constraints.

As courts have recognized, the phrase "arising from" is not "infinitely elastic" and does not reach "claims that are independent of, or wholly collateral to, the removal process," or that bear "only a remote or attenuated connection to the removal of an alien." *Aguilar*, 510 F.3d at 10–11. Claims seeking review of the legality of a petitioner's detention fall outside the reach of the "arising from" language. *Id.*; *see also Kong*, 62 F.4th at 614.

As described above, the legislative history confirms that Congress intended to preserve habeas review of detention when it amended the INA to include the current language of 1252(b)(9) as part of the REAL ID Act of 2005, Pub. L. No. 109–13, § 106, 119 Stat. 302, 310-11. The Conference Report accompanying the passage of those amendments specified that 1252(b)(9) would "*not preclude habeas review over challenges to detention* that are independent of challenges to removal orders, the bill would eliminate habeas review *only over challenges to removal orders.*" H.R. Rep. 109-72, at 175 (2005) (Conf. Rep.) (emphasis added). This statement appears after an extensive examination of Supreme Court and circuit court precedents describing the kinds of jurisdiction-stripping provisions that would not violate the right to habeas corpus, indicating that Congress was attentive to the constitutional concerns with limiting habeas relief. *Id.* at 174–75.

In *Aguilar*, the First Circuit relied on this Conference Report in holding that judicial review was preserved over challenges to detention through habeas petitions. 510 F.3d at 11 ("In line with [Congress's] prescription [in the Conference Report], we have held that district courts retain jurisdiction over challenges to the legality of detention in the immigration context.") (citing *Hernández*, 424 F.3d at 42 (holding that detention claims are independent of removal proceedings and, thus, not barred from district court jurisdiction by 1252(b)(9))). This interpretation is consistent with the longstanding rule of statutory interpretation requiring "clear and convincing evidence of legislative intent before restricting access to judicial review entirely." *Id.*[6]

The canon of constitutional avoidance likewise requires interpreting statutes to preserve habeas review of detention claims. "'[I]t is a cardinal principle' of statutory interpretation . . . that when an Act of Congress raises 'a serious doubt' as to its constitutionality, 'this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Zadvydas*, 533 U.S. at 689 (holding that courts retained jurisdiction over challenges to post-

---

[6] Insofar as *Aguilar* found that the reach of 1252(b)(9) is not limited to challenges to singular orders of removal, this interpretation was criticized by the Third Circuit in *Chehazeh v. Att'y Gen. of United States,* where the court stated that the reasoning of *Aguilar* "appears to conflict with the Supreme Court's explicit instruction in *St. Cyr* . . . and with the language of § 1252(b)." 666 F.3d 118, 133 (3d Cir. 2012).

removal period detention) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). The Court has "read significant limitations into . . . immigration statutes in order to avoid their constitutional invalidation." *Id*. Any interpretation of 1252(b)(9) that bars judicial review of habeas petitions challenging detention would raise serious constitutional concerns under the Suspension Clause and should be avoided. Given that there is an alternative reading—one that simply applies the plain text—this Court should adopt it.

## CONCLUSION

For the foregoing reasons, this Court should deny the government's appeal and affirm the district court's order.

DATED: August 25, 2025      Respectfully submitted,

/s/ Fatma Marouf

Fatma Marouf
Professor of Law
Texas A&M School of Law
307 W. 7th St. Suite LL50
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Elora Mukherjee
Jerome L. Greene Clinical Professor of Law
Columbia Law School
Morningside Heights Legal Services, Inc.
435 W. 116th Street, Room 831
New York, NY 10027

23

Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

# ADDENDUM
# LIST OF AMICI*

*All amici have signed on in an individual capacity, with institutional affiliation for identification purposes only.*

Evangeline Abriel
Clinical Professor of Law
Santa Clara Univ. School of Law

Susan Akram
Clinical Professor of Law
Director, International Human Rights
  Clinic
Boston University School of Law

Nadia Anguiano
Associate Clinical Professor of Law
University of Minnesota Law School

Sabrineh Ardalan
Clinical Professor of Law
Harvard Law School

Paulina Arnold
Assistant Professor
University of Michigan Law School

Ahilan Arulanantham
Professor from Practice
Co-Director, Center for Immigration
  Law and Policy
UCLA School of Law

Sameer Ashar
Clinical Professor of Law
U.C. Irvine School of Law

Sabrina Balgamwalla
Assistant Professor of Law
Wayne State Law School

Jon Bauer
Clinical Professor of Law
Richard D. Tulisano '69 Scholar
  In Human Rights
University of Connecticut
School of Law

David Bedingfield
Visiting Professor
Florida State University
College of Law

Jacqueline Bhabha
Professor of the Practice of Health
and Human Rights
Harvard University

Kaci Bishop
Clinical Professor of Law
University of North Carolina
School of Law

Matthew Boaz
Assistant Professor of Law
Univ. of Kentucky
J. David Rosenberg College of Law

Richard A. Boswell
Professor of Law
U.C. Law, San Francisco

Emily Brown
Assistant Clinical Professor of Law
The Ohio State University
Moritz College of Law

J. Anna Cabot
Assistant Dean of Clinical Programs
University of Houston Law Center

Kristina M. Campbell
Professor of Law
Rita G. & Norman L. Roberts Faculty
  Scholar
Director, Beatriz and Ed Schweitzer
  Border Justice Initiative
Gonzaga University School of Law

Stephanie L. Canizales
Assistant Professor of Sociology
University of California, Berkeley

Stacy Caplow
Professor of Law
Brooklyn Law School

Jocelyn Cazares Willingham
Assistant Professor of Law
University of the District of Columbia
David A. Clarke School of Law

Gabriel Chin
Edward L. Barrett Jr. Chair
Martin Luther King Jr. Professor
  of Law
U.C. Davis School of Law

Melissa Chua
Adjunct Professor
Brooklyn Law School

Marissa Cianciarulo
Dean and Professor of Law
Western State College of Law

Dree Collopy
Adjunct Professor
American University
Washington College of Law

Rose Cuison-Villazor
Professor of Law
Chancellor's Social Justice Scholar
Rutgers Law School

Lauren DesRosiers
Visiting Assistant Professor
Director, Immigration Law Clinic
Albany Law School

Stella Burch Elias
Professor of Law
University of Iowa College of Law

Jill Family
Professor of Law
Widener Law Commonwealth

Niels Frenzen
Sidney M. and Audrey M. Irmas
  Endowed
  Clinical Professor of Law
USC Gould School of Law

Maryellen Fullerton
Suzanne J. and Norman Miles
Professor of Law
Brooklyn Law School

Denise Gilman
Co-Director, Immigration Clinic
University of Texas School of Law

Jennifer Gordon
Professor of Law
Fordham University School of Law

Jennifer Grobelski
Supervisory Attorney
Northern Illinois Justice for Our
  Neighbors

Lucas Guttentag
Professor of the Practice of Law
Stanford Law School
Martin R. Flug Lecturer in Law and
Senior Research Scholar in Law
Yale Law School

Susan Gzesh
Instructional Professor
University of Chicago

Lindsay M. Harris
Professor of Law
University of San Francisco
School of Law

Dina Francesca Haynes
Executive Director, Schell Center for
International Human Rights
Research Scholar in Law
Yale Law School

Mackenzie Heinrichs
Associate Professor of Law
University of Utah
S.J. Quinney College of Law

Laura Hernandez
Professor of Law
Baylor Law School

Barbara Hines
Retired Clinical Professor of Law
University of Texas School of Law

Laila Hlass
Associate Professor of Law
Tulane Law School

Mary Holper
Clinical Professor of Law
Boston College Law School

Alan Hyde
Distinguished Professor Emeritus
Rutgers Law School

Kevin Johnson
Mabie/Apallas Professor of Public
Interest Law and Chicanx Studies
University of California, Davis

Elizabeth Jordan
Visiting Assistant Professor
Director, Immigration Law and Policy
  Clinic
University of Denver Sturm
College of Law

Daniel Kanstroom
Professor of Law
Boston College Law School

Elizabeth Keyes
Professor of Law
University of Baltimore
School of Law

Jennifer Koh
Associate Professor of Law
Pepperdine Caruso School of Law

Daniel M. Kowalski
Editor-in-Chief
Bender's Immigration Bulletin
  (LexisNexis)

Jennifer Lee
Associate Professor of Law
Temple University
Beasley School of Law

Lynn Marcus
Clinical Law Professor
University of Arizona
James E. Rogers College of Law

Fatma Marouf
Professor of Law
Texas A&M School of Law

Estelle McKee
Clinical Professor
Cornell Law School

Michelle McKinley
Professor of Law
University of Oregon School of Law

Jennifer Moore
Professor of Law
University of New Mexico
School of Law

Daniel Morales
Dwight Olds Chair in Law
University of Houston

Angela Morrison
Professor of Law
Texas A&M School of Law

Hiroshi Motomura
Susan Westerberg Prager
  Distinguished Professor of Law
UCLA School of Law

Elora Mukherjee
Jerome L. Greene Clinical Professor
  of Law
Columbia Law School

Karen Musalo
Professor of Law
UC Law San Francisco

Lindsay Nash
Associate Professor of Law
Benjamin N. Cardozo School of Law

Mauricio Noroña
Assistant Clinical Professor of Law
Touro University
Jacob D. Fuchsberg Law Center

John Palmer
Associate Professor
Dept. of Political and Social Sciences
Universitat Pompeu Fabra

Sarah Paoletti
Practice Professor of Law
University of Pennsylvania
Carey Law School

Reena Parikh
Assistant Clinical Professor
Boston College Law School

Helen Parsonage
Attorney at Law
North Carolina

Jackie Pearce
Clinical Instructor
CUNY School of Law

Huyen Pham
University Distinguished Professor
Texas A&M School of Law

Jaya Ramji-Nogales
Professor of Law
Temple University
Beasley School of Law

Lauren Reiff
Associate Director
New York Legal Assistance Group

Sarah Rogerson
Professor of Law
Albany Law School

Carrie Rosenbaum
Senior Fellow
Santa Clara University School of Law

Rachel Rosenbloom
Professor of Law
Northeastern University
School of Law

Rubén G. Rambaut
Distinguished Professor of Sociology
University of California, Irvine

Faiza Sayed
Associate Professor of Law
Director, Safe Harbor Clinic
Brooklyn Law School

Irene Scharf
Emerita Professor of Law
Univ. of Massachusetts
School of Law

Erica Schommer
Clinical Professor of Law
St. Mary's University School of Law

Ragini Shah
Clinical Professor of Law
Suffolk University Law School

Rebecca Sharpless
Professor of Law
University of Miami School of Law

Sarah Sherman-Stokes
Clinical Associate Professor of Law
Boston University School of Law

Alexis Silver
Associate Professor of Sociology and
  Latin American (Latinx) Studies
Purchase College
State University of New York
(SUNY-
  Purchase)

Doug Smith
Lecturer

29

Brandeis University
Jayashri Srikantiah
Professor of Law
Director, Immigrants' Rights Clinic
Stanford Law School

Brett Stokes
Director, Center for Justice
 Reform Clinic
Vermont Law and Graduate School

Maureen Sweeney
Law School Professor
University of Maryland Carey
School of Law

David B. Thronson
Professor of Law
Michigan State University
College of Law

Enid Trucios-Haynes
Professor of Law
Brandeis School of Law
University of Louisville

Paulina Vera
Director, Immigration Clinic
George Washington Law School

Alexander Vernon
Assistant Professor
Detroit Mercy School of Law

Leti Volpp
Robert D. and Leslie Kay Raven
Professor of Law
U.C. Berkeley

Jonathan Weinberg
Distinguished Professor of Law
Wayne State University

Deborah M. Weissman
Reef C. Ivey II Distinguished
Professor of Law
University of North Carolina
School of Law

Virgil Wiebe
Professor of Law
University of St. Thomas
School of Law

Amelia Wilson
Assistant Clinical Professor
Director, Immigration Justice Clinic
Elisabeth Haub School of Law
Pace University

Michael Wishnie
William O. Douglas Clinical
  Professor of Law
Yale Law School

Lauris Wren
Clinical Professor of Law
Maurice A. Deane School of Law
Hofstra University

Stephen Yale-Loehr
Retired Professor of Immigration Law
  Practice
Cornell Law School

30

Jessica Yanez
Visiting Director
Immigrant Rights Clinic
Washington & Lee University
School of Law

Elliott Young
Professor of History
Lewis & Clark College

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 29 and 32, undersigned counsel certifies that the foregoing brief:

1. Complies with the type-volume limitation of Local Rules 29.1(c) and 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5345 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated: September 23, 2025          By:    /s/  Fatma Marouf

                                   Fatma Marouf
                                   Professor of Law
                                   Texas A&M School of Law
                                   307 W. 7th St. Suite LL50
                                   Fort Worth, TX 76102
                                   Tel: (817) 212-4123
                                   fatma.marouf@law.tamu.edu
                                   (in her individual capacity)

                                   *Counsel of Record for Amici Curiae*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2025, an electronic copy of the brief of amici curiae Immigration Lawyers, Law Professors, and Scholars was filed with the Clerk of the United States Court of Appeals for the Second Circuit by using the ACMS system. I also certify that all participants are registered ACMS users and will be served via the ACMS system.

DATED: September 23, 2025           /s/  Fatma Marouf

                                                      Fatma Marouf
                                                      Professor of Law
                                                      Texas A&M School of Law
                                                      307 W. 7th St. Suite LL50
                                                      Fort Worth, TX 76102
                                                      Tel: (817) 212-4123
                                                      fatma.marouf@law.tamu.edu
                                                      (in her individual capacity)

                                                      *Counsel of Record for Amici Curiae*